KURT OSENBAUGH (State Bar No. 106132)
DEBORAH YOON JONES (State Bar No. 178127)
SAYAKA KARITANI (State Bar No. 240122)
**WESTON, BENSHOOF, ROCHEFORT,**
   **RUBALCAVA & MacCUISH LLP**
333 South Hope Street
Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email:   kosenbaugh@wbcounsel.com
         djones@wbcounsel.com
         skaritani@wbcounsel.com

Attorneys for Plaintiffs
BP WEST COAST PRODUCTS LLC and
ATLANTIC RICHFIELD COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company; and ATLANTIC RICHFIELD COMPANY, a Delaware Corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company,<br><br>　　　　Defendants. | Case No.: C07 04808 RS<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) DECLARATORY RELIEF UNDER THE PETROLEUM MARKETING PRACTICES ACT [15 U.S.C. §§ 2801, *et seq.*];**<br>**(2) BREACH OF CONTRACT – GASOLINE AGREEMENT;**<br>**(3) BREACH OF CONTRACT – MINI MARKET AGREEMENT;**<br>**(4) BREACH OF FRANCHISE GUARANTIES;**<br>**(5) COMMON COUNT – GOODS SOLD AND DELIVERED;**<br>**(6) UNJUST ENRICHMENT;**<br>**(7) BREACH OF CONTRACT – MINI MARKET LOAN AGREEMENT;**<br>**(8) BREACH OF MINI MARKET LOAN GUARANTIES;**<br>**(9) JUDICIAL FORECLOSURE;**<br>**(10) FEDERAL TRADEMARK, TRADE NAME, AND SERVICE MARK INFRINGEMENT AND DILUTION;**<br>**(11) COMMON LAW UNFAIR COMPETITION;**<br>**(12) TRADEMARK INFRINGEMENT UNDER** |

1

**FIRST AMENDED COMPLAINT**

CALIFORNIA BUSINESS &
PROFESSIONS CODE § 14320
AND § 14330; and
(13) VIOLATION OF CALIFORNIA
BUSINESS & PROFESSIONS
CODE §§ 17200 ET SEQ. &
17500 ET SEQ.

Filing Date:  September 17, 2007

Plaintiffs BP West Coast Products LLC ("BPWCP") and Atlantic Richfield Company ("ARCO") allege as follows:

## SUMMARY OF CLAIMS

1.    This suit involves BPWCP's former gasoline station and mini market franchise located in Hollister, California.  BPWCP and ARCO seek damages, declaratory relief and injunctive relief based upon Defendants' breaches of the applicable franchise agreements, breaches of a related loan agreement, breaches of individual guaranties, and ongoing trademark violations.

2.    The Defendants breached the franchise agreements by failing to pay for over $126,000 worth of ARCO-branded gasoline and failing to operate the station and sell gasoline product for approximately 15 consecutive days.  BPWCP bent over backwards to give Defendants multiple opportunities to correct the defaults.  Defendants acknowledged their obligation to pay for the gasoline and BPWCP even agreed to a payment plan.  Nonetheless, Defendants failed to pay for the gasoline and failed to operate the station and sell gasoline product for at least 15 consecutive days in violation of the franchise agreements.  As such, BPWCP terminated the franchise agreements.

3.    By virtue of the franchise breaches, the Defendants have also defaulted on a $150,000 loan that was given by BPWCP to the franchisee for purposes of refurbishing the mini market store.  The loan was secured by the real property on which the gasoline station and mini market were located as well as the fixtures located thereon.  Given the franchise termination and Defendants' loan defaults, the entire

2

**FIRST AMENDED COMPLAINT**

1  loan indebtedness has accelerated and is now due.  Defendants are required to pay the

2  $150,000 loan balance to BPWCP and, to date, they have refused to do so.

3  Accordingly, BPWCP moves for judicial foreclosure on the $150,000 loan and seeks

4  damages for breach of the loan agreement and guaranties.

5          4.      Finally, in addition to their breaches of the franchise agreements,

6  loan agreements, and related guaranties, Defendants have been infringing upon

7  registered trademarks, trade names, and service marks by continuing to use and

8  display BPWCP and ARCO proprietary logos, graphics and branded products and

9  trade names (as well as those belonging to BP Products North America, Inc. and BP,

10  P.L.C.).   ARCO is the registered owner of these marks.   BPWCP is ARCO's

11  transferee of the marketing and refining assets, which include these marks.

12  Defendants have blatantly ignored the demands to cease the trademark violations and

13  as a result, BPWCP and ARCO continue to be damaged.  Thus, in addition to the

14  damages, BPWCP and ARCO seek a restraining order and permanent injunction: (a)

15  requiring Defendants to return or destroy trademarked products, (b) preventing

16  Defendants from using the am/pm and ARCO trademarks, trade names, service marks

17  and proprietary materials, and (c) requiring an equitable accounting and equitable

18  disgorgement of all wrongfully obtained revenues and/or profits.  BPWCP and ARCO

19  seek an order imposing treble damages, exemplary damages, and attorneys' fees and

20  costs against Defendants.

21

22                          **THE PARTIES**

23          5.      Plaintiff BPWCP is qualified to do business in California and is a

24  limited liability company organized and existing under the laws of the State of

25  Delaware.   BPWCP was, at all relevant times hereto, the franchisor for ARCO-

26  branded service stations and am/pm mini market convenience stores including the

27  facility at issue in this litigation.  In addition, BPWCP is a subsidiary of BP Products

28  North America, Inc., which is a registered owner of one of the trademarks at issue in

                                    3

1    this litigation. BPWCP has the right to utilize these trademarks in connection with its

2    ARCO-branded gasoline station and am/pm mini market franchises, has a cognizable

3    interest in the infringed upon mark, and therefore has a right to bring the trademark

4    infringement action.

5                6.    Plaintiff ARCO is qualified to do business in California, and is a

6    corporation organized and existing under the laws of the State of Delaware. ARCO is

7    the registered owner of the "ARCO" and "am/pm" trade names, trademarks, and

8    service at issue in this lawsuit. As ARCO's transferee of the marketing and refining

9    assets, which includes ARCO's registered trademarks, trade names and service marks,

10   BPWCP has the authority to license to its franchisee dealers the right to use ARCO's

11   trade names, trademarks, and service marks in connection with the resale of ARCO-

12   branded motor fuels and the operation of the am/pm mini market convenience stores.

13   Collectively, BPWCP and ARCO are referred to hereinafter as "Plaintiffs."

14               7.    Plaintiffs are informed and believe that defendant STTN

15   Enterprises, Inc. ("STTN") is, and at all relevant times hereto was, a California

16   corporation, which has offices and does business in San Benito County, California.

17   STTN is the former franchisee for the facility located at 631 San Felipe Road,

18   Hollister, California 95035 (the "Station").

19               8.    Plaintiffs are informed and believe that defendant Nazim

20   Faquiryan and Sayed Faquiryan are individuals residing in the City of Hollister,

21   County of San Benito, State of California. BPWCP is informed and believes that, at

22   all relevant times hereto, Nazim Faquiryan and Sayed Faquiryan were and are the sole

23   shareholders of STTN and individual guarantors for the Station franchise. BPWCP is

24   also informed and believes that Sayed Faquiryan is the father of Nazim Faquiryan.

25               9.    Plaintiffs are informed and believe that defendant Maghul

26   Faquiryan is an individual residing in the City of Hollister, County of San Benito,

27   State of California. BPWCP is informed and believes that, at all relevant times hereto,

28

4

1    Maghul Faquiryan was and is the spouse of Sayed Faquiryan and an individual

2    guarantor for the loans related to the Station franchise.

3           10.    Plaintiffs are informed and believe that defendant AVA Global

4    Enterprises, LLC ("AVA Global") is, and at all relevant times hereto, was and is a

5    California limited liability company, which has offices and does business in San

6    Benito County, California.    AVA Global's address, according to the California

7    Secretary of State business search website, is 631 San Felipe Road, Hollister,

8    California (which is the same address as the Station).    At all relevant times, STTN

9    leased the real property upon which the Station is located ("Real Property") from

10   AVA Global Enterprise, LLC ("AVA Global").    AVA Global is the fee simple owner

11   of the Real Property.    Plaintiffs are informed and believe that individual Defendant

12   Nazim Faquiryan is one of the two equal shareholders of AVA Global.    The other

13   50% shareholder of AVA Global is not named individually in this action.

14          11.    Plaintiffs are informed and believe that STTN, Nazim Faquiryan,

15   Sayed Faquiryan, Maghul Faquiryan, and AVA Global, (collectively, "Defendants"),

16   and each of them, in committing the acts and omissions alleged in this First Amended

17   Complaint acted as agents and servants of the other Defendants, acted within the

18   scope of their authority as agents and servants of the other Defendants, acted in

19   concert with the other Defendants with a design and for the purposes of injuring

20   BPWCP and ARCO and of unlawfully benefiting some or all of Defendants, or, in the

21   alternative, approved and ratified the acts and omissions of the other Defendants or

22   third parties, such that each of the Defendants is jointly and severally liable for the

23   acts and omissions of each other Defendants.

24

25                     **JURISDICTION AND VENUE**

26          12.    This action concerns, *inter alia*, the termination of a service station

27   franchise relationship, which is governed by the Petroleum Marketing Practices Act,

28   15 U.S.C. §§ 2801, *et seq.* (the "PMPA").    Accordingly, this Court has jurisdiction

1056950.2          **FIRST AMENDED COMPLAINT**

1   over BPWCP's and ARCO's claims, by virtue of 28 U.S.C. § 1331 and 15 U.S.C. §

2   2805(a), and this Court's pendent jurisdiction.    Furthermore, this Court has

3   jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1338(a) and (b), and 28

4   U.S.C. § 2201, because this is a civil action seeking declaratory relief under the

5   PMPA.  In addition, given the infringement and dilution claims, this Court also has

6   subject matter jurisdiction over this action pursuant to the Lanham Act, 15 U.S.C. §§

7   1051-1127.  The amount in controversy exceeds the sum or value of $75,000.00.

