1

**BAKER MANOCK & JENSEN, PC**
A PROFESSIONAL CORPORATION
FIG GARDEN FINANCIAL CENTER
5260 NORTH PALM AVENUE, FOURTH FLOOR
FRESNO, CALIFORNIA 93704-2209
TELEPHONE (559) 432-5400
TELECOPIER (559) 432-5620

2

3

4

5    Attorneys for    All Defendants

6

7

8                UNITED STATES DISTRICT COURT

9    FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

| | |
|---|---|
| 11  BP WEST COAST PRODUCTS, LLC, a | Case No. 5:07-cv-04808 JF |
| Delaware Limited Liability Company; and | |
| 12  ATLANTIC RICHFIELD COMPANY, a | |
| Delaware Corporation, | DEFENDANTS' ANSWER TO FIRST |
| 13 | AMENDED COMPLAINT, |
| Plaintiffs, | AFFIRMATIVE DEFENSES, AND |
| 14 | COUNTERCLAIM |
| v. | |
| 15 | JURY TRIAL DEMANDED |
| STTN ENTERPRISES, INC., a California | |
| 16  Corporation; NAZIM FAQUIRYAN, an | |
| individual; SAYED FAQUIRYAN, an | |
| 17  individual; and MAGHUL FAQUIRYAN, an | |
| individual; and AVA GLOBAL ENTERPRISE, | |
| 18  LLC, a California limited liability company, | |
| 19  Defendants. | |
| 20 | |
| 21  STTN ENTERPRISES, INC., a California | |
| Corporation; NAZIM FAQUIRYAN, an | |
| individual; SAYED FAQUIRYAN, an | |
| 22  individual; and MAGHUL FAQUIRYAN, an | |
| individual; and AVA GLOBAL ENTERPRISE, | |
| 23  LLC, a California limited liability company, | |
| 24  Cross-Complainants, | |
| 25  v. | |
| 26  /// | |
| 27  /// | |
| 28  /// | |

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

BP WEST COAST PRODUCTS, LLC, a )
Delaware Limited Liability Company; and )
ATLANTIC RICHFIELD COMPANY, a )
Delaware Corporation, )
)
                       Cross-Defendants. )
_____ )

        Defendants STTN ENTERPRISES, INC. ("STTN"), a California Corporation,

NAZIM FAQUIRYAN ("NAZIM"), SAYED FAQUIRYAN ("SAYED"), MAGHUL

FAQUIRYAN ("MAGHUL"), and AVA GLOBAL ENTERPRISE, LLC, ("AVA") a California

limited liability company, state for their answer to Plaintiffs' First Amended Complaint as follows:

## SUMMARY OF CLAIMS

        1.      Responding to paragraph 1 of the First Amended Complaint, Defendants

admit only that Plaintiffs seek damages, declaratory and injunctive relief based on Defendants'

alleged breach of franchise agreements, loan agreement, individual guaranties, and trademark

violations.  Defendants deny that they breached any agreement with Plaintiffs, and further deny

that Plaintiffs are entitled to any relief in this action.  Answering further, Defendants deny the rest

and remaining allegations of paragraph 1.

        2.      Responding to paragraph 2 of the First Amended Complaint, Defendants

admit only that BP WEST COAST PRODUCTS, LLC ("BP") terminated the franchise agreements

and allege that such termination was unlawful as more particularly set forth below in Defendants'

counter claims.  Answering further, Defendants specifically deny each and every other claim and

allegation contained in paragraph 2 and allege that any alleged failure to pay for gasoline was

caused, excused and offset by Plaintiffs' prior breaches of the various agreements between the

parties, as more fully set forth below in Defendants' Counter Claims.

        3.      Responding to paragraph 3 of the First Amended Complaint, Defendants

admit that the loan was allegedly secured by real property and fixtures and  specifically deny each

and every other claim and allegation contained therein.

        4.      Responding to paragraph 4 of the First Amended Complaint, Defendants

specifically deny each and every claim and allegation contained therein.

///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

**THE PARTIES**

5.    Responding to paragraph 5 of the First Amended Complaint, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 5 and, on that basis, Defendants deny each and every claim and allegation.

6.    Responding to paragraph 6 of the First Amended Complaint, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 6 and, on that basis, Defendants deny each and every claim and allegation. .

7.    Responding to paragraph 7 of the First Amended Complaint, Defendants admit the allegations contained therein .

8.    Responding to paragraph 8 of the First Amended Complaint, Defendants Nazim Faquiryan and Sayed Faquiryan deny that they are residents of Hollister, California, but admit the remaining allegations contained therein.

9.    Responding to paragraph 9 of the First Amended Complaint, Defendant Maghul Faquiryan denies that she is a resident of Hollister, California, but admits the allegations contained therein.

10.    Responding to paragraph 10 of the First Amended Complaint, Defendants admit the allegations contained therein.

11.    Responding to paragraph 11 of the First Amended Complaint, Defendants specifically deny each and every claim and allegation contained therein.

**JURISDICTION AND VENUE**

12.    Responding to paragraph 12 of the First Amended Complaint, Defendants admit the allegations contained therein.

13.    Responding to paragraph 13 of the First Amended Complaint, Defendants admit the allegations contained therein.

**GENERAL ALLEGATIONS**

**The Franchise Agreements**

14.    Responding to paragraph 14 of the First Amended Complaint, except as to those allegations expressly admitted or denied herein, Defendants are without sufficient facts,

3

1  knowledge or information about the claims and allegations contained in paragraph 14 and, on that

2  basis, Defendants deny each and every claim and allegation.  Defendants admit only that BP

3  distributes ARCO-branded motor fuel in California and offers am/pm mini market convenience

4  store franchises.  Answering further, Defendants state that the franchise agreements are written

5  documents which speak for themselves.

6      15.    Responding to paragraph 15 of the First Amended Complaint, Defendants

7  admit that the franchise relationship is governed by the various written and oral agreements

8  between the parties and that STTN and BP signed the Contract Dealer Gasoline Agreement and an

9  AM/PM Mini Market agreement on July 11, 2006, and that these agreements are written

10  documents that speak for themselves.  Answering further, Defendants specifically deny each and

11  every other remaining allegation and claim contained in paragraph 15.

12      16.    Responding to paragraph 16 of the First Amended Complaint, Defendants

13  admit only that Sayed and Nazim signed the Guaranty Agreement and that this instrument is a

14  written document which speaks for itself.  Answering further, Defendants specifically deny each

15  and every other remaining allegation and claim contained in paragraph 16.

16      17.    Responding to paragraph 17 of the First Amended Complaint, Defendants

17  admit the allegations contained therein.

18      18.    Responding to paragraph 18 of the First Amended Complaint, Defendants

19  admit only that the Franchise Agreements are written documents that speak for themselves and do

20  not contain all of the terms, conditions and representations that exist between these parties.

21  Answering further, Defendants specifically deny each and every other remaining allegation and

22  claim contained in paragraph 18.

