KURT OSENBAUGH (State Bar No. 106132)
DEBORAH YOON JONES (State Bar No. 178127)
SAYAKA KARITANI (State Bar No. 240122)
**WESTON, BENSHOOF, ROCHEFORT,
   RUBALCAVA & MacCUISH LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
E-mail: kosenbaugh@wbcounsel.com
        djones@wbcounsel.com
        skaritani@wbcounsel.com

Attorneys for Plaintiffs and Counter-Defendants
BP WEST COAST PRODUCTS LLC and
ATLANTIC RICHFIELD COMPANY

JOHN G. MICHAEL (State Bar No. 106107)
**BAKER MANOCK & JENSEN, P.C.**
5260 North Palm Avenue, Fourth Floor
Fresno, California 93704-2209
Telephone: (559) 432-5400
Facsimile: (559) 432-5620
E-mail: bmj@bakermanock.com

Attorneys for Defendants and Counterclaimants
STTN ENTERPRISES, INC., NAZIM FAQUIRYAN,
SAYED FAQUIRYAN, MAGHUL FAQUIRYAN, and
AVA GLOBAL ENTERPRISE, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company; and ATLANTIC RICHFIELD COMPANY, a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company,<br><br>Defendants. | Case No.: C07 04808 RS<br><br>**JOINT REPORT OF PARTIES PURSUANT TO FED.R.CIV.PROC. RULE 26(f)**<br><br>CMC Date: January 9, 2008<br>Time: 10:30 a.m.<br>Ctrm: 4<br><br>Honorable Jeremy Fogel<br><br>Filing Date:   September 17, 2007 |

| | |
|---|---|
| 1 | STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company, |
| 2 | |
| 3 | |
| 4 | |
| 5 | Counterclaimants, |
| 6 | |
| 7 | BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company; and ; and ATLANTIC RICHFIELD COMPANY, a Delaware Corporation, |
| 8 | |
| 9 | Cross-Defendants. |

TO THE HONORABLE JEREMY FOGEL:

Counsel for Plaintiffs and Counter-Defendants BP West Coast Products LLC ("BPWCP") and Atlantic Richfield Company ("ARCO"), and Defendants and Counterclaimants STTN Enterprises, Inc., Nazim Faquiryan, Sayed Faquiryan, Maghul Faquiryan, and AVA Global Enterprise, LLC (defendants collectively referred to as, the "Defendants") (BPWCP, ARCO, and Defendants shall collectively be referred to as, the "Parties") held the early meeting of counsel pursuant to Rule 26(f) of the Federal Rules of Civil Procedure. The following summarizes the Parties' views of the matters required by Rule 26(f) and Local Rule 26-1:

I.   **FACTUAL SUMMARY AND PRINCIPAL ISSUES OF THE CASE**

   A.   **Plaintiffs' Position**

   BPWCP sold ARCO-branded motor fuels to Defendant STTN Enterprises, Inc. ("STTN") and allowed an am/pm mini market convenience store franchise to be operated concurrently with the gasoline station through several written franchise agreements. Defendants Sayed Faquiryan and Nazim Faquiryan each individually guaranteed the obligations owed by STTN to BPWCP under these franchise agreements. Pursuant to the franchise agreements, BPWCP licensed to

1

STTN the right to use ARCO's trade names, trademarks, and service marks in connection with the resale of ARCO-branded motor fuels and the operation of the am/pm mini market convenience store; STTN paid a royalty for use of this right.

In addition to the requirements for operating the station, the franchise agreements also required STTN to complete a remodel or retrofit of the station within nine (9) months of the commencement of the franchise relationship. To assist STTN in complying with this "remodel and retrofit" requirement, BPWCP offered STTN a special loan program to provide some funds specifically for completing construction and remodeling of its station and am/pm mini market store.

BPWCP and STTN entered into two such loan agreements (a Store Loan Agreement and Gasoline Loan Agreement), whereby BPWCP agreed to loan STTN the total sum of $475,000 to be used toward BPWCP-approved capital improvements for the station. Defendants Sayed Faquiryan, Maghul Faquiryan (Sayed Faquiryan's spouse), and Nazim Faquiryan each individually guaranteed the loan obligations owed by STTN to BPWCP under the loan agreements. BPWCP funded and disbursed the full amount of $150,000 for Defendants' benefit pursuant to the Store Loan Agreement. BPWCP, however, did not disburse any funds under the Gasoline Loan Agreement since STTN failed to provide sufficient financial documents, including proof of any payment by STTN of any construction-related expenditures, required back-up invoices and/or lien releases, all of which are requirements of the Gasoline Loan Agreement and related Disbursement Agreement.

