KURT OSENBAUGH (State Bar No. 106132)
DEBORAH YOON JONES (State Bar No. 178127)
SAYAKA KARITANI (State Bar No. 240122)
**WESTON, BENSHOOF, ROCHEFORT,**
  **RUBALCAVA & MacCUISH LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
E-mail: kosenbaugh@wbcounsel.com
        djones@wbcounsel.com
        skaritani@wbcounsel.com

Attorneys for Plaintiffs and Counter-Defendants
BP WEST COAST PRODUCTS LLC and
ATLANTIC RICHFIELD COMPANY

JOHN G. MICHAEL (State Bar No. 106107)
**BAKER MANOCK & JENSEN, P.C.**
5260 North Palm Avenue, Fourth Floor
Fresno, California 93704-2209
Telephone: (559) 432-5400
Facsimile: (559) 432-5620
E-mail: bmj@bakermanock.com

Attorneys for Defendants and Counterclaimants
STTN ENTERPRISES, INC., NAZIM FAQUIRYAN,
SAYED FAQUIRYAN, MAGHUL FAQUIRYAN, and
AVA GLOBAL ENTERPRISE, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company; and ATLANTIC RICHFIELD COMPANY, a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company,<br><br>Defendants. | Case No.: C07 04808 RS<br><br>**UPDATED JOINT CASE MANAGEMENT STATEMENT OF PARTIES PURSUANT TO FED.R.CIV.PROC. RULES 26(f) and CIVIL LOCAL RULE 16-9**<br><br>CMC Date: June 13, 2008<br>Time: 10:30 a.m.<br>Ctrm: 4<br><br>Honorable Jeremy Fogel<br><br>Filing Date:    September 17, 2007 |

UPDATED JOINT REPORT OF THE PARTIES
PURSUANT TO FED.R.CIV.PROC. RULE 26(f)

1201631.1

| | |
|---|---|
| 1<br>2<br>3<br>4 | STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company, |
| 5 | Counterclaimants, |
| 6 | |
| 7<br>8 | BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company; and ; and ATLANTIC RICHFIELD COMPANY, a Delaware Corporation, |
| 9 | Cross-Defendants. |

1201631.1

1

**UPDATED JOINT REPORT OF THE PARTIES PURSUANT TO FED.R.CIV.PROC. RULE 26(f)**

**TO THE HONORABLE JEREMY FOGEL:**

Counsel for Plaintiff and Counter-Defendant BP West Coast Products LLC ("BPWCP"), and Defendants and Counterclaimants STTN Enterprises, Inc., Nazim Faquiryan, Sayed Faquiryan, Maghul Faquiryan, and AVA Global Enterprise, LLC (defendants collectively referred to as, the "Defendants") (BPWCP and Defendants shall collectively be referred to as, the "Parties") held the early meeting of counsel pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and timely submitted a Joint Report as required by Rule 26(f) and Local Rule 16-9. Given the continuances of the Case Management Conference ("CMC"), the Parties submit the following Updated Joint Case Management Statement:

**I.   JURISDICTION AND SERVICE**

This action concerns, *inter alia*, the termination of a service station franchise relationship, which is governed by the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801, *et seq.* (the "PMPA"). Accordingly, this Court has jurisdiction over BPWCP's claims, by virtue of 28 U.S.C. § 1331 and 15 U.S.C. § 2805(a), and this Court's pendent jurisdiction. Furthermore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1338(a) and (b), and 28 U.S.C. § 2201, because this is a civil action seeking declaratory relief under the PMPA. The amount in controversy exceeds the sum or value of $75,000.00.

There are no other parties that remain to be served.

**II.   FACTUAL SUMMARY AND PRINCIPAL ISSUES OF THE CASE**

  A.   **Plaintiffs' Factual Position**

BPWCP sold ARCO-branded motor fuels to Defendant STTN Enterprises, Inc. ("STTN") and allowed an am/pm mini market convenience store franchise to be operated concurrently with the gasoline station through several written franchise agreements. Defendants Sayed Faquiryan and Nazim Faquiryan each individually guaranteed the obligations owed by STTN to BPWCP under these

franchise agreements. Pursuant to the franchise agreements, BPWCP licensed to STTN the right to use ARCO's trade names, trademarks, and service marks in connection with the resale of ARCO-branded motor fuels and the operation of the am/pm mini market convenience store; STTN paid a royalty for use of this right.

