1  KURT OSENBAUGH (State Bar No. 106132)
2  DEBORAH YOON JONES (State Bar No. 178127)
   SAYAKA KARITANI (State Bar No. 240122)
3  **WESTON, BENSHOOF, ROCHEFORT,**
   **  RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
4  Sixteenth Floor
   Los Angeles, California 90071
5  Telephone:  (213) 576-1000
   Facsimile:  (213) 576-1100
6  Email:   kosenbaugh@wbcounsel.com
              djones@wbcounsel.com
7             skaritani@wbcounsel.com

8  Attorneys for Plaintiff and Counter-Defendant
   BP WEST COAST PRODUCTS LLC
9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12  BP WEST COAST PRODUCTS LLC, a          Case No.: C07 04808 JF
    Delaware Limited Liability Company,
13                                          **SECOND AMENDED COMPLAINT**
                                            **FOR:**
14          Plaintiff,

        v.                                 **(1)  DECLARATORY RELIEF**
15                                          **     UNDER THE PETROLEUM**
    STTN ENTERPRISES, INC., a California    **     MARKETING PRACTICES ACT**
16  Corporation; NAZIM FAQUIRYAN, an        **     [15 U.S.C. §§ 2801,** *et seq.***];**
    individual; SAYED FAQUIRYAN, an         **(2)  BREACH OF CONTRACT –**
17  individual; and MAGHUL FAQUIRYAN,       **     GASOLINE AGREEMENT;**
    an individual; and AVA GLOBAL           **(3)  BREACH OF CONTRACT –**
18  ENTERPRISE, LLC, a California limited    **     MINI MARKET AGREEMENT;**
    liability company,                      **(4)  BREACH OF FRANCHISE**
19                                          **     GUARANTIES;**
            Defendants.                     **(5)  COMMON COUNT – GOODS**
20                                          **     SOLD AND DELIVERED;**
                                            **(6)  UNJUST ENRICHMENT;**
21                                          **(7)  BREACH OF CONTRACT –**
                                            **     MINI MARKET LOAN**
22                                          **     AGREEMENT;**
                                            **(8)  BREACH OF MINI MARKET**
23                                          **     LOAN GUARANTIES; and**
                                            **(9)  JUDICIAL FORECLOSURE**
24
                                            Filing Date:  September 17, 2007
25  _____

26  AND RELATED CROSS-CLAIM.

27

28
                              1

1194164 1

Plaintiff BP West Coast Products LLC ("BPWCP") alleges as follows:

## SUMMARY OF CLAIMS

1.    This suit involves BPWCP's former gasoline station and mini market franchise located in Hollister, California.    BPWCP seeks damages and declaratory relief based upon Defendants' breaches of the applicable franchise agreements, breaches of a related loan agreement, and breaches of individual guaranties.

2.    The Defendants breached the franchise agreements by failing to pay for over $139,000 worth of ARCO-branded gasoline and failing to operate the station and sell gasoline product for approximately 15 consecutive days.    BPWCP bent over backwards to give Defendants multiple opportunities to correct the defaults. Defendants acknowledged their obligation to pay for the gasoline and BPWCP even agreed to a payment plan.    Nonetheless, Defendants failed to pay for the gasoline and failed to operate the station and sell gasoline product for at least 15 consecutive days in violation of the franchise agreements.    As such, BPWCP terminated the franchise agreements.

3.    By virtue of the franchise breaches, the Defendants have also defaulted on a $150,000 loan that was given by BPWCP to the franchisee for purposes of refurbishing the mini market store.    The loan was secured by the real property on which the gasoline station and mini market were located as well as the fixtures located thereon.    Given the franchise termination and Defendants' loan defaults, the entire loan indebtedness has accelerated and is now due.    Defendants are required to pay the $150,000 loan balance to BPWCP and, to date, they have refused to do so. Accordingly, BPWCP moves for judicial foreclosure on the $150,000 loan and seeks damages for breach of the loan agreement and guaranties.

1194164.1                                                                                **SECOND AMENDED COMPLAINT**

## **THE PARTIES**

4.    Plaintiff BPWCP is qualified to do business in California and is a limited liability company organized and existing under the laws of the State of Delaware.  BPWCP was, at all relevant times hereto, the franchisor for ARCO-branded service stations and am/pm mini market convenience stores including the facility at issue in this litigation.

5.    BPWCP is informed and believes that defendant STTN Enterprises, Inc. ("STTN") is, and at all relevant times hereto was, a California corporation, which has offices and does business in San Benito County, California. STTN is the former franchisee for the facility located at 631 San Felipe Road, Hollister, California 95035 (the "Station").

6.    BPWCP is informed and believes that defendant Nazim Faquiryan and Sayed Faquiryan are individuals residing in the City of Hollister, County of San Benito, State of California.  BPWCP is informed and believes that, at all relevant times hereto, Nazim Faquiryan and Sayed Faquiryan were and are the sole shareholders of STTN and individual guarantors for the Station franchise. BPWCP is also informed and believes that Sayed Faquiryan is the father of Nazim Faquiryan.

7.    BPWCP is informed and believes that defendant Maghul Faquiryan is an individual residing in the City of Hollister, County of San Benito, State of California.  BPWCP is informed and believes that, at all relevant times hereto, Maghul Faquiryan was and is the spouse of Sayed Faquiryan and an individual guarantor for the loans related to the Station franchise.

8.    BPWCP is informed and believes that defendant AVA Global Enterprises, LLC ("AVA Global") is, and at all relevant times hereto, was and is a California limited liability company, which has offices and does business in San Benito County, California.  AVA Global's address, according to the California Secretary of State business search website, is 631 San Felipe Road, Hollister, California (which is the same address as the Station).  At all relevant times, STTN

leased the real property upon which the Station is located ("Real Property") from AVA Global Enterprise, LLC ("AVA Global"). AVA Global is the fee simple owner of the Real Property. BPWCP is informed and believes that individual Defendant Nazim Faquiryan is one of the two equal shareholders of AVA Global. The other 50% shareholder of AVA Global is not named individually in this action.

9.   BPWCP is informed and believes that STTN, Nazim Faquiryan, Sayed Faquiryan, Maghul Faquiryan, and AVA Global, (collectively, "Defendants"), and each of them, in committing the acts and omissions alleged in this Second Amended Complaint acted as agents and servants of the other Defendants, acted within the scope of their authority as agents and servants of the other Defendants, acted in concert with the other Defendants with a design and for the purposes of injuring BPWCP and of unlawfully benefiting some or all of Defendants, or, in the alternative, approved and ratified the acts and omissions of the other Defendants or third parties, such that each of the Defendants is jointly and severally liable for the acts and omissions of each other Defendants.

## JURISDICTION AND VENUE

10.   This action concerns, *inter alia*, the termination of a service station franchise relationship, which is governed by the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801, *et seq.* (the "PMPA"). Accordingly, this Court has jurisdiction over BPWCP's claims, by virtue of 28 U.S.C. § 1331 and 15 U.S.C. § 2805(a), and this Court's pendent jurisdiction. Furthermore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1338(a) and (b), and 28 U.S.C. § 2201, because this is a civil action seeking declaratory relief under the PMPA. The amount in controversy exceeds the sum or value of $75,000.00.

