1

**BAKER MANOCK & JENSEN, PC**
A PROFESSIONAL CORPORATION
FIG GARDEN FINANCIAL CENTER
5260 NORTH PALM AVENUE, FOURTH FLOOR
FRESNO, CALIFORNIA 93704-2209
TELEPHONE (559) 432-5400
TELECOPIER (559) 432-5620

2

3

4

5    Attorneys for    Defendants and Counter-Claimants

6

7

8                UNITED STATES DISTRICT COURT

9    FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  | BP WEST COAST PRODUCTS, LLC, a Delaware Limited Liability Company, | ) | Case No. 5:07-CV-04808 JF |

12    Plaintiff,

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

13    v.

14  STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company,

JURY TRIAL DEMANDED

18    Defendants.

19  STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company,

23    Cross-Complainants,

24    v.

25  BP WEST COAST PRODUCTS, LLC, a Delaware Limited Liability Company;

26    Cross-Defendants.

27

28

Defendants STTN ENTERPRISES, INC. ("STTN"), a California Corporation, NAZIM FAQUIRYAN ("NAZIM"), SAYED FAQUIRYAN ("SAYED"), MAGHUL FAQUIRYAN ("MAGHUL"), and AVA GLOBAL ENTERPRISE, LLC, ("AVA") a California limited liability company, state for their answer to Plaintiffs' Second Amended Complaint as follows:

## SUMMARY OF CLAIMS

1.      Responding to paragraph 1 of the Second Amended Complaint ("SAC"), Defendants admit only that this suit involves the franchises located in Hollister, California and that Plaintiffs seek damages, declaratory and injunctive relief based on Defendants' alleged breach of franchise agreements, loan agreement, and individual guaranties.  Defendants deny that they breached any agreement with Plaintiffs, and further deny that Plaintiffs are entitled to any relief in this action.  Answering further, Defendants deny the rest and remaining allegations of paragraph 1.

2.      Responding to paragraph 2 of the SAC, Defendants admit only that BP WEST COAST PRODUCTS, LLC ("BP") terminated the franchise agreements and allege that such termination was unlawful as more particularly set forth below in Defendants' counter claims. Answering further, Defendants specifically deny each and every other claim and allegation contained in paragraph 2 and allege that any alleged failure to pay for gasoline was caused or excused by Plaintiffs' prior breaches of the various agreements between the parties, and that any such amounts due for gasoline, if any, were satisfied by the doctrine of setoff, as more fully set forth below in Defendants' Affirmative Defenses and Counter Claims.

3.      Responding to paragraph 3 of the SAC, Defendants admit only that the loan was allegedly secured by real property and fixtures and specifically deny each and every other claim and allegation contained therein.

## THE PARTIES

4.      Responding to paragraph 4 of the SAC, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 4 and, on

1    that basis, Defendants deny each and every claim and allegation.

2    　　　　5.　　Responding to paragraph 5 of the SAC, Defendants are without sufficient

3    facts, knowledge or information about the claims and allegations contained in paragraph 5 and, on

4    that basis, Defendants deny each and every claim and allegation. .

5    　　　　6.　　Responding to paragraph 6 of the SAC, Defendants Nazim Faquiryan and

6    Sayed Faquiryan deny that they are residents of Hollister, California, but admit the remaining

7    allegations contained therein.

8    　　　　7.　　Responding to paragraph 7 of the SAC, Defendant Maghul Faquiryan denies

9    that she is a resident of Hollister, California, but admits the remaining allegations contained

10   therein.

11   　　　　8.　　Responding to paragraph 8 of the SAC, Defendants admit the allegations

12   contained therein, except for the allegation that Nazim Faquiryan is a shareholder of AVA Global

13   Enterprise, LLC.  As a limited liability company, AVA Global Enterprise, LLC does not issue

14   stock and has no shareholders.

15   　　　　9.　　Responding to paragraph 9 of the SAC, Defendants specifically deny each

16   and every claim and allegation contained therein.

17   **JURISDICTION AND VENUE**

18   　　　　10.　　Responding to paragraph 10 of the SAC, Defendants admit the allegations

19   contained therein.

20   　　　　11.　　Responding to paragraph 11 of the SAC, Defendants admit the allegations

21   contained therein.

22   **GENERAL ALLEGATIONS**

23   **The Franchise Agreements**

24   　　　　12.　　Responding to paragraph 12 of the SAC, except as to those allegations

25   expressly admitted or denied herein, Defendants are without sufficient facts, knowledge or

26   information about the claims and allegations contained in paragraph 12 and, on that basis,

27   Defendants deny each and every claim and allegation.  Defendants admit only that BP distributes

28   ARCO-branded motor fuel in California and offers am/pm mini market convenience store

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1   franchises.  Answering further, Defendants state that the franchise agreements are written

2   documents which speak for themselves.

3          13.     Responding to paragraph 13 of the SAC, Defendants admit that the

4   franchise relationship is governed by the various written and oral agreements between the parties,

5   that STTN and BP signed a Contract Dealer Gasoline Agreement and an AM/PM Mini Market

6   agreement on July 11, 2006 and a further Contract Dealer Gasoline Agreement on October 12,

7   2006, and that these agreements are written documents that speak for themselves.  Answering

8   further, Defendants specifically deny each and every other remaining allegation and claim

9   contained in paragraph 13.

10          14.     Responding to paragraph 14 of the SAC, Defendants admit only that Sayed

11   and Nazim signed the Guaranty Agreement and that this instrument is a written document which

12   speaks for itself.  Answering further, Defendants specifically deny each and every other remaining

13   allegation and claim contained in paragraph 14.

14          15.     Responding to Paragraph 15 of the SAC, Defendants admit that on or about

15   October 12, 2006 STTN signed a one year trial Contract Dealer Gasoline Agreement.  Answering

16   further, Defendants specifically deny each and every other remaining allegation and claim

17   contained in paragraph 13.

18          16.     Responding to paragraph 16 of the SAC, Defendants admit the allegations

19   contained therein.

20          17.     Responding to paragraph 17 of the SAC, Defendants admit only that the

21   Franchise Agreements are written documents that speak for themselves and do not contain all of

22   the terms, conditions and representations that exist between these parties.  Answering further,

23   Defendants specifically deny each and every other remaining allegation and claim contained in

24   paragraph 17.

25          **The Loan Agreements**

26          18.     Responding to paragraph 18 of the SAC, Defendants admit that the

27   Franchise Agreements required that STTN complete a remodel within nine months of the

28   commencement of the franchise relationship and that the Franchise Agreements are written

1    documents that speak for themselves.  Defendants are without information or belief sufficient to

2    form a response to the allegations concerning BPWCP's policies or treatment of other franchisees

3    and on that basis denies said allegations.  Answering further, Defendants specifically deny each

4    and every other remaining allegation and claim contained in paragraph 18.

5            19.    Responding to paragraph 19 of the SAC, Defendants admit two Conditional

6    Commitment Letters, and the February 12, 2007 Loan Agreements, as well as other written and

7    oral agreements, were entered into between STTN and Plaintiff BPWCP and that the written

8    agreements are written documents that speak for themselves.  Defendants further admit  that

9    BPWCP agreed to loan $475,000 to STTN.  Answering further, Defendants specifically deny each

10   and every other remaining allegation and claim contained in paragraph 19.

