KURT OSENBAUGH (State Bar No. 106132)
DEBORAH YOON JONES (State Bar No. 178127)
SAYAKA KARITANI (State Bar No. 240122)
**WESTON, BENSHOOF, ROCHEFORT,**
  **RUBALCAVA & MacCUISH LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
kosenbaugh@wbcounsel.com
djones@wbcounsel.com
skaritani@wbcounsel.com

Attorneys for Plaintiff and Counter-Defendant
BP WEST COAST PRODUCTS LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company,<br><br>Defendants.<br><br>——————————————<br><br>AND RELATED CROSS-ACTION. | Case No.: C07 04808 JF<br><br>**BP WEST COAST PRODUCTS LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declarations of Deborah Yoon Jones, Thomas Reeder, Brad Christensen and Cecile McDonnell; Appendix of Non-Federal Authorities; and [Proposed] Order.]<br><br>Date:   August 8, 2008 [reserved]<br>Time:   9:00 a.m.<br>Crtrm:  3<br><br>Honorable Jeremy Fogel<br><br>Filing Date:   September 17, 2007 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................4

II.    STATEMENT OF ISSUES TO BE DECIDED ...................................................5

III.    STATEMENT OF UNCONTROVERTED FACTS ............................................6

    A.    STTN's Franchise Relationship with BPWCP...........................................6

    B.    STTN Breaches the Franchise Agreements by Failing to Pay for and Sell Gasoline.....................................................................................................7

    C.    BPWCP Properly Terminates STTN's Franchise Pursuant to the Franchise Agreements and the PMPA .........................................................9

    D.    BPWCP'S Loans to STTN Become Due Upon the Franchise Termination ...............10

IV.    AS A MATTER OF LAW, BPWCP'S TERMINATION OF STTN'S FRANCHISE WAS PROPER UNDER THE PMPA AND FRANCHISE AGREEMENTS.......................12

    A.    STTN's Failure To Pay For Gasoline Delivered Justifies The Franchise Termination Under the PMPA.................................................................13

    B.    STTN's Failure to Operate The Station For At Least 12 Days Justifies The Franchise Termination Under The PMPA .......................................14

    C.    STTN's Failure to Make All Grades of Gasoline Available Justifies the Franchise Termination Under the PMPA ................................................16

V.    BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF ITS CLAIMS INVOLVING BREACH OF THE FRANCHISE AGREEMENTS AND GUARANTIES..................................................................................................16

    A.    BPWCP and Defendants are Parties to Various Agreements...................17

    B.    BPWCP Fully Performed Under The Agreements ..................................17

    C.    Defendants Breached The Agreements ....................................................17

    D.    BPWCP Has Been Damaged by Defendants' Breaches...........................18

VI.    BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF ITS CLAIMS INVOLVING THE BREACH OF THE STORE LOAN AGREEMENT AND GUARANTEE.....................................................................................................18

    A.    BPWCP and Defendants are Parties to the Store Loan Agreement ..........19

i

# TABLE OF CONTENTS

**Page**

B. BPWCP Fully Performed Under The Store Loan Agreement .................................... 19

C. Defendants Breached The Store Loan Agreement ...................................... 19

D. BPWCP Has Been Damaged by Defendants' Breaches ............................... 19

VII. BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON ITS COMMON COUNT FOR GOODS SOLD AND DELIVERED ............................ 20

VIII. BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR UNJUST ENRICHMENT ............................ 20

IX. BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR UNIFIED JUDICIAL FORECLOSURE ............................ 21

X. CONCLUSION ............................ 23

1132567.4

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page**

3
### CASES

4
*Adickes v. S.H. Kress & Co.*
    (1970) 398 U.S. 144 ...................................................................................16

*Celotex Corp. v. Catrett*
    (1986) 477 U.S. 317 ...................................................................................16

*Charter Marketing Co. v. Burgin*
    (D. Conn. 1989) 1989 U.S. District Lexis 18393 ........................................15

*Clinkscales v. Chevron, U.S.A., Inc.*
    (11th Cir. 1987) 831 F.2d 1565 ..................................................................13

*Desofosses v. Wallace Energy, Inc.*
    (1st Cir. 1987) 836 F.2d 22 ........................................................................13

*Dinosaur Development, Inc. v. White*
    (1989) 216 Cal.App.3d 1310 ......................................................................20

*First Commercial Mortgage Co. v. Reece*
    (2001) 89 Cal.App.4th 731 .........................................................................17

*First Nationwide Savings v. Perry*
    (1992) 11 Cal.App.4th 1657 .......................................................................20

*G. Hirsch & Co. v. AmerisourceBergen Corp.*
    (C.D. Cal. May 17, 2006) 2006 U.S. Dist. LEXIS 32895 ..........................20

*Gruber v. Mobil Oil Corp.*
    (D. Mich. 1983) 570 F. Supp. 1088 ...........................................................12

*Hinkleman v. Shell Co.*
    (4th Cir. 1992) 962 F.2d 372 ................................................................13-14

*Holmes v. Steele*
    (1969) 269 Cal.App.2d 675 ........................................................................21

*Horcasitas v. Crown Cent. Petroleum Corp.*
    (D. Maryland 1986) 649 F. Supp. 1163 ......................................................12

*Khoury v. Getty Petroleum Corp.*
    (D.R.I. 1993) 1993 U.S. District LEXIS 19641 ..........................................13

*Loomis v. Gulf Oil Corp.*
    (M.D. Fla. 1983) 567 F. Supp. 591 .............................................................13

MOTION FOR SJ OR PARTIAL SJ ON SAC

# <u>TABLE OF AUTHORITIES</u>

**Page**

*Luddy v. Pavkovich*
  (1902) 137 Cal. 284 ................................................................................21

*Magerian v. Exxon Corp.*
  (9th Cir. 1997) 124 F.3d 212, 1997 WL 525273 ...................................12

*Marathon Petroleum Co. v. Pendleton*
  (6th Cir. 1989) 889 F.2d 1509 ...............................................................13

*Nymark v. Heart Fed. Savings & Loan Ass'n*
  (1991) 231 Cal.App.3d 1089 ..................................................................21

*Quackenbush v. Darrough*
  (1919) 44 Cal.App. 564 ..........................................................................21

*Rodgers v. Sun Refining and Marketing Co.*
  (3d Cir. 1985) 772 F.2d 1154 .................................................................12

*Russo v. Texaco*
  (2d Cir. 1986) 808 F.2d 221 ...................................................................13

*Shell Oil Company v. Kozub*
  (N.D. Ohio 1983) 574 F. Supp. 114 .......................................................13

*Smoot v. Mobil Oil Corporation*
  (D. Mass. 1989) 722 F. Supp. 849 ..........................................................15

*Talcott v. Meakin*
  (1915) 26 Cal.App. 293 ..........................................................................21

*Townsend v. Mobil Oil Corporation*
  (D. Mass 1992) 1992 WL 17252 ............................................................15

*Unocal Corp. v. Kaabipour*
  (9th Cir. 1999) 177 F.3d 755 ..................................................................12

*Zumbrun v. United Services Auto. Assoc.*
  (E.D.Cal 1989) 719 F. Supp. 890 ...........................................................16

## STATUTES

15 U.S.C. § 2801 .........................................................................................4

15 U.S.C. § 2802(b)(2)(A) ..........................................................................12

15 U.S.C. § 2802(c) ....................................................................................13

1132567.4

# TABLE OF AUTHORITIES

**Page**

15 U.S.C. §§ 2802(c)(1) ................................................................12

15 U.S.C. § 2802(c)(8) ...........................................................4, 12, 13

15 U.S.C. § 2802(c)(9) .......................................................4, 12, 14, 15

Civ. Proc. Code § 726 ...............................................................21

# OTHER AUTHORITIES

Fed.R.Civ.P. 56(c) ....................................................................16

MOTION FOR SJ OR PARTIAL SJ ON SAC

1132567.4

1    <u>**NOTICE AND MOTION**</u>

2    **TO THE CLERK OF THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT**

