EXHIBIT 3

1  KURT OSENBAUGH (State Bar No. 106132)
   DEBORAH YOON JONES (State Bar No. 178127)
2  SAYAKA KARITANI (State Bar No. 240122)
   **WESTON, BENSHOOF, ROCHEFORT,**
3  **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street, Sixteenth Floor
4  Los Angeles, California 90071
   Telephone: (213) 576-1000
5  Facsimile: (213) 576-1100
   kosenbaugh@wbcounsel.com
6  djones@wbcounsel.com
   skaritani@wbcounsel.com
7
   Attorneys for Plaintiffs and Counter-Defendants
8  BP WEST COAST PRODUCTS LLC and
   ATLANTIC RICHFIELD COMPANY
9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company; and | Case No.: C07 04808 RS |
| 14  ATLANTIC RICHFIELD COMPANY, a Delaware Corporation, | **PLAINTIFF'S REQUESTS FOR ADMISSION TO DEFENDANT MAGHUL FAQUIRYAN (SET NO.** |
| 15                    Plaintiff, | **ONE)** |
| 16  v. | Honorable Jeremy Fogel |
| 17  STTN ENTERPRISES, INC., a California | Filing Date:        September 17, 2007 |
| 18  Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an | |
| 19  individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL | |
| 20  ENTERPRISE, LLC, a California limited liability company, | |
| 21                    Defendants. | |
| 22 | |
| 23  AND RELATED COUNTERCLAIMS. | |
| 24 | |

25

26

27

28                                      307

1114667.1

PROPOUNDING PARTY:    Plaintiff and Counter-Defendant BP WEST COAST PRODUCTS LLC

RESPONDING PARTY:    Defendant MAGHUL FAQUIRYAN

SET NUMBER:    One (1)

Pursuant to Federal Rule of Civil Procedure 36, Plaintiff and Counter-Defendant BP West Coast Products LLC ("BPWCP") hereby propounds to Defendant MAGHUL FAQUIRYAN this first set of Requests for Admissions.

## DEFINITIONS AND INSTRUCTIONS

The following definitions apply to each of the document requests:

## DEFINITIONS

1.    As used herein, the terms "YOU" and "YOUR" shall mean and refer to Defendant Maghul Faquiryan and her respective past and present representatives, agents, employees, attorneys, accountants, investigators, insurers, and anyone acting on her behalf.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1.:**

Admit that the agreement entitled, "Guaranty Agreement" that YOU signed and dated on June 20, 2006, and that is attached hereto as Exhibit A, is genuine.

**REQUEST FOR ADMISSION NO. 2.:**

Admit that the agreement entitled, "Unconditional Continuing Guaranty" that YOU signed and dated on January 19, 2007, and that is attached hereto as Exhibit B, is genuine.

308

1

1114667.1

1

2  DATED: February 1, 2008          KURT OSENBAUGH

3                                   DEBORAH YOON JONES
                                    SAYAKA KARITANI

4                                   **WESTON, BENSHOOF, ROCHEFORT,**
                                    **RUBALCAVA & MacCUISH LLP**

5

6

7                                   Sayaka Karitani
                                    Attorneys for Plaintiffs and Counter-Defendants

8                                   BP WEST COAST PRODUCTS LLC and
                                    ATLANTIC RICHFIELD COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                    309

28

2

1114667.1

# EXHIBIT A

**BP West Coast Products LLC** ✜

**Guarantee Agreement**
**Individual**

Facility: 82461

The undersigned Nazim Faquiryan and _____ (spouse, if married), intending to be legally bound hereby and in consideration of BP West Coast Products LLC, organized in Delaware (hereinafter called "BPWCP") advancing credit to STTN Enterprises, Inc. (hereinafter called "Debtor"), and also in consideration of BPWCP, at its sole discretion, (a) agreeing to any additional credit at any time hereafter to Debtor for petroleum products and other merchandise, or (b) to extend credit, advance money, or defer time for payment of any money due or to become due under contract or obligation arising from any lease or loan, or (c) to extend credit in any other manner to, or at the request or for the account of Debtor, either with or without security (all such liability and obligation of Debtor to BPWCP now or hereafter existing being hereinafter referred to as "Obligations"), do hereby jointly and severally guarantee and agree to pay to BPWCP, upon demand, all of the Obligations together with interest thereon, and any and all expenses, including but not limited to, reasonable attorneys' fees which may be incurred by BPWCP in collecting all or any of the Obligations and/or enforcing any rights hereunder; it being further understood and agreed that the liability hereunder of the undersigned shall be unlimited as to the amount of Obligations covered by this Guaranty.

The undersigned waive any right to require BPWCP to (a) proceed against Debtor or any other party; (b) proceed against or exhaust any security held from Debtor; or (c) pursue any other remedy in BPWCP's power whatsoever. The undersigned waive any defense based on or arising out of any defense of Debtor other than payment in full of the indebtedness, including without limitation any defense based on or arising out of the disability of Debtor, or the unenforceability of the indebtedness or any part thereof from any cause, or the cessation from any cause of the liability of Debtor other than payment in full of the indebtedness. BPWCP may, at its election, foreclose on any security held by BPWCP by one or more judicial or nonjudicial sales whether or not every aspect of any such sale is commercially reasonable, or exercise any other right or remedy BPWCP may have against Debtor, or any security, without affecting or impairing in any way the liability of the undersigned except to the extent the indebtedness has been paid. The undersigned waive any defense arising out of any such election by BPWCP, even though such election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of the undersigned against Debtor or any security. Until all indebtedness of Debtor to BPWCP shall have been paid in full, even though such indebtedness is in excess of the undersigned's liability hereunder, the undersigned shall have no right of subrogation and waive any right to enforce any remedy which BPWCP now has or may hereafter have against Debtor, and waive any benefit of, or any right to participate in any security now or hereafter held by BPWCP.

If this Guaranty is executed by two or more parties, they shall be severally liable hereunder, and the word "undersigned" wherever used herein shall be construed to refer to each of such parties separated, all in the same manner and with the same effect as if each of them had signed separate instruments; and in any such case this Guaranty shall not be revoked or impaired as to any one or more of such parties by the death of any of the others or by the revocation or release of any liabilities hereunder of any one or more of such other parties.

Executed at _____, this 20 day of June , 20 06 .

_____    _____
Witness                                         Guarantor – Nazim Faquiryan

_____
Residence of Guarantor (street, city, state, zip code)

_____    _____
Witness                                         Guarantor - Spouse

_____
Residence of Guarantor (street, city, state, zip code)

* Subscribed and sworn to before me this 20th day of June , 20 06 .

_____
Notary Public

*Required in all states

MINA FAQUIRYAN
Commission # 1494761
Notary Public - California
Santa Clara County
My Comm. Expires Jun 13, 2008

311

124

**BP West Coast Products LLC** ◆

Guarantee Agreement
Individual

Facility: <u>82461</u>

The undersigned <u>Sayed Faquiryan</u> and _____ (spouse, if married), intending to be legally bound hereby and in consideration of BP West Coast Products LLC, organized in Delaware (hereinafter called "BPWCP") advancing credit to <u>STTN Enterprises, Inc.</u> (hereinafter called "Debtor"), and also in consideration of BPWCP, at its sole discretion, (a) agreeing to any additional credit at any time hereafter to Debtor for petroleum products and other merchandise, or (b) to extend credit, advance money, or defer time for payment of any money due or to become due under contract or obligation arising from any lease or loan, or (c) to extend credit in any other manner to, or at the request or for the account of Debtor, either with or without security (all such liability and obligation of Debtor to BPWCP now or hereafter existing being hereinafter referred to as "Obligations"), do hereby jointly and severally guarantee and agree to pay to BPWCP, upon demand, all of the Obligations together with interest thereon, and any and all expenses, including but not limited to, reasonable attorneys' fees which may be incurred by BPWCP in collecting all or any of the Obligations and/or enforcing any rights hereunder; it being further understood and agreed that the liability hereunder of the undersigned shall be unlimited as to the amount of Obligations covered by this Guaranty.

The undersigned waive any right to require BPWCP to (a) proceed against Debtor or any other party; (b) proceed against or exhaust any security held from Debtor; or (c) pursue any other remedy in BPWCP's power whatsoever. The undersigned waive any defense based on or arising out of any defense of Debtor other than payment in full of the indebtedness, including without limitation any defense based on or arising out of the disability of Debtor, or the unenforceability of the indebtedness or any part thereof from any cause, or the cessation from any cause of the liability of Debtor other than payment in full of the indebtedness. BPWCP may, at its election, foreclose on any security held by BPWCP by one or more judicial or nonjudicial sales whether or not every aspect of any such sale is commercially reasonable, or exercise any other right or remedy BPWCP may have against Debtor, or any security, without affecting or impairing in any way the liability of the undersigned except to the extent the indebtedness has been paid. The undersigned waive any defense arising out of any such election by BPWCP, even though such election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of the undersigned against Debtor or any security. Until all indebtedness of Debtor to BPWCP shall have been paid in full, even though such indebtedness is in excess of the undersigned's liability hereunder, the undersigned shall have no right of subrogation and waive any right to enforce any remedy which BPWCP now has or may hereafter have against Debtor, and waive any benefit of, or any right to participate in any security now or hereafter held by BPWCP.

If this Guaranty is executed by two or more parties, they shall be severally liable hereunder, and the word "undersigned" wherever used herein shall be construed to refer to each of such parties separated, all in the same manner and with the same effect as if each of them had signed separate instruments; and in any such case this Guaranty shall not be revoked or impaired as to any one or more of such parties by the death of any of the others or by the revocation or release of any liabilities hereunder of any one or more of such other parties.

Executed at _____, this _20_ day of _June_, 20 _06_.

Witness _____        _____
                                        Guarantor – Sayed Faquiryan

_____
Residence of Guarantor (street, city, state, zip code)

Witness _____        _____
                                        Guarantor - Spouse

_____
Residence of Guarantor (street, city, state, zip code)

* Subscribed and sworn to before me this _20th_ day of _June_, 20 _06_.

