```
 1  KURT OSENBAUGH (State Bar No. 106132)
    DEBORAH YOON JONES (State Bar No. 178127)
 2  SAYAKA KARITANI (State Bar No. 240122)
    WESTON, BENSHOOF, ROCHEFORT,
 3    RUBALCAVA & MacCUISH LLP
    333 South Hope Street, Sixteenth Floor
 4  Los Angeles, California 90071
    Telephone:  (213) 576-1000
 5  Facsimile:  (213) 576-1100
    kosenbaugh@wbcounsel.com
 6  djones@wbcounsel.com
    skaritani@wbcounsel.com
 7
    Attorneys for Plaintiff and Counter-Defendant
 8  BP WEST COAST PRODUCTS LLC
```

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company,<br><br>           Plaintiff,<br><br>v.<br><br>STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company,<br><br>           Defendants.<br><br>AND RELATED CROSS-ACTION. | Case No.: C07 04808 JF<br><br>**DECLARATION OF THOMAS REEDER IN SUPPORT OF BP WEST COAST PRODUCTS LLC'S:**<br><br>**(1) MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT; AND**<br><br>**(2) MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO THE COUNTERCLAIM**<br><br>[Filed concurrently with Notices and Motions; Memoranda of Points and Authorities; Declaration of Brad Christensen, Deborah Yoon Jones, and Cecile McDonnell; Appendix of Non-Federal Authorities; and [Proposed] Orders.]<br><br>Date:   August 8, 2008 (reserved)<br>Time:   9:00 a.m.<br>Crtrm:  3<br><br>           Honorable Jeremy Fogel<br><br>Filing Date:    September 17, 2007 |

DECLARATION OF THOMAS REEDER IN SUPPORT OF BP WEST COAST PRODUCTS LLC'S
MOTIONS FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT AND COUNTERCLAIM

1213043.1

## DECLARATION OF THOMAS REEDER

I, Thomas Reeder, declare and state as follows:

1. This declaration is made in support BP West Coast Products LLC's ("BPWCP"): (1) Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment as to the Second Amended Complaint; and (2) Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment as to the Counterclaim, in the matter entitled *BP West Coast Products, et al., v. STTN Enterprises, Inc. et al.,* United States District Court, Case No. C07 04808 JF. BPWCP is the franchisor for ARCO-branded service stations, including the station at issue in this litigation. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2. I am a Regional Sales Manager ("RSM") for BPWCP for the region that includes the former ARCO-branded gasoline station and am/pm mini market located at 631 San Felipe Road, Hollister, California 95035 ("Station") and I have franchise consultants who report to me. The franchise consultants are the main source of communication to and from the franchisees, including communications regarding company policies (e.g., trade dress issues). As a RSM, I discuss with the franchise consultant issues that arise with a franchisee and make the ultimate decision on key issues including issuance of defaults and termination notices.

## STTN'S FRANCHISE RELATIONSHIP WITH BPWCP

3. I am familiar with defendants and counterclaimants in this case, STTN Enterprises, Inc., Sayed Faquiryan and Nazim Faquiryan (collectively, "STTN"). I first met Mr. Sayed Faquiryan at a franchisee interview approximately 3 years before STTN Enterprises, Inc. became a franchisee. I met Nazim Faquiryan when STTN became a franchisee within the market under my responsibility. STTN Enterprises, Inc.'s franchise relationship with BPWCP was pursuant to the several written agreements, principal among them are: (1) a Contract Dealer Gasoline Agreement, including any and all amendments and addendums, effective July 11, 2006 ("Gasoline Agreement") and (2) an am/pm Mini Market Agreement, including any and all amendments and addendums effective July 11, 2006 ("Mini Market Agreement"). True and correct copies of the

1

DECLARATION OF THOMAS REEDER IN SUPPORT OF BP WEST COAST PRODUCTS LLC'S MOTIONS FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT AND COUNTERCLAIM

1213043.1

1  **Gasoline Agreement** and **Mini Market Agreement** are respectively attached hereto as **Exhibits A** and **B**.

