KURT OSENBAUGH (State Bar No. 106132)
DEBORAH YOON JONES (State Bar No. 178127)
SAYAKA KARITANI (State Bar No. 240122)
**WESTON, BENSHOOF, ROCHEFORT,**
    **RUBALCAVA & MacCUISH LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
kosenbaugh@wbcounsel.com
djones@wbcounsel.com
skaritani@wbcounsel.com

Attorneys for Plaintiff and Counter-Defendant
BP WEST COAST PRODUCTS LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company,<br><br>    Plaintiff,<br><br>    v.<br><br>STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company,<br><br>    Defendants.<br><br>AND RELATED CROSS-ACTION | Case No.: C07 04808 JF<br><br>**REPLY BRIEF IN SUPPORT OF BP WEST COAST PRODUCT LLC'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO THE COUNTERCLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Reply Brief on Motion re Second Amended Complaint; Declaration of Elizabeth Chang; Additional Declaration of Deborah Yoon Jones; Evidentiary Objections to Declarations of Sayed Faquiryan and John Michael; and Appendix of Authorities.]<br><br>Date:        August 8, 2008 (reserved)<br>Time:        9:00 a.m.<br>Crtm:        4<br><br>Honorable Jeremy Fogel<br><br>Filing Date:        September 17, 2007 |

REPLY RE MSJ/PARTIAL SJ ON COUNTERCLAIM

# TABLE OF CONTENTS

Page(s)

I.   BPWCP INCORPORATES BY REFERENCE ITS REPLY BRIEF IN SUPPORT
     OF THE MOTION FOR SUMMARY JUDGMENT ON THE SECOND AMENDED
     COMPLAINT FILED CONCURRENTLY HEREWITH..........................................................1

II.  THE LOAN AGREEMENTS ARE VALID, ENFORCEABLE CONTRACTS AND
     THE CAUSE OF ACTION ON THE CCL FAILS AS A MATTER OF LAW ......................1

     A.   The Loan is Conditional and the CONDITIONAL Commitment Letter Is Not
          Binding on BPWCP ..............................................................................................2

     B.   STTN Was Not Under Duress When It Signed the Loan Agreements.........................3

     C.   The Loan Agreements are Signed by STTN.................................................................4

III. STTN FAILS TO PRESENT ANY EVIDENCE TO CONTRADICT BPWCP'S
     SUMMARY JUDGMENT MOTION on THE COUNTERCLAIMS FOR BREACH
     OF THE LOAN AGREEMENTS.........................................................................................4

     A.   BPWCP Did Not Breach the Store Loan Agreement ..............................................4

     B.   BPWCP Did Not Breach the Gasoline Loan Agreement.............................................5

IV.  STTN CANNOT MAINTAIN A COUNTERCLAIM FOR BREACH OF THE
     IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ...................................5

V.   STTN PRESENTS NO FACTS TO SUPPORT ITS FRAUD AND NEGLIGENT
     MISREPRESENTATION COUNTERCLAIMs AGAINST BPWCP ...................................6

VI.  CONCLUSION.....................................................................................................................7

i

REPLY RE MSJ/PARTIAL SJ ON COUNTERCLAIM

1

## Table of Authorities

2

CASES

3

*Bank of America v. Pendergrass*
(1935) 4 Cal.2d 258, 48 P.2d 659 ...................................................................6

4

*California State Automobile Assn. Inter-Insurance Bureau v. Barrett Garages*

5

(1967) 257 Cal.App.2d 71 .............................................................................4

6

*Careau & Co. v. Security Pacific Business Credit, Inc.*
(1990) 222 Cal.App.3d 1371 .........................................................................5

7

8

*CrossTalk Productions, Inc. v. Jacobson*
(1998) 65 Cal.App.4th 631 ............................................................................3

9

*Erlich v. Mendezes*

10

(1999) 21 Cal.4[th] 543 ...................................................................................6

11

*Federico v. Frick*
(1970) 3 Cal.App.3d 872 ...............................................................................4

12

13

*Peterson Development Co., Inc. v. Torrey Pines Bank*
(1991) 233 Cal.App.3d 103 ...........................................................................2

14

*Randas v. YMCA of Metropolitan Los Angeles*

15

(1993) 17 Cal.App.4[th] 158 ..........................................................................4

16

*Rich & Whillock, Inc. v. Ashton Development, Inc.*
(1984) 157 Cal.App.3d 1154 .........................................................................3