8        13.    Venue is proper in the Northern District of California pursuant to

9   28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise

10   to BPWCP's and ARCO's claims occurred in this District; because the subject

11   franchise is located in this District; and because BPWCP and ARCO are informed and

12   believe that the individual Defendants reside in this District.

13

14                        **GENERAL ALLEGATIONS**

15                        **The Franchise Agreements**

16        14.    BPWCP is engaged in the marketing and distribution of motor fuel

17   in the State of California and elsewhere in the United States.  BPWCP currently has

18   ARCO-branded gasoline stations with am/pm mini market convenience stores located

19   throughout the Western States.  Among its activities, BPWCP sells ARCO-branded

20   motor fuels to franchisees and, at certain of its properties, BPWCP offers am/pm mini

21   market convenience store franchises to be operated concurrently with the gasoline

22   stations.  Pursuant to franchise agreements, BPWCP licenses to its franchisee dealers

23   the right to use ARCO's trade names, trademarks, and service marks in connection

24   with the resale of ARCO-branded motor fuels and the operation of the am/pm mini

25   market convenience stores; Franchisee dealers pay a royalty for use of this right.

26   ARCO is the registered owner of these trademarks, service marks, and trade names

27   and has the right to enforce any violations thereof.  BPWCP has the right to utilize

28   these marks in connection with its ARCO and am/pm franchises.

6

15.    The franchise relationship between STTN and BPWCP is governed by written agreements, principal among them are: (1) a Contract Dealer Gasoline Agreement, which includes any and all amendments and addendums ("Gasoline Agreement"), and (2) an am/pm Mini Market Agreement, which includes any and all amendments and addendums ("Mini Market Agreement").  The Gasoline Agreement and Mini Market Agreement are each effective as of July 11, 2006.  True and correct copies of the Gasoline Agreement and Mini Market Agreement are attached hereto as Exhibit A and Exhibit B, respectively, and are incorporated herein as though fully set forth at length.  The Gasoline Agreement and Mini Market Agreement contain an expiration date of July 12, 2026.

16.    On June 20, 2006, Defendants Sayed Faquiryan and Nazim Faquiryan each signed a Guaranty Agreement and individually guaranteed the obligations owed by STTN to BPWCP under the Mini Market Agreement and Gasoline Agreement ("Franchise Guaranties").    True and correct copies of the Franchise Guaranties are collectively attached hereto as Exhibit C, and are incorporated herein as though fully set forth at length.  The Mini Market Agreement, the Gasoline Agreement, and the Franchise Guaranties shall be referred to collectively as the "Franchise Agreements."

17.    The purposes of the Franchise Agreements are to provide locations at which ARCO-branded petroleum products can be sold to the public by franchisees such as STTN, and to provide locations where customers of the service stations may purchase store goods.

18.    The Franchise Agreements set forth the obligations and undertakings required of STTN, which are material to the operation of a BPWCP franchise.  The pertinent provisions of the Franchise Agreements provide, *inter alia*, that:

(a)    The franchisee must "exert good faith efforts to carry out the provisions of this Agreement following written notice to Buyer from BPWCP of such

7

**FIRST AMENDED COMPLAINT**

1   failure and fifteen calendar days to cure such failure." [See Gasoline Agreement,

2   ¶ 17.1(a), Exhibit A.];

3           (b)    The franchisee is also required to "order and make available

4   for retail sale all grades of Gasoline which BPWCP offers to Buyer (hereinafter

5   collectively, "Product"), in amounts sufficient to satisfy all foreseeable retail customer

6   demand for Product at the Premises and will at all times have available for sale some

7   of each grade of Product . . . ." [See Gasoline Agreement, Article 2, Exhibit A.];

8           (c)    The franchisee is also required to "pay the price specified by

9   BPWCP in effect at the time and place of delivery for purchasers of Buyer's class of

10  trade" and by "electronic funds transfer initiated by BPWCP, wire transfer, cashier's

11  check or business check, whichever BPWCP directs, delivered by Buyer at the time

12  and place as designated by BPWCP." [See Gasoline Agreement, Articles 5 and 6,

13  Exhibit A.]; and

14          (d)    The franchisee is also required to conduct all of its

15  operations of the Station, including the Mini Market, under the terms and conditions

16  of each of the Franchise Agreements. [See Mini Market Agreement, Section 4.05,

17  Exhibit B.]

18

19                          **The Loan Agreements**

20          19.    In addition to the requirements concerning operation of the Station,

21  the Franchise Agreements also required STTN to complete a remodel or retrofit of the

22  Station within nine (9) months of the commencement of the franchise relationship.

23  [See Gasoline Agreement, Section 1.2, Section 5.03(a), Exhibit A; Mini Market

24  Agreement, Exhibit B.] BPWCP assists its franchisees in complying with these

25  "remodel and retrofit" requirements by offering a special loan program to provide

26  funds specifically for completing construction and remodeling at its franchise

27  locations. Specific details of the loan program are described below, however,

28  generally, under BPWCP's loan program if a franchisee meets certain yearly

8

**FIRST AMENDED COMPLAINT**

gallonage and store sale requirements a portion of the loan is deemed repaid at the end of each year term.  Thus, as long as a franchisee sells a specified amount of gasoline product and/or store products each year for the duration of the loan term, the loan payments for that year are deemed repaid.  Furthermore, the franchisee enjoys the use of a remodeled and retrofitted station which, in turn, attracts more customers and therefore generates more income and profit for the franchisee.

20.    On February 12, 2007, BPWCP and STTN entered into two Loan Agreements, whereby BPWCP agreed to loan STTN the total sum of $475,000 to be used toward BPWCP-approved capital improvements for the Station.

**The am/pm Mini Market Loan Agreement**

21.    The first loan agreement - - the "am/pm Mini Market Loan Agreement" - - provided a base loan in the amount of $150,000 to fund the costs associated with pre-approved modifications and/or equipment and improvements to the am/pm Mini Market (hereinafter, "Store Loan Agreement" ).  The Store Loan Agreement also included an additional $75,000 that BPWCP could elect to disburse for refreshing and refurbishing the am/pm Mini Market on the eleventh anniversary of the base loan disbursement.  A true and correct copy of the Store Loan Agreement is attached hereto as <u>Exhibit D</u>, and is incorporated herein as though fully set forth at length.

22.    Pursuant to the Store Loan Agreement, the loan was interest-free but was conditioned upon Defendants' agreement to pay five percent (5%) of the loaned amount each year over the course of 20 years, or alternatively, sell merchandise in the am/pm Mini Market in the Annual Guaranteed Amount of at least $960,000 each year.  If Defendants sold $960,000 in gross sales of merchandise in the am/pm Mini Market in a year, BPWCP would deem the loan payment for that year as repaid.

**FIRST AMENDED COMPLAINT**

1056950.2

23.    In addition, pursuant to the terms of the Store Loan Agreement, the loan funds were to be disbursed directly to the third parties who were retained to complete the construction, remodeling and retrofitting.  To ensure that all conditions for disbursement were met, STTN and BPWCP entered into a Disbursement Agreement that sets forth the terms and conditions governing disbursements of funding.  The Disbursement Agreement is specifically referenced in the Store Loan Agreement, and a true and correct copy is attached hereto as Exhibit E, and is incorporated herein as though fully set forth at length.  The Disbursement Agreement provides, in pertinent part, that:

> "Construction Loan Proceeds will be disbursed from time to time upon receipt by BP West Coast Products LLC or its designee of Pay Vouchers, executed by [STTN] and Contractor, accompanied by original detailed invoices, . . . and BP West Coast Products LLC or its designee have the right to withhold payment on any and all Pay Vouchers if supporting documentation reasonably requested is not provided.  This may include original invoices, job inspection card copy, IRS form W-9, appropriate lien releases for labor and/or materials, receipts, photos, revised cost breakdown and Affidavit and Certification of Completion of Builder/Contractor."

[See Disbursement Agreement, Paragraph 3, Exhibit E.]  As such, the Store Loan Agreement did not call for a lump sum payment to the Defendants but rather release of funds were contingent upon (a) specified work being completed at the Station, and (b) documentation to support payment of that work by STTN.

24.    STTN agreed to the terms of the Store Loan Agreement, and Nazim Faquiryan and Sayed Faquiryan signed all necessary loan paperwork on behalf of STTN.  The Store Loan Agreement was secured by a recorded Deed of Trust with

10

**FIRST AMENDED COMPLAINT**

1  Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") on the

2  real property upon which the Station was located ("Real Property"). AVA Global, as

3  the owner of the Real Property, executed the Deed of Trust dated March 2, 2007 and

4  recorded on March 9, 2007, which irrevocably granted BPWCP the power of sale of

5  all of AVA Global's right, title and interest in the Real Property. A true and correct

6  copy of the Deed of Trust is attached hereto as <u>Exhibit F</u>, and is incorporated herein as

7  though fully set forth at length. AVA Global, BPWCP and STTN also entered into a

8  "Consent to Encumbrance of Tenant's Interest" dated March 2, 2007 and recorded on

9  March 9, 2007 ("Consent to Encumbrance"). The Consent to Encumbrance created a

10 leasehold mortgage encumbering STTN's leasehold estate in the Lease and Real

11 Property ("Leasehold Mortgage"). A true and correct copy of the Consent to

12 Encumbrance is attached hereto as <u>Exhibit G</u>, and is incorporated herein as though

13 fully set forth at length. In addition, STTN executed a Promissory Note evidencing

14 the Store Loan. A true and correct copy of the executed Promissory Note is attached

15 hereto as <u>Exhibit H</u> and is incorporated herein as though fully set forth at length.