23                              **Loan Agreements**

24      19.    Responding to paragraph 19 of the First Amended Complaint, Defendants

25  admit that the Franchise Agreements require that STTN complete a remodel within nine months of

26  the commencement of the franchise relationship and that the Franchise Agreements are written

27  documents that speak for themselves.  Answering further, Defendants specifically deny each and

28  every other remaining allegation and claim contained in paragraph 19.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

20.    Responding to paragraph 20 of the First Amended Complaint, Defendants admit a Commitment Letter, prior Loan Agreements and the February 12, 2007 Loan Agreements, as well as other written and oral agreements, were entered into between STTN and Plaintiff BPWCP and that the written agreements are written documents that speak for themselves. Defendants further admit  that BPWCP agreed to loan $475,000 to STTN.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 20.

**The am/pm Mini Market Loan Agreement**

21.    Responding to paragraph 21 of the First Amended Complaint, Defendants admit only that the Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 21.

22.    Responding to paragraph 22 of the First Amended Complaint, Defendants admit only that the Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 22.

23.    Responding to paragraph 23 of the First Amended Complaint, Defendants admit only that BP and STTN signed a Disbursement Agreement and said Disbursement Agreement is a written document that speaks for itself.  Defendants admit only that the Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 23.

24.    Responding to paragraph 24 of the First Amended Complaint, Defendants admit only that Nazim and Sayed signed various loan paperwork on behalf of STTN, said paperwork consists of various written documents that speak for themselves and that the loan was allegedly secured by real property.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 24.

25.    Responding to paragraph 25 of the First Amended Complaint, Defendants admit that the loan was allegedly secured by a second priority security interest.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

26. Responding to paragraph 26 of the First Amended Complaint, Defendants state only that the UCC-1 filing statement is a written document that speaks for itself. Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 26.

27. Responding to paragraph 27 of the First Amended Complaint, Defendants admit that after numerous delays and breaches by BPWCP of the agreements between the parties, the $150,000 was funded. Except as expressly admitted herein, Defendants specifically deny each and every allegation and claim contained therein.

**The Gasoline Loan Agreement**

28. Responding to paragraph 28 of the First Amended Complaint, Defendants admit only that BP was to disburse $250,000 to STTN to refurbish the gasoline station and store located at 631 San Felipe Road, Hollister, California (hereinafter "the station"). Additionally, Defendants admit only that STTN and BP signed a Gasoline Loan Agreement and that this Agreement is a written document that speaks for itself. Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 28.

**The Loan Guaranties**

29. Responding to paragraph 29 of the First Amended Complaint, Defendants admit only that Guaranty Agreements are written documents that speak for themselves. Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 29.

**STTN Breached the Franchise Agreements**

30. Responding to paragraph 30 of the First Amended Complaint, Defendants admit only that the Franchise Agreement is a written document that speaks for itself. Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 30 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

///

6

31.    Responding to paragraph 31 of the First Amended Complaint, Defendants admit only that BP unilaterally forced STTN to pay for all gasoline deliveries on a cash basis in late January 2007.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 31.

32.    Responding to paragraph 32 of the First Amended Complaint, except as expressly admitted or denied herein, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 32 and, on that basis, deny each and every claim and allegation therein.  Answering further, Defendants admit only that the default notices are written documents that speak for themselves and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims..

33.    Responding to paragraph 33 of the First Amended Complaint, Defendants admit only that the instrument referred to as Exhibit L is a written document that speaks for itself. Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 33.

34.    Responding to paragraph 34 of the First Amended Complaint, Defendants specifically deny each and every claim and allegation contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims..

35.    Responding to paragraph 35 of the First Amended Complaint, Defendants specifically deny each and every claim and allegation contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims..

///

///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

**BPWCP Terminates the STTN Franchise**

1

2      36.     Responding to paragraph 36 of the First Amended Complaint, Defendants

3  admit only that BP sent notice of termination to STTN on September 6, 2007 and that the

4  termination was stated to be effective on September 6, 2007.  Answering further, Defendants deny

5  each and every other claim and allegation contained in paragraph 36 and affirmatively allege that

6  any alleged defaults on their part were directly and proximately caused by the conduct and prior

7  breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants'

8  Counter Claims..

9      37.     Responding to paragraph 37, including subsections (a) through (e), of the

10  First Amended Complaint, Defendants admit only that the Franchise Agreements are written

11  documents that speak for themselves.  Answering further, Defendants specifically deny each and

12  every other remaining allegation and claim contained in paragraph 37 and affirmatively allege that

13  any alleged defaults on their part were directly and proximately caused by the conduct and prior

14  breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants'

15  Counter Claims..

16      38.     Responding to paragraph 38, including subsections (a) through (d), of the

17  First Amended Complaint, Defendants admit only that the Petroleum Marketing Practices Act, 28

18  U.S.C. § 2801, *et seq.*, is a written statute that speaks for itself.  Answering further, Defendants

19  specifically deny each and every other remaining allegation and claim contained in paragraph 38

20  and affirmatively allege that any alleged defaults on their part were directly and proximately

21  caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more

22  fully below in Defendants' Counter Claims.

23      39.     Responding to paragraph 39 of the First Amended Complaint, Defendants

24  specifically deny each and every allegation and claim contained therein and affirmatively allege

25  that any alleged defaults on their part were directly and proximately caused by the conduct and

26  prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants'

27  Counter Claims.

28  ///

8

40.      Responding to paragraph 40 of the First Amended Complaint, Defendants admit only that the Franchise Agreements are written documents that speak for themselves. Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 40 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

41.      Responding to paragraph 41, including subsections (a) through (b), of the First Amended Complaint, Defendants admit only that BP's grounds for termination of the Franchise Agreement are contained in its notice of termination and that the notice of termination is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 41 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

## STTN Default on the Store Loan Agreement

42.      Responding to paragraph 42, including subsections (a) through (d), of the First Amended Complaint, Defendants admit only that the Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 42 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

43.      Responding to paragraph 43 of the First Amended Complaint, Defendants admit only that the termination notice is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 43 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

9

44.    Responding to paragraph 44 of the First Amended Complaint, Defendants specifically deny each and every claim and allegation contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

**Although BPWCP Terminated the Franchise, Defendants Continue to Display and Use Trademarks and Proprietary Materials**

45.    Responding to paragraph 45, including subsections (a) through (j), of the First Amended Complaint, Defendants specifically deny each and every claim and allegation contained therein.

46.    Responding to paragraph 46 of the First Amended Complaint, Defendants specifically deny each and every claim and allegation contained therein.

47.    Responding to paragraph 47, including subsections (a) through (d), of the First Amended Complaint, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 47 and, on that basis, deny each and every claim and allegation therein.  Answering further, Defendants admit only that the documents collectively identified as Exhibit N are written documents that speak for themselves.

48.    Responding to paragraph 48 of the First Amended Complaint, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 48 and, on that basis, deny each and every claim and allegation therein.  Answering further, Defendants admit only that the documents collectively identified as Exhibit N are written documents that speak for themselves.

49.    Responding to paragraph 49, including subsections (a) through (g), of the First Amended Complaint, Defendants specifically deny each and every claim and allegation contained therein.

50.    Responding to paragraph 50 of the First Amended Complaint, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 50 and, on that basis, deny each and every claim and allegation therein.

51.     Responding to paragraph 51 of the First Amended Complaint, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 51 and, on that basis, deny each and every claim and allegation therein.