On September 6, 2007, BPWCP terminated Defendants' service station franchise due to STTN's failure to have any gasoline products available for sale to the motoring public for at least 15 consecutive days, despite the fact that BPWCP sent STTN a total of twelve Defaults for failure to offer all grades of gasoline for sale. BPWCP's termination was also based upon STTN's failure to timely pay BPWCP for gasoline products in a timely manner, incurring an outstanding balance of over

$126,000, for gasoline product deliveries that are due and payable at the time of delivery. Given defendants' long-standing debt owed to BPWCP for unpaid gasoline, their failure to operate the Station and sell gasoline for at least 15 consecutive days, and the numerous opportunities given by BPWCP to Defendants to cure the defaults, the termination was effective immediately as it was not reasonable for BPWCP to provide any additional notice to STTN.

STTN also defaulted on the Store Loan Agreement. Pursuant to the Store Loan Agreement, STTN must repay the outstanding balance of the loan in full to BPWCP within 30 days of the occurrence of an "Event of Default." The termination of the franchise agreements (which occurred on September 5, 2007) is one such "Event of Default." To date, STTN has failed and refused to pay the outstanding balance due pursuant to the Store Loan Agreement.

Based upon these facts, BPWCP's First Amended Complaint seeks Declaratory Relief under the Petroleum Marketing Practices Act, and actual and liquidated damages for Breach of Contract under the franchise agreements, loan agreements, and guaranties; Unified Judicial Foreclosure; Unjust Enrichment; Common Count for Goods Sold and Delivered; and Violation of the California Business & Professions Code §§ 17200, *et seq.*

Furthermore, at the time BPWCP and ARCO filed their First Amended Complaint, Defendants were violating Federally-registered trademarks, trade names and service marks and using proprietary materials. Thus, BPWCP also asserted claims based upon these violations and applied for a temporary restraining order and preliminary injunction. Defendants, however, represented in writing that the trademark materials have since been removed and BPWCP withdrew its temporary restraining order and preliminary injunction papers.

B. **Defendants' Position**

1. **Factual Summary**

Plaintiffs BP WEST COAST PRODUCTS LLC ("BPWCP") and the ATLANTIC RICHFIELD COMPANY ("ARCO") are refiners and distributors of branded motor fuel in the State of California. STTN ENTERPRISES, INC. ("STTN"), operates a motor fuel retail station in Hollister, California. NAZIM FAQUIRYAN and SAYED FAQUIRYAN are shareholders of STTN and AVA GLOBAL ENTERPRISES, LLC ("AVA"). AVA owns the land on which STTN's station operates. In addition, NAZIM, SAYED, and MAGHUL FAQUIRYAN (Sayed's wife) signed as guarantors on some of the agreements between STTN and Plaintiffs.

BPWCP and STTN entered into two franchise agreements on July 11, 2006. The purpose of these agreements is for STTN to operate an ARCO-branded motor fuel station and AM/PM mini-market at 631 San Felipe Road, in Hollister, California (the "Station"). STTN paid $70,000.00 as a franchise fee and agreed to make periodic royalty payments for the right to operate the franchises.

After little more than one year, and after Defendants had spent over $1,000,000 to remodel the Station to BPWCP's specifications, on September 6, 2007, BP sent notice that it was terminating the franchise agreements. BPWCP further stated that the termination was effective immediately. The termination of franchise agreements for the sale of branded motor fuels is governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq. ("PMPA"). As a result of rampant abuse by refiners and distributors like BPWCP and ARCO, Congress enacted the PMPA. The PMPA is designed to provide some degree of protection for franchisees against the arbitrary and ruthless actions by refiners and distributors of branded motor fuel. Accordingly, Congress requires all refiners and distributors to satisfy certain substantive and procedural requirements before a franchise agreement can be legally

terminated under the PMPA. Plaintiffs' compliance with these requirements is plainly lacking this case. The remaining causes of action alleged by Plaintiffs all flow from this illegal termination.