In addition to the requirements for operating the station, the franchise agreements also required STTN to complete a remodel or retrofit of the station within nine (9) months of the commencement of the franchise relationship. To assist STTN in complying with this "remodel and retrofit" requirement, BPWCP offered STTN a special loan program to provide some funds specifically for completing construction and remodeling of its station and am/pm mini market store.

BPWCP and STTN entered into two such loan agreements (a Store Loan Agreement and Gasoline Loan Agreement), whereby BPWCP agreed to loan STTN the total sum of $475,000 to be used toward BPWCP-approved capital improvements for the station. Defendants Sayed Faquiryan, Maghul Faquiryan (Sayed Faquiryan's spouse), and Nazim Faquiryan each individually guaranteed the loan obligations owed by STTN to BPWCP under the loan agreements. BPWCP funded and disbursed the full amount of $150,000 for Defendants' benefit pursuant to the Store Loan Agreement. BPWCP, however, did not disburse any funds under the Gasoline Loan Agreement since STTN failed to provide sufficient financial documents, including proof of any payment by STTN of any construction-related expenditures, required back-up invoices and/or lien releases, all of which are requirements of the Gasoline Loan Agreement and related Disbursement Agreement.

On September 6, 2007, BPWCP terminated Defendants' service station franchise due to STTN's failure to have any gasoline products available for sale to the motoring public for at least 15 consecutive days, despite the fact that BPWCP sent STTN a total of twelve Defaults for failure to offer all grades of gasoline for sale. BPWCP's termination was also based upon STTN's failure to timely pay BPWCP for

gasoline products in a timely manner, incurring an outstanding balance of over $126,000, for gasoline product deliveries that are due and payable at the time of delivery. Given defendants' long-standing debt owed to BPWCP for unpaid gasoline, their failure to operate the Station and sell gasoline for at least 15 consecutive days, and the numerous opportunities given by BPWCP to Defendants to cure the defaults, the termination was effective immediately as it was not reasonable for BPWCP to provide any additional notice to STTN.

STTN also defaulted on the Store Loan Agreement. Pursuant to the Store Loan Agreement, STTN must repay the outstanding balance of the loan in full to BPWCP within 30 days of the occurrence of an "Event of Default." The termination of the franchise agreements (which occurred on September 5, 2007) is one such "Event of Default." To date, STTN has failed and refused to pay the outstanding balance due pursuant to the Store Loan Agreement.

Based upon these facts, BPWCP's First Amended Complaint seeks Declaratory Relief under the Petroleum Marketing Practices Act, and actual and liquidated damages for Breach of Contract under the franchise agreements, loan agreements, and guaranties; Unified Judicial Foreclosure; Unjust Enrichment; Common Count for Goods Sold and Delivered; and Violation of the California Business & Professions Code §§ 17200, *et seq.*

Furthermore, at the time BPWCP and ARCO filed their First Amended Complaint, Defendants were violating Federally-registered trademarks, trade names and service marks and using proprietary materials. Thus, BPWCP also asserted claims based upon these violations and applied for a temporary restraining order and preliminary injunction. Defendants, however, represented in writing that the trademark materials have since been removed and BPWCP withdrew its temporary restraining order and preliminary injunction papers. BPWCP and ARCO also recently agreed to dismiss the trademark-related causes of action in exchange for Defendants'

agreement to dismiss ARCO as a counter-defendant.

B. **Defendants' Factual Position**

Plaintiffs BP WEST COAST PRODUCTS LLC ("BPWCP") is a refiner and distributor of branded motor fuel in the State of California. STTN ENTERPRISES, INC. ("STTN"), operates a motor fuel retail station in Hollister, California. NAZIM FAQUIRYAN and SAYED FAQUIRYAN are shareholders of STTN and AVA GLOBAL ENTERPRISES, LLC ("AVA"). AVA owns the land on which STTN's station operates. In addition, NAZIM, SAYED, and MAGHUL FAQUIRYAN (Sayed's wife) signed as guarantors on some of the agreements between STTN and Plaintiffs.