11.   Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to BPWCP's claims occurred in this District; because the subject franchise is located

4

1  in this District; and because BPWCP is informed and believes that the individual

2  Defendants reside in this District.

3

4  ## GENERAL ALLEGATIONS

5  ## The Franchise Agreements

6      12.    BPWCP is engaged in the marketing and distribution of motor fuel

7  in the State of California and elsewhere in the United States.  BPWCP currently has

8  ARCO-branded gasoline stations with am/pm mini market convenience stores located

9  throughout the Western States.  Among its activities, BPWCP sells ARCO-branded

10  motor fuels to franchisees and, at certain of its properties, BPWCP offers am/pm mini

11  market convenience store franchises to be operated concurrently with the gasoline

12  stations.  Pursuant to franchise agreements, BPWCP licenses to its franchisee dealers

13  the right to use ARCO's trade names, trademarks, and service marks in connection

14  with the resale of ARCO-branded motor fuels and the operation of the am/pm mini

15  market convenience stores; Franchisee dealers pay a royalty for use of this right.

16  ARCO is the registered owner of these trademarks, service marks, and trade names

17  and has the right to enforce any violations thereof.  BPWCP has the right to utilize

18  these marks in connection with its ARCO and am/pm franchises.

19      13.    The franchise relationship between STTN and BPWCP is governed

20  by written agreements, principal among them are: (1) a Contract Dealer Gasoline

21  Agreement, which includes any and all amendments and addendums ("Gasoline

22  Agreement"), and (2) an am/pm Mini Market Agreement, which includes any and all

23  amendments and addendums ("Mini Market Agreement").  The Gasoline Agreement

24  and Mini Market Agreement are each effective as of July 11, 2006.  True and correct

25  copies of the Gasoline Agreement and Mini Market Agreement are attached hereto as

26  Exhibit A and Exhibit B, respectively, and are incorporated herein as though fully set

27  forth at length.  The Gasoline Agreement and Mini Market Agreement contain an

28  expiration date of July 12, 2026.

1194164 1                                         **SECOND AMENDED COMPLAINT**

14. On June 20, 2006, Defendants Sayed Faquiryan and Nazim Faquiryan each signed a Guaranty Agreement and individually guaranteed the obligations owed by STTN to BPWCP under the Mini Market Agreement and Gasoline Agreement ("Franchise Guaranties"). True and correct copies of the Franchise Guaranties are collectively attached hereto as Exhibit C, and are incorporated herein as though fully set forth at length.

15. Effective October 12, 2006, STTN entered into a 1-year trial franchise for gasoline only during the remodeling of the mini market store located at the Station. As such, STTN signed an Amendment to the Contract Dealer Gasoline Agreement ("Amendment to Gasoline Agreement") and a 1-year Contract Dealer Gasoline Agreement, which includes any and all amendments and addendums ("1-year Gasoline Agreement"). True and correct copies of the Amendment and 1-year Gasoline Agreement are attached hereto as Exhibit D and Exhibit E, respectively, and are incorporated herein as though fully set forth at length. The Mini Market Agreement, the Gasoline Agreement, the Amendment, the 1-year Gasoline Agreement, and the Franchise Guaranties shall be referred to collectively as the "Franchise Agreements." Paragraph 5 of the Amendment to Gasoline Agreement provides that all terms and provisions of the Gasoline Agreement, as previously amended or supplemented, except those specifically changed by the Amendment to Gasoline Agreement, shall remain in full force and effect. [Exhibit D, ¶ 5.]

16. The purposes of the Franchise Agreements are to provide locations at which ARCO-branded petroleum products can be sold to the public by franchisees such as STTN, and to provide locations where customers of the service stations may purchase store goods.

17. The Franchise Agreements set forth the obligations and undertakings required of STTN, which are material to the operation of a BPWCP franchise. The pertinent provisions of the Franchise Agreements provide, *inter alia*, that:

6

**SECOND AMENDED COMPLAINT**

1        (a)    The franchisee must "exert good faith efforts to carry out the

2    provisions of this Agreement following written notice to Buyer from BPWCP of such

3    failure and fifteen calendar days to cure such failure." [See Gasoline Agreement,

4    ¶ 17.1(a), Exhibit A; 1-year Gasoline Agreement, ¶ 17.1(a), Exhibit E.];

5        (b)    The franchisee is also required to "order and make available

6    for retail sale all grades of Gasoline which BPWCP offers to Buyer (hereinafter

7    collectively, "Product"), in amounts sufficient to satisfy all foreseeable retail customer

8    demand for Product at the Premises and will at all times have available for sale some

9    of each grade of Product . . . ." [See Gasoline Agreement, Article 2, Exhibit A; 1-year

10    Gasoline Agreement, Paragraph entitled "Orders" at page 1, Exhibit E.];

11        (c)    The franchisee is also required to "pay the price specified by

12    BPWCP in effect at the time and place of delivery for purchasers of Buyer's class of

13    trade" and by "electronic funds transfer initiated by BPWCP, wire transfer, cashier's

14    check or business check, whichever BPWCP directs, delivered by Buyer at the time

15    and place as designated by BPWCP." [See Gasoline Agreement, Articles 5 and 6,

16    Exhibit A; 1-year Gasoline Agreement, Articles 5 and 6, Exhibit E.]; and

17        (d)    The franchisee is also required to conduct all of its

18    operations of the Station, including the Mini Market, under the terms and conditions

19    of each of the Franchise Agreements. [See Mini Market Agreement, Section 4.05,

20    Exhibit B.]

21

22                    **The Loan Agreements**

23       18.    In addition to the requirements concerning operation of the Station,

24    the Franchise Agreements also required STTN to complete a remodel or retrofit of the

25    Station within nine (9) months of the commencement of the franchise relationship.

26    [See Gasoline Agreement, Section 1.2, Exhibit A; 1-year Gasoline Agreement,

27    Section 1.2, Exhibit E; Mini Market Agreement, Section 5.03(a), Exhibit B.] BPWCP

28    assists its franchisees in complying with these "remodel and retrofit" requirements by

**SECOND AMENDED COMPLAINT**

offering a special loan program to provide funds specifically for completing construction and remodeling at its franchise locations. Specific details of the loan program are described below, however, generally, under BPWCP's loan program if a franchisee meets certain yearly gallonage and store sale requirements a portion of the loan is deemed repaid at the end of each year term. Thus, as long as a franchisee sells a specified amount of gasoline product and/or store products each year for the duration of the loan term, the loan payments for that year are deemed repaid. Furthermore, the franchisee enjoys the use of a remodeled and retrofitted station which, in turn, attracts more customers and therefore generates more income and profit for the franchisee.

19.    On February 12, 2007, BPWCP and STTN entered into two Loan Agreements, whereby BPWCP agreed to loan STTN the total sum of $475,000 to be used toward BPWCP-approved capital improvements for the Station.

**The am/pm Mini Market Loan Agreement**

20.    The first loan agreement - - the "am/pm Mini Market Loan Agreement" - - provided a base loan in the amount of $150,000 to fund the costs associated with pre-approved modifications and/or equipment and improvements to the am/pm Mini Market (hereinafter, "Store Loan Agreement" ). The Store Loan Agreement also included an additional $75,000 that BPWCP could elect to disburse for refreshing and refurbishing the am/pm Mini Market on the eleventh anniversary of the base loan disbursement. A true and correct copy of the Store Loan Agreement is attached hereto as Exhibit F, and is incorporated herein as though fully set forth at length.