11   **The am/pm Mini Market Loan Agreement**

12           20.    Responding to paragraph 20 of the SAC, Defendants admit only that the

13   Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants

14   specifically deny each and every other remaining allegation and claim contained in paragraph 20

15   that is inconsistent with the Store Loan Agreement.

16           21.    Responding to paragraph 21 of the SAC, Defendants admit only that the

17   Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants

18   specifically deny each and every other remaining allegation and claim contained in paragraph 21

19   that is inconsistent with the Store Loan Agreement.

20           22.    Responding to paragraph 23 of the SAC, Defendants admit only that BP and

21   STTN signed a Disbursement Agreement and said Disbursement Agreement is a written document

22   that speaks for itself.  Answering further, Defendants specifically deny each and every other

23   remaining allegation and claim contained in paragraph 22 that is inconsistent with the

24   Disbursement Agreement or the oral representations and testimony of the parties and witnesses.

25           23.    Responding to paragraph 24 of the SAC, Defendants admit only that Nazim

26   and Sayed signed various loan paperwork on behalf of STTN, said paperwork consists of various

27   written documents that speak for themselves and that the loan was allegedly secured by real

28   property.  Answering further, Defendants specifically deny each and every other remaining

1    allegation and claim contained in paragraph 24 that is inconsistent with the signed documents.

2        24.    Responding to paragraph 24 of the SAC, Defendants admit that the loan was

3    allegedly secured by a second priority security interest, which was perfected by recording on

4    March 9, 2007.

5        25.    Responding to paragraph 25 of the SAC, Defendants state only that the

6    UCC-1 filing statement is a written document that speaks for itself.  Answering further,

7    Defendants specifically deny each and every other remaining allegation and claim contained in

8    paragraph 25.

9        26.    Responding to paragraph 26 of the SAC, Defendants admit that after

10    numerous delays and breaches by BPWCP of the agreements between the parties, the escrow for

11    the $150,000 loan was funded by BPWCP on or about May 29, 2007,  but the proceeds thereof

12    were not disbursed until approximately the end of July, 2007.  Except as expressly admitted

13    herein, Defendants specifically deny each and every allegation and claim contained therein.

14    **The Gasoline Loan Agreement**

15        27.    Responding to paragraph 27 of the SAC, Defendants admit only that BP

16    was to disburse an additional $250,000 to STTN to refurbish the gasoline station and store located

17    at 631 San Felipe Road, Hollister, California (hereinafter "the Station").  Defendants affirmatively

18    allege that Plaintiff was aware that STTN already owned and operated a gas station at the location,

19    which already contained dispensers, canopy, etc. and that Plaintiff was aware that the cost of

20    remodeling the station was minimal compared to the cost of remodeling the store.  Additionally,

21    Defendants admit only that STTN and BP signed a Gasoline Loan Agreement and that this

22    Agreement is a written document that speaks for itself.  Answering further, Defendants specifically

23    deny each and every other remaining allegation and claim contained in paragraph 27.

24    **The Loan Guaranties**

25        28.    Responding to paragraph 28 of the SAC, Defendants admit only that

26    Guaranty Agreements are written documents, signed by Sayed Faquiryan, Nazim Faquiryan and

27    Maghul Faquiryan, that speak for themselves.  Answering further, Defendants specifically deny

28    each and every other remaining allegation and claim contained in paragraph 28.

**STTN Allegedly Breached the Franchise Agreements**

29.    Responding to paragraph 29 of the SAC, Defendants admit only that the Franchise Agreement is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 29 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

30.    Responding to paragraph 30 of the SAC, Defendants admit only that BP unilaterally forced STTN to pay for all gasoline deliveries on a cash basis in late January 2007. Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 30 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims..

31.    Responding to paragraph 31 of the SAC, except as expressly admitted or denied herein, Defendants are without sufficient facts, knowledge or information about the claims and allegations contained in paragraph 31 and, on that basis, deny each and every claim and allegation therein.  Answering further, Defendants admit only that the default notices are written documents that speak for themselves and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims..

32.    Responding to paragraph 32 of the SAC, Defendants point out that Exhibit N is missing from their copy of the SAC.  Answering further, Defendants specifically deny each and every other remaining claim and allegation contained in paragraph 33.

33.    Responding to paragraph 33 of the SAC, Defendants specifically deny each and every claim and allegation contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Affirmative Defenses and Counter Claims.

1    34.    Responding to paragraph 34 of the SAC, Defendants specifically deny each

2    and every claim and allegation contained therein and affirmatively allege that any alleged defaults

3    on their part were directly and proximately caused by the conduct and prior breaches of the various

4    agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

5    more fully below in Defendants' Counter Claims..

6    **BPWCP Terminates the STTN Franchise**

7    35.    Responding to paragraph 35 of the SAC, Defendants admit only that BP

8    sent a notice of termination referencing the July 11, 2006 Gasoline Agreement (and not the

9    October 12, 2006 Gasoline Agreement) to STTN on September 6, 2007 after wrongfully refusing

10    to accept a cashier's check for gasoline deliveries and that the termination was stated to be

11    effective on September 6, 2007.  Answering further, Defendants deny each and every other claim

12    and allegation contained in paragraph 35 and affirmatively allege that any alleged defaults on their

13    part were directly and proximately caused by the conduct and prior breaches of the various

14    agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

15    more fully below in Defendants' Counter Claims.

16    36.    Responding to paragraph 36 of the SAC, Defendants admit that the

17    Termination Notice only referenced the 20 year agreements dated July 11, 2006 and failed to

18    reference the October 12, 2006 Gasoline Agreement.  Answering further, Defendants deny each

19    and every other claim and allegation contained in paragraph 36

20    37.    Responding to paragraph 37 of the SAC, Defendants admit that the

21    language thereof is substantially similar to the cited statute.

22    38.    Responding to paragraph 38, Defendants deny the allegations contained

23    therein.

24    39.    Responding to paragraph 39,  including subsections (a) through (e), of the

25    SAC, Defendants admit only that the Franchise Agreements are written documents that speak for

26    themselves.  Answering further, Defendants specifically deny each and every other remaining

27    allegation and claim contained in paragraph 39 and affirmatively allege that any alleged defaults

28    on their part were directly and proximately caused by the conduct and prior breaches of the various

1  agreements by Plaintiffs, as set forth more fully below in Defendants' Counter Claims..

2       40.    Responding to paragraph 40, including subsections (a) through (d), of the

3  SAC, Defendants admit only that the Petroleum Marketing Practices Act, 28 U.S.C. § 2801, *et*

4  *seq.*, is a written statute that speaks for itself.  Answering further, Defendants specifically deny

5  each and every other remaining allegation and claim contained in paragraph 40 and affirmatively

6  allege that any alleged defaults on their part were directly and proximately caused by the conduct

7  and prior breaches of the various agreements by Plaintiffs, as set forth more fully below in

8  Defendants' Counter Claims.

9       41.    Responding to paragraph 41 of the SAC, Defendants specifically deny each

10  and every allegation and claim contained therein and affirmatively allege that any alleged defaults

11  on their part were directly and proximately caused by the conduct and prior breaches of the various

12  agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

13  more fully below in Defendants' Counter Claims.

14       42.    Responding to paragraph 42 of the SAC, Defendants admit only that the

15  Franchise Agreements are written documents that speak for themselves.  Answering further,

16  Defendants specifically deny each and every other remaining allegation and claim contained in

17  paragraph 42 and affirmatively allege that any alleged defaults on their part were directly and

18  proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, as

19  set forth more fully below in Defendants' Counter Claims.