3    **OF CALIFORNIA, TO DEFENDANTS AND COUNTERCLAIMANTS, AND TO THEIR**

4    **ATTORNEYS OF RECORD HEREIN**:

5              **PLEASE TAKE NOTICE** that on August 8, 2008, at 9:00 a.m., or as soon thereafter

6    as the matter may be heard, in the Courtroom of the Honorable Jeremy Fogel, Judge for the United

7    States District Court, Northern District of California, located at 280 S. First Street, San Jose,

8    California, Plaintiff and Counter-Defendant BP West Coast Products LLC ("BPWCP") will and

9    hereby does move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an

10   order granting summary judgment, or in the alternative, partial summary judgment against

11   defendants STTN Enterprises, Inc. ("STTN"), Nazim Faquiryan, Sayed Faquiryan, Maghul

12   Faquiryan and AVA Global Enterprise, LLC, on the claims alleged in Second Amended Complaint

13   on the grounds set forth below:

14              1.      <u>BPWCP Is Entitled to Summary Judgment Against STTN On BPWCP's First</u>

15   <u>Cause of Action for Declaratory Relief Under the PMPA Because, As a Matter of Law, BPWCP</u>

16   <u>Properly Terminated STTN's Franchise</u>:  BPWCP's decision to terminate was proper under the

17   Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.* ("PMPA") because STTN materially

18   breached the franchise relationship by failing to pay BPWCP for over $126,000 worth of gasoline

19   delivered, failing to sell gasoline for more than seven consecutive days, failing to have all grades of

20   gasoline available for sale to the public, and defaulting on the Store Loan Agreement.  Each of these

21   grounds are specifically enumerated and proper grounds for termination under the PMPA [see

22   Sections 2802(c)(8) and 2802(c)(9)], the franchise agreements, and the applicable legal authority.

23              2.      <u>BPWCP Is Entitled to Summary Judgment Against STTN, Nazim Faquiryan,</u>

24   <u>Sayed Faquiryan, and Maghul Faquiryan On BPWCP's Second, Third, and Fourth Causes of Action</u>

25   <u>for Breach of the Franchise Agreements and Guaranties</u>:  Defendants breached the Gasoline

26   Agreement and related Franchise Guaranties, by failing to pay BPWCP for gasoline delivered,

27   failing to sell gasoline for more than seven consecutive days, and failing to have all grades of

28   gasoline available for sale to the public; Defendants breached the Mini Market Agreement and the

1

related personal loan guaranties because they failed to operate all of its concurrent businesses at the Station (i.e., failures to sell gasoline) and did not pay BPWCP back the $150,000 disbursed loan amounts within 30 days of termination of the franchise relationship.

      3.    BPWCP Is Entitled to Summary Judgment Against STTN, Nazim Faquiryan and Sayed Faquiryan On BPWCP's Fifth Cause of Action for Goods Sold and Delivered: BPWCP is entitled to summary judgment for goods sold and delivered because Defendants agreed to purchase gasoline products from BPWCP, which they received from BPWCP, but Defendants failed to make payments upon delivery of the gasoline product by BPWCP. To date, Defendants still have not paid any portion of the outstanding balance of over $126,000 due and owing to BPWCP for the gasoline deliveries.

      4.    BPWCP Is Entitled to Summary Judgment Against STTN, Nazim Faquiryan and Sayed Faquiryan On BPWCP's Sixth Cause of Action for Unjust Enrichment: Defendants have been unjustly enriched because they obtained a benefit at BPWCP's expense (i.e., received and sold for profit ARCO-branded gasoline delivered by BPWCP) and must restore BPWCP to its former position by returning the total balance of money equivalent to the amount of gasoline delivered to Defendants but not paid for.

      5.    BPWCP Is Entitled to Summary Judgment Against STTN, Nazim Faquiryan, Sayed Faquiryan, and Maghul Faquiryan On BPWCP's Seventh and Eighth Causes of Action for Breach of the Store Loan Agreement and Guaranties: Defendants breached the Store Loan Agreement and the related personal loan guaranties by failing to pay back the $150,000 loan amounts disbursed by BPWCP within 30 days of termination of the franchise relationship.

      6.    BPWCP Is Entitled to Summary Judgment Against STTN and AVA Global Enterprises, LLC On BPWCP's Ninth Cause of Action for Unified Judicial Foreclosure: BPWCP is entitled to summary judgment for an unified judicial foreclosure because STTN and AVA Global, as the owner of the Real Property, are in default by failing to make payments on the promissory note secured by the Deed of Trust and UCC-1.

      This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Deborah Yoon Jones, Thomas Reeder, Brad Christensen,

2

1    and Cecile McDonnell, and the exhibits attached thereto, all filed concurrently herewith, and all the

2    other records and files in this case, such further papers and records as may be submitted to the Court

3    at or before the hearing on this motion, the oral argument of counsel and any other or further

4    information that may be presented or which the Court deems proper and necessary.

5

6                            **<u>RELIEF REQUESTED</u>**

7            BPWCP requests that the Court enter judgment against Defendants and in BPWCP's

8    favor on the Second Amended Complaint.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1132567.4

MOTION FOR SJ OR PARTIAL SJ ON SAC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

BP West Coast Products LLC ("BPWCP") should not be forced to do business and be in a franchise relationship with a franchisee that is unable to pay for and sell gasoline. After all, the primary purpose of an ARCO-branded gasoline station franchise - - the franchise relationship at issue in this lawsuit - - is to sell gasoline.

BPWCP terminated its ARCO-branded gasoline and am/pm mini market franchise relationship with STTN Enterprises, Inc. ("STTN") after STTN and the other named defendants (collectively, "Defendants") failed to pay for over $126,000 worth of gasoline. Although BPWCP tried to accommodate the Defendants' delinquent gasoline balance for months by, among other things, entering into a payment plan with Defendants (which Defendants never followed), BPWCP could no longer tolerate Defendants' actions after they cautioned taped off the gasoline dispensers for at least 12 consecutive days and failed to make all grades of gasoline available for sale to the public. Each of these actions were in violation of the applicable franchise agreements and constituted sufficient grounds for termination under the Petroleum Practices Marketing Act, 15 U.S.C. § 2801, *et seq.* ("PMPA") (specifically §§ 2802(c)(8) and 2802(c)(9)) and applicable authority.

In addition to ordering, but failing to pay for, gasoline, Defendants also took advantage of a loan program offered by BPWCP and accepted $150,000 to assist Defendants in refurbishing the convenience store. Defendants have since defaulted on the $150,000 loan given by BPWCP. While Defendants have benefited from its breaches by making a profit on over $126,000 worth of gasoline delivered but not paid for and having use of $150,000 in loan proceeds in order to renovate its property (which is currently being operated as a Valero gasoline station and convenience store), BPWCP has been damaged and is still owed these amounts.

Defendants do not, and cannot, deny these undisputed facts, all of which provide sufficient grounds for termination under the Franchise Agreements, the PMPA, and other applicable authority. These undisputed facts thus support a summary judgment in BPWCP's favor on the PMPA declaratory relief cause of action, as well as on the breach of contract claims concerning the

4

franchise agreements and loan agreements, the common count for goods sold and delivered, the unjust enrichment cause of action, and the judicial foreclosure claim.[1]   BPWCP therefore respectfully requests that on the grounds set forth herein, judgment in favor of BPWCP and against all the Defendants be granted.