_____
        Notary Public

*Required in all states

MINA FAQUIRYAN
Commission # 1490761
Notary Public - California
Santa Clara County
My Comm. Expires Jun 13, 2008

312

# EXHIBIT B

## UNCONDITIONAL CONTINUING GUARANTY

In order to induce BP WEST COAST PRODUCTS LLC, a Delaware limited liability company, its successors and assigns ("Lender") having an office at 4 Centerpointe Dr., LPR 6-180, La Palma, CA 90623-1066, to enter into or continue a loan agreement (collectively, the "Loan Agreement"), as amended from time to time, with STTN ENTERPRISE, INC., a California corporation limited partnership ("Debtor"), and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby agrees as follows:

1.      The undersigned, Sayed M.N. Faquiryan and Mahgul Faquiryan (collectively, "Guarantor") hereby irrevocably, fully and unconditionally guaranties to Lender the prompt performance and payment when due, whether by acceleration or otherwise, of all of the following (collectively, the "Obligations"): All loans, advances, indebtedness, liabilities, debit balances, letter of credit or purchase guaranty reimbursement obligations, covenants, duties and all other obligations of whatever kind or nature at any time or from time to time owing by Debtor to Lender, or to any of Lender's affiliates, whether fixed or contingent, known or unknown, liquidated or unliquidated, present or future, no matter how or when arising and whether under said Loan Agreement or any other present or future agreement or otherwise, and including without limitation all obligations owed by Debtor to third parties which are or may be assigned to Lender. In addition, the undersigned agree (s) to fully indemnify Lender against any claim, harm, loss, damage, liability, cost or expense (including all costs, attorneys' fees, accounting fees and investigation fees) incurred in connection with any action, nonperformance or breach by Debtor of said Loan Agreement, or any breach of or failure to perform any representation, promise, agreement or warranty of Debtor or any wrongful acts, conduct or omission or fraud of Debtor. Notwithstanding anything herein to the contrary, the maximum liability of the undersigned under this Guaranty is limited to the principal amount of FOUR HUNDRED AND SEVENTY FIVE THOUSAND Dollars ($475,000.00), plus accrued and unpaid interest, and any costs, expenses and fees of enforcement of this Guaranty or the Loan Agreement; provided, however, that if any of the Obligations arise from false information which was provided by Debtor to Lender where Debtor knew that such information was false or Debtor was grossly negligent in providing such information to Lender, then, the liability of the undersigned for such Obligations shall be unlimited. In connection with the foregoing, the undersigned shall not be liable for any punitive damages unless the undersigned individually or with others caused such false information to be provided to Lender.

2.      The undersigned waives notice of acceptance of this Guaranty and notice of any liability to which it may apply, and waives diligence, presentment, demand for payment, protest, notice of protest, non-performance, dishonor or nonpayment of any such liabilities and/or the Obligations, notices of the existence, creation, incurring of new or additional indebtedness, suit or taking other action by Lender against, and any other notice to, any party liable thereon (including the undersigned), and waives any defense, offset or counterclaim to any liability hereunder and the performance of each and every condition precedent to which the undersigned might otherwise be entitled by law. The undersigned further waives: i) any right to require Lender to institute suit against, or to exhaust its rights and remedies against, Debtor or any other person, or to proceed against any property of any kind securing any of the Obligations, or to exercise any right of offset or other right with respect to reserves held by Lender; ii) any defense arising by reason of any failure of Lender to obtain, perfect, maintain or keep in force any security interest in any property of Debtor or any other person; iii) any defense based upon any failure of Lender to give the undersigned notice of any sale or other disposition of any collateral securing any of the Obligations, or any failure of Lender to comply with any provision of applicable law in enforcing any security interest in any collateral securing any of the Obligations, including without limitation any failure by Lender to dispose of any collateral in a commercially reasonable manner; iv) the benefit of all statutes of limitations with respect to any action based upon, arising out of or relating to this Guaranty; v) any rights under the doctrine of marshalling of assets or any other similar doctrines. Without limiting the generality of any of the foregoing or any other provision of this Guaranty, the undersigned expressly waive any and all benefit which otherwise may be available to the undersigned under California Civil Code Sections 2809, 2810, 2819, 2839, 2845, 2849, 2850, 2899 and 3433 or any comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise and/or any similar law of California or of any other jurisdiction. There are no conditions precedent or other conditions of any kind to the effectiveness of this Guaranty, and this Guaranty is immediately effective.

3.      Lender may at any time from time to time (whether or not after revocation or termination of this Guaranty) without the consent of, or notice to, the undersigned, without incurring responsibility to the undersigned, without impairing or releasing the obligations of the undersigned hereunder, upon or without any terms or conditions

and in whole or in part: (i) change the manner, place or terms or payment, or change or extend the time of payment of, renew, alter or release Debtor or any other guarantor from any of the Obligations, any security therefor, or any liability incurred directly or indirectly in respect thereof, and this Guaranty shall apply to the Obligations as so changed, extended, renewed or altered; (ii) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the Obligations hereby guaranteed or any liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, or offset there against; (iii) exercise or refrain from exercising or release any rights against Debtor or others (including the undersigned) or otherwise act or refrain from acting; (iv) settle or compromise any of the Obligations hereby guaranteed, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect of said Obligations and/or security therefor or this Guaranty, and subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) to creditors of Debtor other than Lender and the undersigned; and (v) apply any sums by whomsoever paid or howsoever realized to any of the Obligations regardless of what Obligations or other liabilities of Debtor remain unpaid.

4.      No invalidity, irregularity or unenforceability of all or any part of the Obligations hereby guaranteed or of any security therefor or of said factoring agreement or any amendment or supplement thereto or any other document existing between Lender and Debtor shall affect, impair or be a defense to this Guaranty and its enforceability. The liability of the undersigned hereunder is primary and unconditional and not merely that of a surety and shall not be subject to any offset, defense or counterclaim of Debtor. This Guaranty is a continuing one and all Obligations to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. The books and records of Lender showing the account and dealings and transactions between Lender and Debtor shall be admissible in evidence in any action or proceeding, including photocopies thereof, shall be binding upon the undersigned for the purpose of establishing the items and amounts set forth therein, and shall constitute prima facie evidence thereof, except that monthly statements rendered by Lender to Debtor shall constitute, to the extent to which no objection is made within thirty (30) days after date thereof, an account stated between Lender and Debtor that shall be binding upon the undersigned. As to each of the undersigned, this Guaranty shall continue until ninety (90) days after written notice of revocation signed by such undersigned has been actually received by Lender, notwithstanding a revocation by, or the death of, or complete or partial release for any cause, of any one or more of the remainder of the undersigned, other guarantors or of Debtor, or of anyone liable in any manner for the Obligations hereby guaranteed, or for the liabilities (including those herein) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase, decrease or change in personnel of any one or more of the undersigned or other guarantors which may be partnerships or corporations.

5.      No revocation or termination hereof shall affect in any manner any of the rights arising under this Guaranty with respect to (i) Obligations which shall have been created, contracted, assumed or incurred prior to or within ninety (90) days after actual receipt by Lender of written notice of such revocation or termination and all extensions, renewals and modifications of said Obligations, or (ii) Obligations which shall have been created, contracted, assumed or incurred more than ninety (90) days after receipt of such written notice pursuant to any contract entered into by Lender prior to expiration of said ninety (90) day period.

6.      Upon the happening of any of the following events: the failure to pay, fulfill or perform any of the Obligations when due, or any breach or failure to perform by Debtor or any of the undersigned of any representation, promise, agreement or warranty to Lender, or any revocation, breach or termination by any of the undersigned of this Guaranty, or the death or insolvency of Debtor or any of the undersigned or suspension of business of Debtor or any of the undersigned or the issuance of any writ of attachment against any of the property of Debtor or any of the undersigned, or the making by Debtor or any of the undersigned or any assignment for the benefit of creditors, or a trustee or receiver being appointed for Debtor or any of the undersigned or for any property of either of them, or any proceeding being commenced by or against Debtor or any of the undersigned under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute - then and in any such event and at any time thereafter, Lender may, without notice to Debtor or any of the undersigned, declare any or all of the Obligations, whether or not then due, immediately due and payable hereunder by any of the undersigned, and Lender shall be entitled to enforce the obligations of any or all of the undersigned hereunder. All sums of money at any time to the credit of the undersigned with Lender or any of its affiliates and any of the property of any or all of the undersigned at any time in the possession of Lender or

any of its affiliates may be held by or on behalf of Lender as security for any and all obligations of the undersigned hereunder notwithstanding that any of said money or property may have been deposited, pledged or delivered by the undersigned for any other, different or specific purpose. Any and all present and future indebtedness and obligations of Debtor to the undersigned, and any and all claims of any nature which the undersigned may now or hereafter have against Debtor are hereby subordinated to the full payment to Lender of the Obligations, and are hereby assigned to Lender as additional collateral security therefor. If Lender so requests, any such indebtedness of Debtor to the undersigned shall be collected, enforced and received by the undersigned as trustees for Lender and be paid over to Lender on account of the Obligations but without reducing or affecting in any manner the liability of the undersigned under the other provisions of this Guaranty.

7.    Whether or not any suit, claim or proceeding is filed, the undersigned agrees to reimburse and compensate Lender on request or demand for all attorneys' fees, accounting fees, investigation fees and all other costs and expenses incurred by Lender in enforcing this Guaranty or any supplement or amendment thereto or arising out of, or relating in any way to this Guaranty or any supplement or amendment thereto, or in enforcing any of the Obligations against Debtor, the undersigned or any other person. In the event Lender or the undersigned file any lawsuit, action, claim or proceeding against the other predicated on a breach or nonperformance of this Guaranty or any supplement or amendment thereto or to enforce any rights under, or to obtain any declaratory or equitable or other relief as to the terms or provisions of, this Guaranty or any supplement or amendment thereto, the prevailing party in such lawsuit, action, claim or proceeding shall be entitled to recover its attorneys' fees, accounting fees, investigation fees and costs of suit from the non-prevailing party.

8.    If claim is ever made upon Lender for repayment of any amount or amounts received by Lender in payment of or on account or pursuant to of any of the Obligations and Lender repays all or part of said amount by reason of (i) any judgment, decree or order of any Court or adjudicatory or administrative body having jurisdiction over Lender or any of its property, or (ii) any settlement or compromise of any claim effected by Lender with any such claimant (including Debtor), then and in any such event the undersigned agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the undersigned, notwithstanding any revocation or release hereof or the cancellation of any note or other instrument evidencing any of the Obligations, or any release or any such Obligations, and the undersigned shall be and remain liable to Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Lender. The provisions of this paragraph shall survive, and continue in effect, notwithstanding any revocation or release hereof.