4. On October 12, 2006, STTN signed an Amendment to the Contract Dealer Gasoline Agreement and a 1-year Contract Dealer Gasoline Agreement. At the time, BPWCP believed this was necessary since it was allowing STTN to operate the gasoline station only during the remodeling of the mini market store located at the Station. However, the terms and conditions in the Gasoline Agreement (a 20-year agreement) continued in full force. Moreover, STTN's obligations concerning the payment for and sale of gasoline remained the same in the Gasoline Agreement and the 1-year Gasoline Agreement. True and correct copies of the **Amendment to Gasoline Agreement** and **1-year Gasoline Agreement** are attached respectively hereto as **Exhibits C** and **D**. The Mini Market Agreement, the Gasoline Agreement, the Amendment to Gasoline Agreement, the 1-year Gasoline Agreement, and the Franchise Guaranties shall be referred to collectively as the "Franchise Agreements."

## STTN'S DEFAULTS IN ITS OBLIGATION TO PAY FOR GASOLINE DELIVERIES

5. Under the Franchise Agreements, STTN was not only required to maintain adequate supplies for sale, it was obligated to pay BPWCP for gasoline deliveries. (See Exh. A attached hereto, at Art. 2.) Payment of gasoline product was accomplished by way of an electronic funds transfer ("EFT"). Starting in July 2006, BPWCP delivered gasoline to STTN pursuant to the Gasoline Agreement (and later under the 1-year Gasoline Agreement).

6. Starting in January 2007, I learned from Brad Christensen, the Senior Franchise Consultant who reports to me and whose territory includes the Station, that STTN had failed to pay for gasoline delivered and that numerous EFT requests pertaining to gasoline deliveries were returned for insufficient funds by STTN's bank. Some payments for gasoline deliveries were returned due to deliberate "stop payments" orders from STTN. As such, I placed STTN on "cashier's check only" status, which required STTN to present a cashier's check to the driver of the gasoline delivery truck in order to receive gasoline product.

2
DECLARATION OF THOMAS REEDER IN SUPPORT OF BP WEST COAST PRODUCTS LLC'S MOTIONS FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT AND COUNTERCLAIM

1213043.1

7. Despite STTN's failures to pay for gasoline and growing delinquencies, I approved a payment plan for STTN to pay down a portion of their outstanding gasoline delivery balance every month (on top of payments for gasoline deliveries). I asked Brad Christensen to discuss this payment plan with the Faquiryans. I received a letter from Sayed Faquiryan and Nazim Faquiryan dated May 4, 2007 in which Sayed and Nazim Faquiryan agreed to pay an additional $30,000 by certified check payable to BPWCP on or before the 15th day of each month ("Payment Plan Agreement"). A true and correct copy of the **Payment Plan Agreement** is attached hereto as **Exhibit E**.

8. Despite executing this Payment Plan Agreement, as of September 5, 2007, STTN had not paid for these gasoline deliveries based on this payment plan. The then-current outstanding balance for the gasoline product that STTN has failed to reimburse BPWCP for gasoline product delivered was One Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents ($126,194.77).

9. To date, STTN has not paid for the gasoline provided by BPWCP. The current outstanding balance is One Hundred Twenty-Six Thousand, One Hundred Ninety-Four Dollars and Seventy-Seven Cents ($126,194.77) plus interest.

10. When a franchisee is found to be in violation of the Franchise Agreements, BPWCP issues a written "Default Notice" describing the violation ("Default"). The Default is then sent to the franchisee via certified mail, giving the franchisee an opportunity to cure the violation. I issued a number of Defaults based upon STTN's repeat operational violations for failure to accept gasoline delivery and to make payment for gasoline that was delivered and payable upon receipt. I also issued a number of Defaults for STTN's failure to operate the Station and sell gasoline product commencing on the evening of August 23, 2007 through at least September 4, 2007, in violation of the Franchise Agreements. True and correct copies of all **Default Notices** pertaining to STTN's failure to pay for gasoline product deliveries and failure to operate the Station for at least 12 consecutive days are attached hereto collectively as **Exhibit F**.