17

18

*Rivera v. National R.R. Passenger Corp.*
(9th Cir. 2003) 331 F.3d 1074 ......................................................................6

19

*Roehm Distributing Co. v. Burgermeister Brewing Co.*

20

(1961) 196 Cal.App.2d 678 ...........................................................................3

21

*Thompson Crane and Trucking Co. v. Eyman*
(1954) 123 Cal.App.2d 904 ...........................................................................3

22

OTHER AUTHORITIES

23

Witkin, Summary of California Law: Contracts, § 118, p. 157 (10th Ed. 2005).............................4

24

25

26

27

28

REPLY RE MSJ/PARTIAL SJ ON COUNTERCLAIM

1226254.2

I.    **BPWCP INCORPORATES BY REFERENCE ITS REPLY BRIEF IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT ON THE SECOND AMENDED COMPLAINT FILED CONCURRENTLY HEREWITH**

STTN has, for the most part, duplicated its arguments in its Opposition to BPWCP's summary judgment motion on the Second Amended Complaint in STTN's Opposition to the motion concerning the counterclaim. Thus, in the interests of judicial economy, BPWCP incorporates herein as though fully set forth at length its Reply Brief in support of the Second Amended Complaint summary judgment motion that was filed concurrently herewith.

BPWCP does, however, address the issues in STTN's Opposition that are unique to BPWCP's summary judgment motion on the counterclaim by demonstrating that: (1) STTN is not entitled to pursue a claim for breach of the Conditional Commitment Letter ("CCL") given that the CCL clearly contemplates the existence of formal loan documents and the subsequently signed loan documents contain an applicable integration clause; (2) STTN fails to establish that BPWCP breached the Store Loan Agreement and the Gasoline Loan Agreement where the only "evidence" provided is contrary to the facts and based upon bald assertions; (3) STTN fails to rebut the controlling legal authority which precludes its counterclaim for breach of the implied covenant of good faith and fair dealing; and (4) STTN does not introduce sufficient evidence to bar summary judgment on the fraud and negligent misrepresentation counterclaims. As discussed below, STTN fails to meet the requisite evidentiary and legal burden in opposing BPWCP's summary judgment motion.

II.    **THE LOAN AGREEMENTS ARE VALID, ENFORCEABLE CONTRACTS AND THE CAUSE OF ACTION ON THE CCL FAILS AS A MATTER OF LAW**

BPWCP moved for summary judgment on STTN's counterclaim for breach of the Conditional Commitment Letter ("CCL") on the ground that the CCL is not a valid enforceable agreement and was superseded by the Loan Agreements. In its Opposition, STTN is unable present either sufficient evidence or applicable authority to contradict the factual and legal authority presented in BPWCP's motion.

1

REPLY RE MSJ/PARTIAL SJ ON COUNTERCLAIM

A.     **The Loan is Conditional and the CONDITIONAL Commitment Letter Is Not Binding on BPWCP**

By attempting to recover under the CCL, STTN undoubtedly seeks to avoid all the essential provisions of the Gasoline Loan Agreement and Store Loan Agreement with BPWCP including, but not limited to, the requirements for loan disbursement (which STTN failed to meet) and gasoline agreement breach default provisions (which STTN is specifically subject to here). However, STTN cannot escape the undisputed fact that the CCL is not the governing agreement and STTN's second counterclaim fails as a matter of law.

In its Opposition, STTN contends that pursuant to *Peterson Development Co., Inc. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 115, the CCL issued by BPWCP is an enforceable contract because it contains the following "material" terms: (1) the identities of the borrower and lender; (2) the amount of the loan; and (3) the terms of repayment. What STTN fails to mention, however, is that the *Peterson* decision also explains that "[u]nder the usual principles of lender liability, [a] loan commitment is not binding on the lender unless it contains all of the material terms of the loan, and either the lender's obligation is unconditional or the stated conditions have been satisfied." *Peterson, supra*, 233 Cal.App.3d at 115 (emphasis added). Therefore, even if the Court determined that all of the "material terms" were contained in BPWCP's CCL, the fact remains that the Store Loan Agreement and Gasoline Loan Agreement were both conditional and the stated conditions have not been satisfied. *Id.*

Furthermore, STTN argues that because BPWCP drafted the CCL it was "clearly" agreeing to be "bound by the terms and conditions of the CCL." (Opp., p. 19.) BPWCP never agreed that the CCL was the final and enforceable loan agreement. The CCL, rather, "clearly" indicates that it is considering the request for the loan and that complete terms of the Loan will be provided in forthcoming documents and agreements. (MSJ, p. 16.) It is also notable that STTN does not distinguish or address the relevant and applicable authority cited in the moving papers. Accordingly, the CCL is not a valid and binding agreement and STTN's second counterclaim for breach of the CCL fails as a matter of law.