16      25.    BPWCP's secured interest in the Real Property is second only to

17 senior lienholder Excel National Bank who maintains a first deed of trust on the Real

18 Property in the amount of approximately $1,987,000.

19      26.    In addition, the Store Loan Agreement was secured by a UCC-1

20 Financing Statement ("UCC-1") on the personal property located on or affixed to the

21 Real Property or the Improvements and other property more fully described in the

22 attachments to the UCC-1. A true and correct copy of the UCC-1 is attached hereto as

23 <u>Exhibit I</u>, and is incorporated herein as though fully set forth at length.

24      27.    As of May 29, 2007, the full amount of $150,000 was funded and

25 disbursed for Defendants' benefit pursuant to the Store Loan Agreement.

26

27

28

1056950.2

**FIRST AMENDED COMPLAINT**

**The Gasoline Loan Agreement**

28.    The second loan agreement - - the "Gasoline Loan Agreement" - - in the amount of $250,000 was to fund costs associated with the pre-approved modifications and/or equipments and improvements which pertain to the gasoline sales-related aspects of the Station (i.e., dispensers, canopy, etc.). Disbursement of the funds under the Gasoline Loan Agreement was contingent upon STTN abiding by requirements similar to those applicable to the Store Loan Agreement. However, STTN failed to provide sufficient financial documents, including proof of any payment by STTN of any construction-related expenditures, required back-up invoices and/or lien releases, all of which are requirements of the Gasoline Loan Agreement and related Disbursement Agreement. As a result of STTN's failures to abide by the terms of the Gasoline Loan Agreement and related Disbursement Agreement, BPWCP has not disbursed (and will not be disbursing) any monies under the Gasoline Loan to STTN.

**The Loan Guaranties**

29.    Defendants Sayed Faquiryan, Maghul Faquiryan (Sayed Faquiryan's spouse), and Nazim Faquiryan each signed a Guaranty Agreement and individually guaranteed the loan obligations owed by STTN to BPWCP under the Store Loan Agreement ("Loan Guaranties"). True and correct copies of the Loan Guaranties are collectively attached hereto as Exhibit J, and are incorporated herein as though fully set forth at length.

**STTN Breached the Franchise Agreements**

30.    Among other things, STTN was required, pursuant to the Franchise Agreement, to maintain adequate supplies of gasoline for sale and make payments for gasoline deliveries. [See Gasoline Agreement, Article 2, Exhibit A.] Payment for

1056950.2

**FIRST AMENDED COMPLAINT**

gasoline product was accomplished by way of an electronic funds transfer ("EFT") from STTN's bank account.

31.    However, as of January 29, 2007, BPWCP began requiring STTN to present a cashier's check in order to receive gasoline product because numerous EFT requests pertaining to gasoline deliveries were returned for insufficient funds by STTN's bank.  In other words, STTN failed to pay BPWCP for the gasoline product that had been delivered.

32.    When a franchisee is found to be in violation of the Franchise Agreements, BPWCP issues a written "Default Notice" describing the violation ("Default").  The Default is then sent to the franchisee via certified mail, giving the franchisee an opportunity to cure the violation.  BPWCP issued a number of Defaults based upon STTN's repeat operational violations for failure to accept gasoline delivery and to make payment for gasoline that was delivered and payable upon receipt.  True and correct copies of all Defaults pertaining to STTN's failure to pay for gasoline product deliveries are attached hereto as <u>Exhibit K</u> and are incorporated herein as though fully set forth at length.

33.    STTN readily admits that they owe the money to BPWCP for various gasoline deliveries.  Indeed, Nazim Faquiryan and Sayed Faquiryan acknowledged and agreed to in writing in a letter dated May 4, 2007, that they will pay $30,000 per month until the total outstanding balance of the gasoline debt is paid in full.  A true and correct copy of the letter agreement to pay the gasoline debt signed by Nazim Faquiryan and Sayed Faquiryan is attached hereto as <u>Exhibit L</u> and is incorporated herein as though fully set forth at length.

34.    To date, STTN has failed to pay for the gasoline.  The current outstanding balance for the gasoline product that Defendants failed to reimburse BPWCP for gasoline product delivered is One Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents ($126,194.77).

1056950.2                                        **FIRST AMENDED COMPLAINT**

35.    In addition to Defendants' failure to sell gasoline, commencing on August 23, 2007 through at least September 6, 2007, STTN failed to operate the Station and sell gasoline product for at least 15 consecutive days in violation of the Franchise Agreements.

## BPWCP Terminates the STTN Franchise

36.    Given STTN's continuing breach of the Franchise Agreements, BPWCP sent a Notice of Termination letter dated September 6, 2007, to STTN, advising that the Franchise Agreements would be immediately terminated ("Termination Notice").    A true and correct copy of the Termination Notice is attached hereto as Exhibit M and is incorporated herein as though fully set forth at length.

37.    The Franchise Agreements provide that BPWCP may terminate the Franchise Agreements for various reasons which include, but are not limited to, the following:

(a)    Failure to exert good faith efforts to carry out the provisions of the Franchise Agreements following written notice and opportunity to cure [See Section 17.1(a) of the Gasoline Agreement, Exhibit A.];

(b)    Failure to timely pay all sums due to which BPWCP is legally entitled [See Section 17.1(h) of the Gasoline Agreement, Exhibit A.];

(c)    Failure to operate the Premises for seven (7) consecutive calendar days, or lesser period, which constitutes an unreasonable period of time [See Section 17.1(i) of the Gasoline Agreement, Exhibit A.];

(d)    Breach of any material provision of the Gas Agreement, including without limitation, "Buyer's failure to order and make available for sale quantities of each grade of Product which are sufficient to satisfy foreseeable customer demand." [See Section 17.1(o) of the Gasoline Agreement, Exhibit A.]; and

14

(e)    Termination of any one other franchise agreement (e.g., Gas Agreement) when there is "Concurrent Operations at the Premises," in which "Concurrent Operations" is defined as the operation of the am/pm Mini Market in conjunction with another or more than one other BPWCP franchise. [See Sections 4.05 and 18.05 of the Mini Market Agreement, Exhibit B.]

38.    The pertinent provisions of the Petroleum Marketing Practices Act, 28 U.S.C. §2801, *et seq.* ("PMPA") allow, *inter alia*, for termination upon the occurrence of the any of the following:

(a)    Failure by the franchisee to comply with a reasonable and material provision of the franchise [28 U.S.C. § 2802(b)(2)(A)];

(b)    Failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise [28 U.S.C. § 2802(b)(2)(B)];

(c)    Occurrence of an event which is relevant to the franchise relationship as a result of which termination of the franchise relationship is reasonable [28 U.S.C. § 2802(b)(2)(C)]; and

(d)    Failure by the franchisee to operate the marketing premises for 7 consecutive days, or such lesser period which under the facts and circumstances constitutes an unreasonable period of time [28 U.S.C. § 2802(c)(9)].

39.    Furthermore, given Defendants' long-standing debt owed to BPWCP for unpaid gasoline, their failure to operate the Station and sell gasoline for at least 15 consecutive days, and the numerous opportunities given by BPWCP to Defendants to cure the defaults, the termination was effective immediately as it was not reasonable for BPWCP to provide any additional notice to STTN.  [28 U.S.C. § 2804(b).]

40.    The Franchise Agreements provide that STTN will owe BPWCP certain sums upon termination.  Specifically, Article 19.01(d) of the Mini Market Agreement states that, upon termination, STTN shall owe BPWCP liquidated damages.  [See Exhibit B.]

15

41.   Accordingly, BPWCP terminated the Franchise Agreements on the grounds that STTN:

(a)   failed to have any gasoline products available for sale to the motoring public for at least 15 consecutive days, despite the fact that BPWCP sent STTN a total of twelve Defaults for failure to offer all grades of gasoline for sale (true and correct copies of which are included in <u>Exhibit K</u> and are dated August 24 through 31, 2007 and September 1 through 4, 2007); and

(b)   failed to timely pay BPWCP for gasoline products in a timely manner, incurring an outstanding balance of $126,194.77, as of September 6, 2007, for gasoline product deliveries that are due and payable at the time of delivery.

## STTN Defaulted on the Store Loan Agreement

42.   In addition to the Franchise Agreement breaches, STTN also defaulted on the Store Loan Agreement.   Pursuant to the Store Loan Agreement, STTN must repay the outstanding balance of the loan in full to BPWCP within 30 days of the occurrence of an "Event of Default."   Paragraph 4 of the Loan Agreement provides the pertinent "Events of Default," which include, but are not limited to, the following:

(a)   "The [Mini Market Agreement] is terminated by either Lender or Borrower prior to the end of its stated term" [See Store Loan Agreement, Section 4.5, <u>Exhibit D</u>.];

(b)   A default or "Event of Default" shall have occurred under any of the other Loan Documents" [See Store Loan Agreement, Section 4.10, <u>Exhibit D</u>.];

(c)   "The Borrower fails to sell Products continuously at the Facility . . . . " [See Store Loan Agreement, Section 4.4, <u>Exhibit D</u>.]; or

(d)   "The failure by the Borrower to make any payments of principal of or interest and any other indebtedness secured by the Property, or there

16

shall occur any other event that would permit the holder of such indebtedness to accelerate the maturity thereof." [See Store Loan Agreement, Section 4.12, <u>Exhibit D</u>.].

43.    In the Termination Notice, BPWCP demanded that STTN repay the outstanding balance of the Store Loan within 30 days of the termination (October 5, 2007), pursuant to the Store Loan Agreement and Promissory Note. As of September 5, 2007, the outstanding balance on the Store Loan Agreement was $150,000.00. [See Termination Notice, <u>Exhibit M</u>.]