52.     Responding to paragraph 52 of the First Amended Complaint, Defendants admit only that BP allegedly and wrongfully terminated the franchise on September 6, 2007, that the station displayed Plaintiffs' alleged trademarks on September 11, 2007, and that Plaintiffs removed all trademarks on September 17 and 18, 2007.  Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 52.

53.     Responding to paragraph 53 of the First Amended Complaint, Defendants admit only that the station is no longer affiliated with Plaintiffs.  Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 53.

54.     Responding to paragraph 54 of the First Amended Complaint, Defendants admit only that the letter identified as Exhibit O is a written document that speaks for itself. Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 54.

55.     Responding to paragraph 55 of the First Amended Complaint, Defendants admit only that the letter identified as Exhibit P is a written document that speaks for itself. Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 55

56.     Responding to paragraph 56 of the First Amended Complaint, Defendants admit only that the letter identified as Exhibit Q is a written document that speaks for itself. Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 56

57.     Responding to paragraph 57 of the First Amended Complaint, Defendants admit only that Plaintiffs removed all protected marks from the Station on September 17 and 18, 2007.  Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 57.

///

11

1          58.      Responding to paragraph 58 of the First Amended Complaint, Defendants

2 specifically deny each and every claim and allegation contained therein.

### FIRST CLAIM FOR RELIEF

**(Declaratory Relief Under The Petroleum Marketing Practices Act)**

**(By Plaintiff BPWCP Against STTN Enterprises, Inc.)**

6          59.      Responding to paragraph 59 of the First Amended Complaint, Defendants

7 incorporate by this reference their responses to the allegations in paragraphs 1 through 58 of the

8 First Amended Complaint as though fully set forth herein.

9          60.      Responding to paragraph 60, including subsections (a) through (d), of the

10 First Amended Complaint, Defendants admit only that BP adopts the assertions contained in

11 subparagraphs (a) through (d), but Defendants otherwise specifically deny the propriety of said

12 assertions. Answering further, Defendants specifically deny each and every other remaining claim

13 and allegation contained in paragraph 60.

14          61.      Responding to paragraph 61 of the First Amended Complaint, Defendants

15 admit the allegations contained therein.

16          62.      Responding to paragraph 62 of the First Amended Complaint, Defendants

17 admit the allegations contained therein.

18          63.      Responding to paragraph 63, including subsections (a) through (i) of the

19 First Amended Complaint, Defendants specifically deny each and every claim and allegation

20 contained therein.

### SECOND CLAIM FOR RELIEF

**(Breach of Gasoline Agreement)**

**(By Plaintiff BPWCP Against STTN Enterprises, Inc.)**

24          64.      Responding to paragraph 64 of the First Amended Complaint, Defendants

25 incorporate by this reference their responses to the allegations in paragraphs 1 through 63 of the

26 First Amended Complaint as though fully set forth herein.

27          65.      Responding to paragraph 65 of the First Amended Complaint, Defendants

28 specifically deny each and every allegation contained therein.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

66.    Responding to paragraph 66, including subsections (a) through (b) of the First Amended Complaint, Defendants specifically deny each and every allegation contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

67.    Responding to paragraph 67 of the First Amended Complaint, Defendants deny each and every allegation contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

### THIRD CLAIM FOR RELIEF

**(Breach of Mini Market Agreement)**

**(By Plaintiff BPWCP Against STTN Enterprises, Inc.)**

68.    Responding to paragraph 68 of the First Amended Complaint, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 67 of the First Amended Complaint as though fully set forth herein.

69.    Responding to paragraph 69 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

70.    Responding to paragraph 70 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

71.    Responding to paragraph 71 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

72.    Responding to paragraph 72 of the First Amended Complaint, Defendants admit only that the Mini Market Agreement is a written document that speaks for itself. Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 72 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

## FOURTH CLAIM FOR RELIEF

### (Breach of Franchise Guaranties)

### (By Plaintiff BPWCP Against Nazim Faquiryan and Sayed Faquiryan)

73.    Responding to paragraph 73 of the First Amended Complaint, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 72 of the First Amended Complaint as though fully set forth herein.

74.    Responding to paragraph 74 of the First Amended Complaint, Defendants admit only that the Franchise Guaranties are written documents that speak for themselves. Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 74.

75.    Responding to paragraph 75 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

## FIFTH CLAIM FOR RELIEF

### (Common Count: Goods Sold and Delivered)

### (By Plaintiff BPWCP Against STTN Enterprises, Inc., Nazim Faquiryan, and Sayed Faquiryan)

76.    Responding to paragraph 76 of the First Amended Complaint, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 75 of the First Amended Complaint as though fully set forth herein.

14

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

77.     Responding to paragraph 77 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

78.     Responding to paragraph 78 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

79.     Responding to paragraph 79 of the First Amended Complaint, Defendant specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment)

### (By Plaintiff BPWCP Against STTN Enterprises, Inc., Nazim Faquiryan and Sayed Faquiryan)

80.     Responding to paragraph 80 of the First Amended Complaint, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 79 of the First Amended Complaint as though fully set forth herein.

81.     Responding to paragraph 81 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

82.     Responding to paragraph 82 of the First Amended Complaint, Defendants admit only that the document identified as Exhibit L is a written document that speaks for itself. Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 82 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

83.     Responding to paragraph 83 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

84.     Responding to paragraph 84 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

### SEVENTH CLAIM FOR RELIEF

### (Breach of Store Loan Agreement)

### (By Plaintiff BPWCP Against STTN Enterprises, Inc., Nazim Faquiryan, and Sayed Faquiryan)

85.     Responding to paragraph 85 of the First Amended Complaint, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 84 of the First Amended Complaint as though fully set forth herein.

86.     Responding to paragraph 86 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

87.     Responding to paragraph 87 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

88.     Responding to paragraph 88 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and

///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1   prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants'

2   Counter Claims.

3          89.    Responding to paragraph 89 of the First Amended Complaint, Defendants

4   admit only that the Store Loan Agreement is a written document that speaks for itself.  Answering

5   further, Defendants specifically deny each and every other remaining allegation and claim

6   contained in paragraph 89 and affirmatively allege that any alleged defaults on their part were

7   directly and proximately caused by the conduct and prior breaches of the various agreements by

8   Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

9   ### EIGHTH CLAIM FOR RELIEF

10  **(Breach of Loan Guaranties)**

11  **(By Plaintiff BPWCP Against Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan.)**

12         90.    Responding to paragraph 90 of the First Amended Complaint, Defendants

13  incorporate by this reference their responses to the allegations in paragraphs 1 through 89 of the

14  First Amended Complaint as though fully set forth herein.

15         91.    Responding to paragraph 91 of the First Amended Complaint, Defendants

16  admit only that the Loan Guaranties identified as Exhibit J are written documents that speak for

17  themselves.  Answering further, Defendants deny each and every other remaining allegation and

18  claim contained in paragraph 91 and affirmatively allege that any alleged defaults on their part

19  were directly and proximately caused by the conduct and prior breaches of the various agreements

20  by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

21         92.    Responding to paragraph 92 of the First Amended Complaint, Defendants

22  specifically deny each and every allegation and claim contained therein and affirmatively allege

23  that any alleged defaults on their part were directly and proximately caused by the conduct and

24  prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants'

25  Counter Claims.

26         93.    Responding to paragraph 93 of the First Amended Complaint, Defendants