Prior to July 2006, STTN, operated a Chevron-branded motor fuel station at 631 San Felipe Road, in Hollister, California (the "Station"). STTN profitably operated the station and enjoyed a good business relationship with Chevron. At some point before May 2006, STTN was approached by employees of BPWCP, and/or ARCO (collectively "Plaintiffs"). Plaintiffs asked to purchase the Station from STTN or for STTN to brand the Station as an ARCO. STTN rejected the purchase offer and agreed to re-brand the Station into an ARCO-branded station. To effectuate the transition to an ARCO-branded motor fuel station, BPWCP offered STTN a self-amortized loan package in the amount of $475,000. In essence, so long as STTN sold a specified amount of product annually, a portion of the debt would deemed repaid each year by BPWCP. On May 25, 2006, BPWCP provided a Commitment Letter to STTN in the sum of $475,000.

On July 11, 2006, BPWCP and STTN entered into two franchise agreements. The purpose of these agreements was for STTN to sell ARCO-branded motor fuel as well as to operate an AM/PM convenience store at the Station. The agreements required STTN to be operating as an ARCO-branded motor fuel station by April 11, 2007. The parties orally agreed that the Station would be operated as a "gas only" station starting October 10, 2006, until the Mini Market was completed.

In order to comply with the construction schedule promulgated by BPWCP, STTN was forced to begin reconstruction on the Station immediately. BPWCP worked closely with STTN throughout the construction phase by approving site plans, contractors, architects, and informing STTN of deficiencies. BPWCP also knew that the Station was a re-brand, not a new, ground-up facility. STTN worked diligently to satisfy all of BPWCP's requirements. Indeed, STTN spent of $790,000

5

of its own funds to remodel the Station. BPWCP did not finalize its loan agreements until February 12, 2007. The loan was to be disbursed according to the various schedules accompanying the loan documents, including the proposed budget and the disbursement schedule. Despite its close involvement with the process, and despite having made a commitment to assist STTN in the construction of the Station, BP consistently refused to provide any loan funds to STTN.

As a result of BPWCP's breach of its obligations under the loan agreements, while at the same time requiring STTN to continue construction and purchase motor fuel, STTN was unable to pay some of its contractors on time. Mechanics liens were then filed by certain contractors. However, as of July 7, 2007, STTN completely paid off all liens on the Station. Still, BPWCP refused to comply with the loan agreements. During this same time period, because of STTN's working capital was tied up in construction costs awaiting reimbursement from BPWCP, STTN fell behind in its payments for gasoline delivery and was put on a cash-on-delivery basis.

BPWCP eventually paid $150,000.00 of the loan in July 2007. However, the remaining $250,000.00 of the loan funds then due were not disbursed by BPWCP. STTN demanded disbursement of said funds to pay off the creditors of the project and replenish its working capital, but BPWCP refused, claiming that it lacked all of the required documents. STTN asked for clarification as to which documents were missing, and BPWCP simply refused to inform STTN of the missing documents. At the same time, BPWCP demanded that STTN continue to purchase gasoline. Being forced to use its operating capital to satisfy the construction debts due to BPWCP's refusal to disburse the loan, STTN asked that BPWCP enter into an escrow agreement whereby STTN would place the remaining money due for fuel into escrow and BPWCP would similarly place the loan funds in escrow. BPWCP initially agreed to this request, but later failed to place the loan funds in escrow without explanation.

Indeed, even as of August 31, 2007, BPWCP offered STTN reassurances that all the information needed to fund the loans was in BPWCP's possession and the funds would be disbursed soon.

On August 31, 2007, BPWCP sent seven notices of default to STTN, each alleging that STTN failed to offer any grade of motor fuel for sale to the public on a specified date.  However, STTN sold 91 octane and diesel gasoline during the relevant dates cited by BPWCP.  Moreover, STTN could not sell 87 and 89 octane gasoline for part of the relevant period because BPWCP refused to deliver any motor fuel to the Station, despite STTN obtaining and offering a cashier's check to tender upon delivery.

On September 6, 2007, BPWCP terminated the franchise agreement.  In so doing, it cited (1) STTN's failure to offer any grade of motor fuel to the motoring public for a period of seven consecutive days and (2) STTN's failure to pay all sums when due.  Rather than give the 90 days notice that is typically required under the PMPA, and without any factual basis thereof, BPWCP cited risk of confusion to the public and safety risks as justifying an immediate termination of the franchise agreement.  As such, the franchise relationship was allegedly terminated on September 6, 2007.