BPWCP and STTN entered into two franchise agreements on July 11, 2006. The purpose of these agreements is for STTN to operate an ARCO-branded motor fuel station and AM/PM mini-market at 631 San Felipe Road, in Hollister, California (the "Station"). STTN paid $70,000.00 as a franchise fee and agreed to make periodic royalty payments for the right to operate the franchises.

After little more than one year, and after Defendants had spent over $1,000,000 to remodel the Station to BPWCP's specifications, on September 6, 2007, BP sent notice that it was terminating the franchise agreements. BPWCP further stated that the termination was effective immediately. The termination of franchise agreements for the sale of branded motor fuels is governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq. ("PMPA"). As a result of rampant abuse by refiners and distributors like BPWCP and ARCO, Congress enacted the PMPA. The PMPA is designed to provide some degree of protection for franchisees against the arbitrary and ruthless actions by refiners and distributors of branded motor fuel. Accordingly, Congress requires all refiners and distributors to satisfy certain substantive and procedural requirements before a franchise agreement can be legally terminated under the PMPA. Plaintiffs' compliance with these requirements is plainly

5

lacking this case. The remaining causes of action alleged by Plaintiffs all flow from this illegal termination.

Prior to July 2006, STTN, operated a Chevron-branded motor fuel station at 631 San Felipe Road, in Hollister, California (the "Station"). STTN profitably operated the station and enjoyed a good business relationship with Chevron. At some point before May 2006, STTN was approached by employees of BPWCP, and/or ARCO (collectively "Plaintiffs"). Plaintiffs asked to purchase the Station from STTN or for STTN to brand the Station as an ARCO. STTN rejected the purchase offer and agreed to re-brand the Station into an ARCO-branded station. To effectuate the transition to an ARCO-branded motor fuel station, BPWCP offered STTN a self-amortized loan package in the amount of $475,000. In essence, so long as STTN sold a specified amount of product annually, a portion of the debt would deemed repaid each year by BPWCP. On May 25, 2006, BPWCP provided a Commitment Letter to STTN in the sum of $475,000.

On July 11, 2006, BPWCP and STTN entered into two franchise agreements. The purpose of these agreements was for STTN to sell ARCO-branded motor fuel as well as to operate an AM/PM convenience store at the Station. The agreements required STTN to be operating as an ARCO-branded motor fuel station by April 11, 2007. The parties orally agreed that the Station would be operated as a "gas only" station starting October 10, 2006, until the Mini Market was completed.

In order to comply with the construction schedule promulgated by BPWCP, STTN was forced to begin reconstruction on the Station immediately. BPWCP worked closely with STTN throughout the construction phase by approving site plans, contractors, architects, and informing STTN of deficiencies. BPWCP also knew that the Station was a re-brand, not a new, ground-up facility. STTN worked diligently to satisfy all of BPWCP's requirements. Indeed, STTN spent of $790,000 of its own funds to remodel the Station. BPWCP did not finalize its loan agreements

1  until February 12, 2007. The loan was to be disbursed according to the various
2  schedules accompanying the loan documents, including the proposed budget and the
3  disbursement schedule. Despite its close involvement with the process, and despite
4  having made a commitment to assist STTN in the construction of the Station, BP
5  consistently refused to provide any loan funds to STTN.

6        As a result of BPWCP's breach of its obligations under the loan
7  agreements, while at the same time requiring STTN to continue construction and
8  purchase motor fuel, STTN was unable to pay some of its contractors on time.
9  Mechanics liens were then filed by certain contractors. However, as of July 7, 2007,
10 STTN completely paid off all liens on the Station. Still, BPWCP refused to comply
11 with the loan agreements. During this same time period, because of STTN's working
12 capital was tied up in construction costs awaiting reimbursement from BPWCP,
13 STTN fell behind in its payments for gasoline delivery and was put on a cash-on-
14 delivery basis.