21.    Pursuant to the Store Loan Agreement, the loan was interest-free but was conditioned upon Defendants' agreement to pay five percent (5%) of the loaned amount each year over the course of 20 years, or alternatively, sell merchandise in the am/pm Mini Market in the Annual Guaranteed Amount of at least

**SECOND AMENDED COMPLAINT**

1    $960,000 each year.  If Defendants sold $960,000 in gross sales of merchandise in the

2    am/pm Mini Market in a year, BPWCP would deem the loan payment for that year as

3    repaid.

4                22.    In addition, pursuant to the terms of the Store Loan Agreement, the

5    loan funds were to be disbursed directly to the third parties who were retained to

6    complete the construction, remodeling and retrofitting.  To ensure that all conditions

7    for disbursement were met, STTN and BPWCP entered into a Disbursement

8    Agreement that sets forth the terms and conditions governing disbursements of

9    funding.  The Disbursement Agreement is specifically referenced in the Store Loan

10   Agreement, and a true and correct copy is attached hereto as <u>Exhibit G</u>, and is

11   incorporated herein as though fully set forth at length.  The Disbursement Agreement

12   provides, in pertinent part, that:

13              "Construction Loan Proceeds will be disbursed from time to

14              time upon receipt by BP West Coast Products LLC or its

15              designee of Pay Vouchers, executed by [STTN] and

16              Contractor, accompanied by original detailed invoices, . . .

17              and BP West Coast Products LLC or its designee have the

18              right to withhold payment on any and all Pay Vouchers if

19              supporting documentation reasonably requested is not

20              provided.  This may include original invoices, job inspection

21              card copy, IRS form W-9, appropriate lien releases for labor

22              and/or materials, receipts, photos, revised cost breakdown

23              and    Affidavit    and    Certification    of    Completion    of

24              Builder/Contractor."

25   [See Disbursement Agreement, Paragraph 3, <u>Exhibit G</u>.]   As such, the Store Loan

26   Agreement did <u>not</u> call for a lump sum payment to the Defendants but rather release

27   of funds were contingent upon (a) specified work being completed at the Station, and

28   (b) documentation to support payment of that work by STTN.

9

1194164.1                                                      **SECOND AMENDED COMPLAINT**

23. STTN agreed to the terms of the Store Loan Agreement, and Nazim Faquiryan and Sayed Faquiryan signed all necessary loan paperwork on behalf of STTN. The Store Loan Agreement was secured by a recorded Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") on the real property upon which the Station was located ("Real Property"). AVA Global, as the owner of the Real Property, executed the Deed of Trust dated March 2, 2007 and recorded on March 9, 2007, which irrevocably granted BPWCP the power of sale of all of AVA Global's right, title and interest in the Real Property. A true and correct copy of the Deed of Trust is attached hereto as Exhibit H, and is incorporated herein as though fully set forth at length. AVA Global, BPWCP and STTN also entered into a "Consent to Encumbrance of Tenant's Interest" dated March 2, 2007 and recorded on March 9, 2007 ("Consent to Encumbrance"). The Consent to Encumbrance created a leasehold mortgage encumbering STTN's leasehold estate in the Lease and Real Property ("Leasehold Mortgage"). A true and correct copy of the Consent to Encumbrance is attached hereto as Exhibit I, and is incorporated herein as though fully set forth at length. In addition, STTN executed a Promissory Note evidencing the Store Loan. A true and correct copy of the executed Promissory Note is attached hereto as Exhibit J and is incorporated herein as though fully set forth at length.

24. BPWCP's secured interest in the Real Property is second only to senior lienholder Excel National Bank who maintains a first deed of trust on the Real Property in the amount of approximately $1,987,000.

25. In addition, the Store Loan Agreement was secured by a UCC-1 Financing Statement ("UCC-1") on the personal property located on or affixed to the Real Property or the Improvements and other property more fully described in the attachments to the UCC-1. A true and correct copy of the UCC-1 is attached hereto as Exhibit K, and is incorporated herein as though fully set forth at length.

26. As of May 29, 2007, the full amount of $150,000 was funded and disbursed for Defendants' benefit pursuant to the Store Loan Agreement.

**The Gasoline Loan Agreement**

27.    The second loan agreement - - the "Gasoline Loan Agreement" - - in the amount of $250,000 was to fund costs associated with the pre-approved modifications and/or equipments and improvements which pertain to the gasoline sales-related aspects of the Station (i.e., dispensers, canopy, etc.).  Disbursement of the funds under the Gasoline Loan Agreement was contingent upon STTN abiding by requirements similar to those applicable to the Store Loan Agreement.  However, STTN failed to provide sufficient financial documents, including proof of any payment by STTN of any construction-related expenditures, required back-up invoices and/or lien releases, all of which are requirements of the Gasoline Loan Agreement and related Disbursement Agreement.  As a result of STTN's failures to abide by the terms of the Gasoline Loan Agreement and related Disbursement Agreement, BPWCP has not disbursed (and will not be disbursing) any monies under the Gasoline Loan to STTN.

**The Loan Guaranties**

28.    Defendants Sayed Faquiryan, Maghul Faquiryan (Sayed Faquiryan's spouse), and Nazim Faquiryan each signed a Guaranty Agreement and individually guaranteed the loan obligations owed by STTN to BPWCP under the Store Loan Agreement ("Loan Guaranties").  True and correct copies of the Loan Guaranties are collectively attached hereto as Exhibit L, and are incorporated herein as though fully set forth at length.

**STTN Breached the Franchise Agreements**

29.    Among other things, STTN was required, pursuant to the Franchise Agreement, to maintain adequate supplies of gasoline for sale and make payments for gasoline deliveries. [See Gasoline Agreement, Article 2, Exhibit A; 1-year Gasoline

11

**SECOND AMENDED COMPLAINT**

1    Agreement, Paragraph entitled "Orders" at page 1, <u>Exhibit E</u>.]  Payment for gasoline

2    product was accomplished by way of an electronic funds transfer ("EFT") from

3    STTN's bank account.

4        30.    However, as of January 29, 2007, BPWCP began requiring STTN

5    to present a cashier's check in order to receive gasoline product because numerous

6    EFT requests pertaining to gasoline deliveries were returned for insufficient funds by

7    STTN's bank.  In other words, STTN failed to pay BPWCP for the gasoline product

8    that had been delivered.

9        31.    When a franchisee is found to be in violation of the Franchise

10   Agreements, BPWCP issues a written "Default Notice" describing the violation

11   ("Default").  The Default is then sent to the franchisee via certified mail, giving the

12   franchisee an opportunity to cure the violation.  BPWCP issued a number of Defaults

13   based upon STTN's repeat operational violations for failure to accept gasoline

14   delivery and to make payment for gasoline that was delivered and payable upon

15   receipt.  True and correct copies of all Defaults pertaining to STTN's failure to pay for

16   gasoline product deliveries are attached hereto as <u>Exhibit M</u> and are incorporated

17   herein as though fully set forth at length.