20       43.    Responding to paragraph 43, including subsections (a) through (b), of the

21  SAC, Defendants admit only that BP's grounds for termination of the Franchise Agreement are

22  contained in its notice of termination and that the notice of termination is a written document that

23  speaks for itself.  Answering further, Defendants specifically deny each and every other remaining

24  allegation and claim contained in paragraph 43 and affirmatively allege that any alleged defaults

25  on their part were directly and proximately caused by the conduct and prior breaches of the various

26  agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

27  more fully below in Defendants' Counter Claims.

28  ///

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

**STTN's Alleged  Default on the Store Loan Agreement**

44.    Responding to paragraph 44, including subsections (a) through (d), of the SAC, Defendants admit only that the Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 44 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

45.    Responding to paragraph 43 of the SAC, Defendants admit only that the termination notice is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 45 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

46.    Responding to paragraph 46 of the SAC, Defendants specifically deny each and every claim and allegation contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief Under The Petroleum Marketing Practices Act)**

**(By Plaintiff BPWCP Against STTN Enterprises, Inc.)**

47.    Responding to paragraph 47 of the SAC, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 46 of the SAC as though fully set forth herein.

48.    Responding to paragraph 48, including subsections (a) through (d), of the SAC, Defendants admit only that BP adopts the assertions contained in subparagraphs (a) through

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    (d), but Defendants otherwise specifically deny the propriety of said assertions.  Answering

2    further, Defendants specifically deny each and every other remaining claim and allegation

3    contained in paragraph 48.

4         49.    Responding to paragraph 49 of the SAC, Defendants admit the allegations

5    contained therein.

6         50.    Responding to paragraph 50 of the SAC, Defendants admit that they

7    threatened legal action against BPWCP.  Except as expressly admitted herein, Defendants deny the

8    remaining allegations of paragraph 50 and affirmatively allege that Exhibit P is not a letter from

9    Defendants.

10        51.    Responding to paragraph 51, including subsections (a) through (i) of the

11   SAC, Defendants specifically deny each and every claim and allegation contained therein.

12                          **SECOND CLAIM FOR RELIEF**

13                          **(Breach of Gasoline Agreement)**

14               **(By Plaintiff BPWCP Against STTN Enterprises, Inc.)**

15        52.    Responding to paragraph 52 of the SAC, Defendants incorporate by this

16   reference their responses to the allegations in paragraphs 1 through 51 of the SAC as though fully

17   set forth herein.

18        53.    Responding to paragraph 53 of the SAC, Defendants specifically deny each

19   and every allegation contained therein.

20        54.    Responding to paragraph 54, including subsections (a) through (b) of the

21   SAC, Defendants specifically deny each and every allegation contained therein and affirmatively

22   allege that any alleged defaults on their part were directly and proximately caused by the conduct

23   and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to

24   the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

25        55.    Responding to paragraph 55 of the SAC, Defendants deny each and every

26   allegation contained therein and affirmatively allege that any alleged defaults on their part were

27   directly and proximately caused by the conduct and prior breaches of the various agreements by

28   Plaintiffs, as set forth more fully below in Defendants' Counter Claims.

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1

### THIRD CLAIM FOR RELIEF

2

### (Breach of Mini Market Agreement)

3

### (By Plaintiff BPWCP Against STTN Enterprises, Inc.)

4      56.    Responding to paragraph 56 of the SAC, Defendants incorporate by this

5  reference their responses to the allegations in paragraphs 1 through 55 of the SAC as though fully

6  set forth herein.

7      57.    Responding to paragraph 57 of the SAC, Defendants specifically deny each

8  and every allegation and claim contained therein.

9      58.    Responding to paragraph 58 of the SAC, Defendants specifically deny each

10  and every allegation and claim contained therein and affirmatively allege that any alleged defaults

11  on their part were directly and proximately caused by the conduct and prior breaches of the various

12  agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

13  more fully below in Defendants' Counter Claims.

14      59.    Responding to paragraph 59 of the SAC, Defendants specifically deny each

15  and every allegation and claim contained therein and affirmatively allege that any alleged defaults

16  on their part were directly and proximately caused by the conduct and prior breaches of the various

17  agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

18  more fully below in Defendants' Counter Claims.

19      60.    Responding to paragraph 60 of the SAC, Defendants admit only that the

20  Mini Market Agreement is a written document that speaks for itself.  Answering further,

21  Defendants specifically deny each and every other remaining claim and allegation contained in

22  paragraph 60 and affirmatively allege that any alleged defaults on their part were directly and

23  proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and

24  that no default existed pursuant to the doctrine of setoff, as set forth more fully below in

25  Defendants' Counter Claims.

26  ///

27  ///

28  ///

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    **FOURTH CLAIM FOR RELIEF**

2    **(Breach of Franchise Guaranties)**

3    **(By Plaintiff BPWCP Against Nazim Faquiryan and Sayed Faquiryan)**

4         61.    Responding to paragraph 61 of the SAC, Defendants incorporate by this

5    reference their responses to the allegations in paragraphs 1 through 60 of the SAC as though fully

6    set forth herein.

7         62.    Responding to paragraph 62 of the SAC, Defendants admit only that the

8    Franchise Guaranties are written documents, signed by Sayed Faquiryan and Nazim Faquiryan,

9    that speak for themselves.  Answering further, Defendants specifically deny each and every other

10   remaining claim and allegation contained in paragraph 62.

11        63.    Responding to paragraph 63 of the SAC, Defendants specifically deny each

12   and every allegation and claim contained therein and affirmatively allege that any alleged defaults

13   on their part were directly and proximately caused by the conduct and prior breaches of the various

14   agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

15   more fully below in Defendants' Counter Claims.

16   **FIFTH CLAIM FOR RELIEF**

17   **(Common Count: Goods Sold and Delivered)**

18   **(By Plaintiff BPWCP Against STTN Enterprises, Inc., Nazim Faquiryan, and Sayed**

19   **Faquiryan)**

20        64.    Responding to paragraph 64 of the SAC, Defendants incorporate by this

21   reference their responses to the allegations in paragraphs 1 through 63 of the SAC as though fully

22   set forth herein.

23        65.    Responding to paragraph 65 of the SAC, Defendants specifically deny each

24   and every allegation and claim contained therein and affirmatively allege that any alleged defaults

25   on their part were directly and proximately caused by the conduct and prior breaches of the various

26   agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

27   more fully below in Defendants' Counter Claims.

28        66.    Responding to paragraph 66 of the SAC, Defendants specifically deny each

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    and every allegation and claim contained therein.

2        67.    Responding to paragraph 67 of the SAC, Defendant specifically deny each

3    and every allegation and claim contained therein and affirmatively allege that any alleged defaults

4    on their part were directly and proximately caused by the conduct and prior breaches of the various

5    agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

6    more fully below in Defendants' Counter Claims.

7    **SIXTH CLAIM FOR RELIEF**

8    **(Unjust Enrichment)**

9    **(By Plaintiff BPWCP Against STTN Enterprises, Inc., Nazim Faquiryan and Sayed**

10   **Faquiryan)**

11       68.    Responding to paragraph 68 of the SAC, Defendants incorporate by this

12   reference their responses to the allegations in paragraphs 1 through 67 of the SAC as though fully

13   set forth herein.