II.    **STATEMENT OF ISSUES TO BE DECIDED**

Based upon the uncontroverted facts and applicable authorities, BPWCP is entitled to summary judgment in its favor:

1.    On its First Cause of Action for Declaratory Relief under the PMPA to affirm that its decision to terminate STTN's franchise because of STTN's material breaches of the franchise relationship was proper under the franchise agreements and the PMPA;

2.    On its Second, Third, and Fourth Causes of Action to award BPWCP damages for the breaches of the franchise-related contracts due to STTN's failure to pay for and sell gasoline;

3.    On its Fifth Cause of Action for common count for goods sold and delivered to award BPWCP damages for gasoline sold to but not paid for by STTN;

4.    On its Sixth Cause of Action for unjust enrichment to award BPWCP damages on grounds that STTN was unjustly enriched by receiving gasoline product from BPWCP without payment;

5.    On its Seventh and Eighth Causes of Action for breaches of the loan agreement and related guaranties to award BPWCP damages for STTN's defaults; and

6.    On its Ninth Cause of Action for an Unified Judicial Foreclosure for a decree that the loan is in default, an order for an unified judicial foreclosure sale of the Real Property on which the Station is located and of the personal property located on the Real Property, and a decree that Defendants are personally liable for payment of the obligation secured by the trust deed. Furthermore, BPWCP is entitled to a Court ruling that a deficiency judgment may be ordered

---

[1] Many of the same arguments set forth herein are duplicated in the concurrently filed BPWCP's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment as to the Counterclaim brought by STTN. In both instances, the undisputed facts and unequivocally applicable statutory and legal authority warrant a judgment in BPWCP's favor. Indeed, the granting of one of BPWCP's Motions for Summary Judgment should result in the granting of BPWCP's other Motion.

1132567.4                                                                                    MOTION FOR SJ OR PARTIAL SJ ON SAC

1  following the procedures prescribed by law.

2  **III.    STATEMENT OF UNCONTROVERTED FACTS**

3      **A.    STTN's Franchise Relationship with BPWCP**

4          BPWCP and STTN Enterprises, Inc. ("STTN") entered into a franchise relationship

5  involving an ARCO-branded gasoline station and am/pm mini market located at 631 San Felipe

6  Road, Hollister, California ("Station").    The written franchise agreements that governed the

7  franchise relationship are: (1) a Contract Dealer Gasoline Agreement dated July 11, 2006, which

8  includes any and all amendments and addendums ("Gasoline Agreement")[2]; and (2) an am/pm Mini

9  Market Agreement dated July 11, 2006, which includes any and all amendments and addendums

10 ("Mini Market Agreement").    [Deposition of Sayed Faquiryan ("Sayed Depo.") at 35:13-36:2 and

11 40:13-42:5, and Exhs. A and C; Deposition of Nazim Faquiryan ("Nazim Depo.") at 10:18-21, 87:6-

12 8, 12:4-7, 87:9-11, and 87:23-88:1[3]; and Declaration of Thomas Reeder ("Reeder Decl."), ¶ 3 and

13 Exhs. A and B.]    The Mini Market Agreement, the Gasoline Agreement, and the Franchise

14 Guaranties shall be referred to collectively as the "Franchise Agreements."

15         Defendants Sayed Faquiryan and Nazim Faquiryan each individually guaranteed the

16 obligations owed by STTN to BPWCP under these Franchise Agreements. [Sayed Depo., at 47:24-

17 48:10 and Exh. D; Nazim Depo., at 20:11-17 and Exh. T.]  Sayed Faquiryan is the 49% shareholder

18 of STTN.  [Sayed Depo., at 42:12-23.]  Nazim Faquiryan is the 51% shareholder of STTN.  [Nazim

19 Depo., at 36:4-8.]  Nazim is Sayed's son and despite his majority shareholder position, Sayed was

20 the primary representative of STTN during its franchise relationship with BPWCP.  [Sayed Depo., at

21 108:14-110:22; Nazim Depo., at 28:12-29:21.]

22

23 _____

24 [2] On October 12, 2006, STTN signed an Amendment to the Contract Dealer Gasoline Agreement and a 1-year Contract Dealer Gasoline Agreement.  At the time, BPWCP believed this was necessary

25 since it was allowing STTN to operate the gasoline station only during the remodeling of the mini market store located at the Station.  [Sayed Depo. at 39:24-40:12 and Exh. B; Nazim Depo., at

26 11:11-14; and Reeder Decl., ¶ 4 and Exhs. C and D.]  However, the terms and conditions in the Gasoline Agreement (a 20-year agreement) continued in full force.  [Reeder Decl., ¶ 4.]  Moreover,

27 STTN's obligations concerning the payment for and sale of gasoline remained the same in the Gasoline Agreement and the 1-year agreement.  [Id.]
   [3] True and correct copies of the relevant excerpts and exhibits from the depositions of Sayed

28 Faquiryan and Nazim Faquiryan are attached as Exhibits 1 and 2 to the Declaration of Deborah Yoon Jones ("Jones Decl.").

B.    **STTN Breaches the Franchise Agreements by Failing to Pay for and Sell Gasoline**

As of January 2007, payments for delivered gasoline product by BPWCP to STTN were accomplished by way of an Electronic Funds Transfer ("EFT"), which automatically drew from STTN's account at the time the gasoline was delivered.   [Declaration of Brad Christensen ("Christensen Decl."), ¶ 4.]   However, throughout January 2007, STTN ordered gasoline but then refused to pay BPWCP for the gasoline by either placing a stop payment order on the EFTs or failing to have sufficient funds in its account for the EFTs as follows:

- On January 8, 2007, for example, STTN's bank returned an Electronic Funds Transfer ("EFT") in the amount of $21,078.93 to BPWCP due to a stop payment order by STTN. [Christensen Decl., ¶ 5.]

- On January 16, 2007, STTN's bank returned an EFT in the amount of $20,859.48 to BPWCP for insufficient funds in STTN's account. [*Id.*]

- On January 19, 2007, STTN's bank returned an EFT in the amount of $20,866.68 due to a stop payment order by STTN. [*Id.*]

- On January 26, 2007, STTN's bank returned an EFT in the amount of $20,938.66 due to a stop payment order by STTN. [*Id.*]

- On January 31, 2007, STTN's bank returned an EFT in the amount of $20,836.93 due to a stop payment order by STTN. [*Id.*]

Thus, as of the end of January 2007, STTN was delinquent on gasoline balances due to BPWCP to the sum of $ 104,580.68. [Christensen Decl., ¶ 5.]

Given STTN's interference with the EFT process, BPWCP required STTN to present a cashier's check to the driver of the gasoline delivery truck in order to receive gasoline product. [Reeder Decl., ¶ 6; Christensen Decl., ¶ 6.]  Despite this change in procedure, STTN continued to be delinquent on the payment for gasoline deliveries.  For example, on February 2, 2007, BPWCP delivered another load of gasoline, but STTN did not pay for the gasoline. [Christensen Decl., ¶ 6.] On February 6, 2007, BPWCP discussed STTN's failure to pay for the February 2 gasoline load, and reached an agreement with Sayed Faquiryan a cashier's check for $44,000 would be presented at the

7

1    next delivery to account for the $22,000 owed for the February 2 gasoline delivery as well as

2    $22,000 for that next delivery.  [*Id.*]  On February 7, 2007, BPWCP delivered another load of

3    gasoline but STTN only presented a check for $22,500.  [*Id.*]  On March 5, 2007, STTN's bank

4    returned a cashier's check in the amount of $20,851.09 for payment of gasoline due to a stop

5    payment order by STTN.  [*Id.*]  As of March 2007, the net due to BPWCP given the gasoline balance

6    delinquencies had risen to $164,950.81.  [*Id.*]

7            In a letter dated May 4, 2007, Nazim Faquiryan and Sayed Faquiryan acknowledged

8    the gasoline balance delinquencies, confirmed the total balance due to BPWCP was $184,075.50,

9    and, in writing, agreed to pay $30,000 per month until the total outstanding balance of the gasoline

10   debt was paid in full ("Payment Plan Agreement").  [Sayed Depo., at 164:15-165:12 and Exh. O;

11   Nazim Depo., at 79:2-4; Reeder Decl., ¶ 7 and Exh. E; Christensen Decl., ¶ 7 and Exh. A.]  Yet, as

12   of September 5, 2007, an outstanding balance of over $126,000, for gasoline product deliveries