9.    No delay on the part of Lender in exercising any of its options, powers or rights, or partial or single exercise thereof, shall constitute a waiver thereof. No waiver of any of its rights hereunder, and no modification or amendment of this Guaranty shall be deemed to be made by Lender unless the same shall be in writing, duly signed on behalf of, and as actually authorized by, Lender, and each such waiver, if any, shall apply only with respect to the specific instance, matter or transaction involved, and shall in no way impair the rights of Lender or the obligations of the undersigned to Lender in any other respect, instance, matter or transaction at any other time. The undersigned hereby expressly and unconditionally waives all rights of subrogation, reimbursement and indemnity of every kind against Debtor, and all rights of recourse to any assets or property of Debtor, and all rights to any collateral or security held for the payment and performance of any Obligations, including (but not limited to) any of the foregoing rights which the undersigned may have under any present or future document or agreement with any Debtor or other person, and including (but not limited to) any of the foregoing rights which the undersigned may have under any equitable doctrine of subrogation, implied contract, or unjust enrichment, or any other equitable or legal doctrine.

10.    The undersigned consent and agree that, without notice to or by the undersigned and without affecting or impairing in any way the obligations or liability of the undersigned hereunder, Lender may, from time to time, before or after revocation of this Guaranty, exercise any right or remedy it may have with respect to any or all of the Obligations or any property securing any or all of the Obligations or any guaranty thereof, including without limitation judicial foreclosure, nonjudicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property, and the undersigned expressly waive any defense based upon the exercise of any such right or remedy, notwithstanding the effect thereof upon any of the undersigned's rights, including without limitation, any destruction of the undersigned's right of subrogation against Debtor and any destruction of the undersigned's right of contribution or other right against any other guarantor of any or all of the Obligations or against any other person, whether by operation of Sections 580a, 580d or 726 of the California Code

318

of Civil Procedure, or any comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise. Without limiting the generality of the foregoing, the undersigned waive all rights and defenses that the undersigned may have because the Obligation is secured by real property. This means, among other things: (i) Lender may collect from the undersigned without first foreclosing on any real or personal property collateral pledged by Debtor; and (ii) If Lender forecloses on any real property collateral pledged by Debtor, (A) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price and (B) Lender may collect from the undersigned even if Lender, by foreclosing on the real property collateral, has destroyed any right the undersigned may have to collect from Debtor. This is an unconditional and irrevocable waiver of any rights and defenses the undersigned may have because the Obligations are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure. In addition, without limiting the generality of any of the foregoing, the undersigned waive all rights and defenses that the undersigned may have because the guarantee of another guarantor is secured by real property. This means, among other things: (i) Lender may collect from the undersigned without first foreclosing on any real or personal property collateral pledged by the other guarantor, and (ii) If Lender forecloses on any real property collateral pledged by the other guarantor, (A) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price and (B) Lender may collect from the undersigned even if Lender, by foreclosing on the real property collateral, has destroyed any right the undersigned may have to obtain contribution from the other guarantor. This is an unconditional and irrevocable waiver of any rights and defenses the undersigned may have because the obligations of the other guarantor are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

11.    The undersigned is presently informed of the status and financial condition of Debtor and of all other circumstances which a diligent inquiry would reveal and which bear upon the risk of nonpayment of the Obligations. The undersigned hereby covenants that they will continue to keep themselves informed of Debtor's status and financial condition and of all other circumstances which bear upon the risk of nonpayment. The undersigned hereby waives the right, if any, to require Lender to disclose to it any information which Lender may now or hereafter acquire concerning such status, condition or circumstances.

12.    Neither Lender, nor any of its directors, officers, employees, agents, attorneys or any other person affiliated with or representing Lender shall be liable for any claims, demands, losses or damages, of any kind whatsoever, made, claimed, incurred or suffered by the undersigned or any other party through the ordinary negligence of Lender, or any of its directors, officers, employees, agents, attorneys or any other person affiliated with or representing Lender.

13.    The undersigned agrees that any claim or cause of action by the undersigned against Lender, or any of Lender's directors, officers, employees, agents, accountants or attorneys, based upon, arising from, or relating to this Guaranty, or any other present or future agreement between Lender and the undersigned or between Lender and Debtor, or any other transaction contemplated hereby or thereby or relating hereto or thereto, or any other matter, cause or thing whatsoever, whether or not relating hereto or thereto, occurred, done, omitted or suffered to be done by Lender, or by Lender's directors, officers, employees, agents, accountants or attorneys, whether sounding in contract or in tort or otherwise, shall be barred unless asserted by the undersigned by the commencement of an action or proceeding in a court of competent jurisdiction within Los Angeles County, California by the filing of a complaint within one (1) year after the first act, occurrence or omission upon which such claim or cause of action, or any part thereof, is based and service of a summons and complaint on an officer of Lender or any other person authorized to accept service of process on behalf of Lender, within thirty (30) days thereafter. The undersigned agrees that such one (1) year period is a reasonable and sufficient time for the undersigned to investigate and act upon any such claim or cause of action. The one (1) year period provided herein shall not be waived, tolled, or extended except by a specific written agreement of Lender. This provision shall survive any termination of this Guaranty or any other agreement.

14.    This Guaranty was made and entered into in the State of California and the rights and obligations of Lender and of the undersigned hereunder shall be governed and construed in accordance with the laws of the State of California; and this Guaranty is binding upon the undersigned, his, her, their or its executors, administrators, trustees, receivers, parents, holding companies, affiliates, successors and assigns, and shall inure to the benefit of

Lender, its successors and assigns. As a material part of the consideration to the Lender for accepting this Guaranty, the undersigned (i) agree that, at the option of Lender, all actions and proceedings based upon, arising out of or relating in any way directly or indirectly to this Guaranty shall be litigated exclusively in courts located within Los Angeles County, California, (ii) consent to the jurisdiction of any such court and consent to the service of process in any such action or proceeding by personal delivery, first class mail, or any other method permitted by law, and (iii) waive any and all rights to transfer or change the venue of any such action or proceeding to any court located outside Los Angeles County, California.

15.     The undersigned acknowledge that the acceptance of this Guaranty by Lender does not constitute a commitment by Lender to extend credit to Debtor or to permit Debtor to incur Obligations. All sums due from the undersigned to Lender hereunder shall bear interest from the date due to the date paid at a rate equal to the highest rate charged with respect to the Obligations.

16.     The undersigned, if more than one, shall be jointly and severally liable hereunder and the term "undersigned" wherever used herein shall mean the undersigned or any one or more of them. The term "Debtor", if more than one is named as such, shall mean all or any one thereof. Anyone signing this Guaranty shall be bound hereby, whether or not anyone else signs this Guaranty at any time. The term "Lender" includes any agent or representative of Lender acting for it. If any provision or portion of this Guaranty or any supplement or amendment thereto is held to be illegal, invalid or unenforceable by a court or adjudicatory body of competent jurisdiction, said provision or portion shall be deemed to be severed and deleted and the remainder shall continue to be valid and enforceable. This Guaranty is the entire and only agreement and understanding between the undersigned and Lender with respect to the guarantee of the Obligations and the subject matter of this Guaranty, and all representations, arrangements, agreements, and undertakings, oral or written, previously or contemporaneously made, which are not set forth herein, are superseded hereby. No course of dealing between the parties, no usage of the trade and no parole or extrinsic evidence of any nature shall be used or be relevant to supplement, explain or modify any term or provision of this Guaranty or any supplement or amendment thereto. The undersigned acknowledge receipt of a copy of this Guaranty, and certifies that the undersigned have read all of said document, and fully understand and agree to the same, before having signed it.

17.     MUTUAL WAIVER OF JURY TRIAL. LENDER AND THE UNDERSIGNED HEREBY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, LAWSUIT OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO: I) THIS GUARANTY OR ANY SUPPLEMENT OR AMENDMENT THERETO; OR II) ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN LENDER AND THE UNDERSIGNED; OR III) ANY BREACH, CONDUCT, ACTS OR OMISSIONS OF LENDER OR THE UNDERSIGNED OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSON AFFILIATED WITH OR REPRESENTING LENDER OR THE UNDERSIGNED; IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.

IN WITNESS WHEREOF, the undersigned has/have executed this Guaranty.

"GUARANTOR"

By: _____          Date: _1-19-07_
    Sayed M.N. Faquiryan
SS#

By: _____          Date: _1-19-07_
    Mahgul Faquiryan
    Spouse
SS#

Address of Guarantors: 708 Antiquity Dr., Fairfield, California 94535

320

82461guaranty Sayed Faquiryan1                  5

ACKNOWLEDGMENT

State of California         )

County of *San Benito* )

On *1/19/07* before me, *Nina Faquiryan*, personally appeared *Sayed al A Faquiryan*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
(Signature)

ACKNOWLEDGMENT

State of California         )
                     )

County of *San Benito* )

On *1/19/07* before me, *Nina Faquiryan*, personally appeared *Mahgul Faquiryan*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
(Signature)

MINA FAQUIRYAN
Commission # 1494761
Notary Public - California
Santa Clara County
My Comm. Expires Jun 13, 2008

321

## UNCONDITIONAL CONTINUING GUARANTY

In order to induce BP WEST COAST PRODUCTS LLC, a Delaware limited liability company, its successors and assigns ("Lender") having an office at 4 Centerpointe Dr., LPR 6-180, La Palma, CA 90623-1066, to enter into or continue a loan agreement (collectively, the "Loan Agreement"), as amended from time to time, with STTN ENTERPRISE, INC., a California corporation limited partnership ("Debtor"), and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby agrees as follows:

1.      The undersigned, Nazim S.M. Faquiryan (collectively, "Guarantor") hereby irrevocably, fully and unconditionally guaranties to Lender the prompt performance and payment when due, whether by acceleration or otherwise, of all of the following (collectively, the "Obligations"):  All loans, advances, indebtedness, liabilities, debit balances, letter of credit or purchase guaranty reimbursement obligations, covenants, duties and all other obligations of whatever kind or nature at any time or from time to time owing by Debtor to Lender, or to any of Lender's affiliates, whether fixed or contingent, known or unknown, liquidated or unliquidated, present or future, no matter how or when arising and whether under said Loan Agreement or any other present or future agreement or otherwise, and including without limitation all obligations owed by Debtor to third parties which are or may be assigned to Lender.  In addition, the undersigned agree (s) to fully indemnify Lender against any claim, harm, loss, damage, liability, cost or expense (including all costs, attorneys' fees, accounting fees and investigation fees) incurred in connection with any action, nonperformance or breach by Debtor of said Loan Agreement, or any breach of or failure to perform any representation, promise, agreement or warranty of Debtor or any wrongful acts, conduct or omission or fraud of Debtor.  Notwithstanding anything herein to the contrary, the maximum liability of the undersigned under this Guaranty is limited to the principal amount of FOUR HUNDRED AND SEVENTY FIVE THOUSAND Dollars ($475,000.00), plus accrued and unpaid interest, and any costs, expenses and fees of enforcement of this Guaranty or the Loan Agreement; provided, however, that if any of the Obligations arise from false information which was provided by Debtor to Lender where Debtor knew that such information was false or Debtor was grossly negligent in providing such information to Lender, then, the liability of the undersigned for such Obligations shall be unlimited.  In connection with the foregoing, the undersigned shall not be liable for any punitive damages unless the undersigned individually or with others caused such false information to be provided to Lender.