3
DECLARATION OF THOMAS REEDER IN SUPPORT OF BP WEST COAST PRODUCTS LLC'S
MOTIONS FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT AND COUNTERCLAIM

1213043.1

## BPWCP'S DECISION TO TERMINATE STTN'S
## FRANCHISE RELATIONSHIP

11. Starting on the evening of August 23, 2007, I learned that STTN was still not paying for gasoline, was not operating the Station for at least 12 consecutive days (from the evening of August 23, 2007 through at least September 4, 2007), and was failing to ensure that all grades of gasoline were available for sale. Indeed, BPWCP's records indicated that BPWCP's last delivery of gasoline to STTN was in or about August 18, 2007. STTN would have run out of the amounts delivered within 3-5 days. Unless STTN was purchasing gasoline from non-BPWCP sources (which would have been in breach of the Franchise Agreements), STTN would not have had any product to sell by August 24, 2007. A true and correct copy of BPWCP's gasoline deliveries is attached hereto as **Exhibit G** and is incorporated by reference herein as though fully set forth at length.

12. On August 30, 2007, I had a conference call with Mr. Christensen and Sayed Faquiryan, during which I informed Sayed that STTN continued to violate the Franchise Agreements by STTN's continued failure to pay for gasoline delivered by BPWCP, failure to order ARCO-branded gasoline from BPWCP, and failure to make all grades of gasoline products available to the public continued to violate the Franchise Agreements. Despite my warnings on August 30 to comply with the Franchise Agreements, STTN continued to violate the Franchise Agreements by failing to operate to Station, failing to make all grades of gasoline available to the public, and failing to pay BPWCP for gasoline delivered.

13. Based on STTN's refusal to pay for the gasoline deliveries and make the gasoline available to the public, I sent a Notice of Termination letter dated September 6, to STTN, advising that the Franchise Agreements would be immediately terminated ("Termination Notice"). A true and correct copy of this **Termination Notice** is attached hereto as **Exhibit H**. The Termination Notice stated the grounds for termination based on both the Franchise Agreements and the related Petroleum Marketing Practices Act 15 U.S.C. §§ 2801, *et seq.* (the "PMPA") provisions.

## BPWCP'S LOANS TO STTN

14.  In addition to the requirements for operating the station, the Gasoline Agreement and Mini Market Agreement also required STTN to complete a remodel or retrofit of the station within nine (9) months of the commencement of the franchise relationship. [See Exh. A, Gasoline Agreement, § 1.2, Exh. B, Mini Market Agreement, § 5.03(a).] To facilitate and assist its dealers' efforts in complying with BPWCP's "remodel and retrofit" requirement, BPWCP offers its dealers a special loan program to provide funds specifically for completing construction and remodeling of its station and am/pm mini market store. This loan program allows dealers to make repayments based on "credits" from selling ARCO gasoline or, alternatively, through a specified percentage per year payment for a specified amount of years. Under BPWCP's loan program, if a franchisee meets certain yearly gallonage and store sale requirements, a portion of the loan is deemed repaid at the end of each year term. Thus, as long as a franchisee sells a specified amount of gasoline product and/or store products each year for the duration of the loan term, the loan payments for that year are deemed repaid. Furthermore the franchisee enjoys the use of a remodeled and retrofitted station and store, which in turn attracts more customers and therefore generates more income and profit for the franchisee. In June 2007, I approved STTN for such a special loan program, allowing STTN to make repayments based on "credits" from achieving certain sales figures in the Mini Market or, alternatively, through a five percent (5%) per year payment for twenty years.