1226254 2                                                REPLY RE MSJ/PARTIAL SJ ON COUNTERCLAIM

**B.**    <u>STTN Was Not Under Duress When It Signed the Loan Agreements</u>

STTN argues that neither the Store Loan Agreement nor the Gasoline Loan Agreement is enforceable because STTN alleges it was under economic duress when it signed the Loan Agreements. (Opp. 19.) Economic duress requires a wrongful act that is "sufficiently coercive to cause a reasonably prudent person to be faced with no reasonable alternative but to 'succumb.'" *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158; *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 645. Cases finding economic duress require much more than STTN claims. *See, e.g., Thompson Crane and Trucking Co. v. Eyman* (1954) 123 Cal.App.2d 904 (duress found when two days before time for filing expired accountant threatened to not file plaintiff's protest filing, making the client liable for a large assessment, if plaintiff did not sign contract to share proceeds with the accountant); *Rich & Whillock, supra* 157 Cal.App.3d at 1159-1160 (duress found when defendant, knowing plaintiff was overextended to creditors, refused to make a full final payment and instead demanded plaintiff to accept reduced payment for plaintiff's finished work). Furthermore, just like any other claim, STTN is obligated to present evidentiary facts to support its claim for duress and a "bald assertion without any evidentiary facts of any kind whatsoever" will be given no evidentiary weight in the context of duress claims. See *Roehm Distributing Co. v. Burgermeister Brewing Co.* (1961) 196 Cal.App.2d 678, 682. Other than a summary statement that it was "under duress" at the time it signed the Loan Agreements, STTN presents no evidence to support this claim.[1]

The Store Loan Agreement and the Gasoline Loan Agreement therefore supersede the CCL and STTN's counterclaim for breach of the CCL fails as a matter of law.

---

[1]    While not critical to this Court's determination of BPWCP's summary judgment motion on the counterclaim, BPWCP would like to inform the Court that STTN does not provide proof of duress because there is no evidence. Indeed, STTN admitted that it signed the Loan Agreements at the offices of the title company and never asked any questions about the Loan Agreements even though it had BPWCP's contact information. [See Sayed Depo. at 78:11-79:9, Additional Declaration of Deborah Y. Jones ("Addt'l Jones Decl.") filed concurrently herewith, Exh. 8.] Moreover, STTN admits that it never reconsidered wanting to become a BPWCP franchisee either before or after it became a franchisee and rejected BPWCP's offer to return the franchise fee and mutually terminate the franchise arrangement. [See Sayed Depo. at 93:24-95:1, Addt'l Jones Decl., Exh. 8.]

3

1226254.2

1

C.    **The Loan Agreements are Signed by STTN**

2        In addition, STTN cannot avoid the fact that it signed the Loan Agreements.  [See

3    MSJ, p. 8, as well as Sayed Depo. at 78:11-21 and 81:20-82:3 and Nazim Depo. at 14:4-8, 14:15-17,

4    89:8-14 and 15:15-18 attached as Exhs. 8 and 9 to Addt'l Jones Decl.]    Nor can STTN avoid the

5    enforceability of the Loan Agreements on grounds that it did not read them prior to signing them.

6    [Sayed Depo., 79:10-20 and 82:4-6 and Nazim Depo. at 14:12-14, 14:20-22, and 15:22-24 attached

7    as Exhs. 8 and 9 to Addt'l Jones Decl.]  It is well established that "[o]rdinarily, one who accepts or

8    signs an instrument, which on its face is a contract, is deemed to consent to all its terms, and cannot

9    escape liability on the ground that he or she has not read it." Witkin, Summary of California Law:

10   Contracts, § 118, p. 157 (10th Ed. 2005); and *Randas v. YMCA of Metropolitan Los Angeles* (1993)

11   17 Cal.App.4[th] 158, 163.  A party's failure to read the contract does not change the legal result.