44.    To date, STTN has failed and refused to pay the outstanding balance due pursuant to the Store Loan Agreement.

**<u>Although BPWCP Terminated the Franchise, Defendants Continue to Display and Use Trademarks and Proprietary Materials</u>**

45.    Despite BPWCP's termination of STTN's franchise and BPWCP's "debranding" of the Station, Defendants have and continue to violate Federally-registered trademarks, trade names and service marks and use proprietary materials as follows:

(a)    Defendants have not altered the Pay Island Cashier Machine screen such that the screen statement displays an "ARCO" logo and name, and states "Fill Smart," and "Thank you for choosing ARCO." See photograph numbers 1 and 2 attached hereto under <u>Exhibit N</u>, which is incorporated as though fully set forth at length;

(b)    Defendants continue to sell beverages in fountain cups bearing "am/pm" and "thirst oasis" logos. See photograph numbers 3 and 4 attached hereto under <u>Exhibit N</u>, which is incorporated herein as though fully set forth at length;

1056950.2

(c)    Defendants continue to sell Nacho Chips that are contained in "am/pm" food wrappers.  See photograph number 5 attached hereto under <u>Exhibit N</u>, which is incorporated herein as though fully set forth at length;

(d)    Defendants continue to display the am/pm soda fountain "CRUNCH CUBE" machine graphics above the soda dispenser heads.  See photograph number 6 attached hereto under <u>Exhibit N</u>, which is incorporated herein as though fully set forth at length;

(e)    Defendants continue to display the am/pm coffee graphics above the coffee machine.  See photograph numbers 7 and 8 attached hereto under <u>Exhibit N</u>, which is incorporated herein as though fully set forth at length;

(f)    Defendants continue to display the am/pm coffee price menu board that are exclusive to am/pm mini markets.  See photograph number 9 attached hereto under <u>Exhibit N</u>, which is incorporated herein as though fully set forth at length;

(g)    Defendants continue to display a hamburger graphic that is exclusive to am/pm mini markets.  See photograph number 10 attached hereto under <u>Exhibit N</u>, which is incorporated herein as though fully set forth at length;

(h)    Defendants continue to utilize the ARCO neon blue illuminated light band on the fuel canopy.  See photograph number 11 attached hereto under <u>Exhibit N</u>, which is incorporated herein as though fully set forth at length; and

(i)    Defendants continue to utilize the am/pm neon orange illuminated light band in the mini market exterior.  See photograph number 12 attached hereto under <u>Exhibit N</u>, which is incorporated herein as though fully set forth at length; and

(j)    Defendants have not altered the store cash registers such that the printed receipts state "Thirst Oas" for a purchase of fountain beverages.  See photograph number 13 attached hereto under <u>Exhibit N</u>, which is incorporated herein as though fully set forth at length.

18

46.    There may be other violations that BPWCP and ARCO are currently unaware of including the unauthorized use of am/pm trademarked GTG Prep Food forms, Bakery Program forms, recipes, instruction manuals, written procedures, practices and policies, and refillable coffee mugs and fountain drink cups.  In addition, Defendants are most likely continuing to use the am/pm FAS system in the back office.  As of September 18, 2007 (twelve days after the franchise termination), these items were still on display and being used at the Station without BPWCP's or ARCO's authorization.

47.    ARCO is the registered owner of federally registered trademarks on the following items, which have registration numbers as indicated:

(a)    "ARCO" Logo depicted in photograph number 1 in Exhibit N: Registration Number 1495419;

(b)    "ARCO" typed words as in "Thank You for Choosing ARCO" depicted in photograph number 2 in Exhibit N:  Registration Number 1496212;

(c)    "am/pm" logo contained on fountain beverage cups depicted in photograph number 3 in Exhibit N: Registration Number 2821396;

(d)    "am/pm" logo contained on nachos wrappers depicted in photograph number 5 in Exhibit N:  Registration Number 1459431;

48.    BP Products North America, Inc. is the registered owner of the "Thirst Oasis" logo contained on fountain beverage cups and depicted in photograph numbers 4 and 13 in Exhibit N; the relevant registration number for this logo is 313357.

49.    The following designs and marks are proprietary and exclusive to BPWCP's franchises and BPWCP must authorize their use:

(a)    "Fill Smart" words depicted in photograph number 1 in Exhibit N;

**FIRST AMENDED COMPLAINT**

1056950.2

(b)    Soda Machine Graphics "Crunch Cube" depicted in photograph number 6 in Exhibit N;

(c)    am/pm Coffee Graphics depicted in photograph numbers 7 and 8 in Exhibit N;

(d)    am/pm Coffee Menu depicted in photograph number 9 in Exhibit N;

(e)    am/pm Hamburger Graphics depicted in photograph number 10 in Exhibit N;

(f)    ARCO Blue Neon Illuminated Light Stripe on Fuel Canopy depicted in photograph number 11 in Exhibit N; and

(g)    am/pm Orange Neon Illuminated Light Stripe on Mini Market depicted in photograph number 12 in Exhibit N.

50.    The trademarks, trade names, and service marks referenced above in paragraphs 47 through 49 (collectively referred to as, "Protected Marks") have been widely and continuously used since they were first used in commerce in connection with ARCO gasoline stations and am/pm mini market convenience stores throughout the Western United States in California, Nevada, Washington, Oregon, and Arizona (the "Western States"). Moreover, the "ARCO" and "am/pm" names have been used to identify for consumers the products available at ARCO-branded gasoline stations and am/pm mini market convenience stores. The names "ARCO" and "am/pm" are prominently displayed on ARCO-branded gasoline stations and am/pm mini market convenience stores throughout the Western States. BPWCP relies heavily on the name recognition and good will that BPWCP and ARCO have developed over the years to attract customers and to make sales of ARCO-branded motor fuels and mini market convenience store products and services.

51.    BPWCP and ARCO have invested significant time, money, and resources to advertise and market these Protected Marks in connection with the sale of high quality motor fuels and mini market convenience store products and services, and

have developed considerable good will in these marks and names among the consumers of motor fuels and mini market convenience store products and services.

52.    As discussed above, the Station was an ARCO-branded gasoline station and am/pm mini market, however, BPWCP terminated the franchise effective September 6, 2007. BPWCP "de-branded" the Station on September 17 and 18, 2007, and advised Defendants to remove all products bearing trademarked and proprietary displays and products. As of September 11, 2007, the Station was still improperly displaying these Protected Marks while, at the same time, offering non-ARCO branded gasoline for sale.

53.    Defendants are no longer BPWCP franchisees or dealers. The Station does not sell ARCO-branded motor fuels nor is it an am/pm mini market convenience store. Defendants are not in any way affiliated with, authorized by, or sponsored by BPWCP or ARCO and therefore has no authority to use the Protected Marks to identify the business Defendants conduct at the Station including, but not limited to, the goods that are sold, promoted or distributed. Moreover, Defendants are no longer authorized to make use of proprietary materials such as the FAS computer program and written operating materials and instructions.

54.    In a letter dated September 12, 2007, Plaintiffs advised Defendants that they must immediately discontinue the use of all the Protected Marks. A true and correct copy of the September 12, 2007 letter is attached hereto as Exhibit O, and is incorporated herein as though fully set forth at length.

55.    Defendants sent a letter dated September 12, 2007 which notably failed to address any of the trademark violations and threatened BPWCP with litigation. A true and correct copy of this letter is attached hereto as Exhibit P, and is incorporated herein as though fully set forth at length.

56.    By way of a letter dated September 13, 2007, Plaintiffs' counsel demanded that Defendants immediately cease the trademark and trade name violations and stop using proprietary items. The letter also advised Defendants that the

21

1  violations existed as of September 11, 2007. A true and correct copy of the

2  September 13, 2007 letter is attached hereto as Exhibit Q and is incorporated herein as

3  though fully set forth at length.

4          57.    On September 17 and 18, BPWCP attempted to complete the

5  "debrand" the Station to ensure that it would no longer be identified as an ARCO-

6  branded gasoline station or am/pm mini market and so that BPWCP-owned property

7  could be returned. As of September 17 and 18, a number of trademark violations at

8  the Station still existed, and as of September 28, 2007, Defendants were continuing to

9  violate BPWCP and ARCO's trademarks and proprietary interests. The violations

10  described above in paragraph 45 existed as of October 12, 2007, just prior to filing

11  this First Amended Complaint.

12          58.    Although BPWCP and ARCO made informal attempts to resolve

13  the dispute prior to filing this First Amended Complaint, Defendants refused to cease

14  their violations. Indeed, to date, Defendants continue to use Plaintiffs' famous and

15  trademarked names, products, and proprietary materials in connection with the

16  promotion, distribution, and sale of motor fuels and convenience store products.

17

18                      **FIRST CLAIM FOR RELIEF**

19          **(Declaratory Relief Under The Petroleum Marketing Practices Act)**

20              **(By Plaintiff BPWCP Against STTN Enterprises, Inc.)**

21          59.    The allegations of paragraphs 1 through 58 above are incorporated

22  herein by reference as though fully set forth herein.

23          60.    There presently exists an actual controversy within this Court's

24  jurisdiction between BPWCP, on the one hand, and STTN, on the other hand, in that

25  BPWCP asserts that:

26              (a)    STTN's franchise and the franchise relationship with

27  BPWCP were terminated pursuant to Termination Notice dated September 6, 2007

28  [Exhibit M];

1056950.2                                          **FIRST AMENDED COMPLAINT**

1    (b)    Pursuant to the Petroleum Marketing Practices Act, 15
2    U.S.C. Section 2802, and the terms of the Franchise Agreements between the parties,
3    BPWCP was entitled to terminate STTN's franchise at the Station;

4    (c)    BPWCP's grounds for terminating STTN's franchise were
5    legitimate and non-discriminatory; and

6    (d)    The Termination Notice was delivered on the earliest date
7    reasonably practicable, and were otherwise reasonable under 15 U.S.C. § 2804(b).