27  specifically deny each and every allegation and claim contained therein and affirmatively allege

28  that any alleged defaults on their part were directly and proximately caused by the conduct and

1    prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants'

2    Counter Claims.

3            94.    Responding to paragraph 94 of the First Amended Complaint, Defendants

4    admit only that the Loan Guaranties are written documents that speak for themselves.  Answering

5    further, Defendants specifically deny each and every other remaining allegation and claim

6    contained in paragraph 94 and affirmatively allege that any alleged defaults on their part were

7    directly and proximately caused by the conduct and prior breaches of the various agreements by

8    Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

9                          **NINTH CLAIM FOR RELIEF**

10                          **(Unified Judicial Foreclosure)**

11    **(By Plaintiff BPWCP Against STTN Enterprises, Inc., and AVA Global Enterprises, LLC.)**

12            95.    Responding to paragraph 95 of the First Amended Complaint, Defendants

13    incorporate by this reference their responses to the allegations in paragraphs 1 through 94 of the

14    First Amended Complaint as though fully set forth herein.

15            96.    Responding to paragraph 96 of the First Amended Complaint, Defendants

16    admit only that Exhibits D, E, F, G, H, and I are written documents that speak for themselves.

17    Answering further, Defendants specifically deny each and every other remaining allegation and

18    claim contained in paragraph 96 and affirmatively allege that any alleged defaults on their part

19    were directly and proximately caused by the conduct and prior breaches of the various agreements

20    by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

21            97.    Responding to paragraph 97 of the First Amended Complaint, Defendants

22    admit only that Exhibit I is a written document that speaks for itself.  Answering further,

23    Defendants specifically deny each and every other remaining allegation and claim contained in

24    paragraph 97.

25            98.    Responding to paragraph 98 of the First Amended Complaint, Defendants

26    admit only that Exhibit F is a written document that speaks for itself.  Answering further,

27    Defendants specifically deny each and every other remaining allegation and claim contained in

28    paragraph 98.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

99.    Responding to paragraph 99 of the First Amended Complaint, Defendants admit the allegations contained therein.

100.    Responding to paragraph 100 of the First Amended Complaint, Defendants admit only that the Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 100 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

101.    Responding to paragraph 101 of the First Amended Complaint, Defendants admit only that the Promissory Note is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 101 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

102.    Responding to paragraph 102 of the First Amended Complaint, Defendants admit only that the Loan Guaranties are written documents that speak for themselves.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 102 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

103.    Responding to paragraph 103, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

104.    Responding to paragraph 104, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

105.    Responding to paragraph 105 of the First Amended Complaint, Defendants admit only that the Loan Guaranties, Store Loan Agreement, and Promissory Note are written documents that speak for themselves.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 105 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

106.    Responding to paragraph 106, Defendants specifically deny each and every allegation and claim contained therein.

## TENTH CLAIM FOR RELIEF

### (Trademark, Trade Name, and Service Mark Infringement and Dilution)

### (By Plaintiffs BPWCP and ARCO against all Defendants)

107.    Responding to paragraph 107 of the First Amended Complaint, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 106 of the First Amended Complaint as though fully set forth herein.

108.    Responding to paragraph 108, Defendants specifically deny each and every allegation and claim contained therein.

109.    Responding to paragraph 109, Defendants specifically deny each and every allegation and claim contained therein.

110.    Responding to paragraph 110, Defendants specifically deny each and every allegation and claim contained therein.

111.    Responding to paragraph 111, Defendants specifically deny each and every allegation and claim contained therein.

112.    Responding to paragraph 112, Defendants specifically deny each and every allegation and claim contained therein.

113.    Responding to paragraph 113, Defendants admit only that they have continually promoted, distributed, and sold motor fuels and mini market convenience store

///

1   products and services.  Answering further, Defendants specifically deny each and every other

2   remaining allegation and claim contained in paragraph 113.

3           114.   Responding to paragraph 114, Defendants specifically deny each and every

4   allegation and claim contained therein.

5           115.   Responding to paragraph 115, Defendants specifically deny each and every

6   allegation and claim contained therein.

7           116.   Responding to paragraph 116, Defendants specifically deny each and every

8   allegation and claim contained therein.

9           117.   Responding to paragraph 117, Defendants specifically deny each and every

10  allegation and claim contained therein.

11          118.   Responding to paragraph 118, Defendants specifically deny each and every

12  allegation and claim contained therein and further deny that Plaintiffs are entitled to any relief

13  whatsoever.

14                      **ELEVENTH CLAIM FOR RELIEF**

15                      **(Common Law Unfair Competition)**

16            **(By Plaintiffs BPWCP and ARCO Against All Defendants)**

17          119.   Responding to paragraph 119 of the First Amended Complaint, Defendants

18  incorporate by this reference their responses to the allegations in paragraphs 1 through 118 of the

19  First Amended Complaint as though fully set forth herein.

20          120.   Responding to paragraph 120 of the First Amended Complaint, Defendants

21  specifically deny each and every allegation and claim contained therein.

22          121.   Responding to paragraph 121 of the First Amended Complaint, Defendants

23  specifically deny each and every allegation and claim contained therein.

24          122.   Responding to paragraph 122 of the First Amended Complaint, Defendants

25  specifically deny each and every allegation and claim contained therein.

26          123.   Responding to paragraph 123 of the First Amended Complaint, Defendants

27  specifically deny each and every allegation and claim contained therein.

28  ///

**TWELFTH CLAIM FOR RELIEF**

**(Trademark Infringement Under *California Business & Professions Code § 14320 and § 14330*)**

**(By Plaintiffs BPWCP and ARCO Against All Defendants)**

124.    Responding to paragraph 124 of the First Amended Complaint, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 123 of the First Amended Complaint as though fully set forth herein.

125.    Responding to paragraph 125 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

126.    Responding to paragraph 126 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

127.    Responding to paragraph 127 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

128.    Responding to paragraph 128 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

**THIRTEENTH CLAIM FOR RELIEF**

**(Violation of California Business & Professions Code § 17200, et seq. & § 17500, et seq.)**

**(By Plaintiffs BPWCP and ARCO against all Defendants)**

129.    Responding to paragraph 129 of the First Amended Complaint, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 128 of the First Amended Complaint as though fully set forth herein.

130.    Responding to paragraph 130 of the First Amended Complaint, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 130 and, on that basis, deny each and every claim and allegation therein.

131.    Responding to paragraph 131, including subsections (a) through (e) of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

///

132.    Responding to paragraph 132 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

133.    Responding to paragraph 133 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

134.    Responding to paragraph 134 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

135.    Responding to paragraph 135 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

136.    Responding to paragraph 136 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

137.    Responding to paragraph 137 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

138.    Responding to paragraph 138 of the First Amended Complaint, Defendants specifically deny each and every allegation and claim contained therein.

139.    Responding to paragraph 139, Defendants specifically deny each and every allegation and claim contained therein and further deny that Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

As and for separate and distinct affirmative defenses, Defendants aver as follows:

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Cause of Action)

140.    Defendants allege that Plaintiffs' First Amended Complaint, and the causes of action for breach of contract contained therein, fail to state facts sufficient to constitute a cause of action against the Defendants.