On September 17 and 18, 2007, BPWCP sent multiple agents to "de-brand" the Station.  As part of the de-branding process, BPWCP removed, destroyed, re-painted, or otherwise obliterated any registered trademark or proprietary information belonging to BPWCP.  STTN, while maintaining that the franchise agreement was terminated illegally, cooperated with BPWCP during the de-branding process.

Curiously, while the de-branding was carried out over the two-day period from September 17 to 18, BPWCP's complaint is that "[a]s of September 11, 2007, the Station was still improperly displaying these Protected Marks..." some six days

before the Station was de-branded. (emphasis added) Since the de-brand, Defendants have continued to operate the Station, but as an independent station. Defendants are not currently using or otherwise infringing any protectable marks.

Apparently dissatisfied with their own de-branding efforts, Plaintiffs filed an Ex Parte Application for a TRO on October 18, 2007. They have subsequently withdrawn that Application.

**2.  Legal Issues**

a) The propriety of Plaintiffs' and Counter-Defendants' termination of the various agreements;

b) Whether Defendants and Counter-Claimants breached any of the agreements (which Defendants and Counter-Claimants deny);

c) Any damages accruing as a result of Defendants' and Counter-Claimants alleged defaults (which Defendants and Counter-Claimants deny);

d) Whether any trademark infringement or dilution has occurred (which Defendants and Counter-Claimants deny);

e) Whether Defendants and CounterClaimants unfairly competed with Plaintiffs or engaged in unfair business practices;

f) Whether Plaintiffs are estopped from seeking enforcement of the various agreements;

g) Whether Plaintiffs are guilty of unclean hands;

h) Whether Plaintiffs failed to mitigate their damages, if any;

i) Whether Plaintiffs waived any alleged breaches of the various agreements;

j) Whether any of Plaintiffs' alleged damages were caused by the actions of Plaintiffs or third parties;

k) Whether Defendants' conduct was privileged, excused or justified;

l) Whether Defendants were specifically authorized to display any marks alleged to belong to Plaintiffs;

m) Whether Defendants signed the various agreements under economic duress;

n) Whether Plaintiffs various marks are descriptive or generic and invalid;

o) Whether Plaintiff's alleged trade and service marks are functional;

p) Whether Defendants' and Counter-Claimants' performance of any of the various agreements was excused by Plaintiffs' and Counter-Defendants' prior breach;

q) Whether Counter-Defendants wrongfully terminated Counter-Claimants franchise agreements;

r) Whether Counter-Defendants breached any of the various agreements;

s) Whether Counter-Defendants breached the covenant of good faith and fair dealing contained in the various agreements;

t) Whether Counter-Defendants committed fraud;

u) Whether Counter-Defendants made negligent misrepresentations;

v) The damages accruing to Counter-Claimants as a result of Counter-Defendants' actions.

C. **Procedural Status**

On September 18, 2007, BPWCP filed a complaint for damages arising out of Defendants' breach of the Contract Dealer Agreement and am/pm Mini Market Agreement governing their franchise relationship with BPWCP; for damages arising out of Defendants' breach of the loan guaranties; and for declaratory relief under 15

9

U.S.C. §2801, *et seq.*, the Petroleum Marketing Practices Act ("PMPA"). On October 18, 2007, BPWCP and ARCO filed an amended complaint, adding new claims for damages arising out of Defendants' trademark violations; for damages arising out of Defendants' breach of the am/pm Mini Market Loan Agreement; and for judicial foreclosure on Defendants' real property and personal property.

On December 6, 2007, Defendants filed their Answer to the First Amended Complaint and Counterclaims for damages for wrongful termination of their service station franchise. BPWCP's and ARCO's Answer to Defendants' Counterclaim is due on January 4, 2008.

## II. INITIAL DISCLOSURES

The Parties have discussed the exchange of the Rule 26(f) disclosures. The Parties have agreed to exchange initial disclosures by January 7, 2008. The Parties do not see a need to change the form or requirement for disclosures under Rule 26(a). The Parties acknowledge their respective continuing obligations to supplement all information required to be disclosed as initial disclosures under the Rules.

## III. NOT A COMPLEX CASE

The Parties do not consider this a complex case that should be governed by the rules set forth in the Manual for Complex Litigation.