15       BPWCP eventually paid $150,000.00 of the loan in July 2007. However,
16 the remaining $250,000.00 of the loan funds then due were not disbursed by BPWCP.
17 STTN demanded disbursement of said funds to pay off the creditors of the project and
18 replenish its working capital, but BPWCP refused, claiming that it lacked all of the
19 required documents. STTN asked for clarification as to which documents were
20 missing, and BPWCP simply refused to inform STTN of the missing documents. At
21 the same time, BPWCP demanded that STTN continue to purchase gasoline. Being
22 forced to use its operating capital to satisfy the construction debts due to BPWCP's
23 refusal to disburse the loan, STTN asked that BPWCP enter into an escrow agreement
24 whereby STTN would place the remaining money due for fuel into escrow and
25 BPWCP would similarly place the loan funds in escrow. BPWCP initially agreed to
26 this request, but later failed to place the loan funds in escrow without explanation.
27 Indeed, even as of August 31, 2007, BPWCP offered STTN reassurances that all the
28

1  information needed to fund the loans was in BPWCP's possession and the funds
2  would be disbursed soon.
3     On August 31, 2007, BPWCP sent seven notices of default to STTN,
4  each alleging that STTN failed to offer any grade of motor fuel for sale to the public
5  on a specified date. However, STTN sold 91 octane and diesel gasoline during the
6  relevant dates cited by BPWCP. Moreover, STTN could not sell 87 and 89 octane
7  gasoline for part of the relevant period because BPWCP refused to deliver any motor
8  fuel to the Station, despite STTN obtaining and offering a cashier's check to tender
9  upon delivery.
10    On September 6, 2007, BPWCP terminated the franchise agreement. In
11  so doing, it cited (1) STTN's failure to offer any grade of motor fuel to the motoring
12  public for a period of seven consecutive days and (2) STTN's failure to pay all sums
13  when due. Rather than give the 90 days notice that is typically required under the
14  PMPA, and without any factual basis thereof, BPWCP cited risk of confusion to the
15  public and safety risks as justifying an immediate termination of the franchise
16  agreement. As such, the franchise relationship was allegedly terminated on
17  September 6, 2007.
18    On September 17 and 18, 2007, BPWCP sent multiple agents to "de-
19  brand" the Station. As part of the de-branding process, BPWCP removed, destroyed,
20  re-painted, or otherwise obliterated any registered trademark or proprietary
21  information belonging to BPWCP. STTN, while maintaining that the franchise
22  agreement was terminated illegally, cooperated with BPWCP during the de-branding
23  process.
24    Curiously, while the de-branding was carried out over the two-day period
25  from September 17 to 18, BPWCP's complaint is that "[a]s of September 11, 2007,
26  the Station was still improperly displaying these Protected Marks…" some six days
27  before the Station was de-branded. (emphasis added) Since the de-brand, Defendants
28

8

UPDATED JOINT REPORT OF THE PARTIES
PURSUANT TO FED.R.CIV.PROC. RULE 26(f)

1201631.1

have continued to operate the Station, but as an independent station. Defendants are not currently using or otherwise infringing any protectable marks.

Apparently dissatisfied with their own de-branding efforts, Plaintiffs filed an Ex Parte Application for a TRO on October 18, 2007. They have subsequently withdrawn that Application.

C. **Legal Issues**

1. The propriety of BPWCP's termination of the various franchise agreements under the PMPA;

2. The enforceability of the franchise agreement;

3. The enforceability of the loan agreements;

4. The enforceability of the individual guarantees;

5. Whether any of the Parties breached any of the franchise and loan agreements and guarantees and damages resulting therefrom;

6. Any damages accruing as a result of Defendants' and Counter-Claimants alleged defaults (which Defendants and Counter-Claimants deny);

7. Whether Defendants and Counter-Claimants unfairly competed with Plaintiffs or engaged in unfair business practices;

8. Whether BPWCP is estopped from seeking enforcement of the various agreements;

9. Whether any of the Parties are guilty of unclean hands;

10. Whether any of the Parties failed to mitigate their damages, if any;

11. Whether any of the Parties waived any alleged breaches of the various agreements;

12. Whether any of any of the Parties' alleged damages were caused by the actions of the other Parties or third parties;

13. Whether any of the Parties' conduct was privileged, excused or justified;

14. Whether Defendants and Counter-Claimants signed the various agreements under economic duress;

15. Whether Defendants' and Counter-Claimants' performance of any of the various agreements was excused by BPWCP prior breach;

16. Whether BPWCP breached the covenant of good faith and fair dealing contained in the various agreements;

17. Whether BPWCP committed fraud;

18. Whether BPWCP made negligent misrepresentations;

19. The damages sustained by the Parties.

### D. Procedural Status

On September 18, 2007, BPWCP filed a complaint for damages arising out of Defendants' breach of the Contract Dealer Agreement and am/pm Mini Market Agreement governing their franchise relationship with BPWCP; for damages arising out of Defendants' breach of the loan guaranties; and for declaratory relief under 15 U.S.C. §2801, *et seq.*, the Petroleum Marketing Practices Act ("PMPA"). On October 18, 2007, BPWCP and ARCO filed an amended complaint, adding new claims for damages arising out of Defendants' trademark violations; for damages arising out of Defendants' breach of the am/pm Mini Market Loan Agreement; and for judicial foreclosure on Defendants' real property and personal property.