18       32.    STTN readily admits that they owe the money to BPWCP for

19   various gasoline deliveries.   Indeed, Nazim Faquiryan and Sayed Faquiryan

20   acknowledged and agreed to in writing in a letter dated May 4, 2007, that they will

21   pay $30,000 per month until the total outstanding balance of the gasoline debt is paid

22   in full.  A true and correct copy of the letter agreement to pay the gasoline debt signed

23   by Nazim Faquiryan and Sayed Faquiryan is attached hereto as <u>Exhibit N</u> and is

24   incorporated herein as though fully set forth at length.

25       33.    To date, STTN has failed to pay for the gasoline.   The current

26   outstanding balance for the gasoline product that Defendants failed to reimburse

27   BPWCP for gasoline product delivered is One Hundred Thirty-Nine Thousand, Nine

28   Hundred Fifty Dollars and Eighty-Seven Cents ($139,950.87).

**SECOND AMENDED COMPLAINT**

34.    In addition to Defendants' failure to sell gasoline, commencing on August 23, 2007 through at least September 6, 2007, STTN failed to operate the Station and sell gasoline product for at least 15 consecutive days in violation of the Franchise Agreements.

## BPWCP Terminates the STTN Franchise

35.    Given STTN's continuing breach of the Franchise Agreements, BPWCP sent a Notice of Termination letter dated September 6, 2007, to STTN, advising that the Franchise Agreements would be immediately terminated ("Termination Notice").    A true and correct copy of the Termination Notice is attached hereto as Exhibit O and is incorporated herein as though fully set forth at length.

36.    The Termination Notice referenced the 20-year Gasoline Agreement and Mini Market Agreement entered into on July 11, 2006 (collectively, "20-year Agreements," and which are attached hereto as Exhibits A and B).    As plead earlier, the Gasoline Agreement was amended per the Amendment to Gasoline Agreement [Exhibit D] and 1-year Gasoline Agreement [Exhibit E].

37.    The essential elements of the PMPA notice requirement under Section 2804(c) provide that the manner and form of notification shall contain:

(a)    A statement of intention to terminate the franchise and the reasons for termination;

(b)    The date on which such termination takes effect; and

(c)    The statutory summaries prepared and published in the Federal Register and required under Section 2804(d).

38.    BPWCP's Termination Notice properly and adequately (1) advises STTN of the grounds for termination of the gasoline and convenience store franchise, (2) provides a clear statement of the intent to terminate, (3) specifies the termination

SECOND AMENDED COMPLAINT

1194164.1

date, and (4) includes a summary statement of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801, *et seq.* (the "PMPA").

39.    The Franchise Agreements provide that BPWCP may terminate the Franchise Agreements for various reasons which include, but are not limited to, the following:

(a)    Failure to exert good faith efforts to carry out the provisions of the Franchise Agreements following written notice and opportunity to cure [See Gasoline Agreement, Section 17.1(a), Exhibit A; 1-year Gasoline Agreement, Section 17.1(a), Exhibit E.];

(b)    Failure to timely pay all sums due to which BPWCP is legally entitled [See Gasoline Agreement, Section 17.1(h), Exhibit A; 1-year Gasoline Agreement, Section 17.1(h), Exhibit E.];

(c)    Failure to operate the Premises for seven (7) consecutive calendar days, or lesser period, which constitutes an unreasonable period of time [See Gasoline Agreement, Section 17.1(i), Exhibit A; 1-year Gasoline Agreement, Section 17.1(i), Exhibit E.];

(d)    Breach of any material provision of the Gas Agreement, including without limitation, "Buyer's failure to order and make available for sale quantities of each grade of Product which are sufficient to satisfy foreseeable customer demand." [See Gasoline Agreement, Section 17.1(o), Exhibit A; 1-year Gasoline Agreement, Section 17.1(o), Exhibit E.]; and

(e)    Termination of any one other franchise agreement (e.g., Gas Agreement) when there is "Concurrent Operations at the Premises," in which "Concurrent Operations" is defined as the operation of the am/pm Mini Market in conjunction with another or more than one other BPWCP franchise. [See Sections 4.05 and 18.05 of the Mini Market Agreement, Exhibit B.]

**SECOND AMENDED COMPLAINT**

40.    The pertinent provisions of the Petroleum Marketing Practices Act, 28 U.S.C. §2801, *et seq.* ("PMPA") allow, *inter alia*, for termination upon the occurrence of the any of the following:

(a)    Failure by the franchisee to comply with a reasonable and material provision of the franchise [28 U.S.C. § 2802(b)(2)(A)];

(b)    Failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise [28 U.S.C. § 2802(b)(2)(B)];

(c)    Occurrence of an event which is relevant to the franchise relationship as a result of which termination of the franchise relationship is reasonable [28 U.S.C. § 2802(b)(2)(C)]; and

(d)    Failure by the franchisee to operate the marketing premises for 7 consecutive days, or such lesser period which under the facts and circumstances constitutes an unreasonable period of time [28 U.S.C. § 2802(c)(9)].

41.    Furthermore, given Defendants' long-standing debt owed to BPWCP for unpaid gasoline, their failure to operate the Station and sell gasoline for at least 15 consecutive days, and the numerous opportunities given by BPWCP to Defendants to cure the defaults, the termination was effective immediately as it was not reasonable for BPWCP to provide any additional notice to STTN.  [28 U.S.C. § 2804(b).]

42.    The Franchise Agreements provide that STTN will owe BPWCP certain sums upon termination.  Specifically, Article 19.01(d) of the Mini Market Agreement states that, upon termination, STTN shall owe BPWCP liquidated damages.  [See Exhibit B.]

43.    Accordingly, BPWCP terminated the Franchise Agreements on the grounds that STTN:

(a)    failed to have any gasoline products available for sale to the motoring public for at least 15 consecutive days, despite the fact that BPWCP sent STTN a total of twelve Defaults for failure to offer all grades of gasoline for sale (true

15

1194164.1

and correct copies of which are included in <u>Exhibit M</u> and are dated August 24 through 31, 2007 and September 1 through 4, 2007); and

(b)    failed to timely pay BPWCP for gasoline products in a timely manner, incurring an outstanding balance of $126,194.77, as of September 6, 2007, for gasoline product deliveries that are due and payable at the time of delivery.

## STTN Defaulted on the Store Loan Agreement

44.    In addition to the Franchise Agreement breaches, STTN also defaulted on the Store Loan Agreement.  Pursuant to the Store Loan Agreement, STTN must repay the outstanding balance of the loan in full to BPWCP within 30 days of the occurrence of an "Event of Default."  Paragraph 4 of the Loan Agreement provides the pertinent "Events of Default," which include, but are not limited to, the following:

(a)    "The [Mini Market Agreement] is terminated by either Lender or Borrower prior to the end of its stated term" [See Store Loan Agreement, Section 4.5, <u>Exhibit F</u>.];

(b)    A default or "Event of Default" shall have occurred under any of the other Loan Documents" [See Store Loan Agreement, Section 4.10, <u>Exhibit F</u>.];

(c)    "The Borrower fails to sell Products continuously at the Facility . . . . " [See Store Loan Agreement, Section 4.4, <u>Exhibit F</u>.]; or

(d)    "The failure by the Borrower to make any payments of principal of or interest and any other indebtedness secured by the Property, or there shall occur any other event that would permit the holder of such indebtedness to accelerate the maturity thereof." [See Store Loan Agreement, Section 4.12, <u>Exhibit F</u>.].