14       69.    Responding to paragraph 69 of the SAC, Defendants specifically deny each

15   and every allegation and claim contained therein.

16       70.    Responding to paragraph 70 of the SAC, Defendants state that there is no

17   Exhibit N to the complaint and, so, they cannot respond to the allegations contained in paragraph

18   70 and on that basis deny said allegations.  Answering further, Defendants affirmatively allege that

19   any alleged defaults on their part were directly and proximately caused by the conduct and prior

20   breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the

21   doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

22       71.    Responding to paragraph 71 of the SAC, Defendants specifically deny each

23   and every allegation and claim contained therein and affirmatively allege that any alleged defaults

24   on their part were directly and proximately caused by the conduct and prior breaches of the various

25   agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

26   more fully below in Defendants' Counter Claims.

27       72.    Responding to paragraph 72 of the SAC, Defendants specifically deny each

28   and every allegation and claim contained therein and affirmatively allege that any alleged defaults

1    on their part were directly and proximately caused by the conduct and prior breaches of the various

2    agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

3    more fully below in Defendants' Counter Claims.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Store Loan Agreement)

### (By Plaintiff BPWCP Against STTN Enterprises, Inc., Nazim Faquiryan, and Sayed Faquiryan)

73.    Responding to paragraph 73 of the SAC, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 72 of the SAC as though fully set forth herein.

74.    Responding to paragraph 74 of the SAC, Defendants specifically deny each and every allegation and claim contained therein.

75.    Responding to paragraph 75 of the SAC, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

76.    Responding to paragraph 76 of the SAC, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

77.    Responding to paragraph 77 of the SAC, Defendants admit only that the Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 77 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants'

1  Counter Claims.

## EIGHTH CLAIM FOR RELIEF

### (Breach of Loan Guaranties)

**(By Plaintiff BPWCP Against Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan.)**

78.    Responding to paragraph 78 of the SAC, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 77 of the SAC as though fully set forth herein.

79.    Responding to paragraph 79 of the SAC, Defendants admit only that the Loan Guaranties identified as Exhibit J were signed by Sayed Faquiryan, Nazim Faquiryan and Maghul Faquiryan, and are written documents that speak for themselves.  Answering further, Defendants deny each and every other remaining allegation and claim contained in paragraph 79 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

80.    Responding to paragraph 80 of the SAC, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

81.    Responding to paragraph 81 of the SAC, Defendants specifically deny each and every allegation and claim contained therein and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

82.    Responding to paragraph 82 of the SAC, Defendants admit only that the Loan Guaranties are written documents that speak for themselves.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 82

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1   and affirmatively allege that any alleged defaults on their part were directly and proximately

2   caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no

3   default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants'

4   Counter Claims.

### NINTH CLAIM FOR RELIEF

**(Unified Judicial Foreclosure)**

**(By Plaintiff BPWCP Against STTN Enterprises, Inc., and AVA Global Enterprises, LLC.)**

83.   Responding to paragraph 83 of the SAC, Defendants incorporate by this reference their responses to the allegations in paragraphs 1 through 82 of the SAC as though fully set forth herein.

84.   Responding to paragraph 84 of the SAC, Defendants admit only that Exhibits F, J, H, L and I are written documents that speak for themselves.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 84 and affirmatively allege that any alleged defaults on their part were directly and proximately caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants' Counter Claims.

85.   Responding to paragraph 85 of the SAC, Defendants admit only that Exhibit K is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 85.

86.   Responding to paragraph 86 of the SAC, Defendants are without information or belief as to the truth of the matters asserted and on that basis Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 86.

87.   Responding to paragraph 87 of the SAC, Defendants admit the allegations contained therein.

88.   Responding to paragraph 88 of the SAC, Defendants admit only that the Store Loan Agreement is a written document that speaks for itself.  Answering further, Defendants specifically deny each and every other remaining allegation and claim contained in paragraph 100

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    and affirmatively allege that any alleged defaults on their part were directly and proximately

2    caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no

3    default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants'

4    Counter Claims.

5           89.    Responding to paragraph 89 of the SAC, Defendants admit only that the

6    Promissory Note is a written document that speaks for itself.  Answering further, Defendants

7    specifically deny each and every other remaining allegation and claim contained in paragraph 89

8    and affirmatively allege that any alleged defaults on their part were directly and proximately

9    caused by the conduct and prior breaches of the various agreements by Plaintiffs, as set forth more

10   fully below in Defendants' Counter Claims.

11          90.    Responding to paragraph 90 of the SAC, Defendants admit only that the

12   Loan Guaranties are written documents that speak for themselves.  Answering further, Defendants

13   specifically deny each and every other remaining allegation and claim contained in paragraph 90

14   and affirmatively allege that any alleged defaults on their part were directly and proximately

15   caused by the conduct and prior breaches of the various agreements by Plaintiffs, and that no

16   default existed pursuant to the doctrine of setoff, as set forth more fully below in Defendants'

17   Counter Claims.

18          91.    Responding to paragraph 91, Defendants specifically deny each and every

19   allegation and claim contained therein and affirmatively allege that any alleged defaults on their

20   part were directly and proximately caused by the conduct and prior breaches of the various

21   agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

22   more fully below in Defendants' Counter Claims.

23          92.    Responding to paragraph 92, Defendants specifically deny each and every

24   allegation and claim contained therein and affirmatively allege that any alleged defaults on their

25   part were directly and proximately caused by the conduct and prior breaches of the various

26   agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

27   more fully below in Defendants' Counter Claims.

28          93.    Responding to paragraph 93 of the SAC, Defendants admit only that the

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1  Loan Guaranties, Store Loan Agreement, and Promissory Note are written documents that speak

2  for themselves.  Answering further, Defendants specifically deny each and every other remaining

3  allegation and claim contained in paragraph 93 and affirmatively allege that any alleged defaults

4  on their part were directly and proximately caused by the conduct and prior breaches of the various

5  agreements by Plaintiffs, and that no default existed pursuant to the doctrine of setoff, as set forth

6  more fully below in Defendants' Counter Claims.

7         94.    Responding to paragraph 94, Defendants specifically deny each and every

8  allegation and claim contained therein.

9  ### AFFIRMATIVE DEFENSES

10        As and for separate and distinct affirmative defenses, Defendants aver as follows:

11  ### FIRST AFFIRMATIVE DEFENSE

12  (Failure to State a Cause of Action)

13        95.    Defendants allege that Plaintiffs' SAC, and the causes of action for breach of

14  contract contained therein, fail to state facts sufficient to constitute a cause of action against the

15  Defendants.

16  ### SECOND AFFIRMATIVE DEFENSE

17  (Performance)

18        96.    Defendants allege that they have fully performed any contract or agreement

19  that existed between themselves and Plaintiffs.

20  ### THIRD AFFIRMATIVE DEFENSE

21  (Estoppel)

22        97.    Defendants allege that Plaintiffs having contributed to the breaches of the

23  contracts alleged in the SAC and to the failure of the conditions precedent to any obligation of

24  Defendant under the contracts, if any there be, Plaintiffs are equitably estopped to seek

25  enforcement of the contracts or damages for the alleged breach thereof.