13   remained.  [Reeder Decl., ¶ 8; Christensen Decl., ¶ 8.]  Sayed Faquiryan admits that he never made

14   any payments pursuant to the Payment Plan Agreement.  [Sayed Depo., at 166:3-13; Christensen

15   Decl., ¶ 9.]  Under the Franchise Agreements, BPWCP required STTN to maintain adequate supplies

16   of gasoline for sale and, of course, to pay BPWCP for gasoline delivered.  [Reeder Decl., Exh. A at

17   Art. 2; Sayed Depo., Exh. A at Art. 2.]

18           The Franchise Agreement also required STTN to operate the Station and if it failed to

19   do so for seven (7) or less consecutive days, BPWCP had a right to terminate the franchise.  [Sayed

20   Depo., Exh. A at Art. 2 and Art. 17.1(i); Reeder Decl., Exh. A at Art. 2 and Art. 17.1(i).]  Despite

21   this requirement, from the evening of August 23, 2007 through at least September 4, 2007, STTN

22   failed to operate the Station and sell gasoline product for at least 12 consecutive days in violation of

23   the Franchise Agreements.  [Christensen Decl., ¶ 10 and Exh. B; Reeder Decl., ¶ 10 and Exh. F.]  In

24   fact, STTN taped off the Station dispensers from any use by customers from the evening of August

25   23, 2007 through at least September 4, 2007.  [Sayed Depo., at 167:23-168:5, and 170:19-21 and

26   Exh. P; Christensen Decl., ¶ 10 and Exh. B; Reeder Decl., ¶ 10 and Exh. F.]  BPWCP's franchise

27   consultant also attempted to pump gasoline from the dispensers and was unable to do so.

28   [Christensen Decl., ¶ 10.]  Furthermore, BPWCP's last delivery of gasoline to the Station prior to the

8

1    Termination was August 18, 2007. [Reeder Decl., ¶ 11 and Exh. G.] At best, STTN would have run

2    out of the amounts delivered within 3-5 days. [*Id.*; and Christensen Decl., ¶ 11.] Thus, unless STTN

3    was purchasing gasoline from sources other than BPWCP (which it was not permitted to do under

4    the Gasoline Agreement), STTN would not have had any product to sell by August 24, 2007.[4] [*Id.*]

5         The Franchise Agreements also required STTN to "order and make available for sale

6    all grades of Gasoline which BPWCP offers to [STTN]" and "will at all times have available for sale

7    some of each grade of Product." [Reeder Decl., Exh. A at Art. 2; Sayed Depo., at Exh. A at Art. 2.]

8    During the August 24 through September 4 time frame, however, STTN failed to have all grades of

9    gasoline available for sale to the public. [Sayed Depo., at 170:19-21 and Exh. P; Reeder Decl., ¶ 10

10   and Exh. F; Christensen Decl., ¶ 12 and Exh. B.] In fact, STTN concedes that from August 27, 2007

11   through at least September 4, 2007, it was not selling unleaded grade gasoline. [Sayed Depo., at

12   170:19-25, and Exh. P.]

13        BPWCP issued numerous defaults concerning these breaches. [Sayed Depo., Exh. P;

14   Reeder Decl., Exh. F; Christensen Decl., ¶ 12 and Exh. B.] STTN admits that it received the

15   numerous default notices regarding the failures to pay for gasoline deliveries and sell gasoline.

16   [Sayed Depo., at 166:19-167:4; and Nazim Depo., at 82:24-83:8.]

17   C.   **BPWCP Properly Terminates STTN's Franchise Pursuant to the Franchise**

18        **Agreements and the PMPA**

19        Given STTN's numerous breaches and defaults on the Franchise Agreements,

20   BPWCP sent a Notice of Termination letter dated September 6, 2007, to STTN, advising that the

21   Franchise Agreements would be immediately terminated ("Termination Notice"). [*See* Reeder

22   Decl., ¶ 13, Exh. H; Sayed Depo., at 173:5-16 and Exh. R.] The Termination Notice set forth the

23   following grounds for termination:

24

25

26   _____

27   [4] In an attempt to create a factual dispute concerning this ground for termination, STTN may contend that even though the gasoline dispensers were cautioned taped off that exterior dispensers were still

28   "open" for customer use. However, given the delivery schedule, it is undisputable that STTN was not operating the Station for more than 7 consecutive days. Moreover, by taping off the dispensers, the Station was not in operation as required by the Franchise Agreements.

(1)    STTN's failure to pay for gasoline product sold and delivered;

(2)    STTN's failure to have gasoline products available for sale for at least 12 consecutive days, and

(3)    STTN's failure to offer all grades of gasoline.

[Reeder Decl., ¶ 13, Exh. H; Sayed Depo., Exh. R.]

The Termination Notice cited STTN's Gasoline Agreement provisions which require STTN to actually sell gasoline, to timely pay all sums due to BPWCP, and to make all grades of gasoline product available for sale to the public. [Reeder Decl., ¶ 13 and Exh. H and Exh. A at ¶ 17.1; Sayed Depo., Exh. R and Exh. A at ¶ 17.1.]

**D.    BPWCP'S Loans to STTN Become Due Upon the Franchise Termination**

By virtue of its breaches of the Franchise Agreements, STTN also defaulted on a loan which was given by BPWCP for the purpose of remodeling or retrofitting the Station.

By way of background, the Franchise Agreements also required STTN to complete a remodel or retrofit of the station. [Reeder Decl., ¶ 14 and Exh. A at ¶ 1.2 and Exh. B at ¶ 5.03(a); Sayed Depo., Exh. A at ¶ 1.2 and Exh. C at ¶ 5.03(a).] To assist STTN in complying with this "remodel and retrofit" requirement, BPWCP offered STTN a special loan program to provide funds specifically for completing construction and remodeling of its station and am/pm mini market store. [Reeder Decl., ¶ 14.] This loan program allowed STTN to make repayments either based on reaching a certain level of performance at the Station, or, alternatively, through a five percent (5%) per year payment for twenty years. [*Id.*, ¶ 14; *see, e.g.,* Exh. J at ¶¶ 1.4 - 1.6; Sayed Depo., Exh. F at ¶¶ 1.4 - 1.6.]

The loan agreement at issue in BPWCP's Second Amended Complaint and this Motion is a Loan Agreement (am/pm Mini Market), whereby BPWCP agreed to loan STTN the total sum of $150,000 to be used toward BPWCP-approved capital improvements for the am/pm mini market convenience store (hereinafter "Store Loan Agreement").[5] [Reeder Decl., ¶¶ 14-16 and Exh. J at ¶ 1.1; Sayed Depo., at 78:11-21 and Exh. F at ¶ 1.1; Nazim Depo., at 14:4-8.] Defendants Sayed

---

[5] BPWCP and STTN also entered into a loan pertaining to the gasoline station which was never funded due, in large part, to STTN's delinquencies on gasoline balances.