2.      The undersigned waives notice of acceptance of this Guaranty and notice of any liability to which it may apply, and waives diligence, presentment, demand for payment, protest, notice of protest, non-performance, dishonor or nonpayment of any such liabilities and/or the Obligations, notices of the existence, creation, incurring of new or additional indebtedness, suit or taking other action by Lender against, and any other notice to, any party liable thereon (including the undersigned), and waives any defense, offset or counterclaim to any liability hereunder and the performance of each and every condition precedent to which the undersigned might otherwise be entitled by law.  The undersigned further waives: i) any right to require Lender to institute suit against, or to exhaust its rights and remedies against, Debtor or any other person, or to proceed against any property of any kind securing any of the Obligations, or to exercise any right of offset or other right with respect to reserves held by Lender; ii) any defense arising by reason of any failure of Lender to obtain, perfect, maintain or keep in force any security interest in any property of Debtor or any other person; iii) any defense based upon any failure of Lender to give the undersigned notice of any sale or other disposition of any collateral securing any of the Obligations, or any failure of Lender to comply with any provision of applicable law in enforcing any security interest in any collateral securing any of the Obligations, including without limitation any failure by Lender to dispose of any collateral in a commercially reasonable manner; iv) the benefit of all statutes of limitations with respect to any action based upon, arising out of or relating to this Guaranty; v) any rights under the doctrine of marshalling of assets or any other similar doctrines.  Without limiting the generality of any of the foregoing or any other provision of this Guaranty, the undersigned expressly waive any and all benefit which otherwise may be available to the undersigned under California Civil Code Sections 2809, 2810, 2819, 2839, 2845, 2849, 2850, 2899 and 3433 or any comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise and/or any similar law of California or of any other jurisdiction.  There are no conditions precedent or other conditions of any kind to the effectiveness of this Guaranty, and this Guaranty is immediately effective.

3.      Lender may at any time from time to time (whether or not after revocation or termination of this Guaranty) without the consent of, or notice to, the undersigned, without incurring responsibility to the undersigned, without impairing or releasing the obligations of the undersigned hereunder, upon or without any terms or conditions

and in whole or in part: (i) change the manner, place or terms or payment, or change or extend the time of payment of, renew, alter or release Debtor or any other guarantor from any of the Obligations, any security therefor, or any liability incurred directly or indirectly in respect thereof, and this Guaranty shall apply to the Obligations as so changed, extended, renewed or altered; (ii) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the Obligations hereby guaranteed or any liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, or offset there against; (iii) exercise or refrain from exercising or release any rights against Debtor or others (including the undersigned) or otherwise act or refrain from acting; (iv) settle or compromise any of the Obligations hereby guaranteed, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect of said Obligations and/or security therefor or this Guaranty, and subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) to creditors of Debtor other than Lender and the undersigned; and (v) apply any sums by whomsoever paid or howsoever realized to any of the Obligations regardless of what Obligations or other liabilities of Debtor remain unpaid.

4.     No invalidity, irregularity or unenforceability of all or any part of the Obligations hereby guaranteed or of any security therefor or of said factoring agreement or any amendment or supplement thereto or any other document existing between Lender and Debtor shall affect, impair or be a defense to this Guaranty and its enforceability. The liability of the undersigned hereunder is primary and unconditional and not merely that of a surety and shall not be subject to any offset, defense or counterclaim of Debtor. This Guaranty is a continuing one and all Obligations to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. The books and records of Lender showing the account and dealings and transactions between Lender and Debtor shall be admissible in evidence in any action or proceeding, including photocopies thereof, shall be binding upon the undersigned for the purpose of establishing the items and amounts set forth therein, and shall constitute prima facie evidence thereof, except that monthly statements rendered by Lender to Debtor shall constitute, to the extent to which no objection is made within thirty (30) days after date thereof, an account stated between Lender and Debtor that shall be binding upon the undersigned. As to each of the undersigned, this Guaranty shall continue until ninety (90) days after written notice of revocation signed by such undersigned has been actually received by Lender, notwithstanding a revocation by, or the death of, or complete or partial release for any cause, of any one or more of the remainder of the undersigned, other guarantors or of Debtor, or of anyone liable in any manner for the Obligations hereby guaranteed, or for the liabilities (including those herein) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase, decrease or change in personnel of any one or more of the undersigned or other guarantors which may be partnerships or corporations.

5.     No revocation or termination hereof shall affect in any manner any of the rights arising under this Guaranty with respect to (i) Obligations which shall have been created, contracted, assumed or incurred prior to or within ninety (90) days after actual receipt by Lender of written notice of such revocation or termination and all extensions, renewals and modifications of said Obligations, or (ii) Obligations which shall have been created, contracted, assumed or incurred more than ninety (90) days after receipt of such written notice pursuant to any contract entered into by Lender prior to expiration of said ninety (90) day period.

6.     Upon the happening of any of the following events: the failure to pay, fulfill or perform any of the Obligations when due, or any breach or failure to perform by Debtor or any of the undersigned of any representation, promise, agreement or warranty to Lender, or any revocation, breach or termination by any of the undersigned of this Guaranty, or the death or insolvency of Debtor or any of the undersigned or suspension of business of Debtor or any of the undersigned or the issuance of any writ of attachment against any of the property of Debtor or any of the undersigned, or the making by Debtor or any of the undersigned or any assignment for the benefit of creditors, or a trustee or receiver being appointed for Debtor or any of the undersigned or for any property of either of them, or any proceeding being commenced by or against Debtor or any of the undersigned under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute - then and in any such event and at any time thereafter, Lender may, without notice to Debtor or any of the undersigned, declare any or all of the Obligations, whether or not then due, immediately due and payable hereunder by any of the undersigned, and Lender shall be entitled to enforce the obligations of any or all of the undersigned hereunder. All sums of money at any time to the credit of the undersigned with Lender or any of its affiliates and any of the property of any or all of the undersigned at any time in the possession of Lender or

any of its affiliates may be held by or on behalf of Lender as security for any and all obligations of the undersigned hereunder notwithstanding that any of said money or property may have been deposited, pledged or delivered by the undersigned for any other, different or specific purpose. Any and all present and future indebtedness and obligations of Debtor to the undersigned, and any and all claims of any nature which the undersigned may now or hereafter have against Debtor are hereby subordinated to the full payment to Lender of the Obligations, and are hereby assigned to Lender as additional collateral security therefor. If Lender so requests, any such indebtedness of Debtor to the undersigned shall be collected, enforced and received by the undersigned as trustees for Lender and be paid over to Lender on account of the Obligations but without reducing or affecting in any manner the liability of the undersigned under the other provisions of this Guaranty.

7.      Whether or not any suit, claim or proceeding is filed, the undersigned agrees to reimburse and compensate Lender on request or demand for all attorneys' fees, accounting fees, investigation fees and all other costs and expenses incurred by Lender in enforcing this Guaranty or any supplement or amendment thereto or arising out of, or relating in any way to this Guaranty or any supplement or amendment thereto, or in enforcing any of the Obligations against Debtor, the undersigned or any other person. In the event Lender or the undersigned file any lawsuit, action, claim or proceeding against the other predicated on a breach or nonperformance of this Guaranty or any supplement or amendment thereto or to enforce any rights under, or to obtain any declaratory or equitable or other relief as to the terms or provisions of, this Guaranty or any supplement or amendment thereto, the prevailing party in such lawsuit, action, claim or proceeding shall be entitled to recover its attorneys' fees, accounting fees, investigation fees and costs of suit from the non-prevailing party.

8.      If claim is ever made upon Lender for repayment of any amount or amounts received by Lender in payment of or on account or pursuant to of any of the Obligations and Lender repays all or part of said amount by reason of (i) any judgment, decree or order of any Court or adjudicatory or administrative body having jurisdiction over Lender or any of its property, or (ii) any settlement or compromise of any claim effected by Lender with any such claimant (including Debtor), then and in any such event the undersigned agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the undersigned, notwithstanding any revocation or release hereof or the cancellation of any note or other instrument evidencing any of the Obligations, or any release or any such Obligations, and the undersigned shall be and remain liable to Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Lender. The provisions of this paragraph shall survive, and continue in effect, notwithstanding any revocation or release hereof.

9.      No delay on the part of Lender in exercising any of its options, powers or rights, or partial or single exercise thereof, shall constitute a waiver thereof. No waiver of any of its rights hereunder, and no modification or amendment of this Guaranty shall be deemed to be made by Lender unless the same shall be in writing, duly signed on behalf of, and as actually authorized by, Lender, and each such waiver, if any, shall apply only with respect to the specific instance, matter or transaction involved, and shall in no way impair the rights of Lender or the obligations of the undersigned to Lender in any other respect, instance, matter or transaction at any other time. The undersigned hereby expressly and unconditionally waives all rights of subrogation, reimbursement and indemnity of every kind against Debtor, and all rights of recourse to any assets or property of Debtor, and all rights to any collateral or security held for the payment and performance of any Obligations, including (but not limited to) any of the foregoing rights which the undersigned may have under any present or future document or agreement with any Debtor or other person, and including (but not limited to) any of the foregoing rights which the undersigned may have under any equitable doctrine of subrogation, implied contract, or unjust enrichment, or any other equitable or legal doctrine.