15.  BPWCP offered two loans to STTN (a Store Loan and Gasoline Loan). To confirm the details of BPWCP and STTN's discussions regarding the loan programs and outlining the general conditions upon which BPWCP would agree to loan STTN monies for the capital improvements, BPWCP sent STTN a Conditional Commitment Letter ("CCL") dated May 25, 2006. A true and correct copy of the **May 25, 2006 CCL** is attached hereto as **Exhibit I**. The CCL is intended to set forth some of the essential terms of the proposed loans in order to determine whether to proceed forward with the loan processing, but the CCL is not intended to be a binding loan agreement.

5

DECLARATION OF THOMAS REEDER IN SUPPORT OF BP WEST COAST PRODUCTS LLC'S
MOTIONS FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT AND COUNTERCLAIM

1213043.1

16. Based on the CCL, BPWCP and STTN entered into two such loan agreements (a Store Loan Agreement and Gasoline Loan Agreement).

(a) The first loan agreement – the "am/pm Mini Market Loan Agreement" – provided a base loan in the amount of $150,000 to fund the costs associated with pre-approved modifications and/or equipment and improvements to the am/pm Mini Market (hereinafter, "Store Loan Agreement"). The Store Loan Agreement included an additional $75,000 that BPWCP could elect to disburse for refreshing and refurbishing the am/pm Mini Market on the eleventh anniversary of the base loan disbursement. A true and correct copy of the **Store Loan Agreement** signed by STTN is attached hereto as **Exhibit J**.

(b) The second loan agreement – the "Gasoline Loan Agreement" – provided a base loan in the amount of $250,000 to fund costs associated with the pre-approved modifications and/or equipment and improvements to the gasoline sales-related aspects of the Station (i.e., dispensers, canopy, etc.). A true and correct copy of the **Gasoline Loan Agreement** signed by STTN is attached hereto as **Exhibit K**.

17. Pursuant to the terms of the loan agreements, the loan funds were to be disbursed directly to the third parties who were retained to complete the construction, remodeling and retrofitting. To ensure that all conditions for disbursement were met, STTN and BPWCP entered into a **Disbursement Agreement** that sets forth the terms and conditions governing disbursements of funding. A true and correct copy of the Disbursement Agreement is attached hereto as **Exhibit L**.

18. To secure BPWCP's interests and STTN's obligations under the loan agreements, BPWCP had AVA Global, as owner of the real property upon which STTN's franchise station is located, execute the Deed of Trust dated March 2, 2007 and that was recorded on March 9, 2007. A true and correct copy of the **Deed of Trust** is attached hereto as **Exhibit M**. BPWCP, AVA Global, and STTN also entered into a "Consent to Encumbrance of Tenant's Interest" dated March 2, 2007 and recorded on March 9, 2007 ("Consent to Encumbrance"). A true and correct copy of the **Consent to Encumbrance** is attached hereto as **Exhibit N**. In addition, BPWCP had STTN execute a

6
DECLARATION OF THOMAS REEDER IN SUPPORT OF BP WEST COAST PRODUCTS LLC'S
MOTIONS FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT AND COUNTERCLAIM

1213043.1

1  Promissory Note evidencing the Store Loan. A true and correct copy of the Promissory Note is
2  attached hereto as **Exhibit O**. STTN also executed and delivered to BPWCP, as beneficiary, a
3  UCC-1. A true and correct copy of the UCC-1 is attached hereto as **Exhibit P**.

4      19.    The Termination Notice also states that STTN was also required to pay the
5  outstanding loan balance of $150,000.00 under the Store Loan Agreement within 30 days of the
6  termination of the Franchise Agreements. To date, however, STTN, Sayed Faquiryan, Nazim
7  Faquiryan, and Maghul Faquiryan, have failed and refused to pay the outstanding balance due under
8  the Store Loan Agreement. The current outstanding loan balance is $150,000 plus interest.

10      I declare under penalty of perjury under the laws of the State of California that the
11  foregoing is true and correct.

12      Executed on July 2, 2008, at CLAYTON, California.

*/s/ Thomas Reeder*
THOMAS REEDER

7
DECLARATION OF THOMAS REEDER IN SUPPORT OF BP WEST COAST PRODUCTS LLC'S
MOTIONS FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT AND COUNTERCLAIM