12   *Federico v. Frick* (1970) 3 Cal.App.3d 872, 875.  Indeed, the general rule is that a person is bound

13   by the printed contractual provisions of an instrument which he accepts delivery of if, as an

14   ordinarily prudent man, he could and should have read such provisions.  *California State Automobile*

15   *Assn. Inter-Insurance Bureau v. Barrett Garages* (1967) 257 Cal.App.2d 71, 76.

16   **III.    STTN FAILS TO PRESENT ANY EVIDENCE TO CONTRADICT BPWCP'S**

17       **SUMMARY JUDGMENT MOTION ON THE COUNTERCLAIMS FOR BREACH**

18       **OF THE LOAN AGREEMENTS**

19   A.    **BPWCP Did Not Breach the Store Loan Agreement**

20       Aside from the fact that BPWCP made a policy exception and disbursed $150,000 in

21   loan proceeds to STTN under the Store Loan Agreement, STTN seeks damages for the purported

22   untimely disbursement of those funds.   However, BPWCP first of all emphasizes that STTN

23   received the entire amount of the $150,000 Store Loan proceeds.   [MSJ, p. 10, lns. 1-3.]

24   Furthermore, STTN's only "evidence" to support this particular counterclaim is a bald assertion that

25   it had satisfied all conditions under the Store Loan Agreement by March 9, 2007.  As explained

26   more fully in the concurrently filed in BPWCP's other Reply Brief (at pp. 3-4 and 14), STTN fails to

27   present sufficient evidence that it had satisfied conditions by March 2007 and furthermore cited to

28   deposition testimony which did not support this claim.  Moreover, the undisputed facts presented in

4

1    BPWCP's moving papers reveal that as of March 9, 2007, conditions had, in fact, not been met.

2    (MSJ, p. 18-19 and McDonnell Decl., ¶ 5.)   Notably STTN's evidentiary objections to Ms.

3    McDonnell's declaration do not include any objection to paragraph 5.

4        **B.**     **BPWCP Did Not Breach the Gasoline Loan Agreement**

5        STTN utilizes the same arguments in Opposition to the counterclaim for breach of the

6    Gasoline Loan as it does in its Opposition to BPWCP's summary judgment on BPWCP's breach of

7    contract claims.   Essentially, STTN contends that BPWCP did not have a right to refuse

8    disbursement of the Gasoline Loan proceeds even though STTN was delinquent on its gasoline

9    balances and was therefore in default of the Gasoline Agreement.  As fully discussed in the Reply

10    Brief supporting BPWCP's summary judgment on the Second Amended Complaint, (1) BPWCP had

11    a right under the applicable contract terms to refuse disbursement of the loan funds, and (2) STTN

12    failed to present any adequate evidence to the contrary.  Any other outcome, i.e., requiring BPWCP

13    to loan money to a franchisee who has been delinquent on payments for over nine months and who

14    was failing to properly operate the station, would be illogical and improper.  Accordingly, BPWCP

15    is entitled to summary judgment on the counterclaim for breach of the Gasoline Loan Agreement.

16   **IV.**    **STTN CANNOT MAINTAIN A COUNTERCLAIM FOR BREACH OF THE**

17          **IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

18        STTN argues that BPWCP breached the implied covenant of good faith and fair

19    dealing that is implied in each contract and relies entirely on *Careau & Co. v. Security Pacific*

20    *Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393.  Given STTN's proclamation that "[t]he

21    allegations described by the *Careau & Co.* court are the same allegations contained in STTN's

22    Counterclaim" (Opp, at 20:22-23), STTN should have no opposition to the Court to apply the ruling

23    in *Careau*.  The *Careau* court concluded that the plaintiff's allegations were not sufficient to state

24    any cause of action for a breach of the implied covenant of good faith and found their claim to be

25    duplicative of their two contract causes of action.  *Id.* at 1392.  Given that the implied covenant

26    counterclaim is duplicative of STTN's breach of contract counterclaims, it is proper for the Court to

27    rule in favor of BPWCP on STTN's sixth counterclaim for breach of the implied covenant.

28

V.    **STTN PRESENTS NO FACTS TO SUPPORT ITS FRAUD AND NEGLIGENT MISREPRESENTATION COUNTERCLAIMS AGAINST BPWCP**

In opposition to BPWCP's motion for summary judgment on the fraud and intentional misrepresentation counterclaims, STTN misses the mark concerning the *Erlich v. Mendezes* (1999) 21 Cal.4th 543, 553-4 and *Bank of America v. Pendergrass* (1935) 4 Cal.2d 258, 48 P.2d 659, 661-662 decisions. Those causes stand for the proposition that a claim for fraud cannot be based upon promises which concern contractually negotiated obligations. STTN's fraud and intentional misrepresentations counterclaims do just that by relying upon allegations that pertain to BPWCP's obligations and responsibilities owed under the Loan Agreements.