8    61.    BPWCP is informed and believes and on that basis alleges, that
9    STTN disputes each of BPWCP's aforementioned assertions.

10    62.    Defendants disagree with the above, and moreover, threatened to
11    pursue legal remedies against BPWCP. See Exhibit P.

12    63.    By reason of STTN's conduct as described above, BPWCP is
13    entitled to a declaratory judgment under 28 U.S.C. Section 2201, stating that:

14    (a)    The relationship between STTN and BPWCP was that of a
15    franchise relationship as defined and provided by Section 2801 of the PMPA;

16    (b)    STTN's failure to discharge and comply with the terms,
17    conditions and obligations of the Franchise Agreements is detailed in the Termination
18    Notice [Exhibit M], constituted a failure to comply with provisions of the franchise
19    which were reasonable and materially significant, a failure to carry out the provisions
20    of the franchise, and constituted events which were relevant to the franchise
21    relationship, the result of which the franchise termination by BPWCP was reasonable
22    under the PMPA;

23    (c)    Under the PMPA, BPWCP lawfully terminated STTN's
24    franchise and franchise relationship concerning the Franchise;

25    (d)    Under the terms of the Franchise Agreements, BPWCP
26    lawfully terminated STTN's franchise and franchise relationship concerning the
27    Franchise;

28

(e)    Under the terms of the Mini Market Agreement, BPWCP lawfully terminated STTN's franchise and franchise relationship concerning the Station;

(f)    The Termination Notice was reasonable and appropriate under 15 U.S.C. § 2802(b)(2)(A) (failure by the franchisee to comply with any provision of the franchise which is both reasonable and materially significant to the franchise relationship); Section 2802(b)(2)(B) (failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise); Section 2802(b)(2)(C) (the occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise is reasonable); and Section 2802(c)(9) (failure by the franchisee to operate the marketing premises for 7 consecutive days);

(g)    Pursuant to 15 USC § 2804(b), BPWCP's Notice of Termination calling for the termination effective immediately was proper because it would not have been reasonable for BPWCP to furnish 90 days notification;

(h)    BPWCP is entitled to liquidated damages under Article 19.01(d) of the Mini Market Agreement; and

(i)    BPWCP is entitled to collect any and all other sums due pursuant to the Franchise Agreements between the parties.

## SECOND CLAIM FOR RELIEF

### (Breach of Gasoline Agreement)

### (By Plaintiff BPWCP Against STTN Enterprises, Inc.)

64.    The allegations of paragraphs 1 through 63 above are incorporated herein by reference as though fully set forth herein.

65.    BPWCP has fully performed all of its requirements pursuant to the parties' Gasoline Agreement.

66.    STTN has breached multiple provisions of the Gasoline Agreement by, *inter alia*:

24

**FIRST AMENDED COMPLAINT**

1    (a)    Failing to have any gasoline products available for sale to

2    the motoring public for at least 15 consecutive days.  In fact, STTN had taped off the

3    Station dispensers from any use by customers, and did not sell any gasoline from

4    August 23, 2007 through at least September 6, 2007; and

5    (b)    Failing to timely pay BPWCP for gasoline products in a

6    timely manner.  As of September 6, 2007, STTN had an outstanding balance of One

7    Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-

8    Seven Cents ($126,194.77) for gasoline product deliveries that were due and payable

9    at the time of delivery.  In fact, STTN issued several checks that were returned by

10    STTN's bank because STTN had insufficient funds.

11    67.    As a proximate result of STTN's breach, BPWCP has been

12    damaged in an amount to be determined at trial, but no less than One Hundred

13    Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents

14    ($126,194.77), which is the total outstanding amount due for gasoline product

15    delivered to the Station, and after applying Defendants' security deposit and other

16    advance payments.

17

18    **THIRD CLAIM FOR RELIEF**

19    **(Breach of Mini Market Agreement)**

20    **(By Plaintiff BPWCP Against STTN Enterprises, Inc.)**

21    68.    The allegations of paragraphs 1 through 67 above are incorporated

22    herein by reference as though fully set forth herein.

23    69.    BPWCP has fully performed all of its requirements pursuant to the

24    Mini Market Agreement.

25    70.    STTN has breached Section 4.05 of the Mini Market Agreement

26    by, *inter alia*, breaching the Gasoline Agreement, as described in full in the second

27    claim for relief.   Section 4.05 requires that all "Concurrent Operations at the

28    Premises" be conducted and governed by the terms and conditions and provisions of

25

1   the applicable Franchise Agreement, i.e., the Gasoline Agreement. [See Mini Market

2   Agreement, Section 4.05 Exhibit B.].

3         71.    As a proximate result of STTN's breach, BPWCP has been

4   damaged in an amount to be determined at trial.

5         72.    In addition, the Mini Market Agreement contains a liquidated

6   damages provision.    Article 19.01(d) of the Mini Market Agreement provides that

7   "Operator shall pay to [BWPCP] at the time of termination, as liquidated damages and

8   not as penalty, the greater of:  (a) the total minimum royalty fee which would have

9   been payable under the [Mini Market Agreement] from the date of termination of the

10  [Mini Market Agreement] through the end of the term provided for in the [Mini

11  Market Agreement]; or (b) for each month from the date of termination of the [Mini

12  Market Agreement] through the end of the term provided in the [Mini Market

13  Agreement], the actual average royalty fee for any months that the Store was

14  operational prior to termination of the [Mini Market Agreement]."  Given BPWCP's

15  termination of the Mini Market Agreement effective September 6, 2007, the total

16  amount due to BPWCP for liquidated damages is Two Hundred Thirty-Five Thousand

17  and Zero Cents ($235,000.00).

18

19  **FOURTH CLAIM FOR RELIEF**

20  **(Breach of Franchise Guaranties)**

21  **(By Plaintiff BPWCP Against**

22  **Nazim Faquiryan and Sayed Faquiryan.)**

23        73.    The allegations of paragraphs 1 through 72 above are incorporated

24  herein by reference as though fully set forth herein.

25        74.    Sayed Faquiryan and Nazim Faquiryan each executed and

26  delivered to BPWCP the Franchise Guaranties, guaranteeing any and all indebtedness

27  of STTN with respect to both the Store Loan Agreement and the Gasoline Loan

28  Agreement. [See Franchise Guaranties, Exhibit C.]

**FIRST AMENDED COMPLAINT**

75.    STTN is currently indebted to BPWCP in an amount of not less than $126,194.77.  BPWCP has made demands for payment of this sum on Sayed Faquiryan and Nazim Faquiryan, who have, to date, failed to make these payments. As such, Sayed Faquiryan and Nazim Faquiryan are in breach of the obligations under the Franchise Guaranties.  Sayed Faquiryan and Nazim Faquiryan are also liable for liquidated damages in the amount of $235,000.00 owed to BPWCP pursuant to the Mini Market Agreement and according to proof.

## FIFTH CLAIM FOR RELIEF

### (Common Count: Goods Sold and Delivered)

### (By Plaintiff BPWCP Against

### STTN Enterprises, Inc., Nazim Faquiryan, and Sayed Faquiryan.)

76.    The allegations of paragraphs 1 through 75 above are incorporated herein by reference as though fully set forth herein.

77.    On or about September 5, 2007, at 631 San Felipe Road, Hollister, California 95035, Defendants became indebted to BPWCP in the sum of One Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents ($126,194.77) for gasoline sold by BPWCP and delivered to STTN.

78.    BPWCP has repeatedly demanded payment from Defendants. The last demand was made on September 6, 2007.  [See Exhibit M.]

79.    No payment has been made by Defendants to BPWCP, and there is now due BPWCP and owed from Defendants at least the principal sum of One Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents ($126,194.77).

1056950.2

**FIRST AMENDED COMPLAINT**

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment)

### (By Plaintiff BPWCP Against

### STTN Enterprises, Inc., Nazim Faquiryan, and Sayed Faquiryan.)

80. The allegations of paragraphs 1 through 79 above are incorporated herein by reference as though fully set forth herein.

81. STTN, as well as Nazim Faquiryan and Sayed Faquiryan as guarantors, obtained the benefit of receiving deliveries of gasoline in that they have not paid for the gasoline but have been able to sell and profit from the gasoline that was delivered by BPWCP.

82. On May 4, 2007, Nazim Faquiryan and Sayed Faquiryan sent a letter agreement to BPWCP, promising that STTN would make monthly payments of Thirty Thousand Dollars ($30,000) by certified check payable to BPWCP on or before the 15 day of each month beginning June 20, 2007 until the total outstanding balance owed for the gasoline delivered has been paid off. [See Exhibit L.]

83. Despite reaping such benefits and agreeing to make monthly installments, Defendants still have not made any payments to BPWCP for the gasoline product.

84. As set forth in the above-paragraphs, Defendants' failure to compensate BPWCP constitutes unjust enrichment and has damaged BPWCP in the amount of at least One Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents ($126,194.77), plus interest.

1056950.2

**FIRST AMENDED COMPLAINT**

## SEVENTH CLAIM FOR RELIEF

### (Breach of Store Loan Agreement)

### (By Plaintiff BPWCP Against

### STTN Enterprises, Inc., Nazim Faquiryan, and Sayed Faquiryan.)

85.    The allegations of paragraphs 1 through 84 above are incorporated herein by reference as though fully set forth herein.

86.    BPWCP has fully performed all of its requirements pursuant to the Store Loan Agreement.

87.    STTN breached Article 4 of the Store Loan Agreement by failing to repay the outstanding balance of the Store Loan in full to BPWCP within 30 days of the occurrence of an Event of Default.  The Store Loan Agreement requires STTN to repay the outstanding balance of the Store Loan within 30 days of the occurrence of an Event of Default.  The termination of the Franchise Agreements is an Event of Default.  [See Store Loan Agreement, Section 4.5, Exhibit D.]