### SECOND AFFIRMATIVE DEFENSE

(Performance)

141.    Defendants allege that they have fully performed any contract or agreement that existed between themselves and Plaintiffs.

23

**THIRD AFFIRMATIVE DEFENSE**

(Estoppel)

142.    Defendants allege that Plaintiffs having contributed to the breaches of the contracts alleged in the First Amended Complaint and to the failure of the conditions precedent to any obligation of Defendant under the contracts, if any there be, Plaintiffs are equitably estopped to seek enforcement of the contracts or damages for the alleged breach thereof.

**FOURTH AFFIRMATIVE DEFENSE**

(Unclean Hands)

143.    Defendants allege as a result of the acts and omissions in the matters relevant to this First Amended Complaint, Plaintiffs have unclean hands and are therefore barred from asserting any claims against Defendants.

**FIFTH AFFIRMATIVE DEFENSE**

(Failure of Consideration)

144.    Defendants allege that Plaintiffs are barred from recovering any damages or other relief by reason of the failure of consideration that defeats the effectiveness of the contract between the parties.  The contracts in the First Amended Complaint, if any, are unenforceable with respect to the Defendants for failure of consideration arising from Plaintiffs' failure to perform their part of the agreement.

**SIXTH AFFIRMATIVE DEFENSE**

(Vague, Ambiguous and Uncertain)

145.    Defendants allege that Plaintiffs' First Amended Complaint is vague, ambiguous and uncertain.  Therefore, Defendants reserve the right to amend this Answer in the event any of the allegations presented by Plaintiffs in their First Amended Complaint are subsequently clarified or modified.

**SEVENTH AFFIRMATIVE DEFENSE**

(Failure to Mitigate)

146.    Defendants allege that Plaintiffs failed to take the reasonable and appropriate steps to mitigate the damages claimed in the First Amended Complaint and thus are precluded

1   from recovering those damages which could reasonably have been avoided by the exercise of due

2   care on Plaintiffs' part.

### EIGHTH AFFIRMATIVE DEFENSE

(Statute of Limitations)

147.    Defendants allege that the breaches of contract action against Defendants are barred by the appropriate statute of limitations as set forth in Code of Civil Procedure Section 337.

### NINTH AFFIRMATIVE DEFENSE

(Laches)

148.    Defendants allege that Plaintiffs are barred from seeking recovery based on the equitable doctrine of laches.

### TENTH AFFIRMATIVE DEFENSE

(Waiver)

149.    Defendants allege that Plaintiffs are barred from seeking recovery based on the equitable doctrine of waiver by reason of Plaintiffs' conduct in connection with the matters complained of in the First Amended Complaint.

### ELEVENTH AFFIRMATIVE DEFENSE

(Conduct and/or Omissions by Plaintiffs)

150.    Defendants allege that Plaintiffs' acts, conduct and/or omissions were the proximate cause of Plaintiffs' alleged damages.

### TWELFTH AFFIRMATIVE DEFENSE

(Conduct and/or Omissions by Third Parties)

151.    Defendants allege that in addition to the aforementioned acts, conduct and/or omissions of Plaintiffs, any damages incurred by Plaintiffs were directly and proximately caused and contributed to by the acts, conduct, and/or omissions of third persons and/or entities.

///

///

///

///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1

## THIRTEENTH AFFIRMATIVE DEFENSE

2

(Defendant Justified)

3      152.    Defendants allege that, to the extent it was responsible for the conduct

4  attributed to it by Plaintiffs in the First Amended Complaint, said conduct was privileged, excused

5  and/or justified in light of then existing circumstances.

6

## FOURTEENTH AFFIRMATIVE DEFENSE

7      153    Defendants allege that to the extent that they were displaying protected

8  marks belonging to Plaintiffs, such display being denied, they were specifically authorized to do so

9  by the Contract Dealer Gasoline Agreement.  Paragraph 17.3(c) of the Contract Dealer Gasoline

10  Agreement states that "[f]or a reasonable period following the effective date of [STTN's]

11  termination or renewal and at no charge, BPWCP may keep any BPWCP property still located on

12  the Premises in place while negotiating for its sale or removal."

13

## FIFTEENTH AFFIRMATIVE DEFENSE

14      154.    Defendants allege that the contracts alleged by Plaintiffs to have been

15  breached by Defendants, including Gasoline Loan Agreement, the Store Loan Agreement, and the

16  Disbursement Agreement, are invalid and unenforceable due to Plaintiffs' threat to inflict

17  economic harm onto Defendants.  Defendants signed the contracts under duress and contrary to

18  Defendant's free will in order to avoid the infliction of significant economic harm onto

19  Defendants.

20

## SIXTEENTH AFFIRMATIVE DEFENSE

21      155.    Defendants allege that use of the alleged protected trade and service marks

22  as alleged in Plaintiffs' First Amended Complaint is a use as other than a trade or service mark in

23  that the alleged protected trade and service marks are descriptive and without secondary meaning

24  and are used by the Defendants fairly and in good faith only to describe their goods and services to

25  their customers.

26

## SEVENTEENTH AFFIRMATIVE DEFENSE

27      156.    Defendants allege that Plaintiffs are not entitled to exclusive use in

28  commerce of the alleged trade or service marks because the trade or service marks are functional.

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

## EIGHTEENTH AFFIRMATIVE DEFENSE

157.    Defendants allege that Plaintiffs consented to Defendants use of the trade and service marks described in Plaintiffs' First Amended Complaint from July, 11, 2006 until October 17, 2007 and therefore, Plaintiffs' action is barred by the equitable principals of laches, estoppel, and acquiescence.

## NINTEENTH AFFIRMATIVE DEFENSE

(Excuse by Plaintiff's Prior Breach)

158.    Defendants allege that their performance of the contracts was excused by Plaintiffs' prior breach.

## ELEVENTH AFFIRMATIVE DEFENSE

(Prevention of Performance)

159.  Defendants allege that they performed all of their contractual obligations until September 6, 2007.  Since September 6, 2007, and to the extent that Defendants have failed to perform their contractual obligations under the contracts they had with Plaintiffs, they have done so because Plaintiffs have barred Defendants from purchasing gasoline in direct contravention and breach of said contracts.  At all times mentioned Defendants were and are ready, willing, and able to perform their contractual duties, but Plaintiff has prevented and continues to prevent Defendants' performance.

WHEREFORE, these answering Defendants pray for judgment as follows:

1.    That Plaintiff take nothing against these answering Defendants by way of its Complaints;

2.    For reasonable attorneys' fees and costs as provided by law; and,

3.    For such other and further relief as the court may deem just and proper.

## COUNTERCLAIM

## JURISDICTIONAL STATEMENT

160.    This Court has jurisdiction over Defendants Counterclaims as stated herein pursuant to Federal Rule of Civil Procedure 13(a) since the counterclaims against Plaintiffs arise out of the same transactions and occurrences that are the subject matter of Plaintiffs' First

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    Amended Complaint and these counterclaims do not require the presence of third parties currently

2    absent from the action for proper adjudication.

3                                    **STATEMENT OF FACTS**

4            161.    Prior to July 2006, STTN, operated a Chevron-branded motor fuel station at

5    631 San Felipe Road, in Hollister, California (the "Station").  STTN ENTERPRISES, INC.