## IV. DISCOVERY

### A. Discovery Plan

The Parties intend to propound interrogatories, requests for admissions, and requests for production of documents upon each other. The Parties intend to notice depositions of the persons with knowledge of the relevant facts in this matter. The Parties do not believe that any immediate changes should be made to the rules governing discovery except for those set forth below.

Anticipated subjects of discovery include BPWCP's termination of the franchise agreement, the circumstances surrounding the loans offered by BPWCP to

JOINT REPORT OF THE PARTIES
PURSUANT TO FED.R.CIV.PROC. RULE 26(f)

1092513.3

STTN, and any claims in the Complaint and Defendants' defenses and counterclaims.

BPWCP and ARCO believe that there is no need to change the limitations on discovery imposed by the Federal Rules of Civil Procedure. Defendants want to take 12 depositions of percipient witnesses, as opposed to the ten depositions allowed under Rule 30(a)(2). BPWCP and ARCO disagree that extra depositions need to be taken, given the straightforward facts of this case.

BPWCP, ARCO and the STTN Parties are not in agreement with respect to the proposed discovery, motion and trial schedule and each of the Parties propose the following:

1. **BPWCP's and ARCO's Proposed Schedule**:

| Description | Date |
| --- | --- |
| Initial expert witness disclosure | March 10, 2008 |
| Rebuttal expert witness disclosure | March 21, 2008 |
| Last day to amend pleadings or join parties | March 21, 2008 |
| Expert and fact discovery cut-off | May 19, 2008 |
| Motion cut-off | June 2, 2008 |
| Pre-trial Conference Discussion | July 21, 2008 |
| Date for Pre-trial Conference | July 28, 2008 |
| Trial (5-7 days) | August 11, 2008 |

2. **The STTN Parties' Proposed Schedule**:

| Description | Date |
| --- | --- |
| Percipient Witness and Initial expert witness disclosure | September 1, 2008 |
| Rebuttal expert witness disclosure | October 1, 2008 |

11

| Last day to amend pleadings or join parties | October 1, 2008 |
|---|---|
| Expert and fact discovery cut-off | October 1, 2008 |
| Motion (non-dispositive) cut-off | October 15, 2008 |
| Motion (dispositive) cut-off | November 14, 2008 |
| Settlement cut-off | January 1, 2009 |
| Pre-trial Conference Discussion | January 15, 2009 |
| Date for Pre-trial Conference | January 22, 2009 |
| Trial (10 days) | February 16, 2009 |

Furthermore, BPWCP and ARCO advise this Court that their counsel of record will be engaged in trials on other matters on the following dates:

- March 11, 2008 for approximately 2 weeks (matter pending in the Orange County Superior Court before The Honorable H. Warren Siegel);
- April 25, 2008 for approximately 1 week (matter pending in the Los Angeles County Superior Court before The Honorable Joseph S. Biderman); and
- August 26, 2008 for approximately 2 weeks (matter pending in the Central District of California before The Honorable Philip S. Gutierrez).

Counsel for BPWCP and ARCO is also unavailable May 1 through May 25, 2008.

Defendants advise this Court that their counsel of record will be engaged in trials on other matters on the following dates:

- March 24, 2008 for approximately one week in Fresno County Superior Court;
- May 27, 2008 for approximately one week in Fresno County

12

Superior Court;

- June 2, 2008 for approximately one week in Fresno County Superior Court;
- June 23, 2008 for approximately one week in Merced County Superior Court;
- August 27, 2008 for approximately three days in Fresno County Superior Court; and
- October 6, 2008 for approximately one week in Fresno County Superior Court.

**B.  Federal Rule of Civil Procedure 26(f)(3): Changes to Limitation on Discovery**

BPWCP and ARCO believe that there is no need to change the limitations on discovery imposed by the Federal Rules of Civil Procedure. Defendants want to take 12 depositions of percipient witnesses, as opposed to the ten depositions allowed under Rule 30(a)(2). BPWCP and ARCO disagree that extra depositions need to be taken, given the facts of this case.

**C.  Federal Rule of Civil Procedure 26(f)(4): Orders by the Court Under Rule 26(c)**

At this time, the Parties do not see the need to request the Court to enter any orders under Rules 26(c), Rule 16(b), or Rule 16(c), except that Defendants request that the court consider their request to raise the limit on the number of depositions to 12. The Parties discussed the possibility of entering a protective order regarding financial information.