On October 18, 2007, BPWCP filed a First Amended Complaint.

On December 6, 2007, Defendants and Counterclaimants filed their Answer to the First Amended Complaint and Counterclaims for damages for wrongful termination of their service station franchise.

On or about December 26, 2008, BPWCP and ARCO filed their Answer to Defendants' Counterclaim.

On or about February 28, 2008, the Court, on its own motion, continued the previously scheduled CMC to March 14, 2008. At the March 14, 2008 CMC, the

Parties indicated a willingness to proceed to mediation and the Court continued the CMC and set a mediation deadline and post-mediation status conference for June 13, 2008.

On May 21, 2008, the Court signed the stipulation and order to continue the mediation cut-off and post-mediation status conference to August 22, 2008.

### E. Motions

BPWCP currently has reserved August 8, 2008 for hearing on its motions for summary judgment/partial summary judgment concerning its operative Complaint and the Counterclaim.

### F. Amendment of Pleadings

On May 14, 2008, BPWCP filed a Stipulation and [Proposed] Order for Leave to Amend the First Amended Complaint (and file a Second Amended Complaint), which the Court signed on or about May 19, 2008.

Prior to filing the Second Amended Complaint previously lodged with the Court, BPWCP determined that further clarification was necessary. Therefore, on June 6, 2008, BPWCP filed a Stipulation and [Proposed] Order for Leave to File a Revised Second Amended Complaint, which is still pending before this Court as of the date of this Joint Statement.

## III. INITIAL DISCLOSURES

The Parties have exchanged initial disclosures. The Parties acknowledge their respective continuing obligations to supplement all information required to be disclosed as initial disclosures under the Rules.

## IV. NOT A COMPLEX CASE

The Parties do not consider this a complex case that should be governed by the rules set forth in the Manual for Complex Litigation.

## V. DISCOVERY

The Parties have exchanged initial written discovery. The Parties have taken some depositions and have scheduled upcoming depositions. The Parties do not believe that any immediate changes should be made to the rules governing discovery except for those set forth below.

Anticipated subjects of discovery include BPWCP's termination of the franchise agreement, the circumstances surrounding the loans offered by BPWCP to STTN, and any claims in the Complaint and Defendants' defenses and counterclaims.

BPWCP believes that there is no need to change the limitations on discovery imposed by the Federal Rules of Civil Procedure. Defendants want to take 12 depositions of percipient witnesses, as opposed to the ten depositions allowed under Rule 30(a)(2). BPWCP disagrees that extra depositions need to be taken, given the straightforward facts of this case.

## VI. RELATED CASES

The Parties are unaware of any related cases at this time.

## VII. RELIEF

### A. BPWCP

In its revised Second Amended Complaint, BPWCP seeks declaratory relief under the Petroleum Marketing Practices Act [15 U.S.C. §§ 2801, *et seq.*] and damages for breach of contract (gasoline agreement), breach of contract – mini market agreement, breach of franchise guaranties, common count – goods sold and delivered, unjust enrichment, breach of contract (mini market loan agreement), breach of contract (mini market guaranties), and judicial foreclosure.

### B. STTN

Although Defendants and Counter Claimants have not yet filed their response to Plaintiff's Second Amended Complaint, Defendants and Counter Claimants anticipate seeking damages in the approximate amount of $1.7 million for

Plaintiff's breaches of the various agreements between the parties, its misrepresentations and its wrongful termination of the franchise agreements. In addition, Defendants and Counter Claimants anticipate seeking costs, attorneys fees and exemplary damages.

## VIII. SETTLEMENT AND ADR

The Parties are scheduled to mediate this matter before the Honorable (Ret.) Legge on August 11, 2008, in San Francisco, California.