45.    In the Termination Notice, BPWCP demanded that STTN repay the outstanding balance of the Store Loan within 30 days of the termination

16

1194164.1

(October 5, 2007), pursuant to the Store Loan Agreement and Promissory Note. As of September 5, 2007, the outstanding balance on the Store Loan Agreement was $150,000.00. [See Termination Notice, Exhibit O.]

46.    To date, STTN has failed and refused to pay the outstanding balance due pursuant to the Store Loan Agreement.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief Under The Petroleum Marketing Practices Act)

### (By Plaintiff BPWCP Against STTN Enterprises, Inc.)

47.    The allegations of paragraphs 1 through 46 above are incorporated herein by reference as though fully set forth herein.

48.    There presently exists an actual controversy within this Court's jurisdiction between BPWCP, on the one hand, and STTN, on the other hand, in that BPWCP asserts that:

(a)    STTN's franchise and the franchise relationship with BPWCP were terminated pursuant to Termination Notice dated September 6, 2007 [Exhibit O];

(b)    Pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. Section 2802, and the terms of the Franchise Agreements between the parties, BPWCP was entitled to terminate STTN's franchise at the Station;

(c)    BPWCP's grounds for terminating STTN's franchise were legitimate and non-discriminatory; and

(d)    The Termination Notice was delivered on the earliest date reasonably practicable, and were otherwise reasonable under 15 U.S.C. § 2804(b).

49.    BPWCP is informed and believes and on that basis alleges, that STTN disputes each of BPWCP's aforementioned assertions.

50.    Defendants disagree with the above, and moreover, threatened to pursue legal remedies against BPWCP in a letter from Defendants sent to BPWCP and

1194164.1                                                    **SECOND AMENDED COMPLAINT**

dated September 12, 2007. A true and correct copy of this letter is attached hereto as Exhibit P.

51. By reason of STTN's conduct as described above, BPWCP is entitled to a declaratory judgment under 28 U.S.C. Section 2201, stating that:

(a) The relationship between STTN and BPWCP was that of a franchise relationship as defined and provided by Section 2801 of the PMPA;

(b) STTN's failure to discharge and comply with the terms, conditions and obligations of the Franchise Agreements is detailed in the Termination Notice [Exhibit O], constituted a failure to comply with provisions of the franchise which were reasonable and materially significant, a failure to carry out the provisions of the franchise, and constituted events which were relevant to the franchise relationship, the result of which the franchise termination by BPWCP was reasonable under the PMPA;

(c) Under the PMPA, BPWCP lawfully terminated STTN's franchise and franchise relationship concerning the Franchise;

(d) Under the terms of the Franchise Agreements, BPWCP lawfully terminated STTN's franchise and franchise relationship concerning the Franchise;

(e) Under the terms of the Mini Market Agreement, BPWCP lawfully terminated STTN's franchise and franchise relationship concerning the Station;

(f) The Termination Notice was reasonable and appropriate under 15 U.S.C. § 2802(b)(2)(A) (failure by the franchisee to comply with any provision of the franchise which is both reasonable and materially significant to the franchise relationship); Section 2802(b)(2)(B) (failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise); Section 2802(b)(2)(C) (the occurrence of an event which is relevant to the franchise relationship and as a result of

18

1194164.1

1  which termination of the franchise is reasonable); and Section 2802(c)(9) (failure by

2  the franchisee to operate the marketing premises for 7 consecutive days);

3          (g)    Pursuant to 15 USC § 2804(b), BPWCP's Notice of

4  Termination calling for the termination effective immediately was proper because it

5  would not have been reasonable for BPWCP to furnish 90 days notification;

6          (h)    BPWCP is entitled to liquidated damages under Article

7  19.01(d) of the Mini Market Agreement; and

8          (i)    BPWCP is entitled to collect any and all other sums due

9  pursuant to the Franchise Agreements between the parties.

10

11  ## SECOND CLAIM FOR RELIEF

12  ### (Breach of Gasoline Agreement)

13  ### (By Plaintiff BPWCP Against STTN Enterprises, Inc.)

14          52.    The allegations of paragraphs 1 through 51 above are incorporated

15  herein by reference as though fully set forth herein.

16          53.    BPWCP has fully performed all of its requirements pursuant to the

17  parties' Gasoline Agreement.

18          54.    STTN has breached multiple provisions of the Gasoline Agreement

19  by, *inter alia*:

20          (a)    Failing to have any gasoline products available for sale to

21  the motoring public for at least 15 consecutive days.  In fact, STTN had taped off the

22  Station dispensers from any use by customers, and did not sell any gasoline from

23  August 23, 2007 through at least September 6, 2007; and

24          (b)    Failing to timely pay BPWCP for gasoline products in a

25  timely manner.  As of September 6, 2007, STTN had an outstanding balance of One

26  Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-

27  Seven Cents ($126,194.77) for gasoline product deliveries that were due and payable

28

1194164.1

**SECOND AMENDED COMPLAINT**

1  at the time of delivery. In fact, STTN issued several checks that were returned by

2  STTN's bank because STTN had insufficient funds.

3        55.   As a proximate result of STTN's breach, BPWCP has been

4  damaged in an amount to be determined at trial, but no less than One Hundred Thirty-

5  Nine Thousand, Nine Hundred Fifty Dollars and Eighty-Seven Cents ($139,950.87),

6  which is the total outstanding amount due for gasoline product delivered to the

7  Station, and after applying Defendants' security deposit and other advance payments

8  as of May 23, 2008.

9

10          **THIRD CLAIM FOR RELIEF**

11          **(Breach of Mini Market Agreement)**

12      **(By Plaintiff BPWCP Against STTN Enterprises, Inc.)**

13        56.   The allegations of paragraphs 1 through 55 above are incorporated

14  herein by reference as though fully set forth herein.

15        57.   BPWCP has fully performed all of its requirements pursuant to the

16  Mini Market Agreement.

17        58.   STTN has breached Section 4.05 of the Mini Market Agreement

18  by, *inter alia*, breaching the Gasoline Agreement, as described in full in the second

19  claim for relief. Section 4.05 requires that all "Concurrent Operations at the

20  Premises" be conducted and governed by the terms and conditions and provisions of

21  the applicable Franchise Agreement, i.e., the Gasoline Agreement. [See Mini Market

22  Agreement, Section 4.05 Exhibit B.].

23        59.   As a proximate result of STTN's breach, BPWCP has been

24  damaged in an amount to be determined at trial.

25        60.   In addition, the Mini Market Agreement contains a liquidated

26  damages provision. Article 19.01(d) of the Mini Market Agreement provides that

27  "Operator shall pay to [BWPCP] at the time of termination, as liquidated damages and

28  not as penalty, the greater of: (a) the total minimum royalty fee which would have

**SECOND AMENDED COMPLAINT**

1  been payable under the [Mini Market Agreement] from the date of termination of the
2  [Mini Market Agreement] through the end of the term provided for in the [Mini
3  Market Agreement]; or (b) for each month from the date of termination of the [Mini
4  Market Agreement] through the end of the term provided in the [Mini Market
5  Agreement], the actual average royalty fee for any months that the Store was
6  operational prior to termination of the [Mini Market Agreement]."  Given BPWCP's
7  termination of the Mini Market Agreement effective September 6, 2007, the total
8  amount due to BPWCP for liquidated damages is Two Hundred Thirty-Five Thousand
9  and Zero Cents ($235,000.00).