26  ### FOURTH AFFIRMATIVE DEFENSE

27  (Unclean Hands)

28        98.    Defendants allege as a result of the acts and omissions in the matters relevant

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    to this SAC, Plaintiffs have unclean hands and are therefore barred from asserting any claims

2    against Defendants.

### FIFTH AFFIRMATIVE DEFENSE

(Failure of Consideration)

99.    Defendants allege that Plaintiffs are barred from recovering any damages or
other relief by reason of the failure of consideration that defeats the effectiveness of the contract
between the parties.  The contracts in the SAC, if any, are unenforceable with respect to the
Defendants for failure of consideration arising from Plaintiffs' failure to perform their part of the
agreement.

### SIXTH AFFIRMATIVE DEFENSE

(Vague, Ambiguous and Uncertain)

100.    Defendants allege that Plaintiffs' SAC is vague, ambiguous and uncertain.
Therefore, Defendants reserve the right to amend this Answer in the event any of the allegations
presented by Plaintiffs in their SAC are subsequently clarified or modified.

### SEVENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

101.    Defendants allege that Plaintiffs failed to take the reasonable and appropriate
steps to mitigate the damages claimed in the SAC and thus are precluded from recovering those
damages which could reasonably have been avoided by the exercise of due care on Plaintiffs' part.

### EIGHTH AFFIRMATIVE DEFENSE

(Statute of Limitations)

102.    Defendants allege that the breaches of contract action against Defendants are
barred by the appropriate statute of limitations as set forth in Code of Civil Procedure Section 337.

### NINTH AFFIRMATIVE DEFENSE

(Laches)

103.    Defendants allege that Plaintiffs are barred from seeking recovery based on
the equitable doctrine of laches.

///

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1

**TENTH AFFIRMATIVE DEFENSE**

2

(Waiver)

3      104.     Defendants allege that Plaintiffs are barred from seeking recovery based on

4   the equitable doctrine of waiver by reason of Plaintiffs' conduct in connection with the matters

5   complained of in the SAC.

6

**ELEVENTH AFFIRMATIVE DEFENSE**

7

(Conduct and/or Omissions by Plaintiffs)

8      105.     Defendants allege that Plaintiffs' acts, conduct and/or omissions were the

9   proximate cause of Plaintiffs' alleged damages.

10

**TWELFTH AFFIRMATIVE DEFENSE**

11

(Conduct and/or Omissions by Third Parties)

12      106.     Defendants allege that in addition to the aforementioned acts, conduct and/or

13   omissions of Plaintiffs, any damages incurred by Plaintiffs were directly and proximately caused

14   and contributed to by the acts, conduct, and/or omissions of third persons and/or entities.

15

**THIRTEENTH AFFIRMATIVE DEFENSE**

16

(Setoff)

17      107.     Defendants allege that any debt to Plaintiff was discharged by the doctrine of

18   setoff, such that no amounts were due to Plaintiff for gasoline purchases.

19

**FOURTEENTH AFFIRMATIVE DEFENSE**

20

(Economic Duress)

21      108.     Defendants allege that the contracts alleged by Plaintiffs to have been breached

22   by Defendants, including Gasoline Loan Agreement, the Store Loan Agreement, and the Disbursement

23   Agreement, are invalid and unenforceable due to Plaintiffs' threat to inflict economic harm onto

24   Defendants.  Defendants signed the contracts under duress and contrary to Defendant's free will in

25   order to avoid the infliction of significant economic harm onto Defendants.

26

**FIFTEENTH AFFIRMATIVE DEFENSE**

27

(Excuse by Plaintiff's Prior Breach)

28      109.     Defendants allege that their performance of the contracts was excused by

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1  Plaintiffs' prior breach.

2  ### SIXTEENTH AFFIRMATIVE DEFENSE

3  (Prevention of Performance)

4  110. Defendants allege that they performed all of their contractual obligations until

5  September 6, 2007. Since September 6, 2007, and to the extent that Defendants have failed to perform

6  their contractual obligations under the contracts they had with Plaintiffs, they have done so because

7  Plaintiffs have barred Defendants from purchasing gasoline in direct contravention and breach of said

8  contracts. At all times mentioned Defendants were and are ready, willing, and able to perform their

9  contractual duties, but Plaintiff has prevented and continues to prevent Defendants' performance.

10  **WHEREFORE,** these answering Defendants pray for judgment as follows:

11  1. That Plaintiff take nothing against these answering Defendants by way of its

12  Second Amended Complaint;

13  2. For reasonable attorneys' fees and costs as provided by law; and,

14  3. For such other and further relief as the court may deem just and proper.

15  ### COUNTERCLAIM

16  ### JURISDICTIONAL STATEMENT

17  111. This Court has jurisdiction over Defendants Counterclaims as stated herein

18  pursuant to Federal Rule of Civil Procedure 13(a) since the counterclaims against Plaintiffs arise out

19  of the same transactions and occurrences that are the subject matter of Plaintiffs' SAC and these

20  counterclaims do not require the presence of third parties currently absent from the action for proper

21  adjudication.

22  ### STATEMENT OF FACTS

23  112. Prior to July 2006, STTN, operated a Chevron-branded motor fuel station at 631

24  San Felipe Road, in Hollister, California (the "Station"). STTN ENTERPRISES, INC. ("STTN")

25  profitably operated the station and enjoyed a good business relationship with Chevron.

26  113. At some point before May 2006, STTN was approached by employees of BP

27  WEST COAST PRODUCTS, LLC ("BP"), and/or ATLANTIC RICHFIELD COMPANY ("ARCO")

28  (collectively referred to herein as "Plaintiffs"). Plaintiffs asked to purchase the Station from STTN

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    or for STTN to brand the Station as an ARCO.

2        114.    STTN rejected the purchase offer and agreed to re-brand the Station into an

3    ARCO-branded station.  To effectuate the transition to an ARCO-branded motor fuel station, BP

4    offered STTN a self-amortized loan package in the amount of $475,000.  In essence, so long as STTN

5    sold a specified amount of product annually, a portion of the debt would deemed repaid each year by

6    BP.

7        115.    On May 25, 2006, BP provided a Commitment Letter to STTN in the sum of

8    $475,000.

9        116.    On July 11, 2006, BP and STTN entered into two franchise agreements.  The

10   purpose of these agreements was for STTN to sell ARCO-branded motor fuel as well as to operate an

11   AM/PM convenience store at the Station.  The agreements required STTN to be operating as an

12   ARCO-branded motor fuel station by April 11, 2007.  On October 12, 2006, the parties entered into

13   a new Contract Dealer Gasoline Agreement so that the Station could be operated as a "gas only"

14   station until the Mini Market was completed.

15       117.    In order to comply with the construction schedule promulgated by BP, STTN

16   was forced to begin remodeling on the Station immediately.  BP worked closely with STTN

17   throughout the construction phase by approving site plans, contractors, architects, and informing

18   STTN of deficiencies.  BP also knew that the Station was a re-brand, not a new, ground-up facility.

19       118.    STTN worked diligently to satisfy all of BP's requirements and spent over

20   $790,000 of its own funds to remodel the Station.

21       119.    BP did not provide STTN with loan agreements until February 12, 2007, long

22   after STTN was required to begin construction and had, in fact begun construction with the knowledge

23   and encouragement of BP.  The loan was to be disbursed according to the various schedules

24   accompanying the loan documents, including the proposed budget and the disbursement schedule.