1132567.4

MOTION FOR SJ OR PARTIAL SJ ON SAC

1 Faquiryan, Maghul Faquiryan (Sayed Faquiryan's spouse), and Nazim Faquiryan each individually

2 guaranteed the loan obligations owed by STTN to BPWCP under the Store Loan Agreement ("Loan

3 Guaranties"). [Sayed Depo., at 90:23-91:6 and Exh. L; Nazim Depo., at 21:15-22:12 and Exh. U;

4 BPWCP's Request for Admissions (Set One) propounded to Maghul Faquiryan ("RFA to Maghul

5 Faquiryan"), Exh. B; Discovery Response of Maghul Faquiryan ("Maghul Faquiryan Response"), at

6 RFA No.2.[6]]

7         To secure BPWCP's interests and STTN's obligations under the Store Loan

8 Agreement, AVA Global, as the owner of the real property upon which STTN's franchise station is

9 located ("Real Property"), executed the Deed of Trust dated March 2, 2007 and that was recorded on

10 March 9, 2007, which irrevocably granted BPWCP the power of sale of all of AVA Global's right,

11 title and interest in the Real Property. [Reeder Decl., ¶ 18 and Exh. M; Sayed Depo., at 89:16-90:1

12 and Exh. J; Nazim Depo., at 24:7-13.] AVA Global, BPWCP and STTN entered into a "Consent to

13 Encumbrance of Tenant's Interest" dated March 2, 2007 and recorded on March 9, 2007 ("Consent

14 to Encumbrance"). [Reeder Decl., ¶ 18 and Exh. N; Sayed Depo., at 90:7-19 and Exh. K; Nazim

15 Depo., at 27:23-25.] The Consent to Encumbrance created a leasehold mortgage encumbering

16 STTN's leasehold estate in the Lease and Real Property ("Leasehold Mortgage"). [Sayed Depo.,

17 Exh. K; Reeder Decl., Exh. N.] In addition, STTN executed a Promissory Note evidencing the Store

18 Loan Agreement. [Sayed Depo., at 80:18-24 and Exh. G; Nazim Depo., at 15:3-6; Reeder Decl., ¶

19 18 and Exh. O.] Defendants also made, executed and delivered to BPWCP, as beneficiary, a UCC-1,

20 by the terms of which Defendants conveyed a security interest in the personal property located on or

21 affixed to the Real Property or the Improvements thereon for the benefit of BPWCP as the

22 beneficiary. [Reeder Decl., ¶ 18 and Exh. P.]

23         Pursuant to the terms of its Store Loan Agreement, the termination of the franchise

24 agreements (which occurred on September 5, 2007) is an "Event of Default" according to the Store

25 Loan Agreement terms. [Reeder Decl., Exh. J at ¶ 4.5; Sayed Depo., Exh. F at ¶ 4.5.] Furthermore,

26

27

28 [6] True and correct copies of BPWCP's Request for Admissions (Set One) propounded to Maghul Faquiryan and Maghul Faquiryan's Discovery Responses are attached as Exhibits 3 and 4, respectively, to the Jones Decl.

11

1   BPWCP required that STTN pay the outstanding loan balance, within 30 days of occurrence of an

2   "Event of Default." [Reeder Decl., ¶ 16 and Exh. J at ¶ 5.1 and Exh. H; Sayed Depo., Exh. F at ¶ 5.1

3   and Exh. R.]   To date, STTN has failed and refused to pay the outstanding balance due - - which

4   totals $ 150,000 plus interest - - pursuant to the Store Loan Agreement.  [Reeder Decl., ¶ 19.]  STTN

5   concedes that this is the amount remaining due on the Store Loan Agreement.  [Sayed Depo., at

6   166:16-18.]

7           Given the undisputed facts set forth above and the authority discussed below,

8   summary judgment in favor of BPWCP on all causes of action set forth in the Second Amended

9   Complaint is warranted.

10  **IV.    AS A MATTER OF LAW, BPWCP'S TERMINATION OF STTN'S FRANCHISE**

11  **WAS PROPER UNDER THE PMPA AND FRANCHISE AGREEMENTS**

12          The PMPA allows termination for breaches of the franchise agreement that are of

13  "reasonable and material significance to the franchise relationship."   15 U.S.C. § 2802(b)(2)(A).

14  The PMPA was designed to prevent "sham, pretextual, or discriminatory" franchise termination, but

15  does not invite the courts to second-guess the reasonable business judgments of the franchisors.  *See,*

16  *e.g., Magerian v. Exxon Corp.* (9th Cir. 1997) 124 F.3d 212, 1997 WL 525273 at *2; *Rodgers v. Sun*

17  *Refining and Marketing Co.* (3d Cir. 1985) 772 F.2d 1154, 1158; *Horcasitas v. Crown Cent.*

18  *Petroleum Corp.* (D. Maryland 1986) 649 F. Supp. 1163, 1166; *Unocal Corp. v. Kaabipour* (9th Cir.

19  1999) 177 F.3d 755, 767; and *Gruber v. Mobil Oil Corp.* (D. Mich. 1983) 570 F. Supp. 1088, 1091

20  n.5, 1093-1094.  To that end, the PMPA contains a list of safe harbor instances which are *per se*

21  defined as constituting reasonable and materially significant grounds for franchise termination.  15

22  U.S.C. §§ 2802(c)(1)–(12).  Among this list of "*per se*" reasonable grounds for termination, which

23  are relevant here are the following:

24          •   Section 2802(c)(8): Failure by the franchisee to pay to the franchisor in a

25              timely manner when due all sums to which the franchisor is legally entitled;

26              and

27          •   Section 2802(c)(9): Failure by the franchisee to operate the marketing

28              premises for 7 consecutive days.

12

1        Where an event falls within the Section 2802(c) list, the franchise termination is

2    conclusively presumed to be reasonable. *Desofosses v. Wallace Energy, Inc.* (1st Cir. 1987) 836

3    F.2d 22, 26 ("If an event falls within [Section 2802(c)] list, termination is conclusively presumed to

4    be reasonable as a matter of law."); *Russo v. Texaco* (2d Cir. 1986) 808 F.2d 221, 223 ("Once having

5    ascertained that an event is encompassed by one of the twelve enumerated events [in Section

6    2802(c)], a court need make no further inquiry as to the reasonableness of the termination.");

7    *Clinkscales v. Chevron, U.S.A., Inc.* (11th Cir. 1987) 831 F.2d 1565, 1573; and *Hinkleman v. Shell*

8    *Co.* (4th Cir. 1992) 962 F.2d 372, 378 (the enumerated list under Section 2802(c) sets forth

9    termination grounds which are "*per se* reasonable").

10        BPWCP's grounds for terminating STTN's franchise relationship are among such

11    "*per se*" reasonable and materially significant grounds, as follows:

12        **A.**   **STTN's Failure To Pay For Gasoline Delivered Justifies The Franchise**

13                **Termination Under the PMPA**

14        STTN's failure to pay all sums to which BPWCP is legally entitled affords a separate

15    and *per se* basis for franchise termination. 15 U.S.C. § 2802(c)(8). Consistent with the PMPA,

16    BPWCP's Gasoline Agreement with STTN provides that BPWCP may terminate the Franchise

17    Agreements if STTN fails to timely pay all sums due to and which BPWCP is legally entitled.

18    [Reeder Decl., Exh. A at ¶ 17.1(h); Sayed Depo., Exh. A at ¶ 17.1(h).]

19        Summary judgment in favor of franchisors is appropriate when the franchisee's

20    failure to pay is undisputed. *See, e.g., Loomis v. Gulf Oil Corp.* (M.D. Fla. 1983) 567 F. Supp. 591,

21    598 (failure to pay $56,233.52 for gasoline is a default in the franchise agreements entitling

22    franchisor to summary judgment); *Shell Oil Company v. Kozub* (N.D. Ohio 1983) 574 F. Supp. 114,

23    118 (in accordance with Section 2802(c)(8), of the franchisee's failure to pay for gasoline entitles the

24    franchisor to summary judgment.); *Marathon Petroleum Co. v. Pendleton* (6th Cir. 1989) 889 F.2d

25    1509, 1510 (affirming summary judgment for the franchisor based on an overdue balance of

26    $3,347.93, and missed payments on a note for other funds owned); *Khoury v. Getty Petroleum Corp.*

27    (D.R.I. 1993) 1993 U.S. District LEXIS 19641 (termination of a franchise due to failure to pay rent

28    and for gasoline is conclusively presumed to be reasonable.); *Hinkleman v. Shell Oil Co.* (4th Cir.

1992) 962 F.2d 372, 378 (failure to make payments is a "per se reasonable" ground for termination of the PMPA.).