10.     The undersigned consent and agree that, without notice to or by the undersigned and without affecting or impairing in any way the obligations or liability of the undersigned hereunder, Lender may, from time to time, before or after revocation of this Guaranty, exercise any right or remedy it may have with respect to any or all of the Obligations or any property securing any or all of the Obligations or any guaranty thereof, including without limitation judicial foreclosure, nonjudicial foreclosure, exercise of a power of sale, and taking a deed, assignment or transfer in lieu of foreclosure as to any such property, and the undersigned expressly waive any defense based upon the exercise of any such right or remedy, notwithstanding the effect thereof upon any of the undersigned's rights, including without limitation, any destruction of the undersigned's right of subrogation against Debtor and any destruction of the undersigned's right of contribution or other right against any other guarantor of any or all of the Obligations or against any other person, whether by operation of Sections 580a, 580d or 726 of the California Code

82461guaranty Nazim Faquiryan1                    3                    324

200

of Civil Procedure, or any comparable provisions of the laws of any other jurisdiction, or any other statutes or rules of law now or hereafter in effect, or otherwise. Without limiting the generality of the foregoing, the undersigned waive all rights and defenses that the undersigned may have because the Obligation is secured by real property. This means, among other things: (i) Lender may collect from the undersigned without first foreclosing on any real or personal property collateral pledged by Debtor; and (ii) If Lender forecloses on any real property collateral pledged by Debtor, (A) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price and (B) Lender may collect from the undersigned even if Lender, by foreclosing on the real property collateral, has destroyed any right the undersigned may have to collect from Debtor. This is an unconditional and irrevocable waiver of any rights and defenses the undersigned may have because the Obligations are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure. In addition, without limiting the generality of any of the foregoing, the undersigned waive all rights and defenses that the undersigned may have because the guarantee of another guarantor is secured by real property. This means, among other things: (i) Lender may collect from the undersigned without first foreclosing on any real or personal property collateral pledged by the other guarantor, and (ii) If Lender forecloses on any real property collateral pledged by the other guarantor, (A) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price and (B) Lender may collect from the undersigned even if Lender, by foreclosing on the real property collateral, has destroyed any right the undersigned may have to obtain contribution from the other guarantor. This is an unconditional and irrevocable waiver of any rights and defenses the undersigned may have because the obligations of the other guarantor are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

11.    The undersigned is presently informed of the status and financial condition of Debtor and of all other circumstances which a diligent inquiry would reveal and which bear upon the risk of nonpayment of the Obligations. The undersigned hereby covenants that they will continue to keep themselves informed of Debtor's status and financial condition and of all other circumstances which bear upon the risk of nonpayment. The undersigned hereby waives the right, if any, to require Lender to disclose to it any information which Lender may now or hereafter acquire concerning such status, condition or circumstances.

12.    Neither Lender, nor any of its directors, officers, employees, agents, attorneys or any other person affiliated with or representing Lender shall be liable for any claims, demands, losses or damages, of any kind whatsoever, made, claimed, incurred or suffered by the undersigned or any other party through the ordinary negligence of Lender, or any of its directors, officers, employees, agents, attorneys or any other person affiliated with or representing Lender.

13.    The undersigned agrees that any claim or cause of action by the undersigned against Lender, or any of Lender's directors, officers, employees, agents, accountants or attorneys, based upon, arising from, or relating to this Guaranty, or any other present or future agreement between Lender and the undersigned or between Lender and Debtor, or any other transaction contemplated hereby or thereby or relating hereto or thereto, or any other matter, cause or thing whatsoever, whether or not relating hereto or thereto, occurred, done, omitted or suffered to be done by Lender, or by Lender's directors, officers, employees, agents, accountants or attorneys, whether sounding in contract or in tort or otherwise, shall be barred unless asserted by the undersigned by the commencement of an action or proceeding in a court of competent jurisdiction within Los Angeles County, California by the filing of a complaint within one (1) year after the first act, occurrence or omission upon which such claim or cause of action, or any part thereof, is based and service of a summons and complaint on an officer of Lender or any other person authorized to accept service of process on behalf of Lender, within thirty (30) days thereafter. The undersigned agrees that such one (1) year period is a reasonable and sufficient time for the undersigned to investigate and act upon any such claim or cause of action. The one (1) year period provided herein shall not be waived, tolled, or extended except by a specific written agreement of Lender. This provision shall survive any termination of this Guaranty or any other agreement.

14.    This Guaranty was made and entered into in the State of California and the rights and obligations of Lender and of the undersigned hereunder shall be governed and construed in accordance with the laws of the State of California; and this Guaranty is binding upon the undersigned, his, her, their or its executors, administrators, trustees, receivers, parents, holding companies, affiliates, successors and assigns, and shall inure to the benefit of

Lender, its successors and assigns. As a material part of the consideration to the Lender for accepting this Guaranty, the undersigned (i) agree that, at the option of Lender, all actions and proceedings based upon, arising out of or relating in any way directly or indirectly to this Guaranty shall be litigated exclusively in courts located within Los Angeles County, California, (ii) consent to the jurisdiction of any such court and consent to the service of process in any such action or proceeding by personal delivery, first class mail, or any other method permitted by law, and (iii) waive any and all rights to transfer or change the venue of any such action or proceeding to any court located outside Los Angeles County, California.

15.    The undersigned acknowledge that the acceptance of this Guaranty by Lender does not constitute a commitment by Lender to extend credit to Debtor or to permit Debtor to incur Obligations. All sums due from the undersigned to Lender hereunder shall bear interest from the date due to the date paid at a rate equal to the highest rate charged with respect to the Obligations.

16.    The undersigned, if more than one, shall be jointly and severally liable hereunder and the term "undersigned" wherever used herein shall mean the undersigned or any one or more of them. The term "Debtor", if more than one is named as such, shall mean all or any one thereof. Anyone signing this Guaranty shall be bound hereby, whether or not anyone else signs this Guaranty at any time. The term "Lender" includes any agent or representative of Lender acting for it. If any provision or portion of this Guaranty or any supplement or amendment thereto is held to be illegal, invalid or unenforceable by a court or adjudicatory body of competent jurisdiction, said provision or portion shall be deemed to be severed and deleted and the remainder shall continue to be valid and enforceable. This Guaranty is the entire and only agreement and understanding between the undersigned and Lender with respect to the guarantee of the Obligations and the subject matter of this Guaranty, and all representations, arrangements, agreements, and undertakings, oral or written, previously or contemporaneously made, which are not set forth herein, are superseded hereby. No course of dealing between the parties, no usage of the trade and no parole or extrinsic evidence of any nature shall be used or be relevant to supplement, explain or modify any term or provision of this Guaranty or any supplement or amendment thereto. The undersigned acknowledge receipt of a copy of this Guaranty, and certifies that the undersigned have read all of said document, and fully understand and agree to the same, before having signed it.

17.    **MUTUAL WAIVER OF JURY TRIAL. LENDER AND THE UNDERSIGNED HEREBY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, LAWSUIT OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO: I) THIS GUARANTY OR ANY SUPPLEMENT OR AMENDMENT THERETO; OR II) ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN LENDER AND THE UNDERSIGNED; OR III) ANY BREACH, CONDUCT, ACTS OR OMISSIONS OF LENDER OR THE UNDERSIGNED OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSON AFFILIATED WITH OR REPRESENTING LENDER OR THE UNDERSIGNED; IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.**

IN WITNESS WHEREOF, the undersigned has/have executed this Guaranty.

"GUARANTOR"

By: _____        Date:  1-19-07
     Nazim S.M. Faquiryan
SS#: ██████████

Address of Guarantors: 783 Antiquity Dr., Fairfield, California 94535

326

ACKNOWLEDGMENT

State of California          )
                            )
County of _San Benito_      )

On _1/19/07_, before me, _Mina Faquiryan_ personally appeared _Nazim SM Faquiryan_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



_____
(Signature)

MINA FAQUIRYAN
Commission # 1494761
Notary Public - California
Santa Clara County
My Comm. Expires Jun 13, 2008

327

82461guaranty Nazim Faquiryan1                6

# PROOF OF SERVICE

I, Nora Fernandez, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On February 1, 2008, I served the document(s) described as **PLAINTIFF'S REQUESTS FOR ADMISSION TO DEFENDANT MAGHUL FAQUIRYAN (SET NO. ONE)** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:    SEE ATTACHED SERVICE LIST

☐    BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071.

☒    BY FEDERAL EXPRESS    ☐ UPS NEXT DAY AIR    ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☒ FEDERAL EXPRESS    ☐ UPS    ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of    ☒ FEDERAL EXPRESS    ☐ UPS    ☐ OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

☐    BY FACSIMILE: I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

☐    [State]    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒    [Federal]    I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2008, at Los Angeles, California.

_____
Nora Fernandez

328

1114667.1

1

**BP WEST COAST PRODUCTS LLC v. STTN ENTERPRISES, et al.**
**United States District Court, Northern District**
2          **Case No. C07 04808 RS**

3                              **SERVICE LIST**

4    John G. Michael, Esq.                    Attorney for Defendants, STTN
     Baker Manock & Jensen                    ENTERPRISES, INC.; NAZIM
5    5260 North Palm Avenue                   FAQUIRYAN; and SAYED FAQUIRYAN
     Fourth Floor
6    Fresno, CA  93704                        Tel:  (559) 432-5400
                                              Fax:  (559) 432-5620
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                       329
28

1114667.1

EXHIBIT 4

John G. Michael          #106107

1    **BAKER, MANOCK & JENSEN**
         A PROFESSIONAL CORPORATION
2        FIG GARDEN FINANCIAL CENTER
     5260 NORTH PALM AVENUE, FOURTH FLOOR
         FRESNO, CALIFORNIA 93704-2209
3          Telephone (559) 432-5400
           Telecopier (559) 432-5620

4

5    Attorneys for    Defendants

6

7

8                    UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11   BP WEST COAST PRODUCTS LLC, a          )   Case No. 5:07-cv-04808 JF
     Delaware Limited Liability Company; and )
12   ATLANTIC RICHFIELD COMPANY, a          )
     Delaware Corporation.,                  )   **DEFENDANT MAGHUL**
13                                           )   **FAQUIRYAN'S RESPONSE TO**
                              Plaintiffs,    )   **PLAINTIFF'S REQUESTS FOR**
14                                           )   **ADMISSION (SET NO. ONE)**
            v.                               )
15                                           )
     STTN ENTERPRISES, INC., a California    )
16   Corporation; NAZIM FAQUIRYAN, an        )
     individual; SAYED FAQUIRYAN, an         )
17   individual; MAGHUL FAQUIRYAN, an        )
     individual; and AVA GLOBAL ENTERPRISE, )
18   LLC, a California limited liability company, )
                                             )
19                            Defendants.    )
                                             )
20   _____ )

21   PROPOUNDING PARTY:   Plaintiff, BP WEST COAST PRODUCTS

22   RESPONDING PARTY:    Defendant MAGHUL FAQUIRYAN

23           Defendant MAGHUL FAQUIRYAN responds to Plaintiff's Requests for

24   Admission to Defendant Maghul Faquiryan, Set No. One,  as follows:

25           It should be noted that this responding party has not fully completed investigation of

26   the facts of this case, has not fully completed discovery in this action, and has not completed

27   preparation for trial.  All of the answers contained herein are based only upon such information and

28   documents as are presently available to and specifically known to this responding party, and

                                330

---

1    disclose only those contentions which presently occur to such responding party.  It is anticipated

2    that further discovery, independent investigation, legal research and analysis will supply additional

3    facts, add meaning to the known facts, and perhaps establish entirely new factual conclusions and

4    legal contentions, all of which may lead to substantial additions to, changes in and variations from

5    the contentions herein set forth.  The following responses are given without prejudice to

6    responding party's right to produce evidence of any subsequently discovered fact or facts which

7    this responding party may later recall or uncover.