In addition, STTN does not present a single shred of evidence to support its fraud and intentional misrepresentation allegations or rebut BPWCP's established undisputed facts. As explained at length in BPWCP's other Reply Brief, STTN had the burden to "set forth specific facts showing that there is a genuine issue for trial" and introduced "significant probative evidence tending to support" its positions. *Rivera v. National R.R. Passenger Corp.* (9th Cir. 2003) 331 F.3d 1074, 1078. Other than make a general argument that BPWCP made representations concerning the disbursement of loan funds which induced STTN into action, STTN fails to present any evidence to support that there was any fraud by BPWCP. At best, STTN references an email that states that BPWCP management "can" authorize the deduction of final past due amounts from the loan funds prior to releasing those funds from escrow. The email does not say that BPWCP ever has agreed or ever will agree to make such an exception for STTN. But STTN also concedes that BPWCP "repeatedly represented to STTN that it was against BP policy to set off the gas debt owed by STTN against loan funds owed by BP." [Opp. at 24:25-26.] Thus, STTN could not have relied on the fact that BPWCP's management <u>could have</u> approved to authorized fund control to deduct final past due amount from the loan funds prior to releasing from escrow. In any event, these claims are based upon the Loan Agreements and do not independently create tort liability. STTN's fraud claim necessarily fails as a matter of law.

6

1226254 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.   **CONCLUSION**

The undisputed facts and legal authority presented in BPWCP's moving papers unequivocally establish that (1) STTN admittedly failed to pay for gasoline deliveries and were delinquent in sums from January 2007 through September 2007 in amounts up to approximately $185,000; (2) STTN's failure to pay sums due BPWCP (along with its failure to operate the Station) constitute *per se* reasonable grounds to terminate the franchise and a default under the loan agreements and the governing PMPA; (3) STTN must immediately repay the $150,000 in store loan funds given the franchise termination and pursuant to the Store Loan Agreement; and (4) STTN has taken BPWCP's money, both in the form of unpaid gasoline deliveries and loan proceeds, and has improperly used that money for personal enjoyment of gasoline profits and a remodeled station.

The Court should also be able to garner from the facts presented that BPWCP has had its share of difficulties in dealing with a franchisee who is completely unable to take responsibility for its own actions and failures.  It is ironic that STTN resorts to blaming BPWCP for causes that were within STTN's control which included STTN's failure to pay for gasoline deliveries beginning in January 2007, failure to pay its construction crews to avoid the recording of mechanics' liens, and failure to provide required information necessary to disburse loan proceeds.  Let us not forget that STTN chose to become a BPWCP franchise, rejected BPWCP's offer to forego the franchise relationship and return the franchise fee, and agreed to the terms and conditions of the franchise and loan programs.  Moreover, BPWCP more than bent over backwards for STTN.  After all, BPWCP made a policy exception to its loan funding program by disbursing $150,000 for STTN's construction costs even though STTN remained in default on the Gasoline Agreements.  BPWCP also tolerated over 9 months of delinquent gasoline balances.  BPWCP could no longer accept STTN's actions and excuses when it went so far as to tape off dispensers and sell, at most, one or two grades of gasoline.

Accordingly, BPWCP respectfully requests that the Court put an end, once and for all, to STTN's excuses and affirm BPWCP's proper decision to terminate its unsuccessful franchise relationship with STTN.  STTN should be held accountable for its actions and should no longer be able to hide behind its unjustified blame-throwing, which is evident throughout its unsupported

7

1226254.2

1    Opposition papers.  BPWCP's Motion for Summary Judgment as the Counterclaim should be

2    granted in its entirety.

3

4    DATED:  July 25, 2008            Respectfully submitted,

5                                **WESTON, BENSHOOF, ROCHEFORT,**
                                 **RUBALCAVA & MacCUISH LLP**

6

7

8                                     Deborah Yoon Jones
                   Attorneys for Plaintiff and Counter-Defendant

9                    BP WEST COAST PRODUCTS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1226254.2                                          REPLY RE MSJ/PARTIAL SJ ON COUNTERCLAIM