88.    As of September 5, 2007, the day before the date of termination, STTN's outstanding balance due on the Loan was $150,000.00.  Pursuant to the Store Loan Agreement, the loan balance was due to BPWCP no later than October 5, 2007.  To date, the loan balance on the Store Loan has not been repaid by Defendants.

89.    As a result of STTN's breach of the Store Loan Agreement, BPWCP has been damaged in the amount of $150,000, plus interest.  In addition, the Store Loan Agreement provide that Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan will reimburse BPWCP on demand for all expenses, including reasonable attorneys' fees incurred by BPWCP in collecting or enforcing the Store Loan Agreement, together with interest thereon.  [See Article 9.9 of the Store Loan Agreement, Exhibit D.]  It has become necessary for BPWCP to engage the law firm of Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP to bring this action, and BPWCP is entitled to further and additional sums for reasonable attorneys' fees herein.

29

1
2
3
4

## EIGHTH CLAIM FOR RELIEF

### (Breach of Loan Guaranties)

### (By Plaintiff BPWCP Against

### Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan.)

5    90.    The allegations of paragraphs 1 through 89 above are incorporated
6    herein by reference as though fully set forth herein.

7    91.    Nazim Faquiryan, and Sayed Faquiryan, and Maghul Faquiryan (as
8    Sayed Faquiryan's spouse), each executed and delivered to BPWCP the Loan
9    Guaranties, guaranteeing any and all indebtedness of STTN with respect to the Loan
10   Agreements. [See Loan Guaranties, Exhibit J.]  As such, Nazim Faquiryan, Sayed
11   Faquiryan, and Maghul Faquiryan, as individual guarantors, are liable for damages as
12   provided by the Store Loan Agreement in the amount of $150,000.00 plus interest.

13   92.    STTN is currently indebted to BPWCP in an amount of not less
14   than One Hundred Fifty Thousand Dollars ($150,000).  BPWCP has made demands
15   for payment of this sum on Sayed Faquiryan, Nazim Faquiryan, and Maghul
16   Faquiryan, who have, to date, failed to make these payments.  As such, Sayed
17   Faquiryan and Nazim Faquiryan are in breach of the obligations under the  Loan
18   Guaranties.   Moreover, Sayed Faquiryan and Nazim Faquiryan are liable for
19   liquidated damages owed to BPWCP pursuant to the Mini Market Loan Agreement at
20   the time of the occurrence of an Event of Default and according to proof.  Nazim
21   Faquiryan, Sayed Faquiryan, and Maghul Faquiryan have breached the Loan
22   Guaranties.

23   93.    As a result of the breaches of the Loan Guaranties, BPWCP has
24   been damaged in an amount of not less than $150,000 plus interest.

25   94.    In addition, the Loan Guaranties provide that Nazim Faquiryan,
26   Sayed Faquiryan, and Maghul Faquiryan will reimburse BPWCP on demand for all
27   expenses, including reasonable attorneys' fees incurred by BPWCP in collecting or
28   enforcing the Loan Guaranties, together with interest thereon. [See Article 7 of the

30

Loan Guaranties, Exhibit J.]  It has become necessary for BPWCP to engage the law firm of Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP to bring this action, and BPWCP is entitled to further and additional sums for reasonable attorneys' fees herein.

## NINTH CLAIM FOR RELIEF

### (Unified Judicial Foreclosure)

### (By Plaintiff BPWCP Against STTN Enterprises, Inc., and AVA Global Enterprise, LLC.)

95.    The allegations of paragraphs 1 through 94 above are incorporated herein by reference as though fully set forth herein.

96.    To secure, in part, Defendants' obligations under the Store Loan Agreement (Exhibit D), Promissory Note (Exhibit H), and Loan Guaranties (Exhibit I), and as part of the same transaction, AVA Global, as the owner of the Real Property, executed the Deed of Trust dated March 2, 2007 and recorded on March 9, 2007, which irrevocably granted BPWCP the power of sale of all of ABA Global's right, title and interest in the Real Property.  A true and correct copy of the Deed of Trust is attached hereto as Exhibit F, and is incorporated herein as though fully set forth at length.  AVA Global, BPWCP and STTN also entered into a "Consent to Encumbrance of Tenant's Interest" dated March 2,2 007 and recorded on March 9, 2007 ("Consent to Encumbrance").  The Consent to Encumbrance created a leasehold mortgage encumbering STTN's leasehold estate in the Lease and Real Property ("Leasehold Mortgage").  A true and correct copy of the Consent to Encumbrance is attached hereto as Exhibit G, and is incorporated herein as though fully set forth at length.  In addition, STTN executed a Promissory Note evidencing the Store Loan.  A true and correct copy of the executed Promissory Note is attached hereto as Exhibit H and is incorporated herein as though fully set forth at length.

**FIRST AMENDED COMPLAINT**

97.    In addition, Defendants made, executed and delivered to BPWCP, as beneficiary, a UCC-1 (Exhibit I), by the terms of which Defendants conveyed a security interest in the personal property located on or affixed to the Real Property or the Improvements thereon for the benefit of BPWCP, as beneficiary. The UCC-1 was filed on May 7, 2007 with the California Secretary of State.

98.    BPWCP is now, and at all times material to this action was, the lawful beneficiary of the Promissory Note, the holder of the beneficial interest under the Deed of Trust, and the holder of the beneficial interest under the UCC-1.

99.    Excel National Bank, has, or claims to have, some interest in the Real Property or some part of it by reason of a senior lien.

100.    The Store Loan Agreement provides that Defendants must repay the outstanding balance of the loan in full to BPWCP within 30 days of the occurrence of an "Event of Default." [See Store Loan Agreement, ¶ 4, Exhibit D.] The termination of the franchise relationship between STTN and BPWCP on September 6, 2007 constituted such a defined "Event of Default." [See Store Loan Agreement, § 4.5.]

101.    The Promissory Note provides that, if a default or "Event of Default" (as defined in the Store Loan Agreement, Exhibit D) occurs, then the Note "shall become immediately due and payable without notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character." [See Promissory Note, ¶ 9, Exhibit H.]

102.    The Loan Guaranties provide that, if the Defendants default in the full and timely payment of any installment due under the Loan Agreement, the entire amounts owed to BPWCP will become immediately payable and due upon demand by BPWCP. [See Loan Guaranties, ¶ 6, Exhibit J.).

103.    BPWCP has fully performed under the Loan Obligation Agreements. On or about September 6, 2007 and September 12, 2007, BPWCP made a demand upon Defendants for the payment of these amounts due on October 6, 2007,

32

1  but Defendants have wholly failed, neglected, and refused to make those payments.
2  [See Exhibits M and O.]

3      104.  As a result of such failure and default under Store Loan
4  Agreement, Promissory Note, and the Loan Guaranties by Defendants, BPWCP has
5  exercised its right to declare the entire sum due from Defendants immediately due and
6  payable.  The total amount now due under the Store Loan Agreement, Promissory
7  Notes, and Loan Guaranties consists of the principal sum of at least One Hundred and
8  Fifty Thousand Dollars ($150,000), excluding interest and attorneys' fees with respect
9  thereto.

10      105.  Furthermore, by the provisions of the Loan Guaranties (Exhibit J;
11  Paragraph 1), the Store Loan Agreement (Exhibit D), and the Secured Promissory
12  Note (Exhibit H), Defendants agreed that, if any action were initiated to enforce the
13  Loan Guaranties or Loan Agreement, Defendants would pay the sum fixed by the
14  Court as BPWCP's attorneys' fees and court costs, and that these charges would also
15  be secured by the Deed of Trust recorded against the Real Property and by the UCC-1
16  filed against the personal property located on the Real Property.  Because of the
17  defaults by the Defendants, it has become necessary for BPWCP to employ Weston
18  Benshoof Rochefort Rubalcava & MacCuish, LLP to commence and prosecute this
19  foreclosure action.  The reasonable value of services of counsel in this action should
20  be determined by the Court at the time of trial.  As a result of Defendants' default,
21  BPWCP is entitled to enforce the Store Loan Agreement, Promissory Note and Loan
22  Guaranties by, among other things, an unified judicial foreclosure of the Deed of Trust
23  as to all of the Defendants' rights in the Real Property, and of the UCC-1 as to all of
24  the Defendants' rights in the personal property located on the Real Property, through
25  public sale thereof by the proper judicial officer for proceeds up to $150,000 plus
26  interest and attorneys' fees.

27      106.  BPWCP may hereafter be required to expend additional sums to
28  protect its security in the Real Property described in the Deed of Trust and its security

33

**FIRST AMENDED COMPLAINT**

in the personal property located on the Real Property described in the UCC-1. In the Deed of Trust and the UCC-1, Defendants agreed to pay all such sums expended by BPWCP. BPWCP will amend this First Amended Complaint to allege the nature and amounts of such sums if BPWCP is required to make such additional expenditures.

## TENTH CLAIM FOR RELIEF

### (Trademark, Trade Name, and Service Mark Infringement and Dilution)

### (By Plaintiffs BPWCP and ARCO Against All Defendants)

107. The allegations of paragraphs 1 through 106 above are incorporated herein by reference as though fully set forth herein.

108. The Protected Marks have become famous and distinctive throughout the Western United Stations as a result of BPWCP's and ARCO's continuous and exclusive use of them in connection with ARCO-branded motor fuel stations and am/pm mini market convenience stores. Moreover, BPWCP and ARCO have taken reasonable steps to preserve the integrity and image of its Protected Marks.

109. Defendants have intentionally used and continue to intentionally use the Protected Marks in connection with the promotion, distribution and sale of motor fuels and mini market convenience store products and services. However, Defendants are no longer BPWCP franchisees and the Station is no longer an ARCO-branded gasoline station or am/pm mini market. Defendants' use of the Protected Marks is without permission, authority, or consent of BPWCP or ARCO.