6    ("STTN") profitably operated the station and enjoyed a good business relationship with Chevron.

7            162.    At some point before May 2006, STTN was approached by employees of BP

8    WEST COAST PRODUCTS, LLC ("BP"), and/or ATLANTIC RICHFIELD COMPANY

9    ("ARCO") (collectively referred to herein as "Plaintiffs").  Plaintiffs asked to purchase the Station

10   from STTN or for STTN to brand the Station as an ARCO.

11           163.    STTN rejected the purchase offer and agreed to re-brand the Station into an

12   ARCO-branded station.  To effectuate the transition to an ARCO-branded motor fuel station, BP

13   offered STTN a self-amortized loan package in the amount of $475,000.  In essence, so long as

14   STTN sold a specified amount of product annually, a portion of the debt would deemed repaid

15   each year by BP.

16           164.    On May 25, 2006, BP provided a Commitment Letter to STTN in the sum of

17   $475,000.

18           165.    On July 11, 2006, BP and STTN entered into two franchise agreements.  The

19   purpose of these agreements was for STTN to sell ARCO-branded motor fuel as well as to operate

20   an AM/PM convenience store at the Station.  The agreements required STTN to be operating as an

21   ARCO-branded motor fuel station by April 11, 2007.  The parties orally agreed that the Station

22   would be operated as a "gas only" station starting October 10, 2006, until the Mini Market was

23   completed.

24           166.    In order to comply with the construction schedule promulgated by BP, STTN

25   was forced to begin reconstruction on the Station immediately.  BP worked closely with STTN

26   throughout the construction phase by approving site plans, contractors, architects, and informing

27   STTN of deficiencies.  BP also knew that the Station was a re-brand, not a new, ground-up facility.

28   ///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

167.    STTN worked diligently to satisfy all of BP's requirements and spent over $790,000 of its own funds to remodel the Station.

168.    BP did not finalize its loan agreements until February 12, 2007, long after STTN was required to begin construction and had, in fact begun construction with the knowledge and encouragement of BP.  The loan was to be disbursed according to the various schedules accompanying the loan documents, including the proposed budget and the disbursement schedule.

169.    Despite its close involvement with the process, and despite having made a commitment to assist STTN in the construction of the Station, BP consistently refused to provide any loan funds to STTN.

170.    As a result of BP's breach of its obligations under the loan agreements, while at the same time requiring STTN to continue construction and purchase motor fuel, STTN was unable to pay some of its contractors on time.  Mechanics liens were then filed by certain contractors.  However, as of July 7, 2007, STTN completely paid off all liens on the Station.  Still, BP refused to comply with the loan agreements.

171.    During this same time period, because of STTN's working capital was tied up in construction costs awaiting reimbursement from BP, STTN fell behind in its payments for gasoline delivery and was put on a cash-on-delivery basis.

172.    BP eventually paid $150,000.00 of the loan in July 2007. However, the remaining $250,000.00 of the loan funds then due were not disbursed by BP.

173.    STTN demanded disbursement of said funds to pay off the creditors of the project and replenish its working capital, but BP refused, claiming that it lacked all of the required documents.

174.    STTN asked for clarification as to which documents were missing, and BP simply refused to inform STTN of the missing documents.

175.    At the same time, BP demanded that STTN continue to purchase gasoline.

176.    Being forced to use its operating capital to satisfy the construction debts due to BP's refusal to disburse the loan, STTN asked that BP enter into an escrow agreement whereby

///

29

STTN would place the remaining money due for fuel into escrow and BP would similarly place the loan funds in escrow.

177.    BP initially agreed to the escrow request, but later failed to place the loan funds in escrow without explanation.

178.    Even as of August 31, 2007, BP offered STTN reassurances that all the information needed to fund the loans was in BP's possession and the funds would be disbursed soon.

179.    On August 31, 2007, BP sent seven notices of default to STTN, each alleging that STTN failed to offer any grade of motor fuel for sale to the public on a specified date.

180.    Despite BP's contention, STTN sold 91 octane and diesel gasoline during the relevant dates cited by BP. Moreover, STTN could not sell 87 and 89 octane gasoline for part of the relevant period because BP refused to deliver any motor fuel to the Station, despite STTN obtaining and offering a cashier's check to tender upon delivery.

181.    On September 6, 2007, BP terminated the franchise agreement.  In so doing, it cited (1) STTN's failure to offer any grade of motor fuel to the motoring public for a period of seven consecutive days and (2) STTN's failure to pay all sums when due.  Rather than give the 90 days notice that is typically required under the PMPA, and without any factual basis therefor, BP cited risk of confusion to the public and safety risks as justifying an immediate termination of the franchise agreement.

182.    As such, the franchise relationship was allegedly terminated on September 6, 2007.

183.    On September 17 and 18, 2007, BP sent multiple agents to "de-brand" the Station.

184.    As part of the de-branding process, BP removed, destroyed, re-painted, or otherwise obliterated any registered trademark or proprietary information belonging to BP.

185.    STTN, while maintaining that the franchise agreement was terminated illegally, cooperated with BP during the de-branding process.

///

30

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

## COUNTER CLAIM I – WRONGFUL TERMINATION/VIOLATION OF PMPA

### (By STTN Against BP)

186.    The allegations and answers set forth in Paragraphs 1 through 185 above are incorporated herein by reference as though fully set forth herein.

187.    Pursuant to the PMPA, no franchise agreement can be terminated unless specific notification requirements are satisfied and such termination is based upon a specific ground enumerated in the PMPA.  15 U.S.C. § 2802(a).

188.    The burden shifting scheme of the PMPA mandates that STTN bear the burden of establishing the termination of the franchise agreement, while BP bears the burden of establishing that said termination was lawful under the PMPA.  15 U.S.C. § 2805(c).

189.    On or about September 6, 2007, BP terminated the franchise relationship with STTN.

190.    Contrary to the statements made in BP's Notice of Termination, STTN did not fail to provide gasoline products for sale over a period lasting at least seven consecutive days, nor did it fail to timely pay BP for gasoline products in a timely manner, as defined by the PMPA. Indeed, STTN continued to purchase fuel despite BP's withholding of funds clearly owed to STTN, all while knowing that STTN needed the funds to continue to comply with the franchise agreement.

191.    Similarly, BP's Notice of Termination falsely alleges that it would unreasonable for BP "to furnish notification of 90 days prior to the date of termination because of the risk of confusion to the public as well as possible safety risks."  BP cites the "risk of confusion," but alleges that there were no gasoline products for sale at the location.  Likewise, the justification of "possible safety risks" is without merit and is clearly cited to provide the appearance of legality to this otherwise illegal termination.

192.    As BP's Notice of Termination is impermissibly grounded upon false allegations and fails to provide 90 days notice as required by the PMPA, it is wrongful under PMPA.

///

193.    As a direct and proximate result of BP's actions, STTN has and will continue to sustain damages in an amount exceeding $1.7 million.

194.    So that it may protect its interests in the Station, STTN has been required to retain the services of an attorney and is entitled to recover his attorney fees and costs as a permitted by law.  15 U.S.C. § 2805(d)(1)(C).