**V.  MOTION SCHEDULE**

No motions are presently pending before this Court. The Parties contemplate that, upon completion of sufficient discovery, they each may move for summary judgment, to dismiss, or other dispositive motions.

## VI. POTENTIAL SETTLEMENT

The Parties are willing to engage in settlement discussions.

## VII. TRIAL ESTIMATE

BPWCP and ARCO estimate that a trial in this action will require 5-7 days. Defendants estimate that a trial in this action will require ten (10) days.

## VIII. ADDITIONAL PARTIES

At this time, unless discovery yields new evidence, the Parties do not anticipate the appearance of additional parties.

RESPECTFULLY SUBMITTED BY:

DATED: December 21, 2007        KURT OSENBAUGH
                                DEBORAH YOON JONES
                                SAYAKA KARITANI
                                **WESTON, BENSHOOF, ROCHEFORT, RUBALCAVA & MacCUISH LLP**

                                _____
                                Deborah Yoon Jones
                                Attorneys for Plaintiffs and Counter-Defendants
                                BP WEST COAST PRODUCTS LLC and
                                ATLANTIC RICHFIELD COMPANY

DATED: December ___, 2007       JOHN G. MICHAEL
                                **BAKER MANOCK & JENSEN, PC**

                                _____
                                John G. Michael
                                Attorneys for Defendants and Counterclaimants
                                STTN ENTERPRISES, INC., NAZIM FAQUIRYAN, SAYED FAQUIRYAN, MAGHUL FAQUIRYAN, and AVA GLOBAL ENTERPRISE, LLC

14

1092513.3

JOINT REPORT OF THE PARTIES
PURSUANT TO FED.R.CIV.PROC. RULE 26(f)

## VI. POTENTIAL SETTLEMENT

The Parties are willing to engage in settlement discussions.

## VII. TRIAL ESTIMATE

BPWCP and ARCO estimate that a trial in this action will require 5-7 days. Defendants estimate that a trial in this action will require ten (10) days.

## VIII. ADDITIONAL PARTIES

At this time, unless discovery yields new evidence, the Parties do not anticipate the appearance of additional parties.

RESPECTFULLY SUBMITTED BY:

DATED: December ___, 2007   KURT OSENBAUGH
DEBORAH YOON JONES
SAYAKA KARITANI
WESTON, BENSHOOF, ROCHEFORT,
RUBALCAVA & MacCUISH LLP

_____
Deborah Yoon Jones
Attorneys for Plaintiffs and Counter-Defendants
BP WEST COAST PRODUCTS LLC and
ATLANTIC RICHFIELD COMPANY

DATED: December 21, 2007   JOHN G. MICHAEL
BAKER MANOCK & JENSEN, PC

_____
John G. Michael
Attorneys for Defendants and Counterclaimants
STTN ENTERPRISES, INC., NAZIM
FAQUIRYAN, SAYED FAQUIRYAN,
MAGHUL FAQUIRYAN, and AVA GLOBAL
ENTERPRISE, LLC

14

JOINT REPORT OF THE PARTIES
PURSUANT TO FED.R.CIV.PROC. RULE 26(f)

1092513.3

# PROOF OF SERVICE

I, Heather Thai, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On December 21, 2007, I served the document(s) described as **JOINT REPORT OF PARTIES PURSUANT TO FED.R.CIV.PROC. RULE 26(f)** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows: SEE ATTACHED SERVICE LIST

☒  BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☐  BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS    ☐ UPS    ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of    ☐ FEDERAL EXPRESS    ☐ UPS    ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐  BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐  [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 21, 2007, at Los Angeles, California.

*/s/ Heather Thai*
Heather Thai

1092513.3

1
2
3

# BP WEST COAST PRODUCTS LLC v. STTN ENTERPRISES, et al.
## United States District Court, Northern District
## Case No. C07 04808 RS

## SERVICE LIST

4
5
6
7

John G. Michael, Esq.
Baker Manock & Jensen
5260 North Palm Avenue
Fourth Floor
Fresno, CA  93704

Attorney for Defendants and Counterclaimants, STTN ENTERPRISES, INC., NAZIM FAQUIRYAN, SAYED FAQUIRYAN, MAGHUL FAQUIRYAN, and AVA GLOBAL ENTERPRISE, LLC

8

Tel:  (559) 432-5400
Fax:  (559) 432-5620

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1092513.3