## IX. SCHEDULING

BPWCP and the STTN Parties are not in agreement with respect to the proposed discovery, motion and trial schedule and each of the Parties propose the following:

A. **BPWCP's and ARCO's Proposed Schedule:**

| Description | Date |
| --- | --- |
| Initial expert witness disclosure | September 8, 2008 |
| Rebuttal expert witness disclosure | September 19, 2008 |
| Last day to amend pleadings or join parties | September 19, 2008 |
| Expert and fact discovery cut-off | November 17, 2008 |
| Motion cut-off | December 2, 2008 |
| Pre-trial Conference Discussion | December 23, 2008 |
| Date for Pre-trial Conference | January 2, 2009 |
| Trial (7-10 days) | February 2, 2009 |

B. **The STTN Parties' Proposed Schedule:**

| Description | Date |
| --- | --- |

| Initial expert witness disclosure | October 1, 2008 |
|---|---|
| Rebuttal expert witness disclosure | November 1, 2008 |
| Last day to amend pleadings or join parties | November 1, 2008 |
| Expert and fact discovery cut-off | December 1, 2008 |
| Motion (non-dispositive) cut-off | November 15, 2008 |
| Motion (dispositive) cut-off | December 14, 2008 |
| Settlement Conference | January 15, 2009 |
| Pre-trial Conference Discussion | February 15, 2009 |
| Date for Pre-trial Conference | February 22, 2009 |
| Trial (10 days) | March 16, 2009 |

Furthermore, BPWCP advises this Court that their counsel of record will be engaged in trials on other matters on the following dates:

- July 14, 2008 for approximately 2 weeks (matter pending in Los Angeles Superior Court/CCW before The Honorable Victoria Chaney).
- August 26, 2008 for approximately 2 weeks (matter pending in the U.S. District Court, Central District of California before The Honorable Philip S. Gutierrez).

Counsel for BPWCP is also unavailable December 15, 2008 through January 1, 2009.

Defendants advise this Court that their counsel of record will be engaged in trials on other matters on the following dates:

- August 27, 2008 for approximately three days in Fresno County Superior Court;
- September 18-26, 2008 for a binding arbitration;

14

**UPDATED JOINT REPORT OF THE PARTIES PURSUANT TO FED.R.CIV.PROC. RULE 26(f)**

1201631.1

- October 1, 2008 for approximately eight weeks in Orange County Superior Court;
- October 6, 2008 for approximately one week in Fresno County Superior Court;
- October 14-17, 2008 for approximately four days in Fresno Superior Court;
- October 27-31, 2008 for approximately five days in Tulare County Superior Court;
- November 17-21, 2008 for approximately five days in Merced County Superior Court;
- December 8, 2008 for approximately seven days in Fresno County Superior Court;
- January 20, 2009 for approximately seven days in Fresno County Superior Court;
- February 2-6, 2009 for approximately five days in U.S. District Court, Northern District in San Francisco;
- March 9, 2009 for approximately five days in Fresno County Superior Court; and
- April 13, 2009 for approximately five days in Fresno County Superior Court.

X.  **TRIAL ESTIMATE**

BPWCP and ARCO estimate that a trial in this action will require 7-10 days. Defendants estimate that a trial in this action will require ten (10) days.

## XI. ADDITIONAL PARTIES

At this time, unless discovery yields new evidence, the Parties do not anticipate the appearance of additional parties.

RESPECTFULLY SUBMITTED BY:

DATED: June 11, 2008

KURT OSENBAUGH
DEBORAH YOON JONES
SAYAKA KARITANI
**WESTON, BENSHOOF, ROCHEFORT, RUBALCAVA & MacCUISH LLP**

/s/
_____
Deborah Yoon Jones
Attorneys for Plaintiffs and Counter-Defendants
BP WEST COAST PRODUCTS LLC and
ATLANTIC RICHFIELD COMPANY

DATED: June 11, 2008

JOHN G. MICHAEL
**BAKER MANOCK & JENSEN, PC**

/s/
_____
John G. Michael
Attorneys for Defendants and Counterclaimants
STTN ENTERPRISES, INC., NAZIM FAQUIRYAN, SAYED FAQUIRYAN, MAGHUL FAQUIRYAN, and AVA GLOBAL ENTERPRISE, LLC