10

11  **FOURTH CLAIM FOR RELIEF**
12  **(Breach of Franchise Guaranties)**
13  **(By Plaintiff BPWCP Against**
14  **Nazim Faquiryan and Sayed Faquiryan.)**

15      61.  The allegations of paragraphs 1 through 60 above are incorporated
16  herein by reference as though fully set forth herein.

17      62.  Sayed Faquiryan and Nazim Faquiryan each executed and
18  delivered to BPWCP the Franchise Guaranties, guaranteeing any and all indebtedness
19  of STTN with respect to both the Store Loan Agreement and the Gasoline Loan
20  Agreement.  [See Franchise Guaranties, Exhibit C.]

21      63.  STTN is currently indebted to BPWCP in an amount of not less
22  than $139,950.87.  BPWCP has made demands for payment of this sum on Sayed
23  Faquiryan and Nazim Faquiryan, who have, to date, failed to make these payments.
24  As such, Sayed Faquiryan and Nazim Faquiryan are in breach of the obligations under
25  the Franchise Guaranties.  Sayed Faquiryan and Nazim Faquiryan are also liable for
26  liquidated damages in the amount of $235,000.00 owed to BPWCP pursuant to the
27  Mini Market Agreement and according to proof.

28

21

**SECOND AMENDED COMPLAINT**

1

## FIFTH CLAIM FOR RELIEF

2

### (Common Count: Goods Sold and Delivered)

3

### (By Plaintiff BPWCP Against

4

### STTN Enterprises, Inc., Nazim Faquiryan, and Sayed Faquiryan.)

5        64.    The allegations of paragraphs 1 through 63 above are incorporated

6    herein by reference as though fully set forth herein.

7        65.    On or about September 5, 2007, at 631 San Felipe Road, Hollister,

8    California 95035, Defendants became indebted to BPWCP in the sum of One Hundred

9    Thirty-Nine Thousand, Nine Hundred Fifty Dollars and Eighty-Seven Cents

10   ($139,950.87) for gasoline sold by BPWCP and delivered to STTN.

11       66.    BPWCP has repeatedly demanded payment from Defendants. The

12   last demand was made on September 6, 2007.  [See Exhibit O.]

13       67.    No payment has been made by Defendants to BPWCP, and there is

14   now due BPWCP and owed from Defendants at least the principal sum of One

15   Hundred Thirty-Nine Thousand, Nine Hundred Fifty Dollars and Eighty-Seven Cents

16   ($139,950.87).

17

18

## SIXTH CLAIM FOR RELIEF

19

### (Unjust Enrichment)

20

### (By Plaintiff BPWCP Against

21

### STTN Enterprises, Inc., Nazim Faquiryan, and Sayed Faquiryan.)

22       68.    The allegations of paragraphs 1 through 67 above are incorporated

23   herein by reference as though fully set forth herein.

24       69.    STTN, as well as Nazim Faquiryan and Sayed Faquiryan as

25   guarantors, obtained the benefit of receiving deliveries of gasoline in that they have

26   not paid for the gasoline but have been able to sell and profit from the gasoline that

27   was delivered by BPWCP.

28

1194164.1                                    SECOND AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

70.     On May 4, 2007, Nazim Faquiryan and Sayed Faquiryan sent a letter agreement to BPWCP, promising that STTN would make monthly payments of Thirty Thousand Dollars ($30,000) by certified check payable to BPWCP on or before the 15 day of each month beginning June 20, 2007 until the total outstanding balance owed for the gasoline delivered has been paid off.  [See Exhibit N.]

71.     Despite reaping such benefits and agreeing to make monthly installments, Defendants still have not made any payments to BPWCP for the gasoline product.

72.     As set forth in the above-paragraphs, Defendants' failure to compensate BPWCP constitutes unjust enrichment and has damaged BPWCP in the amount of at least One Hundred Thirty-Nine Thousand, Nine Hundred Fifty Dollars and Eighty-Seven Cents ($139,950.87), plus interest.

### SEVENTH CLAIM FOR RELIEF
#### (Breach of Store Loan Agreement)
#### (By Plaintiff BPWCP Against
**STTN Enterprises, Inc., Nazim Faquiryan, and Sayed Faquiryan.)**

73.     The allegations of paragraphs 1 through 72 above are incorporated herein by reference as though fully set forth herein.

74.     BPWCP has fully performed all of its requirements pursuant to the Store Loan Agreement.

75.     STTN breached Article 4 of the Store Loan Agreement by failing to repay the outstanding balance of the Store Loan in full to BPWCP within 30 days of the occurrence of an Event of Default.  The Store Loan Agreement requires STTN to repay the outstanding balance of the Store Loan within 30 days of the occurrence of an Event of Default.  The termination of the Franchise Agreements is an Event of Default. [See Store Loan Agreement, Section 4.5, Exhibit F.]

**SECOND AMENDED COMPLAINT**

1    76.    As of September 5, 2007, the day before the date of termination, STTN's outstanding balance due on the Loan was $150,000.00. Pursuant to the Store Loan Agreement, the loan balance was due to BPWCP no later than October 5, 2007. To date, the loan balance on the Store Loan has not been repaid by Defendants.

77.    As a result of STTN's breach of the Store Loan Agreement, BPWCP has been damaged in the amount of $150,000, plus interest. In addition, the Store Loan Agreement provide that Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan will reimburse BPWCP on demand for all expenses, including reasonable attorneys' fees incurred by BPWCP in collecting or enforcing the Store Loan Agreement, together with interest thereon. [See Article 9.9 of the Store Loan Agreement, Exhibit F.] It has become necessary for BPWCP to engage the law firm of Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP to bring this action, and BPWCP is entitled to further and additional sums for reasonable attorneys' fees herein.

## EIGHTH CLAIM FOR RELIEF

### (Breach of Loan Guaranties)

### (By Plaintiff BPWCP Against

### Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan.)

78.    The allegations of paragraphs 1 through 77 above are incorporated herein by reference as though fully set forth herein.

79.    Nazim Faquiryan, and Sayed Faquiryan, and Maghul Faquiryan (as Sayed Faquiryan's spouse), each executed and delivered to BPWCP the Loan Guaranties, guaranteeing any and all indebtedness of STTN with respect to the Loan Agreements. [See Loan Guaranties, Exhibit L.] As such, Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan, as individual guarantors, are liable for damages as provided by the Store Loan Agreement in the amount of $150,000.00 plus interest.

24

**SECOND AMENDED COMPLAINT**

80.     STTN is currently indebted to BPWCP in an amount of not less than One Hundred Fifty Thousand Dollars ($150,000).  BPWCP has made demands for payment of this sum on Sayed Faquiryan, Nazim Faquiryan, and Maghul Faquiryan, who have, to date, failed to make these payments.  As such, Sayed Faquiryan and Nazim Faquiryan are in breach of the obligations under the  Loan Guaranties.  Moreover, Sayed Faquiryan and Nazim Faquiryan are liable for liquidated damages owed to BPWCP pursuant to the Mini Market Loan Agreement at the time of the occurrence of an Event of Default and according to proof.  Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan have breached the Loan Guaranties.

81.     As a result of the breaches of the Loan Guaranties, BPWCP has been damaged in an amount of not less than $150,000 plus interest.