25       120.    Despite its close involvement with the process, despite having made a

26   commitment to assist STTN in the construction of the Station, and despite having had clear title to the

27   property and recording its deed of trust on March 9, 2007, BP consistently refused to provide any loan

28   funds to STTN.

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

121.    As a result of BP's breach of its obligations under the loan agreements, while at the same time requiring STTN to continue construction and purchase motor fuel, STTN was unable to pay some of its contractors on time.  Mechanics liens were then filed by certain contractors.  However, as of July 7, 2007, STTN completely paid off all liens on the Station.  Still, BP refused to comply with the loan agreements.

122.    During this same time period, because STTN's working capital was tied up in construction costs awaiting reimbursement from BP, STTN fell behind in its payments for gasoline delivery and was put on a cash-on-delivery basis.  During this same time, however, BP was obligated to fund and disburse to STTN the proceeds of the gasoline portion of the loan.  BP could have, should have, and by operation of law did setoff the amount due from STTN against the loan proceeds due to STTN, so that no further money was owed to BP by STTN and STTN was not in default of any agreements with BP.

123.    BP eventually paid out $150,000.00 of the loan in July 2007. However, the remaining $250,000.00 of the loan funds then due were not placed in escrow and not disbursed by BP.

124.    STTN demanded the funding and disbursement of said funds to reimburse it for out of pocket construction expenses and replenish its working capital, but BP refused, claiming that it lacked all of the required documents, which was false.

125.    STTN asked for clarification as to which documents were missing, and BP simply refused to inform STTN of the missing documents.  BP admitted that all conditions to funding were satisfied by July 31, 2007, except for the payment for gasoline deliveries.  BP refused to acknowledge the setoff of the gasoline payments against the remaining loan proceeds even though STTN would be entitled to the loan proceeds if the gasoline payments were made.

126.    At the same time, BP demanded that STTN continue to purchase gasoline.

127.    Being forced to use its operating capital to satisfy the construction debts due to BP's refusal to disburse the loan, STTN asked that BP enter into an escrow agreement whereby STTN would borrow and place the money BP demanded for fuel into escrow and BP would similarly place the loan funds in escrow.

128.    BP initially agreed to the escrow request, but later failed to place the loan funds

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    in escrow and, without justification, demanded that STTN deposit its money into its escrow first.

2    129.    Even as of August 31, 2007, BP offered STTN reassurances that all the

3    information needed to fund the loans was in BP's possession and the funds would be disbursed soon.

4    130.    On August 31, 2007, BP sent seven notices of default to STTN, each alleging

5    that STTN failed to offer any grade of motor fuel for sale to the public on a specified date.

6    131.    Despite BP's contention, STTN sold 91 octane and diesel gasoline during the

7    relevant dates cited by BP. Moreover, STTN could not sell 87 and 89 octane gasoline for part of the

8    relevant period because BP refused to deliver any motor fuel to the Station, despite STTN obtaining

9    and offering a cashier's check to tender upon delivery.

10    132.    On September 6, 2007, BP terminated the franchise agreement.  In so doing, it

11    cited (1) STTN's failure to offer any grade of motor fuel to the motoring public for a period of seven

12    consecutive days and (2) STTN's failure to pay all sums when due.  Rather than give the 90 days

13    notice that is typically required under the PMPA, and without any factual basis therefor, BP cited risk

14    of confusion to the public and safety risks as justifying an immediate termination of the franchise

15    agreement.

16    133.    As such, the franchise relationship was wrongfully terminated on September 6,

17    2007.

18    134.    On September 17 and 18, 2007, BP sent multiple agents to "de-brand" the

19    Station.

20    135.    As part of the de-branding process, BP removed, destroyed, re-painted, or

21    otherwise obliterated any registered trademark or proprietary information belonging to BP and

22    otherwise caused damage to the premises.

23    136.    STTN, while maintaining that the franchise agreement was terminated illegally,

24    cooperated with BP during the de-branding process.

25    **COUNTER CLAIM I – WRONGFUL TERMINATION/VIOLATION OF PMPA**

26    **(By STTN Against BP)**

27    137.    The allegations and answers set forth in Paragraphs 1 through 136 above are

28    incorporated herein by reference as though fully set forth herein.

138.    Pursuant to the PMPA, no franchise agreement can be terminated unless specific notification requirements are satisfied and such termination is based upon a specific ground enumerated in the PMPA. 15 U.S.C. § 2802(a).

139.    The burden shifting scheme of the PMPA mandates that STTN bear the burden of establishing the termination of the franchise agreement, while BP bears the burden of establishing that said termination was lawful under the PMPA. 15 U.S.C. § 2805(c).

140.    On or about September 6, 2007, BP terminated the franchise relationship with STTN.

141.    Contrary to the statements made in BP's Notice of Termination, STTN did not fail to provide gasoline products for sale over a period lasting at least seven consecutive days, nor did it fail to timely pay BP for gasoline products in a timely manner, as defined by the PMPA. Indeed, STTN continued to purchase fuel despite BP's withholding of funds clearly owed to STTN, all while knowing that STTN needed the funds to continue to comply with the franchise agreement. Further, the alleged debt of STTN to BP from and after July 31, 2007 was satisfied and discharged by the doctrine of setoff, so that STTN no longer owed BP for the gasoline. BP's purported reason for the termination was therefore false.

142.    Similarly, BP's Notice of Termination falsely alleges that it would unreasonable for BP "to furnish notification of 90 days prior to the date of termination because of the risk of confusion to the public as well as possible safety risks." BP cites the "risk of confusion," but alleges that there were no gasoline products for sale at the location. Likewise, the justification of "possible safety risks" is without merit and is clearly cited to provide the appearance of legality to this otherwise illegal termination.

143.    As BP's Notice of Termination is impermissibly grounded upon false allegations and fails to provide 90 days notice as required by the PMPA, it is wrongful under PMPA.

144.    As a direct and proximate result of BP's actions, STTN has and will continue to sustain damages in an amount exceeding $1.7 million.

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    145.    So that it may protect its interests in the Station, STTN has been required to

2    retain the services of an attorney and is entitled to recover his attorney fees and costs as a permitted

3    by law.  15 U.S.C. § 2805(d)(1)(C).

4    146.    As the conduct of BP is in willful disregard to the terms and provisions of the

5    PMPA, because the alleged wrongdoing by STTN is unsupported by law, BP has unlawfully

6    terminated a franchise agreement, entitling STTN to exemplary damages. 15 U.S.C. § 2805(d)(1)(B).

7    ## COUNTER CLAIM II – BREACH OF CONTRACT

8    ### Conditional Commitment Letter

9    ### (By STTN Against BP)

10    147.    The allegations and answers set forth in Paragraphs 1 through 146 above are

11    incorporated herein by reference as though fully set forth herein.

12    148.    On May 30, 2006, STTN accepted BP's offer of a $475,000 loan package

13    by signing a written contract known as the Conditional Commitment Letter.

14    149.    Pursuant to this contract, BP was obligated to loan a maximum of $475,000

15    to STTN for the purpose of remodeling an existing gas station and convenience store to an ARCO-

16    branded motor fuel station.

17    150.    To date, STTN has fully complied with all obligations set forth in the

18    Conditional Commitment Letter.

19    151.    Despite STTN's compliance with said provisions, BP has not discharged its

20    obligations under the Conditional Commitment Letter.  Specifically, BP has not disbursed the

21    remaining funds that are currently due on the loan, in the amount of $250,000.