Here, it is undisputed that STTN has failed to pay BPWCP for gasoline products in a timely manner, incurring an outstanding balance of over $126,000, for gasoline product deliveries that are due and payable at the time of delivery. [Reeder Decl., ¶¶ 7-9; Christensen Decl., ¶¶ 8-9; Sayed Depo., at 159:8-11 and 166:3-13; Nazim Depo., at 74:25-75:2 and 76:4-5.] Moreover, BPWCP gave STTN ample opportunity to pay these outstanding amounts back, even agreeing to a payment plan. [See Nazim Depo., at 79:2-4; Sayed Depo., at 162:5-22 and 164:15-165:12 and Exh. O; Reeder Decl., ¶¶ 7-9 and Exh. E.] STTN, Sayed Faquiryan and Nazim Faquiryan, however, never made any payments to BPWCP pursuant to the Payment Plan Agreement. [Reeder Decl., ¶¶ 8-9; Sayed Depo., at 166:3-13.]

PMPA authorities hold that BPWCP should not be forced to continue doing business with a franchisee who continuously fails to pay for products provided; BPWCP's termination on this ground was proper and summary adjudication on BPWCP's First Cause of Action to affirm that the franchise termination was proper under the PMPA is warranted.

**B.    STTN's Failure to Operate The Station For At Least 12 Days Justifies The Franchise Termination Under The PMPA**

Failure by a franchisee to operate the marketing premises for seven consecutive days is specifically defined in the PMPA as an event relevant to the franchise relationship warranting termination. See, 15 U.S.C. § 2802(c)(9). Failing "to operate the premises for seven consecutive days," are material provisions of the agreement. [Reeder Decl., Exh. A at ¶¶ 17.1(h) and (i); Sayed Depo., Exh. A at ¶¶ 17.1(h) and (i).] The Gasoline Agreement requires STTN to "order and make available for retail sale all grades of Gasoline which ARCO offers . . . (hereinafter collectively, "Product"), in amounts sufficient to satisfy all foreseeable retail customer demand for Product at the Premises." [Reeder Decl., Exh. A at ¶ 2; Sayed Depo., Exh. A at ¶ 2.] Failure to offer any fuel is not only a breach of paragraph 2 of the Gasoline Agreement, which is patently material and significant to the franchise relationship, but also a failure to operate the premises, also warranting termination under Paragraph 17.1(o) of the agreement and PMPA § 2802(c)(9).

14

The case law also supports such a proper ground for termination. Indeed, it has been held that a service station franchisee's failure to sell gasoline frustrates the very purpose of the franchise. *See, e.g., Townsend v. Mobil Oil Corporation* (D. Mass 1992) 1992 WL 17252 ("[t]he primary purpose of a Mobil franchise is to sell Mobil products"). For that reason, the failure to sell gasoline for seven days is a sufficient basis for termination of the franchise. *Smoot v. Mobil Oil Corporation* (D. Mass. 1989) 722 F. Supp. 849, 855 ("[b]ecause the fundamental purpose of any Mobil franchise is to sell Mobil products," the court granted franchisor's motion for summary judgment based on franchisee's failure to sell gas for seven days); *Charter Marketing Co. v. Burgin* (D. Conn. 1989) 1989 U.S. District Lexis 18393, CCH Franchise Business Guide Paragraph 9504 (franchisor's motion for summary judgment was granted based on the franchisee's failure to operate the Station for seven days or pay rent).

Here, commencing on the evening of August 23, 2007 through at least September 4, 2007, STTN placed a caution tape around the dispensers such that customers were unable to purchase gasoline; in other words, STTN was failing to operate the Station as required to do so under the Gasoline Agreement. [Christensen Decl., ¶ 10.] BPWCP's representative confirmed the non-sale of gasoline by attempting to pump gasoline from a dispenser that was located on the exterior of the pump station islands (and therefore not technically taped off), and was unable to pump or purchase any gasoline. [*Id.*] Furthermore, as discussed above, BPWCP's last delivery of gasoline was on August 18, 2007. [Reeder Decl., ¶ 11 and Exh. G.]

BPWCP issued numerous defaults concerning this breach and issued many warnings to STTN that the franchise would be terminated if STTN did not remedy the breach. [Reeder Decl., Exh. F.] However, STTN failed to sell ARCO-branded gasoline to the public for at least 12 consecutive days, and as such, BPWCP had reasonable grounds to terminate STTN. Summary judgment should be granted in favor of BPWCP on its First Cause of Action for a declaration that the franchise termination was proper.

**C.** **STTN's Failure to Make All Grades of Gasoline Available Justifies the Franchise Termination Under the PMPA**

Yet another basis for franchise termination is STTN's failure to make all grades of gasoline available for sale to the public. Paragraph 2 of the Gasoline Agreement requires STTN to "order and make available for retail sale all grades of Gasoline which BPWCP offers to Buyer (hereinafter collectively, "Product"), in amounts sufficient to satisfy all foreseeable retail customer demand for Product at the Premises" and "at all times have available for sale some of each grade of Product." [Reeder Decl., Exh. A at ¶ 2; Sayed Depo., Exh. A at ¶ 2.] Furthermore, the Gasoline Agreement also expressly provides that termination will occur where the franchisee "fails to exert good faith efforts to carry out the provisions of the Agreement following written notice and opportunity to cure . . . ." [Reeder Decl., Exh. A at ¶ 17.1(a); Sayed Depo., Exh. A at ¶ 2.]

As stated in the Termination Notice, BPWCP sent STTN a total of 12 Default Notices for, *inter alia*, STTN's failure to offer all grades of gasoline for sale. [Reeder Decl., Exhs. F and H; Christensen Decl., ¶¶ 8-12 and Exhs. B and C; Sayed Depo., at 166:19-167:4 and Exhs. P and R.] STTN, however, continued its breaches and as such, BPWCP's termination of STTN's franchise was proper and warranted under the PMPA. Accordingly, this Court should grant summary judgment in favor of BPWCP on its First Cause of Action for Declaratory Relief to affirm the franchise termination was proper under the PMPA.

**V.** **BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF ITS CLAIMS INVOLVING BREACH OF THE FRANCHISE AGREEMENTS AND GUARANTIES**

Summary judgment of BPWCP's contract claims is appropriate because no genuine issues of fact exist regarding Defendants' breaches of the Franchise Agreements and the related personal guaranties. *See Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323; *Adickes v. S.H. Kress & Co.* (1970) 398 U.S. 144, 157; *Zumbrun v. United Services Auto. Assoc.* (E.D.Cal 1989) 719 F. Supp. 890, 892; Fed.R.Civ.P. 56(c). The elements of a claim for breach of contract are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach; and (4) damages. *First Commercial Mortgage Co. v. Reece* (2001) 89 Cal.App.4th 731, 745.

1    As explained in detail below, BPWCP has established each of these elements for each

2    of its breach of contract claims pertaining to the franchise agreements, which consists of: (1) STTN's

3    Breach of the Gasoline Agreement; (2) STTN's Breach of the Mini-Market Agreement; and (3)

4    Nazim Faquiryan's and Sayed Faquiryan's Breach of the Franchise Guaranties.

5    **A.    BPWCP and Defendants are Parties to Various Agreements**

6    BPWCP entered into various Franchise Agreements with Defendants which include

7    the Gasoline and Mini-Market Agreements, which were signed by STTN and executed by Sayed

8    Faquiryan and Nazim Faquiryan on behalf of STTN, and the personal guaranties of the Franchise

9    Agreements, which were executed by Nazim Faquiryan and Sayed Faquiryan.  [Sayed Depo., at

10    35:13-36:2, 40:13-41:24, 47:24-48:7 and Exhs. A, C and D; Nazim Depo., at 10:18-21, 12:4-7,

11    20:11-17, and Exhs. A, C and T.].

12    **B.    BPWCP Fully Performed Under The Agreements**

13    BPWCP performed all of its requirements under each of these Franchise Agreements,

14    including but not limited to selling and delivering ARCO-branded gasoline to STTN, [Reeder Decl.,

15    ¶ 5 and Exh. A at ¶¶ 2, 4; Christensen Decl., ¶ 4; Sayed Depo., Exh. A at ¶¶ 2, 4.].