8            REQUEST FOR ADMISSION NO. 1:

9            Admit that the agreement entitled, "Guaranty Agreement" that YOU signed and

10    dated on June 20, 2006, and that is attached hereto as Exhibit A, is genuine.

11            RESPONSE:

12            Denied, the agreements attached as Exhibit "A" were not signed by Responding

13    Party.

14            REQUEST FOR ADMISSION NO. 2:

15            Admit that the agreement entitled "Unconditional Continuing Guaranty" that YOU

16    signed and dated on January 19, 2007, and that is attached hereto as Exhibit B, is genuine.

17            RESPONSE:

18            Responding Party admits that one of the documents attached as Exhibit "B" is a

19    genuine copy of a document that was signed by her.

20    DATED: May 14 , 2008.

21                    BAKER, MANOCK & JENSEN

22

23

24            By _____
                John G. Michael

25            Attorney for Defendants and Counter Claimants
              STTN ENTERPRISES, INC., NAZIM

26            FAQUIRYAN, SAYED FAQUIRYAN,
              MAGHUL FAQUIRYAN, and AVA

27            GLOBAL ENTERPRISE, LLC

28    @PFDesktop\::ODMA/MHODMA/DMS;DMS;605727;1
      15678.0003
                        331

                         2

5 5/14/2008 3:04:00 PM [Pacific Daylight Time]

# VERIFICATION

STATE OF CALIFORNIA

COUNTY OF SAN BENITO

I have read the foregoing **DEFENDANT MAGHUL FAQUIRYAN'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS, (SET NO ONE)** and know its contents.

☐ CHECK APPLICABLE PARAGRAPHS

☒I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an Officer ☐ a partner _____ ☐ a _____, of _____ , a party to this action, and am authorized to make this verification for and on their behalf, and I make this verification for that reason. ☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for _____, a party to this action. Such parties are absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of these parties for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on ~~April~~ May 15, 2008, at ~~Fresno~~ Gilroy, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

___Maghul Faquiryan___ 

_Mahgul A. Faqrt_
Signature

332

PROOF OF SERVICE
CCP §§ 1011, 1013, 1013a, 2015.5
FRCP 5(b)

STATE OF CALIFORNIA, COUNTY OF FRESNO

I am employed in the County of Fresno, State of California. I am over the age of 18 and not a party to the within action; my business address is 5260 North Palm Avenue, Suite 421, Fresno, California 93704-2209.

On **May 15, 2008,** I served the document described as **DEFENDANT MAGHUL FAQUIRYAN'S RESPONSE TO PLAINTIFF'S REQUESTS FOR ADMISSION  (SET NO. ONE)** on the interested parties in this action ☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list: ☒ by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as follows:

Deborah Y. Jones Esq
Weston Benshoof Rochefort Rubalcava
333 S Hope St  16 Flr
Los Angeles CA 90071
Telephone: (213) 576-1000
Telecopier: (213) 576-1100

☒ BY MAIL ☐ I deposited such envelope in the mail at Fresno, California.  The envelope was mailed with postage thereon fully prepaid.

☒ As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Fresno, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

☐ (BY FAX) I caused the above-referenced document to be transmitted by fax to the addressee(s) at the fax number(s) shown.

☐ (BY OVERNIGHT COURIER) I caused the above-referenced envelope(s) to be delivered to an overnight courier service for delivery to the addressee(s).

Executed on **May 15, 2008,** at Fresno, California.

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____Mary L. Martin_____

*Mary L. Martin*
Signature

333

BP West Coast Products LLC v. STTN Enterprises
15678.0003

EXHIBIT 5

John G. Michael        #106107

**BAKER, MANOCK & JENSEN**
A PROFESSIONAL CORPORATION
FIG GARDEN FINANCIAL CENTER
5260 NORTH PALM AVENUE, FOURTH FLOOR
FRESNO, CALIFORNIA 93704-2209
Telephone (559) 432-5400
Telecopier (559) 432-5620

Attorneys for    Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company; and ATLANTIC RICHFIELD COMPANY, a Delaware Corporation., <br><br> Plaintiffs, <br><br> v. <br><br> STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company, <br><br> Defendants. | Case No. 5:07-cv-04808 JF <br><br> **DEFENDANT SAYED FAQUIRYAN'S RESPONSE TO PLAINTIFF'S INTERROGATORIES (SET NO. ONE)** |

PROPOUNDING PARTY:    Plaintiff, BP WEST COAST PRODUCTS

RESPONDING PARTY:    Defendant SAYED FAQUIRYAN.

Defendant SAYED FAQUIRYAN responds to Plaintiff's Interrogatories to Defendant Sayed Faquiryan, Set No. One,  as follows:

It should be noted that this responding party has not fully completed investigation of the facts of this case, has not fully completed discovery in this action, and has not completed preparation for trial.  All of the answers contained herein are based only upon such information and documents as are presently available to and specifically known to this responding party, and

334

1  disclose only those contentions which presently occur to such responding party. It is anticipated

2  that further discovery, independent investigation, legal research and analysis will supply additional

3  facts, add meaning to the known facts, and perhaps establish entirely new factual conclusions and

4  legal contentions, all of which may lead to substantial additions to, changes in and variations from

5  the contentions herein set forth. The following interrogatory responses are given without prejudice

6  to responding party's right to produce evidence of any subsequently discovered fact or facts which

7  this responding party may later recall or uncover.

8        INTERROGATORY NO. 1:

9        IDENTIFY the percentage ownership interest YOU have or had in the STATION.

10      ANSWER:

11      49%

12      INTERROGATORY NO. 2:

13      IDENTIFY any and all other gasoline service station businesses in which YOU

14  have· or had an ownership interest.

15      ANSWER:

16      Responding Party objects that this interrogatory seeks information that is not

17  relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

18  discovery of admissible evidence. In addition, Responding Party objects that this interrogatory

19  seeks information protected by state and federal constitutional rights to privacy, is overly broad

20  and is vague and ambiguous as to time.

21      INTERROGATORY NO. 3:

22      IDENTIFY and all businesses, corporations, and/or· fictitious business names (i.e.,

23  "dba") that are completely or partially owned by YOU and that deal with the business at the

24  STATION.

25      ANSWER:

26      AVA Global Enterprise, Inc.

27      INTERROGATORY NO. 4:

28      IDENTIFY any and all lawsuits concerning any gasoline service stations in which

335

2

1  YOU have or had an ownership interest.

2       ANSWER:

3       Responding Party objects that this interrogatory seeks information that is not

4  relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

5  discovery of admissible evidence.

6       INTERROGATORY NO. 5:

7       IDENTIFY any and all COMMUNICATIONS between YOU and any other

8  gasoline company other than BPWCP concerning any gasoline service stations in which YOU

9  have or had an ownership interest.

10      ANSWER:

11      Responding Party objects that this interrogatory seeks information that is not

12  relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

13  discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

14  seeks information protected by state and federal constitutional rights to privacy, is overly broad

15  and is vague and ambiguous as to time.

16      INTERROGATORY NO. 6:

17      What is YOUR correct full legal name, residence address, and residence telephone

18  number?

19      ANSWER:

20      Sayed M.N. Faquiryan

21      2585 Muirfield Way

22      Gilroy, CA 95020

23      INTERROGATORY NO. 7:

24      What is YOUR Driver' s License Number?

25      ANSWER:

26      Responding Party objects that this interrogatory seeks information that is not

27  relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

28  discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

336

3

1    seeks information protected by state and federal constitutional rights to privacy.

2

3        INTERROGATORY NO. 8:

4        What is YOUR Social Security Number?

5        ANSWER:

6        Responding Party objects that this interrogatory seeks information that is not

7    relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

8    discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

9    seeks information protected by state and federal constitutional rights to privacy.

10       INTERROGATORY NO. 9:

11       What is the date and place of YOUR birth?

12       ANSWER:

13       Responding Party objects that this interrogatory seeks information that is not

14   relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

15   discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

16   seeks information protected by state and federal constitutional rights to privacy

17       INTERROGATORY NO. 10:

18       If YOU own or have any interest in any real property, state:

19       ( a)    the address of the property;

20       (b)     the legal description;

21       (c)     when it was purchased;

22       (d)     for how much money;

23       (e)     the source of the money;

24       (f)     the outstanding debts secured by the property, i.e., mortgages, including

25   monthly payments, liens and encumbrances;

26       (g)     the current market value;

27       (h)     YOUR equity

28       (i)     whether YOU claim this property as YOUR Homestead; and

337

4

1     (j)     the correct name of the title owner as shown on the deed or other title

2  documents.

3     ANSWER:

4     Responding Party objects that this interrogatory seeks information that is not

5  relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

6  discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

7  seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

8  appears to be in the nature of a debtors examination and is apparently propounded for the purpose

9  of harassment.

10     INTERROGATORY NO. 11:

11     If YOU own or have any interest in any vehicles, boats or airplanes, stated:

12     (a)     the year, make and model;

13     (b)     where it is located, garaged or kept;

14     ( c)      when it was bought and for how much;

15     (d)     the amount of outstanding debts or liens that are secured by the vehicle, boat

16  or airplane;

17     (e)     the current fair market value;

18     (f)     YOUR equity;

19     (g)      the correct name shown on the registration documents; and

20     (h)     the use YOU make of this item.

21     ANSWER:

22     Responding Party objects that this interrogatory seeks information that is not

23  relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

24  discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

25  seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

26  appears to be in the nature of a debtors examination and is apparently propounded for the purpose

27  of harassment.

28     INTERROGATORY NO. 12:

338

5

1    If anyone owes YOU money for debts, notes or on accounts receivable, state:

2        (a)    the name and address of the person who owes YOU money;

3        (b)    the amount due;

4

5        (c)    the date due;

6        (d)    the date of billing;

7        (e)    any special payment terms;

8        (f)    if YOU hold any security for such debt and, if so what; and

9        (g)    if there is any dispute about payment, describe it.

10   ANSWER:

11   Responding Party objects that this interrogatory seeks information that is not

12   relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

13   discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

14   seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

15   appears to be in the nature of a debtors examination and is apparently propounded for the purpose

16   of harassment.