110. Defendants' use of the Protected Marks is likely to confuse, mislead, or deceive customers, purchasers and members of the general public as to the origin, source, sponsorship or affiliation of Defendants' products and is likely to cause such people to erroneously believe that Defendants' motor fuels and mini market convenience store products and services have been manufactured, authorized, sponsored, approved, or licensed by BPWCP or ARCO, or that Defendants are in some way affiliated with BPWCP or ARCO. Defendants' acts constitute false or

34

misleading descriptions and representations, false advertising and false designations of the origin and/or sponsorship of Defendants' goods, and constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a) and pursuant to common law trademark principles.

111.    Defendants' intentional use and intended use of the Protected Marks in commerce has led to the dilution of the distinctive quality of the Protected Marks including, but not limited to, the blurring and tarnishing thereof, in violation of 15 U.S.C. § 1125(c).   Defendants' actions have lessened or have the tendency to lessen the capacity of consumers to distinguish the goods and services of BPWCP or ARCO.

112.    Defendants have committed the acts herein complained of with knowledge that such unauthorized use to cause confusion, or to cause mistake, or deceive, and is intentionally fraudulent, malicious, willful, and wanton.   Moreover, Defendants intentionally and willfully traded upon the Protected Marks and BPWCP's and ARCO's renowned reputation and goodwill, and willfully sought to dilute the famous ARCO and am/pm names.   Defendants' conduct is intentionally fraudulent, malicious, willful, and wanton.

113.    After the franchise termination on September 6, 2007, Defendants continued to promote, distribute, and sell motor fuels and mini market convenience store products and services.   However, Defendants had actual or constructive notice that their continued use of the Protected Marks violated various registered trademarks. Furthermore, letters dated September 12, 2007 and September 13, 2007 notified Defendants that their actions constituted trademark violations.   [See Exhibit O and Exhibit Q.]   The letters also requested that Defendants immediately cease and desist from using the Protected Marks.   To date, Defendants continue to use the Protected Marks without authorization.

114.    As a proximate result of advantage accruing to Defendants' business from BPWCP's and ARCO's nationwide advertising, sales, and consumer

**FIRST AMENDED COMPLAINT**

recognition, and as a proximate result of confusion and/or deception caused by Defendants' wrongful acts, as hereinabove alleged, Defendants have made a substantial profit in an amount to be proven at trial. In addition, BPWCP and ARCO have been deprived of substantial sales of its goods and services as a result of Defendants' acts and have been deprived of the value of the Protected Marks as a commercial asset in amounts to be proven at trial.

115. As a direct and proximate result of Defendants' conduct, BPWCP and ARCO have suffered irreparable harm to its valuable Protected Marks. Unless Defendants are restrained from further infringement of the Protected Marks, BPWCP and ARCO will continue to be irreparably harmed.

116. BPWCP and ARCO have no adequate remedy at law to compensate it for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue.

117. As a direct and proximate result of Defendants' conduct, BPWCP and ARCO are entitled to the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants from their infringing and diluting the use of the Protected Marks.

118. BPWCP and ARCO seek treble damages, treble Defendants' profits, costs and fees, and prejudgment interest, as well as an order of destruction of all infringing products and as provided in 15 U.S.C. §§ 1117 and 1118.

## ELEVENTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

### (By Plaintiffs BPWCP and ARCO Against All Defendants)

119. The allegations of paragraphs 1 through 118 above are incorporated herein by reference as though fully set forth herein.

120. Defendants' aforementioned use and intended use of the Protected Marks are likely to cause confusion, or to cause mistake or to deceive as to the origin

36

1  or affiliation of the motor fuels and mini market convenience store products and
2  services sold and provided by the Defendants.

3       121.  As a direct and proximate cause of Defendants' conduct, BPWCP
4  and ARCO have suffered irreparable harm to the valuable Protected Marks.  Unless
5  Defendants are restrained from further infringement of the Protected Marks, BPWCP
6  and ARCO will continue to be irreparably harmed.

7       122.  BPWCP and ARCO have no adequate remedy at law to
8  compensate it for the continued and irreparable harm it will suffer if Defendants' acts
9  are allowed to continue.

10       123.  As a direct and proximate result of Defendants' conduct, BPWCP
11  and ARCO are entitled to the equitable remedy of an accounting for, and a
12  disgorgement of, all revenues and/or profits wrongfully derived by Defendants from
13  their infringing and diluting use of the Protective Marks.

14

15  **TWELFTH CLAIM FOR RELIEF**
16  **(Trademark Infringement Under**
17  **California *Business & Professions Code* § 14320 and § 14330)**
18  **(By Plaintiffs BPWCP and ARCO Against all Defendants)**

19       124.  The allegations of paragraphs 1 through 123 above are
20  incorporated herein by reference as though fully set forth herein.

21       125.  Defendants' aforementioned use and intended use of the Protected
22  Marks is likely to cause confusion, or to cause mistake or to deceive as to the origin or
23  affiliation of the motor fuel and mini market convenience store products and services
24  sold and provided by Defendants.  Furthermore, Defendants' aforementioned use and
25  intended use of the Protected Marks is likely to cause injury to the business reputation
26  of BPWCP and ARCO and dilute the distinctive quality of the Protected Marks.

27       126.  As a direct and proximate result of Defendants' conduct, BPWCP
28  and ARCO have suffered irreparable harm to the valuable Protected Marks.  Unless

1056950.2                                              **FIRST AMENDED COMPLAINT**

1  Defendant is restrained from further infringement of the Protected Marks, BPWCP
2  and ARCO will continue to be irreparably harmed.

3       127.  BPWCP and ARCO have no adequate remedy at law to
4  compensate it for the continued and irreparable harm it will suffer if Defendants' acts
5  are allowed to continue.

6       128.  As a direct and proximate result of Defendants' conduct, BPWCP
7  and ARCO are entitled to the equitable remedy of an accounting for, and a
8  disgorgement of, all revenues and/or profits wrongfully derived by Defendants from
9  their infringing and diluting use of the Protected Marks.

10
11                   **THIRTEENTH CLAIM FOR RELIEF**
12         **(Violation of California *Business & Professions Code***
13              § 17200 *et seq.* & § 17500 *et seq.*)
14      **(By Plaintiffs BPWCP and ARCO Against All Defendants)**

15       129.  The allegations of paragraphs 1 through 128 above are
16  incorporated herein by reference as though fully set forth herein.

17       130.  BPWCP and ARCO are bringing this claim on behalf of
18  themselves and on behalf of the general public including all consumers who purchased
19  motor fuel products or convenience store products or services from the Station which
20  currently has products and displays bearing the Protected Marks.

21       131.  As alleged above, Defendants have violated federal and state laws
22  including, but not limited to, Lanham Act Sections, 15 U.S.C. §§ 1125(a), and 1125(c)
23  and California *Business & Professions Code* §§ 14320 and 14330.  Additionally, by
24  selling motor fuel and mini market convenience store products and services under the
25  guise of the Protected Marks, Defendants have violated the following California *Civil*
26  *Code* provisions:

27              (a)    Section 1770(a)(1), by "[p]assing off goods or services as
28                    those of another";

**FIRST AMENDED COMPLAINT**

(b)    Section 1770(a)(2), by "misrepresenting the source, sponsorship, approval or certification of goods or services";

(c)    Section 1770(a)(3), by "[m]isrepresenting the affiliation, connection, or association with, or certification by, another";

(d)    Section 1770(a)(5), by "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, . . . which they do not have"; and

(e)    Section 1770(a)(7), by "[r]epresenting that goods or services are of a particular standard, quality, or grade".

132.   The acts of Defendants, as described in the preceding paragraphs of this Complaint, constitute unlawful and/or unfair business practices in violation of California Unfair Competition Law, California *Business & Professions Code* §§ 17200 *et seq.* and 17500 *et seq.*

133.   Defendants' conduct as alleged herein violates, and threatens to violate consumer protection laws, including trademark laws, and the policy or spirit of such laws, and otherwise threatens or harms competition.

134.   Defendants' conduct as alleged herein is likely to mislead the general public and, consequently, constitutes a fraudulent business act or practice within the meaning of Section 17200 of the California *Business & Professions Code.*

135.   Defendants' act of promoting goods and services being sold at the Station by using the Protected Marks is false and misleading advertising designed to deceive members of the public into believing they are purchasing genuine ARCO or am/pm products and services, when in fact, they are buying non-ARCO-branded motor fuel products or non-am/pm mini market products and services, all in violation of Section 17500 of the California *Business & Professions Code.* These acts are continuing to deceive and threaten to continue deceiving the public.

136.   As a direct and proximate result of Defendants' conduct, BPWCP, ARCO and other members of the public have suffered irreparable harm. Unless

1    Defendants are restrained from the unfair business practices described herein,
2    BPWCP, ARCO and the public will continue to be irreparably harmed.

3        137.    As a direct and proximate result of Defendants' conduct, BPWCP
4    and ARCO are informed and believe that Defendants have acquired excess earnings,
5    profits and benefits from using the Protected Marks. This unjust enrichment continues
6    to accrue as Defendants continue to engage in his unfair competition and unlawful
7    business acts and practices.

8        138.    BPWCP, ARCO and the public have no adequate remedy at law to
9    compensate them for the continued and irreparable harm they will suffer if
10   Defendants' acts are allowed to continue.

11       139.    BPWCP and ARCO seek injunctive relief under California
12   *Business & Professions Code* §§ 17200 *et seq.* and 17500 *et seq.* to remedy the unfair,
13   unlawful and/or fraudulent business practices described herein, in addition to
14   restitution and/or disgorgement of unlawful profits obtained by Defendants from his
15   unlawful, unfair and fraudulent practices as described herein and an order requiring
16   Defendants to cease the unlawful conduct.