195.    As the conduct of BP is in willful disregard to the terms and provisions of the PMPA, because the alleged wrongdoing by STTN is unsupported by law, BP has unlawfully terminated a franchise agreement, entitling STTN to exemplary damages.  15 U.S.C. § 2805(d)(1)(B).

## COUNTER CLAIM II – BREACH OF CONTRACT

### Conditional Commitment Letter

### (By STTN Against BP)

196.    The allegations and answers set forth in Paragraphs 1 through 195 above are incorporated herein by reference as though fully set forth herein.

197.    On May 30, 2006, STTN accepted BP's offer of a $475,000 loan package by signing a written contract known as the Conditional Commitment Letter.

198.    Pursuant to this contract, BP was obligated to loan a maximum of $475,000 to STTN for the purpose of remodeling an existing gas station and convenience store to an ARCO-branded motor fuel station.

199.    To date, STTN has fully complied with all obligations set forth in the Conditional Commitment Letter.

200.    Despite STTN's compliance with said provisions, BP has not discharged its obligations under the Conditional Commitment Letter.  Specifically, BP has not disbursed the remaining funds that are currently due on the loan, in the amount of $250,000.

201.    BP's failure to disburse these funds is a material breach of the Conditional Commitment Letter.

///

///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

202.    As a direct and proximate result of BP's failure to perform its obligations arising under the Conditional Commitment Letter, STTN has sustained damages in an amount in excess of $1.7 million.

### COUNTER CLAIM III -BREACH OF CONTRACT

### Store Loan Agreement

### (By STTN Against BP)

203.    The allegations and answers set forth in Paragraphs 1 through 202 above are incorporated herein by reference as though fully set forth herein.

204.    On February 12, 2007, STTN and BP entered into a written contract known as the Store Loan Agreement.

205.    Pursuant to the Store Loan Agreement, BP was obligated to loan $150,000 to STTN for the purpose of constructing an ARCO-branded motor fuel station.

206.    To date, STTN has fully complied with all obligations set forth in the Store Loan Agreement.

207.    Specifically, paragraph 2.3 of the Store Loan Agreement obligated BP to disburse to loan funds as follows:

(a)    $37,500 upon STTN obtaining permits for construction.

(b)    $37,500 when BP verified that the construction was 25% complete.

(c)    $37,500 when BP verified that the construction was 50% complete.

(d)    $37,500 when BP verified that the construction was 75% complete.

208.    At the time of the execution of the Store Loan Agreement, construction of the Station was approximately 80% complete.

209.    Construction was complete on the Station on or about June 15 2007.

210.    BP's agents and employees were aware of the status of construction on the Station.

211.    Despite knowing the status on the Station, and despite the obligations imposed by paragraph 2.3, BP refused to disburse the funds until July 2007.

212.    BP failed to disburse the funds in a reasonable time.

213.    BP's failure to disburse the funds in a reasonable time constituted a material breach of the Store Loan Agreement.

214.    As a direct and proximate result of BP's failure to perform its obligations arising under the Store Loan Agreement, STTN has sustained damages in an amount in excess of $1.7 million, including, but not limited to, delayed operations, lost profits, and attorney fees.

## COUNTER CLAIM IV- BREACH OF CONTRACT

### Gasoline Loan Agreement

### (By STTN Against BP)

215.    The allegations and answers set forth in Paragraphs 1 through 214 above are incorporated herein by reference as though fully set forth herein.

216.    On February 12, 2007, STTN and BP entered into a written contract known as the Gasoline Loan Agreement.

217.    Pursuant to the Gasoline Loan Agreement, BP was obligated to loan $250,000 to STTN for the purpose of constructing an ARCO-branded motor fuel station.

218.    To date, STTN has fully complied with all obligations set forth in the Gasoline Loan Agreement.

219.    Specifically, paragraph 2.3 of the Gasoline Loan Agreement obligated BP to disburse to loan funds as follows:

(a)    $62,500 upon STTN obtaining permits for construction.

(b)    $62,500 when BP verified that the construction was 25% complete.

(c)    $62,500 when BP verified that the construction was 50% complete.

(d)    $62,500 when BP verified that the construction was 75% complete.

220.    At the time of the execution of the Gasoline Loan Agreement, construction of the Station was approximately 80% complete.

221.    Construction was complete on the Station on or about June 15 2007.

222.    BP's agents and employees were aware of the status of construction on the Station.

///

34

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

223.    Despite knowing the status on the Station, and despite the obligations imposed by paragraph 2.3, BP has never disbursed the funds and now states that it never will disburse the funds.

224.    Accordingly, BP failed to disburse the funds in a reasonable time.

225.    BP's failure to disburse said funds constituted a material breach of the Gasoline Loan Agreement.

226.    As a direct and proximate result of BP's failure to perform its obligations arising under the Gasoline Loan Agreement, STTN has sustained damages in an amount in excess of $1.7 million, including, but not limited to, delayed operations, lost profits, and attorney fees.

## COUNTER CLAIM V - BREACH OF CONTRACT

### Disbursement Agreement

### (By STTN Against BP)

227.    The allegations and answers set forth in Paragraphs 1 through 226 above are incorporated herein by reference as though fully set forth herein.

228.    On May 15, 2007, STTN and BP entered into a written contract known as the Disbursement Agreement.

229.    Pursuant to the Disbursement Agreement, specifically paragraph 3, BP was obligated to disburse the $400,000 in loan funds owed to STTN from "time to time."  Thus, as no time for performance is stated in the Disbursement Agreement, BP was obligated to disburse the funds in a reasonable time.

230.    To date, STTN has fully complied with all obligations set forth in the Disbursement Agreement.

231.    At the time of the execution of the Disbursement Agreement, construction of the Station was substantially complete.

232.    BP's agents and employees were aware of the status of construction on the Station.

///

///

35

233.    Despite knowing the status on the Station, and despite the obligations imposed by paragraph 3, BP refused to disburse any of the funds until July 2007 and then BP only disbursed a fraction of the loan funds.

234.    To date, BP has not disbursed at least $250,000 of the loan funds.

235.    As such, BP failed to disburse the funds in a reasonable time.

236.    BP's failure to disburse the loan funds in a reasonable time constituted a material breach of the Disbursement Agreement.

237.    As a direct and proximate result of BP's failure to perform its obligations arising under the Disbursement Agreement, STTN has sustained damages in an amount in excess of $1.7 million, including, but not limited to, delayed operations, lost profits, and attorney fees.

## COUNTER CLAIM VI

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (By all Defendants against BP)

238.    The allegations and answers set forth in Paragraphs 1 through 237 above are incorporated herein by reference as though fully set forth herein.

239.    BP entered into various contracts with STTN, Sayed, Nazim, Maghul, and AVA, including, but not limited to, the Conditional Commitment Letter, Mini-Market Agreement, the Gasoline Contract Dealer Agreement, the Store Loan Agreement, the Gasoline Loan Agreement, the Disbursement Agreement, and the Guarantee Agreements.

240.    Each such contract between BP and STTN, Sayed, Nazim, Maghul, and AVA, was executed in the State of California.

241.    Each such contract between BP and STTN, Sayed, Nazim, Maghul, and AVA, placed upon the parties of each such contract an implied duty of good faith and fair dealing in the performance and execution of said contracts.