82.     In addition, the Loan Guaranties provide that Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan will reimburse BPWCP on demand for all expenses, including reasonable attorneys' fees incurred by BPWCP in collecting or enforcing the Loan Guaranties, together with interest thereon.  [See Article 7 of the Loan Guaranties, Exhibit L.]  It has become necessary for BPWCP to engage the law firm of Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP to bring this action, and BPWCP is entitled to further and additional sums for reasonable attorneys' fees herein.

11194164 1

**SECOND AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NINTH CLAIM FOR RELIEF

### (Unified Judicial Foreclosure)

### (By Plaintiff BPWCP Against STTN Enterprises, Inc., and

### AVA Global Enterprise, LLC.)

83.    The allegations of paragraphs 1 through 82 above are incorporated herein by reference as though fully set forth herein.

84.    To secure, in part, Defendants' obligations under the Store Loan Agreement (Exhibit F), Promissory Note (Exhibit J), and Loan Guaranties (Exhibit L), and as part of the same transaction, AVA Global, as the owner of the Real Property, executed the Deed of Trust dated March 2, 2007 and recorded on March 9, 2007, which irrevocably granted BPWCP the power of sale of all of ABA Global's right, title and interest in the Real Property.  A true and correct copy of the Deed of Trust is attached hereto as Exhibit H, and is incorporated herein as though fully set forth at length.    AVA Global, BPWCP and STTN also entered into a "Consent to Encumbrance of Tenant's Interest" dated March 2,2 007 and recorded on March 9, 2007 ("Consent to Encumbrance").  The Consent to Encumbrance created a leasehold mortgage encumbering STTN's leasehold estate in the Lease and Real Property ("Leasehold Mortgage").  A true and correct copy of the Consent to Encumbrance is attached hereto as Exhibit I, and is incorporated herein as though fully set forth at length.  In addition, STTN executed a Promissory Note evidencing the Store Loan.  A true and correct copy of the executed Promissory Note is attached hereto as Exhibit J and is incorporated herein as though fully set forth at length.

85.    In addition, Defendants made, executed and delivered to BPWCP, as beneficiary, a UCC-1 (Exhibit K), by the terms of which Defendants conveyed a security interest in the personal property located on or affixed to the Real Property or the Improvements thereon for the benefit of BPWCP, as beneficiary.  The UCC-1 was filed on May 7, 2007 with the California Secretary of State.

SECOND AMENDED COMPLAINT

1194164.1

86.   BPWCP is now, and at all times material to this action was, the lawful beneficiary of the Promissory Note, the holder of the beneficial interest under the Deed of Trust, and the holder of the beneficial interest under the UCC-1.

87.   Excel National Bank, has, or claims to have, some interest in the Real Property or some part of it by reason of a senior lien.

88.   The Store Loan Agreement provides that Defendants must repay the outstanding balance of the loan in full to BPWCP within 30 days of the occurrence of an "Event of Default."   [See Store Loan Agreement, ¶ 4, Exhibit F.]   The termination of the franchise relationship between STTN and BPWCP on September 6, 2007 constituted such a defined "Event of Default."   [See Store Loan Agreement, § 4.5, Exhibit F.]

89.   The Promissory Note provides that, if a default or "Event of Default" (as defined in the Store Loan Agreement, Exhibit F) occurs, then the Note "shall become immediately due and payable without notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character." [See Promissory Note, ¶ 9, Exhibit J.]

90.   The Loan Guaranties provide that, if the Defendants default in the full and timely payment of any installment due under the Loan Agreement, the entire amounts owed to BPWCP will become immediately payable and due upon demand by BPWCP. [See Loan Guaranties, ¶ 6, Exhibit L.).

91.   BPWCP has fully performed under the Loan Obligation Agreements.  On or about September 6, 2007 and September 12, 2007, BPWCP made a demand upon Defendants for the payment of these amounts due on October 6, 2007, but Defendants have wholly failed, neglected, and refused to make those payments. [See Exhibits O and P.]

92.   As a result of such failure and default under Store Loan Agreement, Promissory Note, and the Loan Guaranties by Defendants, BPWCP has exercised its right to declare the entire sum due from Defendants immediately due and

27

1  payable. The total amount now due under the Store Loan Agreement, Promissory

2  Notes, and Loan Guaranties consists of the principal sum of at least One Hundred and

3  Fifty Thousand Dollars ($150,000), excluding interest and attorneys' fees with respect

4  thereto.

5            93.    Furthermore, by the provisions of the Loan Guaranties (Exhibit L;

6  Paragraph 1), the Store Loan Agreement (Exhibit F), and the Secured Promissory

7  Note (Exhibit J), Defendants agreed that, if any action were initiated to enforce the

8  Loan Guaranties or Loan Agreement, Defendants would pay the sum fixed by the

9  Court as BPWCP's attorneys' fees and court costs, and that these charges would also

10  be secured by the Deed of Trust recorded against the Real Property and by the UCC-1

11  filed against the personal property located on the Real Property. Because of the

12  defaults by the Defendants, it has become necessary for BPWCP to employ Weston

13  Benshoof Rochefort Rubalcava & MacCuish, LLP to commence and prosecute this

14  foreclosure action. The reasonable value of services of counsel in this action should

15  be determined by the Court at the time of trial. As a result of Defendants' default,

16  BPWCP is entitled to enforce the Store Loan Agreement, Promissory Note and Loan

17  Guaranties by, among other things, an unified judicial foreclosure of the Deed of Trust

18  as to all of the Defendants' rights in the Real Property, and of the UCC-1 as to all of

19  the Defendants' rights in the personal property located on the Real Property, through

20  public sale thereof by the proper judicial officer for proceeds up to $150,000 plus

21  interest and attorneys' fees.

22            94.    BPWCP may hereafter be required to expend additional sums to

23  protect its security in the Real Property described in the Deed of Trust and its security

24  in the personal property located on the Real Property described in the UCC-1. In the

25  Deed of Trust and the UCC-1, Defendants agreed to pay all such sums expended by

26  BPWCP. BPWCP will amend this First Amended Complaint to allege the nature and

27  amounts of such sums if BPWCP is required to make such additional expenditures.

28

1194164.1

**SECOND AMENDED COMPLAINT**

## **PRAYERS FOR RELIEF:**

WHEREFORE, BPWCP prays that judgment be entered in its favor as follows:

AS TO THE FIRST CLAIM FOR DECLARATORY RELIEF:

1.    For a declaration that under the PMPA, BPWCP lawfully terminated STTN's franchise and franchise relationship pertaining to the Station and the other requested findings set forth in that claim; and

AS TO THE SECOND CLAIM FOR BREACH OF GASOLINE AGREEMENT:

2.    That BPWCP have judgment against STTN Enterprises, Inc. for damages arising out of breach of the Gasoline Agreement, in an amount according to proof, but not less than One Hundred Thirty-Nine Thousand, Nine Hundred Fifty Dollars and Eighty-Seven Cents ($139,950.87); and

AS TO THE THIRD CLAIM FOR BREACH OF MINI MARKET AGREEMENT:

3.    That BPWCP have judgment against STTN Enterprise, Inc. for damages arising out of breach of the Mini Market Agreement, in an amount according to proof including, but not limited to, liquidated damages as provided in the Agreements in the amount of $235,000.00; and

AS TO THE FOURTH CLAIM FOR BREACH OF FRANCHISE GUARANTIES:

4.    For a declaration that Nazim Faquiryan and Sayed Faquiryan, as guarantors, are each liable for the same amounts due to BPWCP by STTN Enterprise, Inc. with respect to the Franchise Agreements and that a deficiency judgment may be ordered against each of them for those sums;

5.    For general damages and interest thereon calculated at the applicable statutory rates; and

AS TO THE FIFTH CLAIM FOR GOODS SOLD AND DELIVERED:

6.    For the sum of One Hundred Thirty-Nine Thousand, Nine Hundred Fifty Dollars and Eighty-Seven Cents ($139,950.87);

1194164 1                                          SECOND AMENDED COMPLAINT

7.    For interest on the sum of One Hundred Thirty-Nine Thousand, Nine Hundred Fifty Dollars and Eighty-Seven Cents ($139,950.87) as allowed by law;

8.    For costs of suit incurred; and

AS TO THE SIXTH CLAIM FOR UNJUST ENRICHMENT:

9.    For general damages and interest thereon calculated at the applicable statutory rate; and

AS TO THE SEVENTH CLAIM FOR BREACH OF CONTRACT – MINI MARKET LOAN AGREEMENT:

10.    For a judgment in favor of BPWCP and against STTN Enterprises, Inc. for damages arising out of breach of the Store Loan Agreement, in an amount according to proof, but in no event less than $150,000.00, plus interest;

11.    For reasonable attorneys' fees and costs incurred herein; and

AS TO THE EIGHTH CLAIM FOR BREACH OF MINI MARKET LOAN GUARANTIES:

12.    For a declaration that Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan, as guarantors, are liable for the same amounts due to BPWCP by STTN Enterprise, Inc. with respect to the Loan Agreement and that a deficiency judgment may be ordered against her for those sums;

13.    For general damages and interest thereon calculated at the applicable statutory rates;

14.    For reasonable attorneys' fees and costs incurred herein; and

AS TO THE NINTH CLAIM FOR UNIFIED JUDICIAL FORECLOSURE:

15.    For a judgment in favor of BPWCP and against STTN, AVA Global, Sayed Faquiryan, Nazim Faquiryan, and Maghul Faquiryan for the sum of $150,000;

16.    Costs of this action and attorneys' fees that the Court considers reasonable;

SECOND AMENDED COMPLAINT

17.    For additional sums, if any, that BPWCP hereafter expends to protect its security interest in the Real Property described in the Deed of Trust, and its security interest in the personal property located on the Real Property described in the UCC-1, together with interest at the legal annual rate, according to proof;

18.    For a judgment determining that the rights, claims, ownership, liens, titles, and demands of the Defendants are subject, subsequent, and subordinate to BPWCP's Deed of Trust and to BPWCP's UCC-1;

19.    For an Order that the Deed of Trust (Exhibit H) and the UCC-1 (Exhibit K) be foreclosed upon and that judgment be entered for sale of the Real Property and the personal property located on the Real Property, according to law, by the Sheriff of Orange County or a receiver to be appointed by the Court; that the proceeds of the sale be applied initially to the senior lienholder in the amounts owed thereto; that the next $150,000 of the proceeds of the sale be applied in payment of the amounts due to BPWCP under the Loan Guaranties; and that Defendants, and all persons claiming under them subsequent to the execution of BPWCP's Deed of Trust, as lien claimants, judgment creditors, claimants under a junior deed of trust, purchasers, encumbrancers, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Real Property when time for redemption has elapsed;

20.    For judgment and execution against STTN, AVA Global, Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan for any deficiency that may remain after applying the proceeds of the sale of the Real Property to the senior lienholder, and after applying the proceeds of the sale of the personal property on the Real Property, properly applicable to the satisfaction of the amounts found due by the Court under the prayers applicable to the seventh and eighth causes of action;

21.    For an order permitting BPWCP or any other party to this action to become a purchaser at the foreclosure sale, that the Sheriff or receiver execute a deed

31

1    to the purchaser of the Real Property at the sale, and that the purchaser be let into
2    possession of the Real Property on production of the Sheriff's or receiver's deed;

4                    AS TO ALL CAUSES OF ACTION:

5         31.    That BPWCP recover its costs of suit and reasonable attorneys'
6    fees pursuant to 15 U.S.C. § 2805(d)(3); and

7         32.    That BPWCP recover such other and further relief as the Court
8    deems appropriate.

10   DATED:  June 18, 2008          KURT OSENBAUGH
11                                  DEBORAH YOON JONES
                                    SAYAKA KARITANI
12                                  **WESTON, BENSHOOF, ROCHEFORT,**
                                    **RUBALCAVA & MacCUISH LLP**
13

15                                  _____
                                                  Sayaka Karitani
16                                  Attorneys for Plaintiff
                                    BP WEST COAST PRODUCTS LLC

**SECOND AMENDED COMPLAINT**

1194164.1

1

## PROOF OF SERVICE

2

I, Heather Thai, declare:

3

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

4

5

On June 18, 2008, I served the document(s) described as SECOND AMENDED COMPLAINT FOR:  (1) DECLARATORY RELIEF UNDER THE PETROLEUM MARKETING PRACTICES ACT [15 U.S.C. §§ 2801, *et seq.*]; (2) BREACH OF CONTRACT – GASOLINE AGREEMENT; (3) BREACH OF CONTRACT – MINI MARKET AGREEMENT; (4) BREACH OF FRANCHISE GUARANTIES; (5) COMMON COUNT – GOODS SOLD AND DELIVERED; (6) UNJUST ENRICHMENT; (7) BREACH OF CONTRACT – MINI MARKET LOAN AGREEMENT; (8) BREACH OF MINI MARKET LOAN GUARANTIES; and (9) JUDICIAL FORECLOSURE on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:  SEE ATTACHED SERVICE LIST

6

7

8

9

10

11

☒  BY MAIL:  I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

12

13

14

15

16

17

☐  BY FEDERAL EXPRESS     ☐ UPS NEXT DAY AIR     ☐ OVERNIGHT DELIVERY:  I deposited such envelope in a facility regularly maintained by ☐ FEDERAL EXPRESS     ☐ UPS     ☐ Overnight Delivery [specify name of service:  ] with delivery fees fully provided for or delivered the envelope to a courier or driver of   ☐ FEDERAL EXPRESS     ☐ UPS     ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

18

19

20

21

22

☐  BY FACSIMILE:  I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

23

24

☐  [State]     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

25

☒  [Federal]     I declare under penalty of perjury that the foregoing is true and correct.

26

27

Executed on June 18, 2008, at Los Angeles, California.

*Heather Thai*

Heather Thai

28

1052855.1

1

**BP WEST COAST PRODUCTS LLC v. STTN ENTERPRISES, et al.**
**United States District Court, Northern District**
**Case No. C07 04808 JF**

2

3

**SERVICE LIST**

4

5

6

John G. Michael, Esq.
Baker Manock & Jensen
5260 North Palm Avenue
Fourth Floor
Fresno, CA  93704

Attorney for Defendants, STTN
ENTERPRISES, INC.; NAZIM
FAQUIRYAN; and SAYED
FAQUIRYAN

7

Tel:  (559) 432-5400
Fax:  (559) 432-5620

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28