22    152.    BP's failure to disburse these funds is a material breach of the Conditional

23    Commitment Letter.

24    153.    As a direct and proximate result of BP's failure to perform its obligations

25    arising under the Conditional Commitment Letter, STTN has sustained damages in an amount in

26    excess of $1.7 million.

27    ///

28    ///

1

## COUNTER CLAIM III -BREACH OF CONTRACT

2

### Store Loan Agreement

3

### (By STTN Against BP)

4    154.    The allegations and answers set forth in Paragraphs 1 through 153 above are

5    incorporated herein by reference as though fully set forth herein.

6    155.    On February 12, 2007, STTN and BP entered into a written contract known

7    as the Store Loan Agreement.

8    156.    Pursuant to the Store Loan Agreement, BP was obligated to loan $150,000

9    to STTN for the purpose of constructing an ARCO-branded motor fuel station.

10    157.    To date, STTN has fully complied with all obligations set forth in the Store

11    Loan Agreement.

12    158.    Specifically, paragraph 2.3 of the Store Loan Agreement obligated BP to

13    disburse to loan funds as follows:

14    (a)    $37,500 upon STTN obtaining permits for construction.

15    (b)    $37,500 when BP verified that the construction was 25% complete.

16    (c)    $37,500 when BP verified that the construction was 50% complete.

17    (d)    $37,500 when BP verified that the construction was 75% complete.

18    159.    At the time of the execution of the Store Loan Agreement, construction of

19    the Station was approximately 80% complete.

20    160.    Construction was complete on the Station on or about June 15 2007.

21    161.    BP's agents and employees were aware of the status of construction on the

22    Station.

23    162.    Despite knowing the status on the Station, and despite the obligations

24    imposed by paragraph 2.3, BP refused to disburse the funds until July 2007.

25    163.    BP failed to disburse the funds in a reasonable time.

26    164.    BP's failure to disburse the funds in a reasonable time constituted a material

27    breach of the Store Loan Agreement.

28    165.    As a direct and proximate result of BP's failure to perform its obligations

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1   arising under the Store Loan Agreement, STTN has sustained damages in an amount in excess of

2   $1.7 million, including, but not limited to, delayed operations, lost profits, and attorney fees.

### COUNTER CLAIM IV- BREACH OF CONTRACT

#### Gasoline Loan Agreement

#### (By STTN Against BP)

6   166.    The allegations and answers set forth in Paragraphs 1 through 165 above are

7   incorporated herein by reference as though fully set forth herein.

8   167.    On February 12, 2007, STTN and BP entered into a written contract known

9   as the Gasoline Loan Agreement.

10  168.    Pursuant to the Gasoline Loan Agreement, BP was obligated to loan

11  $250,000 to STTN for the purpose of constructing an ARCO-branded motor fuel station.

12  169.    To date, STTN has fully complied with all obligations set forth in the

13  Gasoline Loan Agreement.

14  170.    Specifically, paragraph 2.3 of the Gasoline Loan Agreement obligated BP to

15  disburse to loan funds as follows:

16  (a)    $62,500 upon STTN obtaining permits for construction.

17  (b)    $62,500 when BP verified that the construction was 25% complete.

18  (c)    $62,500 when BP verified that the construction was 50% complete.

19  (d)    $62,500 when BP verified that the construction was 75% complete.

20  171.    At the time of the execution of the Gasoline Loan Agreement, construction

21  of the Station was approximately 80% complete.

22  172.    Construction was complete on the Station on or about June 15 2007.

23  173.    BP's agents and employees were aware of the status of construction on the

24  Station.

25  174.    Despite knowing the status on the Station, and despite the obligations

26  imposed by paragraph 2.3, BP has never disbursed the funds and now states that it never will

27  disburse the funds.

28  175.    Accordingly, BP failed to disburse the funds in a reasonable time.

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    176.    BP's failure to disburse said funds constituted a material breach of the

2  Gasoline Loan Agreement.

3    177.    As a direct and proximate result of BP's failure to perform its obligations

4  arising under the Gasoline Loan Agreement, STTN has sustained damages in an amount in excess

5  of $1.7 million, including, but not limited to, delayed operations, lost profits, and attorney fees.

6  <u>**COUNTER CLAIM V - BREACH OF CONTRACT**</u>

7  <u>**Disbursement Agreement**</u>

8  **(By STTN Against BP)**

9    178.    The allegations and answers set forth in Paragraphs 1 through 177 above are

10  incorporated herein by reference as though fully set forth herein.

11    179.    On May 15, 2007, STTN and BP entered into a written contract known as

12  the Disbursement Agreement.

13    180.    Pursuant to the Disbursement Agreement, specifically paragraph 3, BP was

14  obligated to disburse the $400,000 in loan funds owed to STTN from "time to time."  Thus, as no

15  time for performance is stated in the Disbursement Agreement, BP was obligated to disburse the

16  funds in a reasonable time.

17    181.    To date, STTN has fully complied with all obligations set forth in the

18  Disbursement Agreement.

19    182.    At the time of the execution of the Disbursement Agreement, construction

20  of the Station was substantially complete.

21    183.    BP's agents and employees were aware of the status of construction on the

22  Station.

23    184.    Despite knowing the status on the Station, and despite the obligations

24  imposed by paragraph 3, BP refused to disburse any of the funds until July 2007 and then BP only

25  disbursed a fraction of the loan funds.

26    185.    To date, BP has not disbursed at least $250,000 of the loan funds.

27    186.    As such, BP failed to disburse the funds in a reasonable time.

28    187.    BP's failure to disburse the loan funds in a reasonable time constituted a

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    material breach of the Disbursement Agreement.

2        188.    As a direct and proximate result of BP's failure to perform its obligations

3    arising under the Disbursement Agreement, STTN has sustained damages in an amount in excess

4    of $1.7 million, including, but not limited to, delayed operations, lost profits, and attorney fees.

5                                          **COUNTER CLAIM VI**

6    **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

7                                    **(By all Defendants against BP)**

8        189.    The allegations and answers set forth in Paragraphs 1 through 188 above are

9    incorporated herein by reference as though fully set forth herein.

10        190.    BP entered into various contracts with STTN, Sayed, Nazim, Maghul, and

11    AVA, including, but not limited to, the Conditional Commitment Letter, Mini-Market Agreement,

12    the Gasoline Contract Dealer Agreement, the Store Loan Agreement, the Gasoline Loan

13    Agreement, the Disbursement Agreement, and the Guarantee Agreements.

14        191.    Each such contract between BP and STTN, Sayed, Nazim, Maghul, and

15    AVA, was executed in the State of California.

16        192.    Each such contract between BP and STTN, Sayed, Nazim, Maghul, and

17    AVA, placed upon the parties of each such contract an implied duty of good faith and fair dealing

18    in the performance and execution of said contracts.

19        193.    Notwithstanding said duty, and in breach thereof, BP acted in one or more

20    of the following ways:

21        (A)    BP encouraged and induced STTN to begin construction in a manner

22             conflicting to provisions in the franchise agreement drafted by BP;

23        (B)    BP deliberately and unjustifiably withheld loan funds even though

24             STTN was in full compliance with the conditions of the loan

25             agreement;

26        (C)    BP encouraged and induced STTN to continue construction by

27             employing STTN's own funds despite the fact that the loan funds

28

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1   were not disbursed by giving assurances that the funds would be

2   disbursed in the immediate future.

3   (D)   BP's deliberately and unjustifiably withheld loan funds from STTN

4   knowing that it would frustrate STTN's ability to enjoy the

5   consideration of the contracts and would prejudice STTN's ability to

6   discharge its obligations under the contracts.

7   (E)   BP failed and refused to acknowledge that the amount allegedly due

8   to it from STTN for gasoline payments could be, should be and was

9   setoff against the remaining loan proceeds due to STTN, thereby

10   curing any alleged default by STTN under the agreements and

11   avoiding a superfluous exchange of funds.

12   194.    As a direct and proximate result of BP's breach of the implied covenant of

13   good faith and fair dealing, STTN sustained damages in the amount of $1.7 million, including, but

14   not limited to, delayed operations, lost profits, and attorney fees..

15   **COUNTER CLAIM VII – ACTUAL FRAUD (Cal. Civ. § 1572)**

16   **(By all Defendants against BP)**

17   195.    The allegations and answers set forth in Paragraphs 1 through 194 above are

18   incorporated herein by reference as though fully set forth herein.

19   196.    BP represented to Defendants that STTN must initiate construction prior to

20   loan disbursement.

21   197.    BP represented to Defendants that it would provided STTN with a loan to

22   help pay for the construction of a new AM/PM mini-market and ARCO-branded motor fuel station

23   at 631 San Felipe, in Hollister, California.

24   198.    BP also represented to Defendants on numerous occasions that it did not

25   possess all of the required documents needed to disburse the loan funds.

26   199.    BP further represented to Defendants that it would disburse the loan fully in

27   the immediate future and that STTN should continue construction and operate the station.

28

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    200.    Defendants are informed and believe that the forgoing representations by BP

2    to Defendants were at the time of their making false statements.

3    201.    Defendants are informed and believe that BP made the foregoing false

4    statements to Defendants despite knowledge of their falsity.

5    202.    Defendants are informed and believe that BP made the foregoing false

6    statements to Defendants with the intent to induce Defendants to act in certain ways, including, but

7    not limited to, initiating and continuing construction on the Station without first possessing the

8    loan funds and expending STTN's operating capital to finance the construction of the Station.

9    203.    Defendants  reasonably and justifiably relied on BP's false statements.

10    204.    Defendants suffered significant damage as a direct and proximate result

11    relying on of BP's false statements.

12    205.    Defendants' reliance on BP's false statements was a substantial factor in

13    causing the harm Defendants suffered.

14    206.    The aforementioned acts of BP were wilful and malicious in that their

15    conduct was intended to cause injury to Defendants or was carried on with a conscious disregard

16    for Defendants rights, thereby warranting the assessment of exemplary and punitive damages

17    against Plaintiffs in an appropriate amount to punish Plaintiffs and set an example to others.

18    ## COUNTER CLAIM VIII – NEGLIGENT MISREPRESENTATION

19    ### (By all Defendants against BP)

20    207.    The allegations and answers set forth in Paragraphs 1 through 254 above are

21    incorporated herein by reference as though fully set forth herein.

22    208.    BP represented to Defendants that STTN must initiate construction prior to

23    loan disbursement.

24    209.    BP represented to Defendants that it would provided STTN with a loan to

25    help pay for the construction of a new AM/PM mini-market and ARCO-branded motor fuel station

26    at 631 San Felipe, in Hollister, California

27    210.    BP also represented to Defendants that it did not possess all of the required

28    documents needed to disburse the loan funds.

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

211.    BP further represented to Defendants that it would disburse the loan fully in the immediate future and that STTN should continue construction and operate the station.

212.    The forgoing representations by BP to Defendants were at the time of their making false statements.

213.    BP made the foregoing false statements to Defendants despite having no reasonable grounds for believing the statements to be true.

214.    BP made the foregoing false statements to Defendants with the intent to induce Defendants to act in certain ways, including, but not limited to, initiating and continuing construction on the Station without first possessing the loan funds and expending STTN's operating capital to finance the construction of the Station.

215.    Defendants reasonably and justifiably relied on BP's false statements.

216.    Defendants suffered significant damage as a direct and proximate result of relying on BP's false statements.

217.    Defendants'reliance on BP's false statements was a substantial factor in causing the harm Defendants suffered.

**WHEREFORE**, Defendants pray for judgment as follows:

### ON COUNTER CLAIM I

(WRONGFUL TERMINATION/VIOLATION OF PMPA)

1.    For damages according to proof at trial;

2.    For attorneys' fees and costs of suit incurred herein;

3.    For interest at the legal rate according to proof;

4.    For punitive damages; and

5.    For such other and further relief as the court may deem proper.

### ON COUNTER CLAIM II

(BREACH OF CONTRACT - CONDITIONAL COMMITMENT LETTER)

1.    For damages according to proof at trial;

2.    For attorneys' fees and costs of suit incurred herein;

///

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1    3.    For interest at the legal rate according to proof; and

2    4.    For such other and further relief as the court may deem proper.

### ON COUNTER CLAIM III

(BREACH OF CONTRACT - STORE LOAN AGREEMENT)

5    1.    For damages according to proof at trial;

6    2.    For attorneys' fees and costs of suit incurred herein;

7    3.    For interest at the legal rate according to proof; and

8    4.    For such other and further relief as the court may deem proper.

### ON COUNTER CLAIM IV

(BREACH OF CONTRACT - GASOLINE LOAN AGREEMENT)

11    1.    For damages according to proof at trial;

12    2.    For attorneys' fees and costs of suit incurred herein;

13    3.    For interest at the legal rate according to proof; and

14    4.    For such other and further relief as the court may deem proper.

### ON COUNTER CLAIM V

(BREACH OF CONTRACT - DISBURSEMENT AGREEMENT)

17    1.    For damages according to proof at trial;

18    2.    For attorneys' fees and costs of suit incurred herein;

19    3.    For interest at the legal rate according to proof; and

20    4.    For such other and further relief as the court may deem proper.

### ON COUNTER CLAIM VI

(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

23    1.    For damages according to proof at trial;

24    2.    For attorneys' fees and costs of suit incurred herein;

25    3.    For interest at the legal rate according to proof; and

26    4.    For such other and further relief as the court may deem proper.

27    ///

28    ///

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

## ON COUNTER CLAIM VII

### (ACTUAL FRAUD)

1. For damages according to proof at trial;

2. For attorneys' fees and costs of suit incurred herein;

3. For interest at the legal rate according to proof;

4. For punitive damages; and

5. For such other and further relief as the court may deem proper.

## ON COUNTER CLAIM VIII

### (NEGLIGENT MISREPRESENTATION)

1. For damages according to proof at trial;

2. For attorneys' fees and costs of suit incurred herein;

3. For interest at the legal rate according to proof; and

4. For such other and further relief as the court may deem proper.

## DEMAND FOR JURY TRIAL

Defendants demand a trial by jury of all issues in this action.

DATED: June 27, 2008.

BAKER MANOCK & JENSEN, PC


By s/John G. Michael/
John G. Michael
Attorney for Defendants
STTN ENTERPRISES, INC., NAZIM
FAQUIRYAN, SAYED FAQUIRYAN, MAGHUL
FAQUIRYAN, and AVA GLOBAL ENTERPRISE,
LLC

@PFDesktop\::ODMA/MHODMA/DMS;DMS;644995;1

---

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

36