16    **C.    Defendants Breached The Agreements**

17    Defendants have failed to perform their contractual obligations, including but not

18    limited to, the following breaches:

19    1.    STTN Breached The Gasoline Agreement:  STTN failed to pay BPWCP for

20    gasoline products in a timely manner.  As of September 5, 2007, STTN had an outstanding balance

21    of $126,194.77 for gasoline product deliveries that were due and payable at the time of delivery.

22    [Reeder Decl., ¶ 8 and Exh. A at ¶ 17.1(h); Christensen Decl., ¶ 8; Sayed Depo., Exh. A at ¶

23    17.1(h).]  Although STTN had issued several checks, they were returned by STTN's bank because

24    STTN had insufficient funds.  [Reeder Decl., ¶ 61; Christensen Decl., ¶ 5.]

25    STTN also failed to operate the station or have any gasoline products available for

26    sale to the motoring public for at least 12 consecutive days, as required under the Gasoline

27    Agreement.  [Reeder Decl., ¶¶ 10-13, Exh. F, and Exh. A at ¶ 17.1(i); Christensen Decl., ¶¶ 10-12

28    and Exh. B; Sayed Depo., Exh A at ¶ 17.1(i) and Exh. P.]  In fact, STTN taped off the Station

17

1    dispensers from any use by customers, and did not sell any gasoline from the evening of August 23,

2    2007 through at least September 4, 2007.  [Christensen Decl., ¶¶ 10-12 and Exh. B.]

3            2.     STTN Breached The Mini Market Agreement:  By virtue of its breach of the

4    Gasoline Agreement, STTN failed to conduct all concurrent operations, including but not limited to

5    its failure to sell gasoline products and make all grades of gasoline products available at the Station

6    as required under the Mini Market Agreement. [Reeder Decl., ¶ 3 and Exh. B at ¶ 4.05 (requires all

7    "Concurrent Operations at the Premises" be conducted and governed by the terms and conditions

8    and provisions of the applicable Franchise Agreement, i.e., the Gasoline Agreement); Sayed Depo.,

9    Exh. B at ¶ 4.05.]

10            3.     Nazim and Sayed Breached The Franchise Guaranties:  Nazim Faquiryan and

11    Sayed Faquiryan admitted that STTN had incurred an outstanding balance of over $126,000 for

12    gasoline deliveries, but failed and refused to make the required payments to BPWCP pursuant to

13    their personal guaranties of the Franchise Agreements.  [Nazim Depo., at 79:2-4 and 76:4-5; Sayed

14    Depo. at 164:15-165:12 and Exh. O; Reeder Decl., ¶¶ 5-10 and Exhs. F and H.]

15          **D.**   **BPWCP Has Been Damaged by Defendants' Breaches**

16            Because of Defendants' breaches of the Franchise Agreements BPWCP has been

17    damaged.  As a result of STTN's breach of the Franchise Agreements, BPWCP has been damaged in

18    the amount of at least $126,194.77[7] for gasoline product deliveries that were due and payable at the

19    time of delivery.   [See Reeder Decl., ¶¶ 8, 9; Christensen Decl., ¶¶ 8, 9.]   Accordingly, the

20    undisputed facts support a finding in favor of BPWCP and against STTN on the Second, Third and

21    Fourth Causes of Action, as a matter of law.

22    **VI.**    **BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF ITS CLAIMS**

23           **INVOLVING THE BREACH OF THE STORE LOAN AGREEMENT AND**

24           **GUARANTEE**

25            Summary judgment of BPWCP's contract claims pertaining to the Store Loan

26    Agreement and guarantee is also proper.

27    _____

28    [7]  This amount does not include other sums due to BPWCP.  For example, applying deposits and other payments due, BPWCP seeks a total of at least $139,950.87 as well as liquidated damage amounts. [See Second Amended Complaint, ¶¶ 55 & 60.]

1     **A.**     **BPWCP and Defendants are Parties to the Store Loan Agreement**

2            BPWCP entered into the Store Loan Agreement, which was signed by STTN and

3 executed by Sayed Faquiryan and Nazim Faquiryan, [Sayed Depo., at 78:11-21 and Exh. F; Nazim

4 Depo., at 14:4-8, 14:15-17, and 89:8-11.] Nazim Faquiryan, Sayed Faquiryan, and Maghul

5 Faquiryan signed personal loan guaranties of the Store Loan Agreement. [Sayed Depo., at 90:23-

6 91:6 and Exh. L; Nazim Depo., at 21:15-24 and Exh. U; RFA to Maghul Faquiryan, Exh. B; Maghul

7 Faquiryan Discovery Response, at RFA No. 2.]

8     **B.**     **BPWCP Fully Performed Under The Store Loan Agreement**

9            BPWCP performed all of its requirements under the Store Loan Agreement by

10 disbursing and funding $150,000 for Defendants' benefit pursuant to the Store Loan Agreement and

11 in connection with its guarantee of Nazim Faquiryan and Sayed Faquiryan's personal guaranties of

12 the Store Loan Agreement. [McDonnell Decl., ¶ 7; Reeder Decl., Exh. J at ¶¶ 1, 2; Sayed Depo., at

13 55:11-13 and 106:1-5 and Exh. F at ¶¶ 1, 2.]

14     **C.**     **Defendants Breached The Store Loan Agreement**

15            STTN, Nazim Faquiryan and Sayed Faquiryan failed to repay the outstanding balance

16 of the Store Loan within 30 days of the occurrence of an Event of Default, as required under the

17 Store Loan Agreement. [Reeder Decl., ¶ 19 and Exh. J at ¶ 5.1 and Exh. M; Sayed Depo., Exh. F at

18 ¶ 5.1 and Exh. R.] Termination of the franchise agreements, which occurred on September 6, 2007,

19 is such an Event of Default. [Reeder Decl., Exh. J at ¶ 4.5; Sayed Depo., Exh. F at ¶ 4.5.] Pursuant

20 to the Store Loan Agreement and the Termination Notice, the loan balance was due before October

21 5, 2007. [Reeder Decl., ¶ 19.] To date, the loan balance has not be repaid by Defendants. [*Id.*]

22            Despite BPWCP's demand for payment, Nazim, Sayed, and Maghul Faquiryan, as

23 individual guarantors, failed to repay BPWCP the outstanding balance of the Store Loan, as required

24 under the Loan Guaranties. [Reeder Decl., ¶ 19 and Exh. J; Sayed Depo., at 90:23-91:6, Exh. L;

25 Nazim Depo., at 21:15-22:12, Exh. U; RFA to Maghul Faquiryan, Exh. B; Maghul Faquiryan

26 Response, at RFA No. 2.] Accordingly, these parties have also breached the Loan Guaranties.

27     **D.**     **BPWCP Has Been Damaged by Defendants' Breaches**

28            As a result of STTN's breach of the Store Loan Agreement, BPWCP has been

1  damaged in the amount of $150,000 in principal, plus interest and attorneys' fees and costs yet to be

2  determined. [Reeder Decl., ¶ 19 and Exh. J at ¶ 9.9; Sayed Depo., Exh. F at ¶ 9.9.]

3      Accordingly, summary judgment in favor of BPWCP and against STTN on the loan

4  agreement related Seventh and Eighth Causes of Action is warranted.

5  **VII.  BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON ITS COMMON COUNT**

6        **FOR GOODS SOLD AND DELIVERED**

7      Under California state law, in order to prevail on its claim on a common count, a

8  plaintiff must prove: (1) a statement of indebtedness in a certain sum; (2) consideration (i.e., goods

9  sold); and (3) non-payment. *G. Hirsch & Co. v. AmerisourceBergen Corp.* (C.D. Cal. May 17,

10  2006) 2006 U.S. Dist. LEXIS 32895, at *7 (citing *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.

11  App. 4th 445, 460).

12      The undisputed facts show that STTN requested that BPWCP deliver ARCO-branded

13  gasoline pursuant to the Franchise Agreements; STTN and BPWCP agreed upon the price or

14  reasonable value of the goods; BPWCP delivered the gasoline products to STTN; but STTN refused

15  to pay for the goods sold and delivered by BPWCP to it. [Sayed Depo., at 153:23-154:7, 156:23-

16  157:2, 160:22-24, and 166:7-10; Reeder Decl., ¶¶ 5-9; Christensen Decl., ¶¶ 4-9.] Because STTN

17  admits that it agreed to purchase certain goods (i.e., ARCO-branded gasoline) from BPWCP which it

18  received and for which it refused to pay, BPWCP's motion for summary judgment on its Fifth Cause

19  of Action for Goods Sold and Delivered should be granted.

20  **VIII.  BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR UNJUST**

21        **ENRICHMENT**

22      The principle of unjust enrichment forms the basis for the right to restitution upon a

23  quasi-contractual theory of recovery. *Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d

24  1310 (citing *Frank v. Tavares* (1956) 142 Cal.App.2d 683, 389). An individual is required to make

25  restitution if he or she is unjustly enriched at the expense of another. *First Nationwide Savings v.*

26  *Perry* (1992) 11 Cal.App.4th 1657, 1662. A person is "enriched" if the person receives a benefit at

27  another's expense and a benefit means any type of advantage. *Id.* at 1663. Accordingly, where one

28  obtains a benefit that he or she may not justly retain, that person is unjustly enriched, and the law

1    creates an obligation, irrespective of the intention of the parties, that person must restore the

2    aggrieved party to his or her former position by return of the thing or its equivalent in money.

3    *Holmes v. Steele* (1969) 269 Cal.App.2d 675, 678.

4              STTN, as well as Nazim Faquiryan and Sayed Faquiryan as guarantors, obtained the

5    benefit of receiving deliveries of gasoline from BPWCP without having paid for the gasoline.

6    STTN, Nazim Faquiryan and Sayed Faquiryan have been able to sell and profit from the gasoline

7    that was delivered by BPWCP. [Reeder Decl., ¶¶ 7-9.] Nazim Faquiryan and Sayed admitted that

8    STTN owed money to BPWCP for gasoline delivered to STTN, and promised that STTN would

9    make monthly payments until the total balance was paid off. [Nazim Depo., at 79:2-4; Sayed Depo.,

10   at 164:15-165:12 and Exh. O; Reeder Decl., ¶ 7 and Exh. E; Christensen Decl., ¶ 7 and Exh. A.]

11   Despite reaping such benefits and agreeing to make monthly payments, Defendants have not made

12   any payments to BPWCP for the gasoline product. [Reeder Decl., ¶¶ 8-9; Christensen Decl., ¶¶ 8-9.]

13             Accordingly, the benefits Defendants received, their knowledge and appreciation of

14   those benefits, and their refusal to pay BPWCP back sufficiently demonstrate the inequity of

15   Defendants' conduct.    The admissions by Nazim Faquiryan and Sayed Faquiryan, and the

16   undisputable facts set forth in the Reeder and Christensen Declarations, satisfy the elements of

17   BPWCP's claim for unjust enrichment against Defendants. Therefore, based on the pleadings and

18   undisputed facts, the Court should enter judgment for BPWCP and against STTN, Nazim Faquiryan,

19   and Sayed Faquiryan on this claim.

20   **IX.    BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR**

21          **UNIFIED JUDICIAL FORECLOSURE**

22             Under California law, the elements of a judicial foreclosure action requires a plaintiff

23   to establish: (1) the execution of the note and deed of trust or mortgage by the defendant and their

24   terms, *see Talcott v. Meakin* (1915) 26 Cal.App. 293; (2) the default of the defendant, *see Luddy v.*

25   *Pavkovich* (1902) 137 Cal. 284, 285; *Quackenbush v. Darrough* (1919) 44 Cal.App. 564, 566-67;

26   and (3) the personal liability of all defendants who are personally liable to allow the court to enter a

27   judgment for any deficiency. Civ. Proc. Code § 726; *see also Nymark v. Heart Fed. Savings & Loan*

28   *Ass'n* (1991) 231 Cal.App.3d 1089, 1093-95 (affirming defendant's motion for summary judgment

21

1    for judicial foreclosure).

2         Here, the Store Loan Agreement was secured by a Deed of Trust, which AVA Global

3    executed and recorded, as well as by a UCC-1, which AVA Global and STTN executed and recorded

4    to secure the personal property interests located on or affixed to the Real Property. [Reeder Decl., ¶

5    18 and Exhs. M and P; Sayed Depo., at 89:16-90:1 and Exh. J; Nazim Depo., at 24:7-13.] AVA

6    Global, BPWCP and STTN also entered into the Consent to Encumbrance, which created a leasehold

7    mortgage encumbering STTN's leasehold estate in the Real Property and STTN's lease of the Real

8    Property. [Reeder Decl., ¶ 18 and Exh. N; Sayed Depo., at 90:7-19 and Exh. K; Nazim Depo., at

9    27:23-25.] In addition, STTN executed a Promissory Note evidencing the Store Loan. [Reeder

10    Decl., ¶ 18 and Exh. O; Sayed Depo., at 80:18-24 and Exh. G; Nazim Depo., at 15:3-6.] BPWCP

11    has fully performed under the Store Loan Agreement by fully funding and disbursing the $150,000

12    loan amount to STTN. [Reeder Decl., Exh. J; McDonnell Decl., ¶ 7.] Defendants, on the other

13    hand, have defaulted on the Store Loan as of September 6, 2007, when they failed (and continue to

14    fail) to pay BPWCP the outstanding loan balance of $150,000 plus interest owed to BPWCP.

15    [Reeder Decl., ¶ 19 and Exh. J at ¶¶ 4.5, 5.1; Sayed Depo., Exh. F at ¶¶ 4.5, 5.1.] As a result of

16    Defendants' such failure and default, BPWCP has exercised its rights to declare the entire sum due

17    from Defendants immediately due and payable. [Reeder Decl., ¶ 19.]

18         Accordingly, as there are no genuine issues of material fact, concerning Defendants'

19    default on the Store Loan, BPWCP is entitled to summary judgment in its favor on its claim for a

20    unified judicial foreclosure. Therefore, and on that basis, BPWCP requests that this Court determine

21    that the Store Loan is in default, order the Real Property and the related personal property be sold to

22    satisfy the loan balance due and owing to BPWCP, declare STTN liable for any deficiency arising

23    from any insufficient sale price, and declare that a deficiency judgment may be ordered against

24    STTN following proceedings prescribed by law.

25

26

27

28

1

**X.    CONCLUSION**

2

     It is undisputed that STTN failed to make payments for the gasoline deliveries, failed

3

to make gasoline available for over seven consecutive days, and failed to make all grades available

4

for sale.  It is also undisputed that BPWCP lent STTN $150,000 to upgrade its property and agreed

5

to a payment plan for the large gas balance delinquency incurred by STTN.  All of these failures

6

were clear breaches of the applicable franchise agreements, loan agreements, and related guaranties.

7

Given the undisputed facts presented herein, BPWCP had every right under the PMPA, the franchise

8

agreements, and the applicable law, to terminate the franchise relationship with STTN and now seek

9

to recover the amounts due for the gasoline balances and the loan.    Accordingly, BPWCP

10

respectfully requests this Court grant this Motion in its entirety and find for BPWCP as a matter of

11

law.

12

DATED:  July 3, 2008                    Respectfully submitted,

13

14

KURT OSENBAUGH
DEBORAH YOON JONES
SAYAKA KARITANI

15

**WESTON, BENSHOOF, ROCHEFORT,
     RUBALCAVA & MacCUISH LLP**

16

17

18

Deborah Yoon Jones
Attorneys for Plaintiff and Counter-Defendant

19

BP WEST COAST PRODUCTS LLC

20

21

22

23

24

25

26

27

28

23