17

18   INTERROGATORY NO. 13:

19   If YOU have unbilled services completed for clients or customers, state the name,

20   address and amount of each.

21   ANSWER:

22   Responding Party objects that this interrogatory seeks information that is not

23   relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

24   discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

25   seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

26   appears to be in the nature of a debtors examination and is apparently propounded for the purpose

27   of harassment.

28   INTERROGATORY NO. 14:

339

DEFENDANT SAYED FAQUIRYAN'S RESPONSE TO
PLAINTIFF'S INTERROGATORIES (SET NO. ONE)

1        If YOU are presently employed or in any business (including, but not limited to, a

2   partnership, corporation, limited liability partnership, and/or limited liability corporation), for each

3   employer or business, state:

4        (a)    the name and address of any such employer or business;

5        (b)    YOUR salary and date of payment;

6        ( c )   ownership (partnership or corporate) interest;

7        (d)    bonus;

8        (e)    commissions;

9        (f)    any accrued but unpaid amount due; and

10       (g)    the amount of any arrears.

11  ANSWER:

12       Responding Party objects that this interrogatory seeks information that is not

13  relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

14  discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

15  seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

16  appears to be in the nature of a debtors examination and is apparently propounded for the purpose

17  of harassment.

18  INTERROGATORY NO. 15:

19       If YOU have any furniture, fixtures, equipment, books or inventories, describe each

20  in detail.

21  ANSWER:

22       Responding Party objects that this interrogatory seeks information that is not

23  relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

24  discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

25  seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

26  appears to be in the nature of a debtors examination and is apparently propounded for the purpose

27  of harassment.

28  INTERROGATORY NO. 16:

340

7

1        If YOU have any part-time employment, please explain, including any income

2   derived therefrom.

3        ANSWER:

4        Responding Party objects that this interrogatory seeks information that is not

5   relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

6   discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

7   seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

8   appears to be in the nature of a debtors examination and is apparently propounded for the purpose

9   of harassment.

10       INTERROGATORY NO. 17:

11       If YOUR spouse is employed, state:

12       (a)     the name and address of YOUR spouse's employer;

13       (b)     salary or compensation YOUR spouse receives;

14       (c)     date or time of payments and amount YOUR spouse receives;

15       (d)     where YOUR spouse's compensation is deposited; and

16       (e)      whether YOU. have any prenuptial or post-nuptial agreements which alter

17   community property rights.

18       ANSWER:

19       Responding Party objects that this interrogatory seeks information that is not

20   relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

21   discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

22   seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

23   appears to be in the nature of a debtors examination and is apparently propounded for the purpose

24   of harassment.

25       INTERROGATORY NO. 18:

26       If YOU have any checking accounts, savings accounts, money market accounts,

27   stock accounts, credit union accounts or other deposit accounts in YOUR own name or jointly with

28   any other PERSONS, state where the account is maintained, the address, the account number and

341

8

1    amount of present balance, and the name and address of any co-depositor.

2        ANSWER:

3        Responding Party objects that this interrogatory seeks information that is not

4    relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

5    discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

6    seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

7    appears to be in the nature of a debtors examination and is apparently propounded for the purpose

8    of harassment.

9        INTERROGATORY NO. 19:

10        If YOU maintain a safe deposit box, state the location, the number and the contents.

11

12

13        ANSWER:

14        Responding Party objects that this interrogatory seeks information that is not

15    relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

16    discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

17    seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

18    appears to be in the nature of a debtors examination and is apparently propounded for the purpose

19    of harassment.

20        INTERROGATORY NO. 20:

21        State a full description, a statement as to the value of such asset, and the location of

22    the asset, of each of the following items YOU own:

23            (a)     a stamp collection;

24            (b)     gun collection;

25            (c)      tool collection;

26            (d)     coin collection;

27            ( e)     precious metals;

28            (f)      art;

342                                   9

1   (g)    antiques;

2   (h)     trusts;

3   (i)    commodity accounts or commodities;

4   (j)    notes secured by trust deeds;

5   (k)    certificates of deposit;

6   (l)    commercial paper;

7   (m)    options on real estate of personal property;

8   (n)    pension plan;

9   (o)     IRA or Keogh accounts;

10  (p)    401k or other retirement accounts; and

11  (q)    any other property of value not otherwise mentioned?

12  ANSWER:

13  Responding Party objects that this interrogatory seeks information that is not

14  relevant to any claim or defense in this lawsuit nor is it reasonable calculated to lead to the

15  discovery of admissible evidence.   In addition, Responding Party objects that this interrogatory

16  seeks information protected by state and federal constitutional rights to privacy.  This interrogatory

17  appears to be in the nature of a debtors examination and is apparently propounded for the purpose

18  of harassment.

19  INTERROGATORY NO. 21:

20  State any and all facts to support all denials in YOUR ANSWER.

21  ANSWER:

22  Under the PMPA, a refiner/distributor such as BP can terminate a franchise

23  relationship only for the grounds specified in the PMPA.  Moreover, even where sufficient

24  grounds exist to justify termination, the refiner/distributor must also provide notice in the form

25  specifically prescribed by the PMPA.   If a termination is deficient as to either of these

26  requirements, the termination is deemed unlawful and the franchisee is entitled to a variety of

27  remedies, including injunctive relief, damages, attorneys' fees, and punitive damages.  Under the

28  PMPA, the burden is on the franchisor to establish that the termination of the franchise

343

10

1   relationship complied with the provisions of the PMPA.

2       For franchise agreements executed after June 19, 1978, there are four grounds

3   permitting the franchisor to terminate the relationship, and two such grounds are implicated here.

4   First, if the franchisee fails to comply with any provision of the franchise agreement, the franchisor

5   may terminate the agreement so long as the violated provision is both "reasonable" and "of

6   material significance to the franchise relationship."  Significantly, under the PMPA, the term

7   "failure" does not include any failure that is only technical or unimportant to the franchise

8   relationship, any failure for a cause that is beyond the control of the franchisee, or any failure

9   based on a provision that is illegal or unenforceable.  Second, the franchisor may terminate the

10  relationship upon the occurrence of some event which is relevant to the franchise relationship, and

11  as a result of the occurrence, termination is reasonable.

12      Here, Plaintiffs cite two grounds for termination.  First, Plaintiffs claim that

13  Defendants failed to have any fuel available for purchase to the motoring public for a period of

14  seven consecutive days.  However, there was fuel available during the period in question.

15  Moreover, to the extent that Defendants failed to have a certain grade of gasoline available, this

16  failure was due solely to Plaintiffs' own failure to comply with the various agreements, including

17  the loan and gasoline agreements.  As such, Defendants did not fail to have any gasoline for sale

18  for seven consecutive days as envisioned by the PMPA.

19      The second ground for termination cited by Plaintiffs was the Defendants alleged

20  failure to timely pay all sums due.  However, with the exception of a disputed invoice, Defendants

21  were current on all payment arrangements (C.O.D. with extra payments to amortize the balance

22  owed) at the time of termination.  Moreover, Defendants had a cashiers' check ready to tender to

23  Plaintiffs upon their delivery of fuel, but Plaintiffs simply refused to deliver anything.  Finally,

24  STTN had offered to pay the balance through an escrow which would provide for simultaneous

25  loan funding, but BP failed to perform.  Additionally, and to the extent that Defendants failed to

26  make any payments as scheduled, that failure was due solely to Plaintiffs' own breach of the

27  various loan agreements.  As such, Defendants did not fail to timely pay all sums due as defined by

28  the PMPA.

344

11

1   Since the failures cited by Plaintiffs are not failures as defined by the PMPA, they are not

2   proper grounds for termination.  And since the grounds for termination do no satisfy the PMPA,

3   the termination is clearly unlawful.

4   A valid termination under the PMPA must also comply with the notice

5   requirements.  Typically, a franchisor must provide notice of at least 90 days and the notice must

6   be: (1) in writing; (2) sent via certified mail or personally delivered to the franchisee; and (3)

7   contain a statement of intent to terminate the relationship and the reasons for the termination, the

8   effective date of the termination, and a summary statement of the rights and responsibilities of any

9   party under the PMPA.  Franchisors may give less than 90 days notice in circumstances in which it

10  would not be reasonable.  Significantly, if the notice of termination does not satisfy the

11  requirements of the PMPA, the termination is unlawful.  Under the PMPA, BP was required to

12  give at least 90 days notice of its intent to terminate unless it would not be reasonable for BP to

13  furnish 90 days notice.  The 90 day notice provision is not lightly excused.  The 90 day notice

14  requirement is not an all or nothing requirement that permits no notice at all when 90 days would

15  be unreasonable.   Indeed, the legislative history and Congressional hearings conducted in drafting

16  the PMPA indicate that  2804(b)(1)(A) was added to dispense with the lengthy notice requirement

17  where, for example, a franchisee committed serious defaults of the franchise agreement, such as

18  misbranding.

19  As noted above, BP terminated the franchise with no notice whatsoever.  In its

20  notice of termination, BP states that it would not be reasonable for BPWCP to furnish notification

21  of 90 days prior to the date of termination because of the risk of confusion to the public as well as

22  possible safety risks.  While confusion to the public and safety risks may or may not justify an

23  accelerated notice schedule in limited circumstances, there is no evidence in this case that there

24  was any risk of confusion to the public, nor is there any evidence to suggest that the station was a

25  safety hazard.  Indeed, BP terminated the agreement, in part, because there was allegedly no gas

26  being sold at the station.  If Defendants were not selling gas, there would be little risk of confusion

27  to the public.  Nor is an immediate termination notice reasonable where the franchisee merely

28  owed money.  As such, BP's  immediate termination of the franchise relationship clearly violates

345

12

DEFENDANT SAYED FAQUIRYAN'S  RESPONSE TO
PLAINTIFF'S INTERROGATORIES (SET NO. ONE)

1  the PMPA.

2       Plaintiffs breach of the loan agreements prevented defendants' performance.  In

3  their First Amended Complaint, Plaintiffs present claims based on Defendants alleged breach of

4  various contracts.  However, to the extent that the Defendants failed to comply with any material

5  provision of the contract in question, that failure was the direct and proximate result of Plaintiffs

6  own breach of the agreements.  There is in every contract an implied covenant that neither party

7  will do anything to destroy or injure the right of the other party to receive the benefits of the

8  contract.  This is known as the implied covenant of good faith and fair dealing.  Under this

9  covenant, each party has a duty to do everything that the contract presupposes he or she will do to

10 accomplish the purpose of the contract and the duty not to prevent or hinder the performance by

11 the other party.  It follows that performance is excused when prevented or rendered impossible by

12 the acts of the opposite party and similarly operates as a defense to an action for breach of contract.

13 In this case, the Gasoline and Mini-Market Agreements are silent as to the Loan Agreement.

14 However, it is well settled that all agreements should be considered together where the nature and

15 character of the agreements show that they were part of the same transaction, as is the case here

16 Additionally, pursuant to the implied covenant of good faith and fair dealing, BP was under a duty

17 to not prevent STTN from performing under the Agreements.  In spite of this covenant, Plaintiffs

18 breached their agreement to help finance the re-branding of the Station.  Plaintiffs did so knowing

19 that Defendants had to undertake immediate construction and knowing that the contractors would

20 demand payment.  Indeed, Plaintiffs encouraged Defendants to continue construction despite

21 Plaintiffs refusal to fund the loan.  Moreover, Plaintiffs were to fund the gas loan according to the

22 schedule attached to the loan.   To date, Plaintiffs have failed to make all required  payments,

23 despite the Station's completion and despite the agreed upon disbursement schedule.  Thus, to the

24 extent that Defendants failed to comply with any of the contracts at issue  specifically the failure to

25 pay money and to purchase gasoline  that failure was solely the result of Plaintiffs own breach of

26 the loan agreements.

27      Defendants have not infringed on plaintiffs' protected marks.  Plaintiffs also assert

28 claims for trademark infringement against the defendants.  A plaintiff asserting trademark

346

13

1    infringement must establish both (1) that it has a protectable ownership interest in the mark; and

2    (2) that the defendants use of the mark is likely to cause consumer confusion, thereby infringing

3    upon the [plaintiff's] rights to the mark.  When a plaintiff has an unregistered trademark, the

4    presumption of validity is inapplicable, and the plaintiff must establish its protectable interest.

5    Trademarks fall into five categories: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and

6    (5) fanciful.  The latter three are automatically entitled to protection, as they require a mental leap

7    between the mark and the object referenced.  By contrast, generic and descriptive terms refer[ ] to

8    the type or species of the product at issue. Trademark protection does not extend to generic marks,

9    and only extends to descriptive marks that have acquired secondary meaning in the minds of

10   consumers.  Despite Plaintiffs claims to the contrary, the simple fact is that, once the Station was

11   wrongfully de-branded,  Defendants did not use any protected marks, aside from the display on the

12   6 inch computer screen on the PIC machines for a short period of time until those were changed.

13   Plaintiffs claim proprietary rights to the following items, although the marks are unregistered.  As

14   noted above, because the marks are unregistered, Plaintiffs must demonstrate that they have a

15   protectable interest in the marks in order to succeed in their claims.  Plaintiffs cannot show that the

16   marks are protectable.  The marks are simply generic marks that have not attained secondary

17   meaning.

18            The Fill Smart" words on the PIC machine pay screen actually is a protected mark,

19   but it is not registered to Plaintiffs.  Instead, it is registered to Hallum, Inc., a corporation in

20   Flagstaff, Arizona.  Moreover, Plaintiffs cannot demonstrate that the phrase has acquired

21   secondary meaning that relates to Plaintiffs goods or services.  Thus, Plaintiffs have no protectable

22   interest in the words Fill Smart"  In fact, Plaintiffs use of this mark may be infringement.  The

23   Crunch Cube graphics are also generic and Plaintiff cannot show that the graphics have acquired

24   the secondary meaning entitling it to protection.  Moreover, when BP de-branded the Station, it

25   painted over portions of the Crunch Cube graphics, but chose to leave the rest of the graphics in

26   place.  Clearly, BPs decision not to remove the rest of the graphics is an admission that they

27   graphics are not a protectable interest.  The AM/PM Coffee Graphics is simply a coffee cup with

28   beans.  Indeed, employees from BP painted over portions of the coffee graphics when they

347

14

conducted the de-brand, but elected to leave the rest of the coffee graphics intact. Clearly, if the coffee graphics constituted a protectable interest of BP, the individuals trained specifically to destroy BPs marks would have also painted over the rest of the cup. Their decision not to destroy the graphics is an admission that the graphics are not a protectable interest. The "hamburger graphic is nothing more than a hamburger painting. To qualify for protected status, Plaintiff must show that the hamburger is more than a generic hamburger. In any event, the BP de-branding squad elected to leave the hamburger in place. Presumably, if it was a protectable interest, they would have painted it over it, as they did with other marks. Plaintiffs also claim a protectable interest in the blue light stripe on the fuel canopy. This is nothing more than a generic blue neon light. It is similar to those used by other gasoline companies, such as Chevron, Marathon, and countless other independent stations. Like the coffee and hamburger marks, this was left behind after the BP employees de-branded the Station. And, as with the other marks, Plaintiffs cannot make even a rudimentary showing that the mark is entitled to protection. Plaintiffs also claim protection over the orange neon light stripe on the convenience store. This light stripe is nothing more than a generic orange neon light, similar to that used by other gasoline stations, including 76 and untold other independent stations. This light was also left behind by the BP employees, and like the blue light, Plaintiffs cannot make even a rudimentary showing that the mark is entitled to protection.

INTERROGATORY NO. 22:

State any and all facts to support all affirmative defenses in YOUR ANSWER.

ANSWER:

See response to Interrogatory No. 21.

INTERROGATORY NO. 23:

State any and all facts to support all denials in YOUR responses to any of the Requests for Admissions, Set One, served concurrently herewith.

ANSWER:

See Response to Interrogatory No. 21.

INTERROGATORY NO. 24:

348

15

1    IDENTIFY any and all PERSONS with knowledge of any of the facts stated in

2    YOUR responses to the preceding interrogatories.

3    ANSWER:

4    Sayed Faquiryan, Nazim Faquiryan, Mina Faquiryan, Al Fortune, Dan Goalwin,

5    Chris A. Johnson of Omni Financial, Barbara Jones, Thomas Reeder, Brad Christensen, Don

6    Strenk, Cheryl Heath, Priscilla "Jean" Smith, Maria Wilson, Kenneth Wickerham, Cecile

7    McDonald, Michael Hagar, Jeff (last name unknown) at BPWCP, LLC; Rema (last name

8    unknown) at BPWCP,LLC, Pat (last name unknown) at BPWCP, LLC, Debbie Honea at McClane

9    Supply, FMI, DeRosa Sales, the debranding squad from BP, various contractors and construction

10   workers identified in the documents produced herewith.

11   INTERROGATORY NO. 25:

12   IDENTIFY any and all DOCUMENTS to support the facts stated in YOUR

13   responses to the preceding interrogatories.

14   ANSWER:

15   Pursuant to FRCP, Rule 33(d), Plaintiffs are directed to the purchase orders,

16   invoices, cancelled checks and emails produced by responding party with it Response to request

17   for Production of Documents.

18

19   DATED: April ___, 2008.

20                                    BAKER, MANOCK & JENSEN

21

22                                    By _____

23                                    John G. Michael
                                      Attorney for Defendants and Counter Claimants
24                                    STTN ENTERPRISES, INC., NAZIM
                                      FAQUIRYAN, SAYED FAQUIRYAN,
25                                    MAGHUL FAQUIRYAN, and AVA
                                      GLOBAL ENTERPRISE, LLC
26

27
     @PFDesktop\::ODMA/MHODMA/DMS;DMS;606026;1
28   14366.0001

                   349
                                            16

                   DEFENDANT SAYED FAQUIRYAN'S RESPONSE TO
                   PLAINTIFF'S INTERROGATORIES (SET ONE)

# VERIFICATION

STATE OF CALIFORNIA

COUNTY OF SAN BENITO

       I have read the foregoing **DEFENDANT SAYED FAQUIRYAN'S RESPONSE TO PLAINTIFF'S INTERROGATORIES (SET NO ONE)** and know its contents:

☐ CHECK APPLICABLE PARAGRAPHS

      ☒ I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

      ☐    I am ☐ an Officer ☐ a partner _____ ☐ a _____, of _____, a party to this action, and am authorized to make this verification for and on their behalf, and I make this verification for that reason.  ☐ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.  ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

      ☐    I am one of the attorneys for _____, a party to this action.  Such parties are absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of these parties for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

      Executed on April ___, 2008, at Fresno, California.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Sayed Faquiryan_____

_____
Signature

350

1

PROOF OF SERVICE

CCP §§ 1011, 1013, 1013a, 2015.5

FRCP 5(b)

2

3    STATE OF CALIFORNIA, COUNTY OF FRESNO

4           I am employed in the County of Fresno, State of California.  I am over the age of 18 and not a party
     to the within action; my business address is 5260 North Palm Avenue, Suite 421, Fresno, California 93704-2209.

5

6           On **April 2, 2008**, I served the document described as **DEFENDANT SAYED FAQUIRYAN'S
     RESPONSE TO PLAINTIFF'S INTERROGATORIES (SET NO. ONE)** on the interested parties in this action
     ☒ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

7    ☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

8

9    Ms. Deborah Y. Jones
     Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP
     333 South Hope Street, Sixteenth Floor

10   Los Angeles, California 90071
     (213) 576-1000

11   Facsimile No. (213) 576-1100

12   ☒ BY MAIL       ☐ I deposited such envelope in the mail at Fresno, California.  The envelope was mailed with
                      postage thereon fully prepaid.

13

14                   ☒ As follows:  I am "readily familiar" with the firm's practice of collection and processing
                      correspondence for mailing.  Under that practice it would be deposited with U.S. postal service

15                   on that same day with postage thereon fully prepaid at Fresno, California in the ordinary course
                      of business.  I am aware that on motion of the party served, service is presumed invalid if postal

16                   cancellation date or postage meter date is more than one day after date of deposit for mailing in
                      affidavit.

17

18   ☐ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

19   ☒ (BY FAX) I caused the above-referenced document to be transmitted by fax to the addressee(s) at the fax
     number(s) shown.

20

21   ☐ (BY OVERNIGHT COURIER) I caused the above-referenced envelope(s) to be delivered to an overnight courier
     service for delivery to the addressee(s).

22           Executed on **April 2, 2008**, at Fresno, California.

23

24   ☒ (State)       I declare under penalty of perjury under the laws of the State of California that the above is true
                      and correct.

25   ☐ (Federal)     I declare under penalty of perjury under the laws of the United States of America that the above
                      is true and correct and that I am employed in the office of a member of the bar of this Court at

26                    whose direction the service was made.

27

28        Lynda Phillips                          *Lynda Phillips*
          Signature

@PFDesktop\::ODMA/MHODMA/DMS;DMS;582296;1            351
15678.0003