17

18                          **PRAYERS FOR RELIEF:**

19       WHEREFORE, BPWCP prays that judgment be entered in its favor as
20   follows:

21   AS TO THE FIRST CLAIM FOR DECLARATORY RELIEF:

22       1.    For a declaration that under the PMPA, BPWCP lawfully
23   terminated STTN's franchise and franchise relationship pertaining to the Station and
24   the other requested findings set forth in that claim; and

25   AS TO THE SECOND CLAIM FOR BREACH OF GASOLINE AGREEMENT:

26       2.    That BPWCP have judgment against STTN Enterprises, Inc. for
27   damages arising out of breach of the Gasoline Agreement, in an amount according to

28

**FIRST AMENDED COMPLAINT**

proof, but not less than One Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents ($126,194.77); and

AS TO THE THIRD CLAIM FOR BREACH OF MINI MARKET AGREEMENT:

3. That BPWCP have judgment against STTN Enterprise, Inc. for damages arising out of breach of the Mini Market Agreement, in an amount according to proof including, but not limited to, liquidated damages as provided in the Agreements in the amount of $235,000.00; and

AS TO THE FOURTH CLAIM FOR BREACH OF FRANCHISE GUARANTIES:

4. For a declaration that Nazim Faquiryan and Sayed Faquiryan, as guarantors, are each liable for the same amounts due to BPWCP by STTN Enterprise, Inc. with respect to the Franchise Agreements and that a deficiency judgment may be ordered against each of them for those sums;

5. For general damages and interest thereon calculated at the applicable statutory rates; and

AS TO THE FIFTH CLAIM FOR GOODS SOLD AND DELIVERED:

6. For the sum of One Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents ($126,194.77);

7. For interest on the sum of One Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents ($126,194.77) as allowed by law;

8. For costs of suit incurred; and

AS TO THE SIXTH CLAIM FOR UNJUST ENRICHMENT:

9. For general damages and interest thereon calculated at the applicable statutory rate; and

**FIRST AMENDED COMPLAINT**

AS TO THE SEVENTH CLAIM FOR BREACH OF CONTRACT – MINI MARKET LOAN AGREEMENT:

    10.    For a judgment in favor of BPWCP and against STTN Enterprises, Inc. for damages arising out of breach of the Store Loan Agreement, in an amount according to proof, but in no event less than $150,000.00, plus interest;

    11.    For reasonable attorneys' fees and costs incurred herein; and

AS TO THE EIGHTH CLAIM FOR BREACH OF MINI MARKET LOAN GUARANTIES:

    12.    For a declaration that Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan, as guarantors, are liable for the same amounts due to BPWCP by STTN Enterprise, Inc. with respect to the Loan Agreement and that a deficiency judgment may be ordered against her for those sums;

    13.    For general damages and interest thereon calculated at the applicable statutory rates;

    14.    For reasonable attorneys' fees and costs incurred herein; and

AS TO THE NINTH CLAIM FOR UNIFIED JUDICIAL FORECLOSURE:

    15.    For a judgment in favor of BPWCP and against STTN, AVA Global, Sayed Faquiryan, Nazim Faquiryan, and Maghul Faquiryan for the sum of $150,000;

    16.    Costs of this action and attorneys' fees that the Court considers reasonable;

    17.    For additional sums, if any, that BPWCP hereafter expends to protect its security interest in the Real Property described in the Deed of Trust, and its security interest in the personal property located on the Real Property described in the UCC-1, together with interest at the legal annual rate, according to proof;

    18.    For a judgment determining that the rights, claims, ownership, liens, titles, and demands of the Defendants are subject, subsequent, and subordinate to BPWCP's Deed of Trust and to BPWCP's UCC-1;

**FIRST AMENDED COMPLAINT**

19.   For an Order that the Deed of Trust (<u>Exhibit F</u>) and the UCC-1 (<u>Exhibit I</u>) be foreclosed upon and that judgment be entered for sale of the Real Property and the personal property located on the Real Property, according to law, by the Sheriff of Orange County or a receiver to be appointed by the Court; that the proceeds of the sale be applied initially to the senior lienholder in the amounts owed thereto; that the next $150,000 of the proceeds of the sale be applied in payment of the amounts due to BPWCP under the Loan Guaranties; and that Defendants, and all persons claiming under them subsequent to the execution of BPWCP's Deed of Trust, as lien claimants, judgment creditors, claimants under a junior deed of trust, purchasers, encumbrancers, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Real Property when time for redemption has elapsed;

20.   For judgment and execution against STTN, AVA Global, Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan for any deficiency that may remain after applying the proceeds of the sale of the Real Property to the senior lienholder, and after applying the proceeds of the sale of the personal property on the Real Property, properly applicable to the satisfaction of the amounts found due by the Court under the prayers applicable to the seventh and eighth causes of action;

21.   For an order permitting BPWCP or any other party to this action to become a purchaser at the foreclosure sale, that the Sheriff or receiver execute a deed to the purchaser of the Real Property at the sale, and that the purchaser be let into possession of the Real Property on production of the Sheriff's or receiver's deed;

<u>AS TO THE TENTH THROUGH THIRTEENTH CLAIMS FOR TRADEMARK VIOLATIONS, ETC.</u>

22.   For an order that Defendants immediately remove all products and materials which bear any of the Protected Marks and cease using of all BPWCP proprietary programs and materials;

43

**FIRST AMENDED COMPLAINT**

23.    For an order permanently enjoining Defendants from using the Protected Marks and proprietary programs and materials in connection with the Station's operation and business;

24.    For an order for an accounting, restitution and/or disgorgement of unlawful profits obtained by Defendants;

25.    For an order for restitution to consumers of all monies paid to Defendants by purchasers of motor fuel and convenience store products and services based upon a mistaken belief that they were ARCO or am/pm branded, manufactured, produced, or provided products or services;

26.    For a judgment in favor of BPWCP and ARCO for all proximately caused damages suffered by BPWCP and ARCO including lost sales and profits, and/or damages determined by disgorgement of Defendant's unlawful profits;

27.    For an award of treble damages in an amount to be proven at trial;

28.    For an award of reasonable costs and attorneys' fees incurred in ARCO's prosecution of this action;

29.    For an award of prejudgment interest; and

30.    Any and all such other relief that the Court deems just and equitable.

## AS TO ALL CAUSES OF ACTION:

31.    That BPWCP recover its costs of suit and reasonable attorneys' fees pursuant to 15 U.S.C. § 2805(d)(3); and

1056950.2                                                                **FIRST AMENDED COMPLAINT**

1       32.   That BPWCP recover such other and further relief as the Court

2  deems appropriate.

3

4  DATED:  October 18, 2007       KURT OSENBAUGH

5                             DEBORAH YOON JONES
SAYAKA KARITANI

6                             **WESTON, BENSHOOF, ROCHEFORT,**
**   RUBALCAVA & MacCUISH LLP**

7

8

9                             Deborah Yoon Jones
Attorneys for Plaintiffs

10                           BP WEST COAST PRODUCTS LLC and
ATLANTIC RICHFIELD COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1056950.2                                     **FIRST AMENDED COMPLAINT**

# DECLARATION OF PERSONAL SERVICE

I am employed in the County of Fresno, State of California, and my business address is Fresno Legal Services, 2115 Kern Street, Suite 250, Fresno, California 93721. I am over the age of eighteen years and not a party to the action in which this service is made.

On October 18, 2007, I served the document(s) described as FIRST AMENDED COMPLAINT FOR: (1) DECLARATORY RELIEF UNDER THE PETROLEUM MARKETING PRACTICES ACT [15 U.S.C. §§ 2801, et seq.]; (2) BREACH OF CONTRACT – GASOLINE AGREEMENT; (3) BREACH OF CONTRACT – MINI MARKET AGREEMENT; (4) BREACH OF FRANCHISE GUARANTIES; (5) COMMON COUNT – GOODS SOLD AND DELIVERED; (6) UNJUST ENRICHMENT; (7) BREACH OF CONTRACT – MINI MARKET LOAN AGREEMENT; (8) BREACH OF MINI MARKET LOAN GUARANTIES; (9) JUDICIAL FORECLOSURE; (10) FEDERAL TRADEMARK, TRADE NAME, AND SERVICE MARK INFRINGEMENT AND DILUTION; (11) COMMON LAW UNFAIR COMPETITION; (12) TRADEMARK INFRINGEMENT UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 14320 AND § 14330; and (13) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 ET SEQ. & 17500 ET SEQ. on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:  SEE ATTACHED SERVICE LIST

[Check one of the following:]

☐  I personally delivered the documents to:
[specify name]: _____

☒  I personally left the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served:

    ☒  with a receptionist or with a person having charge thereof

    ☐  in a conspicuous place in the office between the hours of nine in the morning and five in the afternoon

☐  I personally left the documents at the attorney's residence with some person of not less than 18 years of age

☐  I personally left the documents at the party's residence, between the hours of eight in the morning and six in the evening, with some person of not less than 18 years of age

☐  [State]               I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒  [Federal]     I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 18, 2007, at Los Angeles, California.

_____          _____
[Name – Please Print]                        [Signature]

1

**BP WEST COAST PRODUCTS LLC v. STTN ENTERPRISES, et al.**
**United States District Court, Northern District**

2

**Case No. C07 04808 RS**

3

**SERVICE LIST**

4

John G. Michael, Esq.                          Attorney for Defendants, STTN

5

Baker Manock & Jensen                          ENTERPRISES, INC.; NAZIM
5260 North Palm Avenue                         FAQUIRYAN; and SAYED FAQUIRYAN
Fourth Floor

6

Fresno, CA  93704                              Tel:  (559) 432-5400

7

Fax:  (559) 432-5620

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28