242.    Notwithstanding said duty, and in breach thereof, BP acted in one or more of the following ways:

        (A)    BP encouraged and induced STTN to begin construction in a manner conflicting to provisions in the franchise agreement drafted by BP;

36

      (B)    BP deliberately and unjustifiably withheld loan funds even though STTN was in full compliance with the conditions of the loan agreement;

      (C)    BP encouraged and induced STTN to continue construction by employing STTN's own funds despite the fact that the loan funds were not disbursed by giving assurances that the funds would be disbursed in the immediate future.

      (D)    BP's deliberately and unjustifiably withheld loan funds from STTN knowing that it would frustrate STTN's ability to enjoy the consideration of the contracts and would prejudice STTN's ability to discharge its obligations under the contracts.

243.    As a direct and proximate result of BP's breach of the implied covenant of good faith and fair dealing, STTN sustained damages in the amount of $1.7 million, including, but not limited to, delayed operations, lost profits, and attorney fees..

## COUNTER CLAIM VII – ACTUAL FRAUD (Cal. Civ. § 1572)

### (By all Defendants against BP)

244.    The allegations and answers set forth in Paragraphs 1 through 243 above are incorporated herein by reference as though fully set forth herein.

245.    BP represented to Defendants that STTN must initiate construction prior to loan disbursement.

246.    BP represented to Defendants that it would provided STTN with a loan to help pay for the construction of a new AM/PM mini-market and ARCO-branded motor fuel station at 631 San Felipe, in Hollister, California.

247.    BP also represented to Defendants on numerous occasions that it did not possess all of the required documents needed to disburse the loan funds.

248.    BP further represented to Defendants that it would disburse the loan fully in the immediate future and that STTN should continue construction and operate the station.

///

249.    Defendants are informed and believe that the forgoing representations by BP to Defendants were at the time of their making false statements.

250.    Defendants are informed and believe that BP made the foregoing false statements to Defendants despite knowledge of their falsity.

251.    Defendants are informed and believe that BP made the foregoing false statements to Defendants with the intent to induce Defendants to act in certain ways, including, but not limited to, initiating and continuing construction on the Station without first possessing the loan funds and expending STTN's operating capital to finance the construction of the Station.

252.    Defendants  reasonably and justifiably relied on BP's false statements.

253.    Defendants suffered significant damage as a direct and proximate result relying on of BP's false statements.

254.    Defendants' reliance on BP's false statements was a substantial factor in causing the harm Defendants suffered.

255.    The aforementioned acts of BP were wilful and malicious in that their conduct was intended to cause injury to Defendants or was carried on with a conscious disregard for Defendants rights, thereby warranting the assessment of exemplary and punitive damages against Plaintiffs in an appropriate amount to punish Plaintiffs and set an example to others.

## COUNTER CLAIM VIII – NEGLIGENT MISREPRESENTATION

### (By all Defendants against BP)

255.    The allegations and answers set forth in Paragraphs 1 through 254 above are incorporated herein by reference as though fully set forth herein.

256.    BP represented to Defendants that STTN must initiate construction prior to loan disbursement.

257.    BP represented to Defendants that it would provided STTN with a loan to help pay for the construction of a new AM/PM mini-market and ARCO-branded motor fuel station at 631 San Felipe, in Hollister, California

258.    BP also represented to Defendants that it did not possess all of the required documents needed to disburse the loan funds.

38

259.   BP further represented to Defendants that it would disburse the loan fully in the immediate future and that STTN should continue construction and operate the station.

260.   The forgoing representations by BP to Defendants were at the time of their making false statements.

261.   BP made the foregoing false statements to Defendants despite having no reasonable grounds for believing the statements to be true.

262.   BP made the foregoing false statements to Defendants with the intent to induce Defendants to act in certain ways, including, but not limited to, initiating and continuing construction on the Station without first possessing the loan funds and expending STTN's operating capital to finance the construction of the Station.

263.   Defendants reasonably and justifiably relied on BP's false statements.

264.   Defendants suffered significant damage as a direct and proximate result of relying on BP's false statements.

265.   Defendants' reliance on BP's false statements was a substantial factor in causing the harm Defendants suffered.

**WHEREFORE**, Defendants pray for judgment as follows:

### ON COUNTER CLAIM I

### (WRONGFUL TERMINATION/VIOLATION OF PMPA)

1.   For damages according to proof at trial;

2.   For attorneys' fees and costs of suit incurred herein;

3.   For interest at the legal rate according to proof;

4.   For punitive damages; and

5.   For such other and further relief as the court may deem proper.

### ON COUNTER CLAIM II

### (BREACH OF CONTRACT - CONDITIONAL COMMITMENT LETTER)

1.   For damages according to proof at trial;

2.   For attorneys' fees and costs of suit incurred herein;

///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    3.    For interest at the legal rate according to proof; and

2    4.    For such other and further relief as the court may deem proper.

3    ## ON COUNTER CLAIM III

4    **(BREACH OF CONTRACT - STORE LOAN AGREEMENT)**

5    1.    For damages according to proof at trial;

6    2.    For attorneys' fees and costs of suit incurred herein;

7    3.    For interest at the legal rate according to proof; and

8    4.    For such other and further relief as the court may deem proper.

9    ## ON COUNTER CLAIM IV

10    **(BREACH OF CONTRACT - GASOLINE LOAN AGREEMENT)**

11    1.    For damages according to proof at trial;

12    2.    For attorneys' fees and costs of suit incurred herein;

13    3.    For interest at the legal rate according to proof; and

14    4.    For such other and further relief as the court may deem proper.

15    ## ON COUNTER CLAIM V

16    **(BREACH OF CONTRACT - DISBURSEMENT AGREEMENT)**

17    1.    For damages according to proof at trial;

18    2.    For attorneys' fees and costs of suit incurred herein;

19    3.    For interest at the legal rate according to proof; and

20    4.    For such other and further relief as the court may deem proper.

21    ## ON COUNTER CLAIM VI

22    **(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

23    1.    For damages according to proof at trial;

24    2.    For attorneys' fees and costs of suit incurred herein;

25    3.    For interest at the legal rate according to proof; and

26    4.    For such other and further relief as the court may deem proper.

27    ///

28    ///

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

## ON COUNTER CLAIM VII

### (ACTUAL FRAUD)

1. For damages according to proof at trial;

2. For attorneys' fees and costs of suit incurred herein;

3. For interest at the legal rate according to proof;

4. For punitive damages; and

5. For such other and further relief as the court may deem proper.

## ON COUNTER CLAIM VIII

### (NEGLIGENT MISREPRESENTATION)

1. For damages according to proof at trial;

2. For attorneys' fees and costs of suit incurred herein;

3. For interest at the legal rate according to proof; and

4. For such other and further relief as the court may deem proper.

### DEMAND FOR JURY TRIAL

Defendant demands a trial by jury of all issues in this action.

DATED:  December 6, 2007.

BAKER MANOCK & JENSEN, PC


By s/John G. Michael
John G. Michael
Attorney for Defendants
STTN ENTERPRISES, INC., NAZIM
FAQUIRYAN, SAYED FAQUIRYAN, MAGHUL
FAQUIRYAN, and AVA GLOBAL ENTERPRISE,
LLC

@PFDesktop\::ODMA/MHODMA/DMS;DMS;574562;1
15678.0003

DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM