# EXHIBIT 1

Westlaw.

900 P.2d 601                                                                                                          Page 1
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

▷
Alliance Mortg. Co. v. Rothwell
Cal. 1995.
    ALLIANCE MORTGAGE COMPANY, Plaintiff
and Appellant,
v.
LAURIE SAMUEL ROTHWELL et al., Defend-
ants and Respondents.
**No. S043065.**

Supreme Court of California
Aug 28, 1995.

SUMMARY

A real estate lender brought an action against a real
estate appraiser and broker, a title insurer, and oth-
ers, alleging that defendants fraudulently induced
plaintiff to make loans to purchasers of real prop-
erty. The trial court granted motions to strike por-
tions of the complaint, concluding that plaintiff's
full credit bids for the properties at the trustee's
sales barred claims for damages resulting from
fraudulent representations as to the adequacy of the
security, and entered judgment on the pleadings for
defendants. (Superior Court of the City and County
of San Francisco, No. 880354, Raymond J. Arata,
Jr., Judge.) The Court of Appeal, First Dist., Div.
Two, No. A058972, reversed.

The Supreme Court affirmed the judgment of the
Court of Appeal with directions to remand the mat-
ter to the trial court for further proceedings. The
court held that the trial court erred in striking por-
tions of plaintiff's complaint on the ground that
plaintiff's full credit bids on the properties at nonju-
dicial foreclosure sales barred claims for damages
resulting from fraudulent misrepresentations as to
the adequacy of the security, and granting defend-
ants judgment on the pleadings. Accepting as true
the allegations of the complaint, the court held that
plaintiff's full credit bids did not, as a matter of law,
bar its fraud claims. The full credit bids did not pre-
clude plaintiff from demonstrating justifiable reli-
ance. To do so, plaintiff had only to demonstrate
that its full credit bids were a proximate result of
defendants' fraud, and in the absence of such fraud
it would not, in all reasonable probability have
made the bids. In such a case, the bids could not be
deemed an admission of the properties' value. Even
if the full credit bids were not the proximate result
of defendants' fraudulent misrepresentations, or
plaintiff's reliance was manifestly unreasonable,
plaintiff could still recover any other damages
flowing from defendants' fraud. Because such a fac-
tual evaluation could not be made on the pleadings
alone, the trial court erred in entering judgment on
the pleadings. The court also held that the judgment
on the pleadings could not be sustained on the
ground plaintiff failed to allege actual damages. Al-
though plaintiff did not allege that defendants im-
paired its security or caused the value of the proper-
ties to decrease after the loans were made, it alleged
that the intentional misrepresentations regarding the
properties' characteristics and value induced it to
make loans that far exceeded the properties' actual
worth at the time the loans were made, and that as a
result of these misrepresentations it purchased the
properties. The damages for such fraud are meas-
ured not by the outstanding indebtedness, extin-
guished by the full credit bid, but by plaintiff's out-
of-pocket or consequential damages under Civ.
Code, § 3343, or Civ. Code, § 3333, depending on
whether defendants stood in a fiduciary relationship
to plaintiff. (Opinion by Arabian, J., with Mosk,
Kennard, Baxter, and George, JJ., concurring. Sep-
arate concurring opinion by Werdegar, J., with Lu-
cas, C. J., concurring.)

HEADNOTES

Classified to California Digest of Official Reports

**(1)**     Deeds    of    Trust    §
26--Remedies--Foreclosure--Judicial Foreclosure.
In a judicial foreclosure on a deed of trust, if the
property is sold for less than the amount of the out-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                    Page 2
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

standing indebtedness, the creditor may seek a deficiency judgment or the difference between the amount of the indebtedness and the fair market value of the property, as determined by a court, at the time of sale. However, the debtor has a statutory right of redemption, or an opportunity to regain ownership of the property by paying the foreclosure sale price, for a period of time after foreclosure.

**(2)** Deeds of Trust § 44--Sale Under Power--Deficiency--Nonjudicial Foreclosure--Trustee's Sale.
In a nonjudicial foreclosure on a deed of trust, also known as a "trustee's sale," the trustee exercises the power of sale given by the deed of trust. Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, neither appraisal nor a judicial determination of fair value is required, and the debtor has no postsale right of redemption. However, the creditor may not seek a deficiency judgment. Thus, the antideficiency statutes in part serve to prevent creditors at private sales from buying in at deflated prices and realizing double recoveries by holding debtors for large deficiencies.

**(3)** Deeds of Trust § 36--Sale Under Power--Attack on Sale--Fraud.
When there is no irregularity in a nonjudicial foreclosure sale on a deed of trust and the purchaser is a bona fide purchaser for value, a great disparity between the sales price and the value of the property is not a sufficient ground for setting aside the sale. Although a bid at a trustee's sale is deemed by statute to be an irrevocable offer by the bidder to purchase the property for that amount, it is the general rule that courts have power to vacate a foreclosure sale that is tainted by fraud. The doctrine of caveat emptor does not apply to nonjudicial foreclosure sales.

**(4)** Deeds of Trust § 44--Sale Under Power--Deficiency--Antideficiency Statutes--Fraud.
The antideficiency statutes applicable to nonjudicial foreclosure sales have been broadly interpreted to protect the debtor. However, they do not preclude an action against a borrower for fraud in the inducement of a loan. There are several reasons for this exception. First, a suit for fraud does not involve an attempt to recover on a debt or note. As such, it stands separate and apart from any action which the antideficiency legislation seeks to preclude. Furthermore, the antideficiency laws were not intended to immunize wrongdoers from the consequences of their fraudulent acts. Finally, assuming the court applies a proper measure of damages, fraud suits do not frustrate the antideficiency policies since there should be no double recovery for the beneficiary.

**(5)** Deeds of Trust § 38--Sale Under Power--Effect of Sale--Full Credit Bid:Words, Phrases, and Maxims--Full Credit Bid.
A "full credit bid" by the lender at a nonjudicial foreclosure sale is a bid in an amount equal to the unpaid principal and interest of the mortgage debt, together with costs, fees and other expenses of the foreclosure. If the full credit bid is successful, i.e., results in the acquisition of the property, the lender pays the full outstanding balance of the debt and costs of foreclosure to itself and takes title to the property, releasing the borrower from further obligations under the defaulted note. Under the "full credit bid rule," when a lender makes such a bid, it is precluded, for purposes of collecting its debt, from later claiming that the property was actually worth less than the bid. Thus, the lender is not entitled to insurance proceeds, payable for prepurchase damage to the property, prepurchase net rent proceeds, or damages for waste, since the lender's only interest in the property, the repayment of its debt, has been satisfied, and any further payment would result in a double recovery.

**(6)** Fraud and Deceit § 12--Actual Fraud--Reliance--General Principles.
The reliance element of fraud exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and without such misrepresenta-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                    Page 3
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

tion or nondisclosure, in all reasonable probability, he or she would not have entered into the contract or other transaction. Except in a rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether reliance is reasonable is a question of fact. Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent; nor is a plaintiff held to the standard of precaution or minimum knowledge of a hypothetical reasonable person. If the conduct of the plaintiff in the light of his or her own intelligence and information was manifestly unreasonable, he or she will be denied recovery. If the plaintiff and defendant are in a confidential relationship there is no duty of inquiry until the relationship is repudiated. The nature of the relationship is such as to cause the plaintiff to rely on the fiduciary, and awareness of facts which would ordinarily call for investigation does not excite suspicion under these special circumstances.
[See 5 **Witkin,** Summary of Cal. Law (9th ed. 1988) Torts, § 711.]

**(7)    Fraud    and    Deceit    §  33--Actions--Damages--Measure of Damages.**
Unless a plaintiff merely seeks to rescind a contract, it must suffer actual monetary loss to recover on a fraud claim. There are two measures of damages for fraud: out-of-pocket and benefit of the bargain. The "out-of-pocket" measure of damages is directed to restoring the plaintiff to the financial position enjoyed by him or her prior to the fraudulent transaction, and thus rewards the difference in actual value at the time of the transaction between what the plaintiff gave and what he or she received. The "benefit-of-the-bargain" measure is concerned with satisfying the expectancy interest of the defrauded plaintiff by putting him or her in the position he or she would have enjoyed if the false representation relied on had been true; it awards the difference in value between what the plaintiff actually received and what he or she was fraudulently led to believe he or she would receive.

**(8)    Fraud    and    Deceit    §  33--Actions--Damages--Measure of Damages--Property Transactions.**
In fraud cases involving the purchase, sale, or exchange of property, the "out-of-pocket" rather than the "benefit-of-the-bargain" measure of damages applies (Civ. Code, § 3343, subds. (a), (b)(1)). This section does not apply, however, when a victim is defrauded by fiduciaries. In this situation, the broader measure of damages provided by Civ. Code, §§ 1709, and 3333, applies.

**(9)    Fraud    and    Deceit    §  34--Actions--Damages--Exemplary or Punitive Damages--Costs and Fees.**
Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations. The jury also has discretion to award prejudgment interest on the plaintiff's loss from the time the plaintiff parted with the money or property on the basis of the defendant's fraud. A plaintiff is not entitled, however, to attorney fees as an element of damages in an action for fraud in which the defendant is a fiduciary.

**(10a, 10b) Deeds of Trust § 38--Sale Under Power--Effect of Sale--Full Credit Bid by Lender--Fraud Action Against Third Party Nonborrowers.**
In an action by a lender against third party nonborrowers alleging they fraudulently induced plaintiff to make certain loans, the trial court erred in striking portions of plaintiff's complaint on the ground that plaintiff's full credit bids on the property at nonjudicial foreclosure sales barred claims for damages resulting from fraudulent misrepresentations as to the adequacy of the security, and granting defendants judgment on the pleadings. Accepting as true the allegations of the complaint, plaintiff's full credit bids did not, as a matter of law, bar its fraud claims. The full credit bids did not preclude plaintiff from demonstrating justifiable reliance. To do so, plaintiff had only to demonstrate that its full credit bids were a proximate result of defendants' fraud, and that, in the absence of such fraud, in all reasonable probability it would not have made the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                    Page 4
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

bids. In such a case, the bids could not be deemed an admission of the properties' value. Even if the full credit bids were not the proximate result of defendants' fraudulent misrepresentations, or its reliance was manifestly unreasonable, plaintiff could still recover any other damages flowing from defendants' fraud. Because such a factual evaluation could not be made on the pleadings alone, the trial court erred in entering judgment on the pleadings. (Disapproving *Western Fed. Sav. & Loan Assn v. Sawyer* (1992) 10 Cal.App.4th 1615 [13 Cal.Rptr.2d 639] and *GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co.* (1994) 21 Cal.App.4th 1802, [27 Cal.Rptr.2d 47] to the extent they held that a lender cannot state a cause of action for fraud against a third party for fraudulently inducing a loan secured by real property if the lender acquired the property after making a full credit bid.)

[See 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 155; 4 **Miller & Starr**, Cal. Real Estate (2d ed. 1989) § 9:158.]

**(11)** Deeds of Trust § 38--Sale Under Power--Effect of Sale--Actual Damages.

In an action by a lender against third party nonborrowers alleging they fraudulently induced plaintiff to make certain loans, judgment on the pleadings could not be sustained on the ground plaintiff failed to allege actual damages. Although plaintiff did not allege that defendants impaired its security or caused the value of the properties to decrease after the loans were made, it alleged that the intentional misrepresentations regarding the properties' characteristics and value induced it to make loans that far exceeded the properties' actual worth at the time the loans were made, and that as a result of these misrepresentations it purchased the properties. The damages for such fraud are measured not by the outstanding indebtedness, extinguished by the full credit bid, but by plaintiff's out-of-pocket or consequential damages under Civ. Code, § 3343, or Civ. Code, § 3333, depending on whether defendants stood in a fiduciary relationship to plaintiff.

COUNSEL

Morgenstein & Jubelirer, Jean L. Bertrand and Robert B. Mullen for Plaintiff and Appellant.

Edward D. Benes, Terrance P. Huber, Landels, Ripley & Diamond, Bruce W. Hyman, Margaret P. Reidy, Evans, Latham, Harris & Campisi, Jamie O. Harris, Charles P. Wolff and Nancy M. Levin as Amici Curiae on behalf of Plaintiff and Appellant.

Dinkelspiel, Donovan & Reder, Joel Zeldin, Leon M. Bloomfield, Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, Paul J. Matzger, Miller, Starr & Regalia, Edmund L. Regalia, Daniel R. Miller and Kenneth R. Styles for Defendants and Respondents.

ARABIAN, J.

We here determine whether a lender's acquisition of security property by full credit bid at a nonjudicial foreclosure sale bars the lender as a matter of law from maintaining a fraud action against third party nonborrowers who fraudulently induced the lender to make the loans. The Courts of Appeal are in conflict on this issue. We granted review to resolve the conflict, and now conclude that such an action is not precluded. We therefore affirm the judgment of the Court of Appeal.


I. Facts and Procedural Background


This matter reaches us following plaintiff Alliance Mortgage Company's (Alliance) successful appeal from a judgment on the pleadings dismissing all *1232 of its causes of action against defendants Pioneer Title Company of California, now known as North American Title Company (North American), and Ticor Title Insurance Company, Inc. of California (Ticor). Accordingly, for purposes of this opinion, we treat the properly pleaded allegations of Alliance's complaint as true, and also consider those matters subject to judicial notice. (*Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 714-715, fn. 3 [117 Cal.Rptr. 241, 527 P.2d 865]; *Hunt v. County of Shasta* (1990) 225 Cal.App.3d 432, 440 [275 Cal.Rptr. 113]; *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 815 [195 Cal.Rptr. 421].) "Moreover, the allegations must be liberally construed with a view to attaining substan-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                    Page 5
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

tial justice among the parties." (*Guild Mortgage Co.* v. *Heller* (1987) 193 Cal.App.3d 1505, 1508 [239 Cal.Rptr. 59] (*Guild Mortgage*).) "Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory." (*Ibid.*)

From 1983 through 1985, defendant Laurie Samuel Rothwell (Rothwell), a real estate appraiser and broker, and other defendants including North American and Ticor, devised and implemented an elaborate scheme to fraudulently induce Alliance, then known as Charter Mortgage Company of Florida, to lend money for the purchase of nine Bay Area residences. In furtherance of this plan, two fictitious, nonexistent companies, American Medical Laboratories and American International Savings and Loan, were created to falsely verify employment of and deposits by purported loan applicants. Defendants committed some or all of the following fraudulent acts regarding each property: prepared false residential purchase agreements and loan applications in the names of fictitious borrowers, deliberately inflated "fair market value" property appraisals and invented "comparable" property values to support the inflated and fraudulent appraisals, falsified employment and deposit verifications, tax returns, credit histories, and W-2 wage/income statements, drafted inaccurate title reports that contained misleading descriptions of the properties, and falsely represented that the escrow instructions had been followed and the required cash deposits and disbursements made.

Five of the properties were located on Haight Street in San Francisco; the other four were located in various East Bay communities. Ticor issued title insurance policies on three of the five Haight Street properties which falsely described them as being four-unit dwellings. In fact, they were one-unit residences.

Relying on defendants' representations, and unaware of their fraudulent conduct, Alliance loaned the Rothwell group the funds to purchase the Haight Street and East Bay properties. The loans

were secured by deeds of trust to the respective properties. Not surprisingly, the fictitious borrowers *1233 defaulted. Alliance purchased many of the properties at nonjudicial foreclosure sales by bidding the full credit value of the outstanding indebtedness on the notes, plus interest and costs. FN1

> FN1 The second amended complaint does not allege the amount of Alliance's bids. The trial court took judicial notice of the amount of the bids from public records, and here Alliance implicitly concedes that it made full credit bids.

Alliance "discovered, upon acquiring title to the properties, that the true market value of the properties was far less than the value represented to Alliance and, at the time of the foreclosures, remained far less than the outstanding principal amount of the loans together with all other expenditures. Alliance has in some cases discovered that the physical improvements actually constructed on the separate parcels of real property are not the type of improvements as assured in the title insurance policies. As a proximate result of defendants' misconduct, described above, Alliance has been damaged in an amount to be determined."

Prior to learning of the fraud, Alliance sold several loan obligations to secondary investors. In the case of three of these properties, regulations of the Federal Home Loan Mortgage Corporation (FHLMC) required Alliance to repurchase the loans it had earlier sold to the Federal National Mortgage Association (FNMA). "Each of those loans had gone into default and the properties were foreclosed upon before Alliance repurchased them."

After foreclosure or repurchase of the loans from a secondary investor, Alliance was required to pay various costs and expenses through the time it resold the property, including property taxes, repairs to the property, correction of local housing code violations, maintenance of the property, applicable insurance, and costs associated with selling

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                    Page 6
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

the property. In addition, after discovery of the fraud perpetrated by defendants, some of Alliance's mortgage insurers denied coverage for Alliance's losses.

Alliance alleged that these facts gave rise to claims for intentional misrepresentation, negligent misrepresentation, breach of contract against the escrow defendants, including North American, breach of Ticor's title insurance contract, breach of fiduciary duty against the escrow defendants, breach of fiduciary duty against the title insurance defendants, and violation of the federal Racketeer Influenced and Corrupt Organization Act (18 U.S.C. §§ 1961-1968). It sought punitive damages on its intentional misrepresentation claim, and attorney fees, costs, and interest on its breach of contract and breach of fiduciary duty claims.

North American and Ticor moved to strike portions of the second amended complaint on the ground that they were barred by Alliance's full **\*1234** credit bids. In opposing the motions, Alliance argued that it was not seeking impairment of security damages, and that its full credit bids did not bar an action for fraud committed by third parties. The trial court granted the motions to strike, concluding that Alliance's full credit bids barred claims for damages resulting from fraudulent representations as to the adequacy of the security.

Prior to trial, Alliance moved to amend the complaint to conform to proof that defendants' fraud resulted in damage to Alliance's goodwill, reputation, and net worth. At or about the same time, defendants filed motions *in limine* to exclude all evidence of impairment of security, damages for loss of goodwill, reputation, and net worth, and damages for postforeclosure costs. Ticor also filed separate motions *in limine,* some of which sought judgment on the pleadings, arguing that it had been improperly joined as a Doe defendant, that the statute of limitations had run, and that its title insurance policies were indemnification contracts that did not constitute representations regarding the property. The trial court granted defendants' motions, denied

Alliance's motion to amend, and entered judgment in favor of defendants on all causes of action.

Alliance appealed, and the Court of Appeal reversed. Expressly disagreeing with *Western Fed. Savings & Loan Assn. v. Sawyer* (1992) 10 Cal.App.4th 1615 [13 Cal.Rptr.2d 639] and *GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co.* (1994) 21 Cal.App.4th 1802 [27 Cal.Rptr.2d 47], the Court of Appeal held that a lender can state a cause of action for fraud against third parties for fraudulently inducing a loan secured by real property despite the fact that the lender acquired the property after making a full credit bid. The Court of Appeal further held that Alliance's action against Ticor was not barred by the statute of limitations because Alliance's pleadings did not establish that Alliance had been aware of Ticor's involvement in Rothwell's scheme. The Court of Appeal also concluded that Alliance had stated a cause of action against Ticor for intentional and negligent misrepresentation because, although a title insurance policy is an indemnification contract and not a guarantee of title, Alliance's reliance related not to the condition of title but to the nature and description of the property securing the loans. Ticor's petition for rehearing was denied.

We granted North American and Ticor's petitions for review solely on the issue of whether a lender's acquisition of security property by full credit bid at a nonjudicial foreclosure sale bars the lender from maintaining a fraud action to recover damages from nonborrower third parties who fraudulently induced the lender to make the loans. We now affirm. **\*1235**

## II. Discussion

### A. *Background Principles*

The issue here is the effect of a lender's full credit bid at a nonjudicial foreclosure sale on its claim of fraud in the inducement of the underlying loan ob-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                Page 7
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

ligation. To understand the context in which this issue arises, and the competing legal and public policy arguments, we first briefly review certain background principles regarding mortgages and deed of trusts, the antideficiency statutes, the full credit bid rule, and fraud claims.

### 1. *Mortgages and Deeds of Trust*

A real property loan generally involves two documents, a promissory note and a security instrument. The security instrument secures the promissory note. This instrument "entitles the lender to reach some asset of the debtor if the note is not paid. In California, the security instrument is most commonly a deed of trust (with the debtor and creditor known as trustor and beneficiary and a neutral third party known as trustee). The security instrument may also be a mortgage (with mortgagor and mortgagee, as participants). In either case, the creditor is said to have a lien on the property given as security, which is also referred to as collateral." (Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 1.3, p. 5, italics removed.) [FN2]

> [FN2] The terms "deed of trust," "trustor," and "beneficiary" are used interchangeably in this opinion with "mortgage," "mortgagor," and "mortgagee." (Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 1.3, p. 5.)

A security interest cannot exist without an underlying obligation, and therefore a mortgage or deed of trust is generally extinguished by either payment or sale of the property in an amount which satisfies the lien. (Civ. Code, §§ 2909, 2910; [FN3] see *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 606 [125 Cal.Rptr. 557, 542 P.2d 981]; Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 1.10, p. 15; *id.,* § 6.16, p. 292.) In addition, merger of the lien and ownership of the property in one person or entity extinguishes the lien, unless it is

necessary for the protection of the buyer's rights that the lien be sustained. (*Ralph C. Sutro Co.* v. *Paramount Plastering, Inc.* (1963) 216 Cal.App.2d 433, 438 [31 Cal.Rptr. 174]; see *First American Title Ins. Co.* v. *U.S.* (9th Cir. 1988) 848 F.2d 969, 971, applying California law ["The theory is that the mortgagee's lesser interest (the lien) has 'merged' into the greater interest (the fee).''].) *1236

> [FN3] All statutory references contained herein are to the Civil Code unless otherwise indicated.

### 2. *Foreclosure and Antideficiency Statutes*

California has an elaborate and interrelated set of foreclosure and antideficiency statutes relating to the enforcement of obligations secured by interests in real property. Most of these statutes were enacted as the result of "the Great Depression and the corresponding legislative abhorrence of the all too common foreclosures and forfeitures [which occurred] during that era for reasons beyond the control of the debtors." (Hetland & Hansen, *The "Mixed Collateral" Amendments to California's Commercial Code-Covert Repeal of California's Real Property Foreclosure and Antideficiency Provisions or Exercise in Futility?* (1987) 75 Cal. L.Rev. 185, 187-188, fn. omitted.)

Pursuant to this statutory scheme, there is only "one form of action" for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust. That action is foreclosure, which may be either judicial or nonjudicial. (Code Civ. Proc., §§ 725a, 726, subd. (a).) (1) In a judicial foreclosure, if the property is sold for less than the amount of the outstanding indebtedness, the creditor may seek a deficiency judgment, or the difference between the amount of the indebtedness and the fair market value of the property, as determined by a court, at the time of the sale. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 43-44 [27 Cal.Rptr. 873, 378 P.2d 97].) However, the debtor has a statutory right of redemption, or an opportun-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                           Page 8
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

ity to regain ownership of the property by paying the foreclosure sale price, for a period of time after foreclosure. (Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 3.54, p. 143; *id.*, § 3.76, p. 173; *id.*, § 3.77, p. 174.)

(2) In a nonjudicial foreclosure, also known as a "trustee's sale," the trustee exercises the power of sale given by the deed of trust. (Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 1.28, p. 37; *id.*, § 2.1, p. 51.) Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, "[n]either appraisal nor judicial determination of fair value is required," and the debtor has no postsale right of redemption. (Sheneman, Cal. Foreclosure: Law and Practice (1994) § 6.01, p. 6-3.) However, the creditor may not seek a deficiency judgment. (*Roseleaf Corp.* v. *Chierighino, supra*, 59 Cal.2d at pp. 43-44.) Thus, the antideficiency statutes in part "serve to prevent creditors in private sales from buying in at deflated prices and realizing double recoveries by holding debtors for large deficiencies." (*Commonwealth Mortgage Assurance Co.* v. *Superior Court* (1989) 211 Cal.App.3d 508, 514 [259 Cal.Rptr. 425].)

The price at a foreclosure sale is not deemed the equivalent of the property's fair market value. As the United States Supreme Court recently *1237 observed, "An appraiser's reconstruction of 'fair market value' could show what similar property would be worth if it did not have to be sold within the time and manner strictures of state-prescribed foreclosure. But property that *must* be sold within those strictures is simply *worth less*. No one would pay as much to own such property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques." (*BFP v. Resolution Trust Corp.* (1994) 511 U.S. ___ [128 L.Ed.2d 556, 565, 114 S.Ct. 1757, 1762], italics in original.) (3) However, it is settled that "Where there is no irregularity in a nonjudicial foreclosure sale and the purchaser is a bona fide purchaser for value, a great disparity between the sales price and

the value of the property is not a sufficient ground for setting aside the sale." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 832 [30 Cal.Rptr.2d 777]; see *BFP v. Resolution Trust Corp., supra*, 511 U.S. ___ [128 L.Ed.2d at pp. 566-567, 114 S.Ct. at pp. 1763-1764] [So long as the state's requirements for conducting a foreclosure sale have been met, "mere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside ... if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.' "].)

A bid at a trustee's sale is deemed by statute to be an irrevocable offer by that bidder to purchase the property for that amount. (§ 2924h, subd. (a).) However, "[i]t is the general rule that courts have power to vacate a foreclosure sale where ... the sale ... is tainted by fraud ...." (*Bank of America etc. Assn. v. Reidy* (1940) 15 Cal.2d 243, 248 [101 P.2d 77]; *Karoutas v. HomeFed Bank* (1991) 232 Cal.App.3d 767, 774-775 [283 Cal.Rptr. 809].) The "doctrine of caveat emptor does not apply to nonjudicial foreclosure sales." (*Karoutas v. HomeFed Bank, supra*, 232 Cal.App.3d at p. 774.)

(4) The antideficiency statutes have been broadly interpreted to protect the debtor. It is settled, however, and defendants here concede, that the antideficiency statutes do not preclude an action against a borrower for fraud in the inducement of a loan. (See, e.g., *Guild Mortgage, supra*, 193 Cal.App.3d at p. 1511 [it has long been recognized that antideficiency statutes do not preclude a fraud suit]; *Manson v. Reed* (1986) 186 Cal.App.3d 1493, 1501 [231 Cal.Rptr. 446] [recognized exception to the antideficiency statute is a suit for fraud]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 138-139 [135 Cal.Rptr. 802] [antideficiency statutes not available to trustor as a defense to an action by beneficiary for fraud; action for fraud is not action for deficiency judgment]; Fin. Code, §§ 779, 7460, 15102.) There are several reasons for this exception. First, "[a] suit for fraud obviously does not involve an attempt to recover on a debt or note. As such, it

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                          Page 9
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

stands separate *1238 and apart from any action which the antideficiency legislation seeks to preclude." (*Guild Mortgage, supra,* 193 Cal.App.3d at p. 1512;*Manson v. Reed, supra,* 186 Cal.App.3d at p. 1501 ["The distinction is that a suit for fraud is a completely separate remedy than a suit on the promissory note secured by the deed of trust."].) "Furthermore, the antideficiency laws were not intended to immunize wrongdoers from the consequences of their fraudulent acts. Finally, assuming that the court applies a proper measure of damages, fraud suits do not frustrate the antideficiency policies because there should be no double recovery for the beneficiary." (Sheneman, Cal. Foreclosure: Law and Practice, *supra,* § 6.18, p. 6-80, fn. omitted.)

### 3. *Full Credit Bid Rule*

At a nonjudicial foreclosure sale, if the lender chooses to bid, it does so in the capacity of a purchaser. (*Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1503 [236 Cal.Rptr. 59].) The only distinction between the lender and any other bidder is that the lender is not required to pay cash, but is entitled to make a credit bid up to the amount of the outstanding indebtedness. (*Ibid.;Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 607.) The purpose of this entitlement is to avoid the inefficiency of requiring the lender to tender cash which would only be immediately returned to it. (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 607.) (5)A "full credit bid" is a bid "in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure." (*Cornelison, supra,* 15 Cal.3d at p. 606, fn. 10.) If the full credit bid is successful, i.e., results in the acquisition of the property, the lender pays the full outstanding balance of the debt and costs of foreclosure to itself and takes title to the security property, releasing the borrower from further obligations under the defaulted note. (See *Smith v. Allen* (1968) 68 Cal.2d 93, 96 [65 Cal.Rptr. 153, 436 P.2d 65] ["[I]t is clear that the Legislature intended that a properly conducted [nonjudicial] foreclosure sale should constitute a final adjudication of the rights of the borrower and the lender."].)

Under the "full credit bid rule," when a lender makes such a bid, it is precluded for purposes of collecting its debt from later claiming that the property was actually worth less than the bid. (See *Cornelison v. Kornbluth, supra,* 15 Cal.3d at pp. 606-607;*Passanisi v. Merit-McBride Realtors, Inc., supra,* 190 Cal.App.3d at p. 1503 [after full credit bid, lender cannot pursue any other remedy regardless of actual value of the property on the date of sale].) Thus, the lender is not entitled to insurance proceeds payable for prepurchase damage to the property, prepurchase net rent proceeds, or damages for waste, because the lender's only interest in the property, the *1239 repayment of its debt, has been satisfied, and any further payment would result in a double recovery. (See *Cornelison v. Kornbluth, supra,* 15 Cal.3d at pp. 606-607.)

### 4. *Fraud Claims*

"The necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1108 [252 Cal.Rptr. 122, 762 P.2d 46]; see *Seeger v. Odell* (1941) 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291];§ 1709.) [FN4]Only the last two elements are at issue in this case.

> FN4. Here, Alliance's fraud claims include allegations of intentional misrepresentation, negligent misrepresentation, and breach of fiduciary duty. (See §§ 1572, 1710; *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407 [11 Cal.Rptr.2d 51, 834 P.2d 745], [negligent misrepresentation is a species of the tort of deceit]; *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 563 [29 Cal.Rptr.2d 463]

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                Page 10
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

[breach of a fiduciary duty usually constitutes constructive fraud].) While we focus on Alliance's intentional misrepresentation claim, justifiable reliance and actual damages are also essential elements of negligent misrepresentation and constructive fraud. (*Home Budget Loans, Inc.* v. *Jacoby & Meyers Law Offices* (1989) 207 Cal.App.3d 1277, 1285 [255 Cal.Rptr. 483] [elements of negligent misrepresentation include justifiable reliance and resulting damage]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 666, p. 117; *id.*, § 680, p. 131; *id.*, § 681, p. 133.)

(6) Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction. (*Spinks v. Clark* (1905) 147 Cal. 439, 444 [82 P. 45]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 711, p. 810.) "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." (*Blankenheim v. E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475 [266 Cal.Rptr. 593]; *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763] ["[w]hether reliance is justified is a question of fact for the determination of the trial court"]; *Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843 [2 Cal.Rptr.2d 437] ["the reasonableness of the reliance is ordinarily a question of fact"].) "However, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." (*Guido v. Koopman, supra,* 1 Cal.App.4th at p. 843.)

"Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather

***1240** than negligent." (*Seeger v. Odell, supra,* 18 Cal.2d at p. 414.) "Nor is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man." (*Id.* at p. 415.)"If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery." (*Ibid.*;*Gray v. Don Miller & Associates, Inc., supra,* 35 Cal.3d at p. 503 ["the issue is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience"].) " 'If the plaintiff and defendant are in a confidential relationship there is no duty of inquiry until the relationship is repudiated. The nature of the relationship is such as to cause the plaintiff to rely on the fiduciary, and awareness of facts which would ordinarily call for investigation does not excite suspicion under these special circumstances.' " (*Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 921 [259 Cal.Rptr. 117].)

(7) In addition, unless the plaintiff merely seeks to rescind the contract, it must suffer actual monetary loss to recover on a fraud claim. (*Molko v. Holy Spirit Assn., supra,* 46 Cal.3d at p. 1108;*Empire West v. Southern California Gas Co.* (1974) 12 Cal.3d 805, 810, fn. 2 [117 Cal.Rptr. 423, 528 P.2d 31] [fraud without damage furnishes no ground for action]; *Home Budget Loans, Inc.* v. *Jacoby & Meyers Law Offices, supra,* 207 Cal.App.3d at p. 1285.) There are two measures of damages for fraud: out of pocket and benefit of the bargain. (*Stout v. Turney* (1978) 22 Cal.3d 718, 725 [150 Cal.Rptr. 637, 586 P.2d 1228].) The "out-of-pocket" measure of damages "is directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction, and thus awards the difference in actual value at the time of the transaction between what the plaintiff gave and what he received. The 'benefit-of-the-bargain' measure, on the other hand, is concerned with satisfying the expectancy interest of the defrauded plaintiff by putting him in the position he would have enjoyed if the false representation re-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                        Page 11
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

lied upon had been true; it awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive." (Ibid.;*Salahutin v. Valley of California, Inc., supra,* 24 Cal.App.4th at p. 564;*Overgaard v. Johnson* (1977) 68 Cal.App.3d 821, 823 [137 Cal.Rptr. 412].) "In California, a defrauded party is ordinarily limited to recovering his 'out-of-pocket' loss ...." (*Kenly v. Ukegawa* (1993) 16 Cal.App.4th 49, 53 [19 Cal.Rptr.2d 771].)

(8) In fraud cases involving the "purchase, sale or exchange of property," the Legislature has expressly provided that the "out-of-pocket" rather than the "benefit-of-the-bargain" measure of damages should apply. (§ 3343, *1241 subds. (a), (b)(1).) [FN5] This section does not apply, however, when a victim is defrauded by its fiduciaries. In this situation, the "broader" measure of damages provided by sections 1709 [FN6] and 3333 [FN7] applies. (*Liodas v. Sahadi* (1977) 19 Cal.3d 278, 283-284 [137 Cal.Rptr. 635, 562 P.2d 316]; *Gray v. Don Miller & Associates, Inc., supra,* 35 Cal.3d at p. 504 [plaintiff's damages suffered because of fiduciary's misrepresentation measured under section 3333]; *Stout v. Turney, supra,* 22 Cal.3d at pp. 725-726 [A "clear exception" to section 3343 "has emerged in cases involving fraudulent *fiduciaries.*" (Italics in original.)]; *Ward v. Taggart* (1959) 51 Cal.2d 736, 741 [336 P.2d 534] ["In the absence of a fiduciary relationship, recovery in a tort action for fraud is limited to the actual damages suffered by the plaintiff."]; *Salahutin v. Valley of California, Inc., supra,* 24 Cal.App.4th at p. 565.)

> FN5    Section    3343,    subdivision    (a), provides, "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including" certain enumerated damages such as lost profits. We have held

that section 3343 does not require that a plaintiff show "out-of-pocket" loss in order to be entitled to consequential or additional damages of the type prescribed by the statute. (*Stout v. Turney, supra,* 22 Cal.3d at pp. 729-730.)

> FN6    Section 1709 provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

> FN7    Section 3333, the general tort damage measure provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

(9) Punitive damages are recoverable in those fraud actions involving intentional, but not negligent, misrepresentations. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 790 [157 Cal.Rptr. 392, 598 P.2d 45]; *Branch v. HomeFed Bank* (1992) 6 Cal.App.4th 793, 799 [8 Cal.Rptr.2d 182] [no punitive damages recoverable for negligent misrepresentation]; § 3294.) The jury also has discretion to award prejudgment interest on the plaintiff's loss "from the time the plaintiff parted with the money or property on the basis of the defendant's fraud." (*Nordahl v. Dept. of Real Estate* (1975) 48 Cal.App.3d 657, 665 [121 Cal.Rptr. 794]; § 3288.) A plaintiff is not entitled, however, to attorney fees "as an element of damages in actions for fraud in which the defendant is a fiduciary." (*Gray v. Don Miller & Associates, Inc., supra,* 35 Cal.3d at p. 507.)

### B. *Cases Applying the Full Credit Bid Rule*

The issue we confront here is whether a lender's ac-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                    Page 12
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

quisition of security property by full credit bid at a nonjudicial foreclosure sale bars the lender from maintaining a *fraud* action to recover damages from third parties who fraudulently induced the lender to make the loans. *\*1242Cornelison* v . *Kornbluth, supra,* 15 Cal.3d 590, was this court's first and last discussion of the effect of a full credit bid in a non-judicial foreclosure sale. In *Cornelison,* the plaintiff sold a single-family dwelling, taking back a promissory note secured by a first deed of trust on the property. (*Id.* at p. 594.)The property was subsequently reconveyed, and ultimately condemned as unfit for human habitation. The original purchasers defaulted on the note, and plaintiff caused the property to be sold at a trustee's sale. (*Ibid.*) She purchased the property at the sale by making a full credit bid. (*Id.* at pp. 594, 606.)

Plaintiff then sued one of the subsequent purchasers in part for waste. (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 594.) "Waste" is a cause of action based on the recognition that "any person whose property is subject to a lien has a statutory duty to refrain from acts which will 'substantially impair the mortgagee's security.' " (Sheneman, Cal. Foreclosure: Law and Practice, *supra,* § 6.16, p. 6-70.) "Waste" includes acts of commission and omission, such as a failure to generally maintain and repair the property. (*Ibid.*; see *Cornelison v. Kornbluth, supra,* 15 Cal.3d at pp. 599, 603; § 2929.)

We first concluded that a lender's claim for bad faith waste was not precluded by the antideficiency statutes. (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 605.) However, we "further concluded that even assuming that defendant is liable on such basis, nevertheless plaintiff cannot recover since she purchased the subject property at the trustee's sale by making a full credit bid." (*Id.* at p. 606, fn. omitted.) We explained, "the measure of damages for waste is the amount of the impairment of the security, that is the amount by which the value of the security is less than the outstanding indebtedness and is thereby rendered inadequate." (*Ibid.*) "[T]he mortgagee's purchase of the property securing the

debt by entering a full credit bid establishes the value of the security as being equal to the outstanding indebtedness and ipso facto the nonexistence of any impairment of the security." (*Ibid.*) We stated, "Where an indebtedness secured by a deed of trust covering real property has been satisfied by the trustee's sale of the property on foreclosure for the full amount of the underlying obligation owing to the beneficiary, the lien on the real property is extinguished." (*Ibid.*, citing Civ. Code, § 2910; *Streiff v. Darlington* (19[37]) 9 Cal.2d 42, 45 [68 P.2d 728]; *Duarte v. Lake Gregory Land and Water Co.* (1974) 39 Cal.App.3d 101, 104-105 [113 Cal.Rptr. 893].) "In such event, the creditor cannot subsequently recover insurance proceeds payable for damage to the property [citations], net rent proceeds [citations], or damages for waste [citations]." (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 606.) "If, however, [the lender] bids less than the full amount of the obligation and thereby acquires the property valued at less than the full amount, his security *\*1243 has been impaired and he may recover damages for waste in an amount not exceeding the difference between the amount of his bid and the full amount of the outstanding indebtedness immediately prior to the foreclosure sale." (*Id.* at p. 607.)

In response to plaintiff's "complain[t] that it is difficult to calculate precisely the amount of damages recoverable for waste so as to determine the proper amount which the beneficiary or mortgagee should bid at the foreclosure sale," we stated: "Suffice it to say that no complicated calculations are necessary. The beneficiary or mortgagee need only enter a credit bid in an amount equal to what he assesses the fair market value of the property to be in its condition at the time of the foreclosure sale. If that amount is below the full amount of the outstanding indebtedness and he is successful in acquiring the property at the foreclosure sale, he may then recover any provable damages for waste." (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 608.)

Since *Cornelison,* the Courts of Appeal have ap-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

proached the effect of a full credit bid on a lender's fraud claim in various ways with irreconcilable results. Two Court of Appeal decisions directly address the issue at hand, and, as noted earlier, conflict with the Court of Appeal's opinion in this case. (*Western Fed. Savings & Loan Assn. v. Sawyer, supra,* 10 Cal.App.4th 1615; *GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co., supra,* 21 Cal.App.4th 1802; see also *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 556 [33 Cal.Rptr.2d 646], ["Both fraud and conversion claims are subject to the full credit bid rule ...."].)

In *Western Fed. Savings & Loan Assn. v. Sawyer, supra,* 10 Cal.App.4th 1615, defendant Sandra Sawyer, a lawyer involved in real estate transactions, opened an escrow to sell a parcel of residential property she owned to the Smiths. (*Id.* at p. 1617.) According to the escrow instructions and loan documents, the Smiths were to pay $115,000 for the property and make a cash downpayment of $23,000. The loan application indicated the Smiths intended to occupy the property. Sawyer represented, and a presale appraisal indicated, that the property was a duplex. (*Ibid.*)

The Smiths' loan application was referred to Western through a mortgage broker. The bank reviewed the presale appraisal and agreed to fund the loan request for $92,000. (*Western Fed. Savings & Loan Assn. v. Sawyer, supra,* 10 Cal.App.4th at p. 1617.)

The loan went into default, and Western purchased the property at a nonjudicial foreclosure sale after making a full credit bid. (*1244 Western Fed. Savings & Loan Assn. v. Sawyer, supra,* 10 Cal.App.4th at p. 1617.) Thereafter, the bank incurred additional expenses to maintain and renovate the residence in order to resell it on the open market. (*Id.* at p. 1618.) Following foreclosure, the bank discovered the property was not a bona fide duplex. By this time the bank was also aware that the Smiths never occupied the property, and may not have made the $23,000 cash downpayment required by the escrow and loan agreements. The bank eventually sold the property for $96,500. (*Ibid.*)

A jury found that Sawyer was part of a conspiracy to fraudulently induce the bank to make the loan to the Smiths. (*Western Fed. Savings & Loan Assn. v. Sawyer, supra,* 10 Cal.App.4th p. 1618.) The Court of Appeal reversed, holding that the bank's full credit bid barred its causes of action for fraud and misrepresentation. (*Id.* at pp. 1618-1619, 1623.) Relying on *Cornelison,* the court concluded that the bank's acquisition of the security property with a full credit bid at a nonjudicial foreclosure sale extinguished the bank's lien on that property. Accordingly, the bank's security for the debt was not impaired, and the bank had suffered no damage; hence it had no viable cause of action for fraud or misrepresentation. (*Id.* at p. 1623.) Thus, *Western* impliedly concluded that the measure of damages for a fraudulent representation to a lender is the impairment of its security. The court distinguished cases such as *Guild Mortgage, supra,* where the plaintiff was required by federal regulations to repurchase the property, and "those cases allowing actions for rescission despite a full credit bid." (*Id.* at p. 1622, fn. 3.)

In *GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co., supra,* 21 Cal.App.4th 1802, 1803, the Court of Appeal similarly held that a full credit bid at a nonjudicial foreclosure sale extinguished all claims of a lender against the third party participants in a tortious conspiracy to defraud the lender. In *GN Mortgage,* the lender was fraudulently induced into making a $449,600 loan for the fictitious purchase of property at an inflated price after receiving forged loan documents under the name of an individual who had not agreed to, and was unaware his name was being used in, the transaction. After default, the lender purchased the property by making a full credit bid at a nonjudicial foreclosure sale and, after selling the property at an approximately $200,000 loss, sued the various nonborrowers for fraud, conversion, negligence, and breach of contract. Summary judgment was entered on behalf of Fidelity, the escrow agent for the transaction, and American Equities Financial Corp. (*Id.* at p. 1804.)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

On appeal, the plaintiff first contended that the full credit bid rule was inapplicable where claims are asserted not against the purchaser but against third parties. (*1245*GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co.*, *supra*, 21 Cal.App.4th at p. 1803.) According to the plaintiff, "where the purchaser is not involved, the purposes of the antideficiency statute, and the full credit bid rule stemming from it, are not implicated." (*Id.* at p. 1805.)The Court of Appeal rejected this argument, concluding that the full credit bid rule applied to claims against third parties, and stating that the "rule is concerned with damages and proximate causation. It is independent of the antideficiency statute." (*Ibid.*)

Second, plaintiff contended that the full credit bid rule was inapplicable because, under the circumstances of the case, its damages were measured by the out-of-pocket rule, not the extent of the impairment of its security. (*GN Mortgage Corp. v. Fidelity Nat. Title Ins. Co.*, *supra*, 21 Cal.App.4th at p. 1807.) The court described this argument as "sophistical." (*Ibid.*) It stated, "because a foreclosure sale is designed to establish the value of the property sold, plaintiff's full credit bid set the value of the property at an amount sufficient to satisfy the indebtedness and all accrued expenses. Therefore, defendants' tortious conduct did not cause any damage. Any losses suffered thereafter resulted either from a severe market downturn or from defendants' exercise of business judgment." (*Id.* at p. 1809.)

As noted above, the Court of Appeal here expressly disagreed with *Western Federal* and *GN Mortgage*, and held that a lender's full credit bid at a nonjudicial foreclosure sale did not bar its subsequent fraud claim against third parties who fraudulently induced the lender to make the loan. The court reasoned that a "full credit bid does not establish the value of the property for all purposes, but only for the purpose of foreclosure proceedings against a borrower," and hence had no application to claims against third party tortfeasors. It concluded that "[t]he central error of *Western Federal*, *supra*, and *GN Mortgage*, *supra*, is the failure to appreciate

that because the full credit bid rule was conceived only to further the debtor protection purposes of the antideficiency statutes, it has no application in actions against parties not sued as debtors. The statement in *GN Mortgage* that the rule is simply 'concerned with damages and proximate causation' and 'is independent of the antideficiency statute' [citation] is wrong. It is inconceivable the Supreme Court anticipated the rule it announced in *Cornelison* would be used to insulate third party tortfeasors from liability for fraudulent conduct, as was done below."

The court also found that *Western Federal* and *GN Mortgage* erred in concluding that the measure of damages for fraud is the impairment of the security. Rather, the court concluded that damages for fraud by a fiduciary (which it concluded defendants were) are measured by sections 3333 and 1709, and in particular, the "benefit-of-the-bargain," not the "out-of-pocket," rule. *1246

### C. Effect of Alliance's Full Credit Bids on Fraud Claims

(10a) We now consider whether Alliance's full credit bids as a matter of law bar its fraud claims against North American and Ticor. We conclude that they do not. Accepting as true the allegations of the complaint, as we must, defendants "joined with others in a conspiracy to perpetrate a deliberate fraud which could conceivably have caused injury even to a lender who had exercised reasonable care in the conduct of its business affairs." (*Guild Mortgage*, *supra*, 193 Cal.App.3d at p. 1515 (conc. opn. of Gates, J.).)

Defendants essentially argue that as a result of its full credit bids, Alliance could demonstrate neither justifiable reliance nor actual damages. We consider these arguments in turn.

As with any purchaser at a foreclosure sale, by making a successful full credit bid or bid in any amount, the lender is making a generally irrevoc-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                          Page 15
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

able offer to purchase the property for that amount. (§ 2924h, subd. (a).) The lender, perhaps more than a third party purchaser with fewer resources with which to gain insight into the property's value, generally bears the burden and risk of making an informed bid.

It does not follow, however, that being intentionally and materially misled by its own fiduciaries [FN8] or agents as to the value of the property prior to even making the loan is within the realm of that risk. (See *Brown v. Critchfield* (1980) 100 Cal.App.3d 858, 871 [161 Cal.Rptr. 342] [Risk inherent in secured land transactions is on the mortgagee, "but that risk should not be expanded to include the assumption of damages resulting from a fiduciary's negligence or fraud"].) Most lenders, such as Alliance in this case, are corporate entities, and rely on their agents to provide them material information. Here, Alliance did obtain appraisals, and attempted to make informed loan decisions. It alleges, however, that its appraiser, Rothwell, in conspiracy with defendants, fraudulently misrepresented the nature of the properties and the existence and qualifications of the buyers, and that it did not discover the fraud until after it acquired title to the properties. The full credit bid rule was not intended to immunize wrongdoers from the consequences of their fraudulent acts.

> FN8 As noted above, Alliance alleges that defendants were fiduciaries. We need not decide whether this contention is correct, or determine the precise relationship between the parties. Our holding is simply that to the extent defendants made fraudulent misrepresentations on which Alliance justifiably relied in making its full credit bid, they cannot assert the full credit bid rule as a defense to Alliance's fraud claims.

We conclude therefore that in order to establish reliance, Alliance need only demonstrate that its full credit bids were a proximate result of defendants' fraud, and that in the absence of such fraud it would not, in all *1247 reasonable probability, have made

the bids. (*Spinks v. Clark, supra,* 147 Cal. 439, 444; 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 711, p. 810.) As for the question of whether this reliance was justifiable, a generally fact-based inquiry, we reiterate that "Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent." (*Seeger v. Odell, supra,* 18 Cal.2d at p. 414.) "Nor is a plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man." (*Id.* at p. 415.) "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery." (*Ibid.*; Gray v. Don Miller & Associates, Inc., *supra,* 35 Cal.3d at p. 503 ["the issue is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience"].) " 'If the plaintiff and defendant are in a confidential relationship there is no duty of inquiry until the relationship is repudiated. The nature of the relationship is such as to cause the plaintiff to rely on the fiduciary, and awareness of facts which would ordinarily call for investigation does not excite suspicion under these special circumstances.' " (*Lee v. Escrow Consultants, Inc., supra,* 210 Cal.App.3d at p. 921.)

Thus, to the extent Alliance's full credit bids were proximately caused by defendants' fraudulent misrepresentations, and this reliance without independent or additional inquiry was either appropriate given the context of the relationship or was not otherwise manifestly unreasonable, Alliance's bids cannot be deemed an admission of the properties' value. (See *Bank of America etc. Assn.* v. *Reidy, supra,* 15 Cal.2d at p. 248 ["not unusual for a mortgagee to make a bid for the property in the amount owing on the debt" when it cannot recover a deficiency].) Hence, the full credit bid rule would not apply.

In the alternative, to the extent Alliance's full credit bids were not proximately caused by defendants'

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                      Page 16
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

fraudulent misrepresentations, or its reliance without independent or additional inquiry was either inappropriate given the context of the relationship or was otherwise manifestly unreasonable, the full credit bid rule applies, and Alliance's bid would then constitute an irrevocable offer to purchase the property for that amount. (§ 2924h, subd. (a).) Hence, under these circumstances, Alliance would not be entitled to recover the difference between its bid, which by definition is "an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure," and the actual value of the property. (*Cornelison v. Kornbluth*, *supra*, 15 Cal.3d at p. 606, fn. 10.) It would, however, still be able to recover any other damages flowing from the *1248 defendants' fraud. Because such a factual evaluation cannot be made on the pleadings alone, the trial court erred in entering judgment on the pleadings. [FN9]

> FN9 We have required that a plaintiff's reliance on a defendant's fraudulent misrepresentations not be "manifestly unreasonable" for over 50 years. (*Seeger v. Odell*, *supra*, 18 Cal.2d at p. 415.) The concurring opinion cites no persuasive reason why we should create an exception from this rule of law for those plaintiffs who make full credit bids. (See conc. opn., *post*, at p. 1252.)

We note that in its brief in this court, "Alliance does not claim that it was induced to make full credit bids, but rather that it was fraudulently induced to make loans." Obviously, as we have stated above, to the extent Alliance claims that its decision to acquire the properties was independent of defendants' misrepresentations, there is no causal connection between the defendants' fraudulent misrepresentations and Alliance's damages resulting from the full credit bids. (See *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1092 [23 Cal.Rptr.2d 101, 858 P.2d 568]; *Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 60 [248 Cal.Rptr. 217].) It ap-

pears, however, that Alliance sought to establish such a connection in the trial court by seeking to introduce evidence that "It is the custom and practice in the [lending] industry to make full credit bids without knowledge of the property's actual value, because only *after* the mortgagor obtains title and access to the property does it obtain the means to value the property." [FN10]Moreover, at oral argument Alliance clarified that it simply meant by this statement that there were no additional or subsequent statements by defendants on which it was relying, not that there was no causal connection between the misrepresentations and the full credit bids. We therefore are reluctant to deny Alliance the opportunity to present such evidence based on this single representation.

> FN10 Defendants argue that because Alliance had a contractual right to inspect the property, it should have "underbid" if it had any reason to believe that the security was inadequate to cover the secured obligation. While we need not reach this issue, we note that enforcement of a contractual right to inspect typically requires a cooperative borrower. "If a borrower refuses to allow a lender entry onto the property under an inspection provision ... , a lender probably would not seek judicial enforcement of its inspection and entry rights (unless combined with a judicial foreclosure action) for fear that the proceeding would be construed as an 'action' for purposes of [Code of Civil Procedure section] 726." (Ferguson et al., *Assembly Bill 1735: New Rights for Lenders Holding Contaminated Real Property Security* (Cont.Ed.Bar 1992) 15 Real Prop. L. Rep. 1, 6; see § 2929.5, subd. (d) [expressly providing that a court order authorizing a lender to enter and inspect secured property for hazardous substances "shall not constitute an action within the meaning of" Code of Civil Procedure § 726, subdivision (a)].)

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                   Page 17
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

Alliance also alleges that for three of the properties it was compelled by FHLMC regulations to repurchase loans it had earlier sold to secondary investors before it learned of the fraud. Again, to the extent Alliance justifiably relied on defendants' misrepresentations in selling the loans, its damages resulting from any compelled repurchase were incurred as a direct *1249 consequence of the fraud. (See *Guild Mortgage, supra,* 193 Cal.App.3d at pp. 1508-1509; *id.* at p. 1514 [Allegations that federal regulations compelled repurchase of properties resulting in plaintiff's damage, repurchase necessitated by fraud, and loan would not have been made in the absence of purported misrepresentations "sufficient to establish a clear causal connection between defendants' alleged fraudulent conduct and the damages sustained."].) Accordingly, for these claims in particular, we perceive no basis on which such a repurchase, or any full credit bid by the FNMA, would even arguably preclude Alliance from pursuing a fraud claim against defendants.

(11) We next consider defendants' argument that Alliance has failed to allege actual damages. This argument is dependent on defendants' assumption that the measure of damages for fraudulent inducement of a loan is the impairment of the lender's security or the balance of the outstanding indebtedness. Not so. Alliance does not allege here that defendants impaired its security or caused the value of the properties to decrease *after* the loans were made. Rather, it alleges that defendants' intentional misrepresentations regarding the properties' characteristics and values induced it to make loans that far exceeded the properties' actual worth *at the time the loans were made,* and that as a result of these misrepresentations Alliance purchased the properties. In other words, defendants did not damage or impair Alliance's security interest; rather they deceived Alliance at the outset as to what that security was. This is a wholly different claim from that which we considered in *Cornelison.* Once again, just as a suit for fraud against a borrower "is a completely separate remedy than a suit on the promissory note secured by the deed of trust," and hence

not barred by the antideficiency statutes (*Manson v. Reed, supra,* 186 Cal.App.3d at page 1501), a lender's suit against its fiduciaries or agents for fraudulently inducing it to make loans and purchase property is a completely separate cause of action from a suit for impairment of its security.

The damages for such fraud are measured not by the outstanding indebtedness, but by either Alliance's out-of-pocket and consequential damages under section 3343 or under section 3333, depending on whether defendants stand in a fiduciary relationship to Alliance. The Court of Appeal here, relying on its earlier opinion in *Salahutdin v. Valley of California, Inc., supra,* 24 Cal.App.4th at pages 564-568, concluded that the appropriate measure of damages for fraud by a fiduciary under section 3333 was the benefit-of-the-bargain rule. *Salahutdin,* however, involved the measure of damages for a fiduciary's *negligent* misrepresentation. (*Salahutdin v. Valley of California, Inc., supra,* 24 Cal.App.4th at p. 560.) We have previously held that a plaintiff is only entitled to its actual or "out-of-pocket" losses suffered because of fiduciary's negligent misrepresentation under *1250section 3333. (*Gray v. Don Miller & Associates, Inc., supra,* 35 Cal.3d at pp. 502, 504, citing *Gagne v. Bertran* (1954) 43 Cal.2d 481, 490 [275 P.2d 15].) While the measure of damages under section 3333 might be greater for a fiduciary's *intentional* misrepresentation, we need not address that issue here. (See *Salahutdin v. Valley of California, Inc., supra,* 24 Cal.App.4th at pp. 565-566 [discussing commentators' suggestion that a benefit-of-the-bargain measure of damages is appropriate when the fiduciary's misrepresentation is intentional, and an out-of-pocket measure of damages is applicable when the misrepresentation is negligent]; Cal. Attorney's Damages Guide (Cont.Ed.Bar Supp. May 1995) § 2.33A, pp. 85-86.) The question before us is whether Alliance stated a fraud claim that survives a motion for judgment on the pleadings. Alliance alleges at least out-of-pocket damages when it alleges that it paid more for the properties than they were worth, and incurred certain consequential damages.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                                           Page 18
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

(See *Gagne v. Bertran, supra,* 43 Cal.2d at p. 490, fn. 6.) Accordingly, its full credit bids do not establish as a matter of law that it sustained no actual damages.

Defendants' remaining arguments are unpersuasive. Ticor attempts to distinguish *Brown v. Critchfield, supra,* 100 Cal.App.3d at page 873, which allowed the plaintiff to recover certain damages for breach of fiduciary duty despite the plaintiff's full credit bid, by asserting the damages in that case were not premised on any decrease in the value of the remaining security, whereas Alliance only suffered impairment of security damages here. As we have explained, however, Alliance alleges that the securities in this case have never been worth the value represented to it by defendants. Thus, Alliance does not allege, and does not seek damages for, the impairment of that security caused by events which decreased the value of the property after it made the loans.

Citing *BFP v. Resolution Trust Corp., supra,* 511 U.S. ___ [128 L.Ed.2d 556, 114 S.Ct. 1757], North American argues that "courts should not go behind the creditor's successful bid at a foreclosure sale to impeach the value established by that bid." However, the issue in *BFP* was whether "the consideration received from a noncollusive, real estate mortgage foreclosure sale conducted in conformance with applicable state law conclusively satisfies the Bankruptcy Code's requirement that transfers of property by insolvent debtors within one year prior to the filing of a bankruptcy petition be in exchange for 'a reasonably equivalent value.' " (*Id.* at p. ___ [128 L.Ed.2d at p. 561, 114 S.Ct. at p. 1759].) The court concluded that "a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." (*Id.* at p. ___ [128 L.Ed.2d 569, 114 S.Ct. at p. 1765].) Nothing in this conclusion negates the well-established fraud *1251 exception in California to the finality of a foreclosure, or indeed any, property sale. (See *Bank of America*

*etc. Assn.* v. *Reidy, supra,* 15 Cal.2d at p. 248 ["It is the general rule that courts have power to vacate a foreclosure sale where ... the sale ... is tainted by fraud ...."].)

Conclusion

(10b) We conclude that Alliance's full credit bids do not as a matter of law bar its fraud claims against defendants. Accordingly, the entry of judgment on the pleadings was improper. (Cf. *Molko v. Holy Spirit Assn., supra,* 46 Cal.3d at p. 1110 [court need not resolve factual dispute other than to recognize it precludes summary judgment].) The judgment of the Court of Appeal is affirmed, with directions to remand the matter to the trial court for further proceedings in accordance with this opinion. FN11

> FN11 North American's motion for judicial notice of 649 trustee's deeds recorded in December 1994 is hereby denied. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063-1065 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

Mosk, J., Kennard, J., Baxter, J., and George, J., concurred.**WERDEGAR, J.**
I concur in the judgment. Judgment on the pleadings was improperly granted, because Alliance's full credit bids do not preclude it from seeking damages from nonborrower third parties for fraudulently inducing Alliance to lend money to others. I write separately to discuss what I believe to be an unwarranted limitation, in the majority opinion, on the damages Alliance may recover if its bids were not made in justifiable reliance on defendant's misrepresentations. In my view, Alliance can establish a cause of action for fraud by showing it justifiably relied on defendants' misrepresentations *in making the loans,* regardless of whether it was also justified in later making full credit bids for the security properties. In such an action it may recover, at least, the amounts it is actually out of pocket as a result of making the loans.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                Page 19
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

In pleading its cause of action for intentional misrepresentation, Alliance alleged it "made the loans applied for" in justifiable reliance on, and as a proximate result of, defendants' false representations. Alliance alleged several categories of damage suffered as a consequence of having made the loans: the receipt of security interests worth far less than the represented value; the failure of the borrowers, whose qualifications were misrepresented, to repay the loans; consequential costs and expenses of foreclosing on and reselling the security properties; and punitive damages attributable to defendants' fraudulent, willful and malicious conduct in inducing the loans. Accepting as true the allegations of the complaint, Alliance suffered cognizable injury *when it was fraudulently induced to make the loans*. It put out *1252 considerable sums, which it has not fully recovered either through repayment or foreclosure. Even if limited to the "out-of-pocket" measure of damages under Civil Code section 3343, subdivision (a) (see maj. opn., *ante*, at pp. 1239-1241), Alliance suffered compensable damages as a result of loans induced by defendants' fraudulent misrepresentations. It is also, therefore, potentially entitled to punitive damages for defendants' intentional misrepresentations. (Civ. Code, § 3294, subd. (b)(3).)

Alliance, of course, did repurchase the properties with full credit bids. This decision, if shown to be unreasonable, may affect the extent of Alliance's recoverable damages. Like any injured party, Alliance may not recover damages caused by its own unreasonable behavior rather than by the defendants' tortious acts. Stated another way, Alliance was obligated to take reasonable care to mitigate its damages. (See *Valencia v. Shell Oil Co.* (1944) 23 Cal.2d 840, 846-847 [147 P.2d 558] ["The essence of the rule denying recovery for losses which could have been prevented by the reasonable efforts and expenditures of plaintiff is that his conduct rather than that of defendants proximately caused such losses."].) If the proof at trial shows that Alliance acted unreasonably in purchasing the security properties by full credit bid without reinspecting or re-

appraising them, *and that its unreasonable failure to take such protective measures enhanced its damages*, Alliance should not recover any such *increased* damages.

The majority goes beyond this undisputed principle to hold Alliance may not recover its full out-of-pocket damages if its decision to make full credit bids was manifestly unreasonable, *regardless of whether making such bids actually increased Alliance's damages*. (Maj. opn., *ante*, at pp. 1247-1248.) It is this portion of the majority opinion with which I disagree.

A simple hypothetical illustrates the difference between the majority's position and my own. Suppose nonborrower defendant fraudulently induces plaintiff to lend $400,000, on security falsely represented to be worth at least that amount but actually worth only $250,000, to a nonexistent or otherwise unqualified borrower. The borrower defaults without repaying any of the loan. Without conducting further inspections or appraisals, and without discovering the fraud, plaintiff purchases the security property at the trustee's sale with a full credit bid for the outstanding debt, $400,000 (ignoring, for simplicity's sake, outstanding interest and the costs of foreclosure). Shortly thereafter plaintiff resells the property for a fair market price of $250,000.

In plaintiff's action against the defrauding third party, the trier of fact determines plaintiff justifiably relied on defendant's misrepresentations in *1253 making the loan, but that it was manifestly unreasonable of plaintiff to make a full credit bid at the trustee's sale without reinspecting or reappraising the property. I believe plaintiff, under these circumstances, would be entitled to recover at least its out-of-pocket losses: the amount loaned ($400,000) minus the amount recovered from resale of the property ($250,000), or $150,000. While plaintiff, by hypothesis, acted unreasonably in making a full credit bid, *it did not thereby increase its damages*. That is, even if plaintiff had acquired the property for a credit bid of less than $400,000, it could not

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                    Page 20
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**

have resold the property for more than the fair market price of $250,000, and its out-of-pocket damages would still have been $150,000. Since the amount of the credit bid did not affect the amount of plaintiff's out-of-pocket losses, plaintiff's recoverable damages should not be reduced even if its bid was an unreasonable one.

Under the majority's holding, however, plaintiff, by making the bid, would be barred from claiming the property was worth less than $400,000. Under this rule plaintiff would have no recoverable out-of pocket damages, since it expended $400,000 in loan funds and acquired a property deemed to be worth $400,000. Plaintiff could not, the majority explains, "recover the difference between its bid ... and the actual value of the property." (Maj. opn., *ante*, at p. 1247.) Since that increment-the difference between plaintiff's $400,000 bid and the $250,000 value of the property-is all of plaintiff's hypothetical out-of-pocket losses, plaintiff's recovery would be zero. This result would obtain even though plaintiff would have suffered the same losses had it underbid; recovery would be denied, that is, even though all of plaintiff's damages were proximately caused by the fraud. [FN1]

> FN1 The majority's emphasis on the bids as limiting damages may result from a misapprehension as to the nature of Alliance's claim for damages. Alliance's claim is not that it was injured when it "paid more for the properties than they were worth" (maj. opn., *ante*, at p. 1250), but that it was injured when it *loaned money* to unqualified borrowers on inadequate security.

There may be circumstances in which entry of a full credit bid *does* increase the plaintiff's losses. Even in such a case, however, I believe the majority misstates the extent of allowable recovery. Consider a variation of the above hypothetical. Suppose the evidence at trial establishes that on the date of the trustee's sale the fair market value of the property was $300,000 and that the trustee could have sold it for that price had plaintiff not entered a full credit

bid of $400,000. Suppose further that, because of market changes after the trustee's sale, plaintiff is able to resell the property for only $250,000.

Plaintiff, as in the original hypothetical, is out of pocket $150,000, but under these circumstances only $100,000 of the loss would have been *1254 proximately caused by reliance on defendant's fraud. Had plaintiff not unreasonably preempted the bidding, the trustee could have sold the property for $300,000, and plaintiff's losses would have been only $100,000. Plaintiff's recovery would therefore be limited to $100,000, the additional $50,000 being the proximate result of plaintiff's own manifestly unreasonable action.

Under the majority's rule, however, plaintiff would, as in the original hypothetical, recover no out-of-pocket damages, since it expended $400,000 in loan funds and received a property deemed, by virtue of its bid, to be worth $400,000. Thus the majority would deny plaintiff recovery of even the $100,000 that was proximately caused by its reliance, *in making the loan*, on defendant's fraudulent misrepresentations.

I agree with the majority that the full credit bid rule, properly understood, precludes the lender, "*for purposes of collecting its debt*, from later claiming the property was actually worth less than the bid." (Maj. opn., *ante*, at p. 1238, italics added.) I also agree the full credit bid rule was not intended, and should not be applied, "to immunize wrongdoers from the consequences of their fraudulent acts." (*Id.* at p. 1246.)Here, however, Alliance's action for fraud against these nonborrower third parties is *not* an attempt to collect its debt, and application of the full credit bid rule in fact *would* protect defendants from the consequences of their allegedly fraudulent acts. I would therefore hold the rule, properly understood, simply does not apply. To the extent Alliance acted unreasonably and to its own detriment in bidding as it did, it will be precluded from recovering any damages attributable to its actions under the ordinary rule barring recovery of losses not proximately caused by the fraud.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

900 P.2d 601                                                                                                          Page 21
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352, 95 Cal. Daily Op. Serv. 6825, 95 Daily Journal D.A.R. 11,688
**10 Cal.4th 1226**


Lucas, C. J., concurred.
Cal. 1995.
Alliance Mortgage Co. v. Rothwell
10 Cal.4th 1226, 900 P.2d 601, 44 Cal.Rptr.2d 352,
95 Cal. Daily Op. Serv. 6825, 95 Daily Journal
D.A.R. 11,688

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

48 P.2d 659
4 Cal.2d 258, 48 P.2d 659
**4 Cal.2d 258**

Page 1

▷
Bank of America Nat. Trust & Savings Ass'n v.
Pendergrass
Cal.

BANK OF AMERICA NATIONAL TRUST AND
SAVINGS ASSOCIATION (a National Banking
Association), Respondent,
v.
T. S. PENDERGRASS et al., Appellants.
**Sac. No. 4826.**

Supreme Court of California
September 3, 1935.

HEADNOTES

**(1) Appeal--Record--Briefs--Motion to Dismiss.**
On an appeal from a judgment, where the opening
brief of appellants, while it set forth the substance
of the record, did not make specific reference to the
reporter's transcript, but did refer to the page of the
clerk's transcript where the facts included in the
opening statement were set forth in the answer filed
by appellants, and the concluding brief of the ap-
pellants specifically indicated the portion of the
transcript where a complete report of the opening
statement could be found, objection to considera-
tion of the appeal, on the ground that the briefs of
appellants did not sufficiently comply with rule
VIII, subdivision 3, of rules governing appeals to
the Supreme Court, should be disregarded, the court
having experienced no difficulty in ascertaining the
grounds upon which the appeal was based, and no
trial being had upon the merits of the case, but
judgment having been entered against the defend-
ants upon their opening statement.
See 2 **Cal. Jur.** 726.

**(2)** Promissory Notes-
-Mortgages--Evidence--Abatement.
In an action on a promissory note, in which the de-
fendant pleads in his answer that the note was se-
cured by a chattel mortgage, if its allegation is sus-
tained by the evidence the action should be abated,

as section 726 of the Code of Civil Procedure
provides for only one form of action, specifying the
procedure, to wit: foreclosure of the mortgage.

**(3)** Promissory Notes-
-Pleading--Answer--Reference to Recordation of
Mortgage.
In such action, an allegation in the answer that the
note in suit is secured by a mortgage of a certain
date and recorded at a certain place in the official
records of a certain county, does not make the
mortgage a part of the answer, and, therefore, the
reference to the mortgage by counsel constitutes no
part of the record of which the court can take no-
tice; but it does establish the error of the trial court,
in directing judgment for the plaintiff, in disregard-
ing the portion of the defendants' opening statement
with reference to the note being secured by a mort-
gage, because whether it was or not in fact could
only be determined by the introduction of the mort-
gage in evidence, which was not done.

**(4)** Promissory Notes--Opening Statement-
-Consideration of on Appeal.
Where both the appellants and respondent lay down
the premise that upon the consideration of the ap-
peal, in such case, everything set forth in the open-
ing statement must be considered as true, it must be
held that the note sued upon was and is secured by
a chattel mortgage.

**(5)** Promissory Notes--Evidence--Time of Payment-
-Oral Statements.
Where the promissory note in suit contains the un-
conditional promise to pay on demand, oral evid-
ence is inadmissible to establish an alleged promise
of the payee of the note that if the maker of the note
and mortgage would execute them, and do other
things mentioned, he would not be required to make
any payments on the indebtedness, either interest or
principal, until the money came in from a certain
crop, and that he would be permitted to go ahead
and operate and produce this crop.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

48 P.2d 659
4 Cal.2d 258, 48 P.2d 659
**4 Cal.2d 258**

**(6)** Promissory Notes--Fraud--Validity of Instrument--Parol Evidence.

Parol evidence of fraud to establish the invalidity of an instrument must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing.

SUMMARY

APPEAL from a judgment of the Superior Court of Stanislaus County. J. C. Needham, Judge. Re- versed.

The facts are stated in the opinion of the court.

COUNSEL

Bush & Cleary for Appellants.

T. B. Scott, Louis Ferrari, T. J. Bricca and C. H. White for Respondent.

THOMPSON, J.

This cause was transferred to this court after decision by the District Court of Appeal. We are satisfied with and adopt a portion of the opinion rendered therein, which is as follows:

"This action was instituted by the plaintiff to recover judgment on a promissory note in the sum of $4,750. Trial was had before a jury. The note was payable upon demand, and the complaint was a simple action based upon the promissory note. The defendants in their answer interposed two defenses, to-wit: That the note was obtained by fraud, and also was secured by a chattel mortgage. The plaintiff introduced the note in evidence, and also the testimony of a witness to the effect that the note had not been paid. Following this, counsel for the defendants made an opening statement, at the conclusion of which the court directed judgment in favor of the plaintiff. From this judgment the defendants appeal. *260

**(1)** "The respondent objects to the consideration of the defendants' appeal on the ground that the appellants have not sufficiently complied with subdivision 3 of rule VIII of the rules governing appeals taken to this court, the point being urged that the briefs of appellants do not sufficiently comply with the rules just referred to in indicating the portions of the record upon which appellants rely for reversal.

"The opening brief of appellants, while it sets forth the substance of the record, does not make specific reference to the reporter's transcript, but does refer to the pages of the clerk's transcript where the facts included in the opening statement are set forth in the answer filed by the appellants. The concluding brief of the appellants does specifically indicate the portion of the transcript where a complete report of the opening statement may be found. No difficulty having been experienced by the court in ascertaining the grounds upon which this appeal is based, and also in view of the fact that no trial was had upon the merits of this cause, and judgment having been entered against the defendants upon their opening statement, we conclude that the respondent's objection to a consideration of this appeal upon its merits should be disregarded.

"The opening statement, while not referring to the pleadings, constituted an oral presentation to the court and jury of the defenses set up in the answer. While too lengthy to be set forth herein, we glean from the opening statement the following:

"In 1928, the defendants took over a ranch near Oakdale in Stanislaus county for the purpose of growing lettuce seed thereon. The ranch was then subject to a trust deed securing a note in favor of the Bank of Italy subsequently becoming the Bank of America, in the sum of $20,000. From the time of taking over the ranch in 1928, appellants continued the operation thereof in the growing of lettuce seed and marketing the same in the southern portion of the state, particularly in the Imperial valley. Financial transactions appear to have been had between the plaintiff and the defendants until January, 1932, at which time the $20,000 note, secured by a trust deed, remained unpaid, and another note in the sum of $14,997.40, unsecured, was held by

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

the plaintiff, signed by the defendants. At this time negotiations were entered into between the defendants and the plaintiff, by and through its representatives, relative to the defendants continuing their *261 operation of the ranch during the year 1932. At the time of the beginning of these negotiations it appears that the appellants had on hand personal property consisting of ranch equipment of the value of approximately $25,000, and also unsold lettuce seed in storage of the approximate value of $6,000.

"The opening statement then sets forth that the plaintiff, by its representatives, promised the defendants that if they would execute a new note for $4,750, to be credited upon the $14,997.40 note to which we have referred, and would give a chattel and crop mortgage, which mortgages should secure the notes referred to, the plaintiff would not interfere with the operation of the ranch by the defendants during the year 1932, but would allow them to operate the ranch and make sales of lettuce seeds to prospective purchasers, contracting for the sale and delivery of the seeds in advance, turning the same over to the appellants. In consideration of this promise the defendants were to execute, and did execute the note and mortgages which would cover all the property owned by the defendants, and which, up to that time, appears to have been unin- cumbered.

"The opening statement then goes on to recite that the defendants made preparations to operate the ranch, to secure contracts for the seed to be raised, and further, that the promises made by the plaintiff, through its representatives, were made without any intention on their part to keep and perform the same, and were fraudulently made for the purpose of securing the notes and chattel and crop mortgages mentioned in the opening statement. The opening statement of the appellants, in relation to the indebtedness of the mortgages, is in the following words and figures (after providing that the $6,000 worth of lettuce seed should be turned over to the appellants [respondents] as security for the indebtedness), to-wit: 'That a new note was to be

executed for the balance of the indebtedness above the $20,000.00 originally secured by the trust deed, and that the chattel mortgage was to secure not only this indebtedness above the $20,000.00, but was to cover the whole thing, $20,000.00 plus the balance of the indebtedness which at that time was about $14,750.00.' And further: 'That this chattel and crop mortgage be executed by Mr. Pendergrass; that a new note in the sum of $4,753.00 be executed by Mr. Pendergrass, to be credited on a note that they already had of $14,753.00, that is, the balance due on it was *262 $14,753.00; that those notes were to be secured by the chattel mortgage, by the pledge of the warehouse receipt of 6500 pounds of lettuce seed on hand, and by the assurance that the sales of the 1932 crop of seed would pass through the bank and the moneys from the sales of the 1932 crop should all go to the bank in payment,' etc.

"The opening statement further shows that the mortgages referred to were executed by the defendants, and that the plaintiff failed to keep its promises, and within a short time after the execution of the mortgages proceeded to seize all the property covered thereby.

(2) "The answer as well as the opening statement alleges that the note sued upon in this action was and is secured by a chattel mortgage. Under the provisions of section 726 of the Code of Civil Procedure, if the allegations referred to set forth the true status, then and in that case the plaintiff's cause of action should have been abated. That section provides for only one form of action, specifying the procedure, to- wit, the foreclosure of the mortgage, which was not followed in this case. (3) The respondent seeks to avoid the force of this contention on the part of the appellants by referring to the mortgage itself, and contending that the note sued upon is not secured, basing its argument upon the fact that the answer of the defendants alleges that the note is secured by mortgage of a certain date, and recorded at a certain place in the official records of Stanislaus county. However, such a reference does not make the mortgage a part of the an-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

48 P.2d 659

4 Cal.2d 258, 48 P.2d 659

**4 Cal.2d 258**

swer, and it was not made a part of the answer in this case; consequently, the contention of the respondent and the reply of the appellants in relation thereto constitute no part of the record of which this court can take notice. It does establish, however, the error of the court in disregarding this portion of the defendants' opening statement, because whether the note sued upon was or was not in fact secured by a chattel mortgage or a crop mortgage could only be determined by the introduction of the mortgage in evidence, which was not done. (4) Both the appellants and the respondent lay down the premise that upon the consideration of this appeal, everything set forth in the opening statement must be considered as true. Therefore, it must be held upon this appeal that the note sued upon in this action was and is secured by a chattel mortgage." *263

(5) Inasmuch as the cause must go back to the trial court for further proceedings therein it becomes necessary for us to determine whether oral testimony may be introduced to establish the alleged promise of respondent that if appellants executed the note and mortgage and did the other things mentioned, they would not be required "to make any payments on their indebtedness, either interest or principal, until this money came in from the 1932 crop of lettuce seed, and that the bank would permit them to go ahead and operate and produce this 1932 crop". While we have quoted the exact language used in the opening statement of appellants, it is manifest that the promise which it is claimed they relied upon was, as pleaded by them, that the respondent would "extend" or "postpone" all payments for the period of one year. This promise is in direct contravention of the unconditional promise contained in the note to pay the money on demand. (6) The question then is: Is such a promise the subject of parol proof for the purpose of establishing fraud as a defense to the action or by way of cancelling the note, assuming, of course, that it can be properly coupled with proof that it was made without any intention of performing it? Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing. We find apt language in *Towner v. Lucas' Exr.,* 54 Va. (13 Gratt.) 705, 716, in which to express our conviction: "It is reasoning in a circle, to argue that fraud is made out, when it is shown by oral testimony that the obligee contemporaneously with the execution of a bond, promised not to enforce it. Such a principle would nullify the rule: for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud. The true question is, Was there any such agreement? And this can only be established by legitimate testimony. For reasons founded in wisdom and to prevent frauds and perjuries, the rule of the common law excludes such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement itself in legal contemplation, cannot be *264 regarded as existing in fact. Neither a court of law nor of equity can act upon the hypothesis of fraud where there is no legal proof of it." The rule referred to in the quotation has found expression in sections 1625 and 1698 of the Civil Code and section 1856 of the Code of Civil Procedure and, according to our authorities, is one not only of evidence but also of substantive law. (*Harding v. Robinson,* 175 Cal. 534 [166 Pac. 808]; *Lindemann v. Coryell,* 59 Cal. App. 788 [212 Pac. 47, 48].) The last-cited case confirms the opinion we entertain, for while it is said no question of fraud was raised, yet the effort was made to prove that the note was executed upon the understanding that the payee would not enforce payment until the payor had sold sufficient real property to enable him to pay. It was there said, after citing a pertinent section of Wigmore on Evidence, that fraud may not be established by parol evidence to contradict the terms of the writing "when the statements relate to rights depending upon contracts yet to be made, to which the person

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

48 P.2d 659
4 Cal.2d 258, 48 P.2d 659
**4 Cal.2d 258**

Page 5

complaining is a party, as under such circumstances he has it in his power to guard in advance against any and all consequences of a subsequent change of conduct by the person with whom he is dealing, and to admit evidence of extrinsic agreements would be to open the door to all evils that the parol evidence rule was designed to prevent." For further authorities involving a like principle see *McArthur v. Johnson,* 216 Cal. 580 [15 Pac. (2d) 151]; *Pierce v. Avakian,* 167 Cal. 330, 331 [139 Pac. 799],*Booth v. Hoskins,* 75 Cal. 271 [17 Pac. 225], and *Estate of Watterson,* 130 Cal. App. 741 [20 Pac. (2d) 772].

For the reasons stated the judgment is reversed.

Shenk, J., Waste, C. J., Preston, J., and Seawell, J., concurred. **\*265**
Cal.
Bank of America Nat. Trust & Savings Ass'n v. Pendergrass
4 Cal.2d 258, 48 P.2d 659

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

64 Cal.App.4th 502                                                                                          Page 1
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843
**64 Cal.App.4th 502**

▷Birman v. Loeb
Cal.App.5.Dist.

BEN ZION BIRMAN et al., Plaintiffs and
Appellants,
v.
STANLEY I. LOEB et al., Defendants and
Respondents.
**No. B111945.**

Court of Appeal, Second District, Division 5,
California.
June 3, 1998.

[Opinion certified for partial publication. FN* ]

FN* Pursuant to California Rules of Court,
rules 976(b) and 976.1, this opinion is
certified for publication with the exception
of the indicated portion, part III.G.

SUMMARY

In a fraud action by real estate purchaser plaintiffs
against the seller defendants, in which plaintiffs
recovered a money judgment, costs, and attorney
fees, after which defendants reacquired the property
in a nonjudicial foreclosure, the trial court granted
defendants' motion for an equitable setoff against the
unsecured deficiency in the amount of plaintiffs'
attorney fees and costs award. (Superior Court of Los
Angeles County, No. BC062858, Florence T.
Pickard, Judge.)

The Court of Appeal reversed and imposed sanctions
against plaintiffs and their attorneys for reasons
stated in the unpublished part of the opinion. The
court held that the setoff award violated the policy
prohibiting deficiency judgments (Code Civ. Proc., §
580b), which is to relieve debtors under a purchase
money trust deed from any personal liability on the
debt. To allow the setoff would improperly shift the
risk of inadequate security from defendants, where it
belongs under section § 580b, to plaintiffs; allow
defendants to recover more than the fair market value
of the property at the time of foreclosure; cause
plaintiffs to lose the property yet still be liable for the
purchase price; and allow defendants to look beyond

the security for recovery of the debt. The court also
held that defendants were not entitled to the setoff
under the exceptions to Code Civ. Proc., § 580b,
applicable to unjust enrichment or to fraud in the
inducement of a loan. Moreover, under general setoff
law, there were no mutual obligations between the
parties as to which a setoff could operate. (Opinion
by Turner, P. J., with Grignon and Armstrong, JJ.,
concurring.)

HEADNOTES

Classified to California Digest of Official Reports

(1) Deeds of Trust § 30--Sale Under Power--One
Action Rule--Seeking Equitable Setoff.
In a fraud action by real estate purchasers against the
sellers, in which plaintiffs recovered a money
judgment, costs, and attorney fees, after which
defendants reacquired the property in a nonjudicial
foreclosure, defendants' motion for an equitable
setoff against the unsecured deficiency in the amount
of plaintiffs' attorney fees and costs award did not
violate the one action rule (Code Civ. Proc., § 726).
That rule provides that there can be but one form of
action for the recovery of any debt or the
enforcement of any right secured by mortgage or
deed of trust upon real property. The nonjudicial
foreclosure was not an action within the meaning of §
726. The only action defendants brought against
plaintiffs was for an equitable setoff. Allowing
defendants an equitable setoff did not violate one of
the purposes of the one action rule-to prevent a
multiplicity of actions against the debtor.

(2) Deeds of Trust § 44--Sale Under Power--
Deficiency--Prohibition Against Recovery--Sellers'
Right to Equitable Setoff Against Fraud Judgment in
Favor of Purchasers.
In a fraud action by real estate purchasers against the
sellers, in which plaintiffs recovered a money
judgment, costs, and attorney fees, after which
defendants reacquired the property in a nonjudicial
foreclosure, an equitable setoff against the unsecured
deficiency in the amount of plaintiffs' attorney fees
and costs award sought by defendants was not a
deficiency within the meaning of Code Civ. Proc., §
580b, precluding a "deficiency judgment" after

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

64 Cal.App.4th 502
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843
**64 Cal.App.4th 502**

foreclosure under a purchase money trust deed given to the seller. A deficiency judgment is a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness. No personal money judgment was imposed against plaintiffs. Further, the setoff was not measured by the difference between the fair market value of the property held as security and the outstanding indebtedness. It was measured by the amount of attorney fees and costs incurred by plaintiffs in pursuit of their tort action against defendants.

(**3a**, **3b**, **3c**, **3d**, **3e**, **3f**) Deeds of Trust § 45--Sale Under Power--Deficiency--Actions to Recover-- Seeking Equitable Setoff.

In a fraud action by real estate purchasers against the sellers, in which plaintiffs recovered a money judgment, costs, and attorney fees, after which defendants reacquired the property in a nonjudicial foreclosure, an equitable setoff in favor of defendants against the unsecured deficiency in the amount of plaintiffs' attorney fees and costs award violated the policy prohibiting deficiency judgments (Code Civ. Proc., § 580b), which is to relieve debtors under a purchase money trust deed from any personal liability on the debt. To allow the setoff would improperly shift the risk of inadequate security from defendants, where it belongs under section § 580b, to plaintiffs; allow defendants to recover more than the fair market value of the property at the time of foreclosure; cause plaintiffs to lose the property yet still be liable for the purchase price; and allow defendants to look beyond the security for recovery of the debt. Defendants were not entitled to the setoff under the exceptions to Code Civ. Proc., § 580b, applicable to unjust enrichment or to fraud in the inducement of a loan.

[See 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) §§ 9:65, 9:66.]

(**4**) Deeds of Trust § 45--Sale Under Power-- Deficiency--Prohibition Against Actions to Recover.

A creditor's right to enforce a debt secured by a trust deed on real property is restricted by statute, in that the creditor must rely upon his or her security before enforcing the debt (Code Civ. Proc., §§ 580a, 725a, 726). If the security is insufficient, the right to a judgment against the debtor for the deficiency may be limited or barred by Code Civ. Proc., § 580a, 580b, 580d, or 726. Code Civ. Proc., § 580b, places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from

overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. If inadequacy of security results, not from overvaluing, but from a decline in property values during a general or local depression, Code Civ. Proc., § 580b, prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability, and thus serves as a stabilizing factor in land sales.

(**5a**, **5b**, **5c**) Deeds of Trust § 45--Sale Under Power-- Deficiency-- Prohibition Against Actions to Recover- -Additional        Security--Unjust        Enrichment-- Independent Tort.

Under Code Civ. Proc., § 580b, prohibiting deficiency judgments on foreclosures of deeds of trusts, resort to additional security following a nonjudicial foreclosure is not an attempt to secure a deficiency judgment. The antideficiency statutes do not limit the security for notes given for the purchase of real property only to trust deeds; other security may be given as well. Creditors may resort to such other security in addition to nonjudicial foreclosure of the real property security. Code Civ. Proc., § 580b, also does not bar a creditor's recovery on an unjust enrichment theory or for fraud in the inducement of the loan.

[See 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 162.]

(**6**) Cross-complaints and Setoffs § 11--Setoffs-- Limits.

The courts in certain circumstances have limited the right of setoff in order to protect the rights of the debtors.

(**7a**, **7b**) Cross-complaints and Setoffs § 11--Setoffs-- Requirements.

In order to assert a setoff, cross-demands for money must exist between the parties (Code Civ. Proc., § 431.70). The fact that a demand has not been reduced to judgment is no obstacle to its allowance as a setoff against a judgment. A court has the power, independent of any statute and under its general jurisdiction, to set off one judgment against another. Further, a court may proceed on a motion to setoff judgments. Code Civ. Proc., § 431.70, does not create a substantive right to raise setoff as a defense to a claim for monetary relief, but merely describes the procedures to be followed in raising this defense. A court of equity will compel a setoff when mutual

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

64 Cal.App.4th 502                                                      Page 3
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843
**64 Cal.App.4th 502**

demands are held under such circumstances that one of them should be applied against the other and only the balance recovered.

(**8a, 8b**) Cross-complaints and Setoffs § 11--Setoffs--Requirements:Deeds of Trust § 45--Prohibition Against Actions to Recover.
In a fraud action by real estate purchasers against the sellers, in which plaintiffs recovered a money judgment, costs, and attorney fees, after which defendants reacquired the property in a nonjudicial foreclosure, defendants were not entitled to an equitable setoff against the unsecured deficiency in the amount of plaintiffs' attorney fees and costs award. No mutual obligations existed between the parties. Having foreclosed on a purchase money trust deed, defendants did not obtain and had no right to secure a deficiency judgment. Following foreclosure, defendants were left with an unsecured, unenforceable claim for the balance due on the promissory note. They had no recourse beyond the security. Following the foreclosure, defendants remained indebted to plaintiffs on the judgment for attorney's fees and costs, but plaintiffs had no legally enforceable obligation to defendants.

COUNSEL
Matthew H. Tambor for Plaintiffs and Appellants.
Emil W. Herich and Cheryl D. Chadwick for Defendants and Respondents. *506 **TURNER, P. J.**

I. Introduction

This case presents the question whether a creditor can set off a debt owed to the debtor against a deficiency remaining after nonjudicial foreclosure under a purchase money trust deed. Plaintiffs, Ben Zion Birman, Israel Birman, and Switch Construction Co., Inc., appeal from an order granting an equitable setoff to defendants, Stanley I. Loeb and Jerri Loeb. The Loebs had been sued individually and as trustees of the Stanley I. Loeb and Jerri Loeb Revocable Trust. Plaintiffs had purchased real property from defendants who took back a promissory note secured by a trust deed. Plaintiffs brought an action against defendants for fraud or negligent misrepresentation and failure to disclose in connection with the purchase and sale of the property. Plaintiffs prevailed, and a judgment including an attorney's fees and costs award was entered in their favor. Defendants subsequently reacquired the real property

from plaintiffs at a nonjudicial foreclosure sale by way of a $2 million credit bid. The unsecured debt remaining after foreclosure was for more than $2 million. The trial court granted defendants an equitable setoff against the unsecured deficiency in the amount of the attorney's fees and costs award in plaintiffs' favor. We conclude that granting the equitable setoff contravened the economic policy considerations underlying antideficiency legislation, specifically Code of Civil Procedure section 580b. That statute precludes a deficiency judgment following foreclosure, judicial or nonjudicial, under a purchase money trust deed given to the seller. Accordingly, we reverse the order. Further, on appeal plaintiffs and their attorney have engaged in unreasonable violations of court rules and we therefore impose monetary sanctions against them and their counsel.

II. Background

Plaintiffs purchased a warehouse from defendants in 1990. In connection with the sale, plaintiffs executed a promissory note secured by a deed of trust in favor of defendants. The promissory note was for $4,450,000.

Plaintiffs sued defendants in 1992, alleging fraudulent or negligent misrepresentation and failure to disclose in connection with the purchase and sale of the real property. The court, in a nonjury trial, found in plaintiffs' favor. Judgment was entered in 1995. The court: reduced the principal amount of the promissory note by $1 million (from $4 million to $3 million); ordered the accrued interest in the amount of $665,000 added to the principal, bringing the balance to $3,665,000; and awarded plaintiffs their attorney's fees and costs in the sum of $306,820.57. This court affirmed that *507 judgment on appeal. (*Birman v. Loeb* (Aug. 19, 1997) B093378 [nonpub. opn.].)

Plaintiffs never made a single payment under the reformed note and failed to pay outstanding real property taxes. Defendants commenced nonjudicial foreclosure proceedings. Those efforts were delayed when plaintiffs transferred the property to another entity which then sought the protection of bankruptcy courts. Defendants obtained relief from the bankruptcy stay and recommenced the foreclosure process. In February 1996, defendants foreclosed

64 Cal.App.4th 502

64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843

**64 Cal.App.4th 502**

under the power of sale in the trust deed. They reacquired the property by way of a $2 million credit bid. According to defendants, the $2 million credit bid reflected at least, if not more than, the fair market value of the property at the time of the foreclosure. Seven months earlier, plaintiffs had represented the fair market value of the property to be $1.5 million. Following foreclosure, the unsecured balance remaining on the promissory note was $2,162,242.96.

Defendants filed a motion for "an equitable setoff and satisfaction in full of the judgment entered by this Court on March 3, 1995, in favor of Plaintiffs and against the Loebs for attorney's fees and costs in the amount of $306,820.57." They argued the attorney's fees and costs award in favor of plaintiffs should be set off against the unsecured balance remaining due to defendants on the promissory note. Plaintiffs opposed the motion on the grounds defendants were improperly seeking a deficiency judgment subsequent to a nonjudicial foreclosure under a purchase money trust deed. The trial court granted defendants' motion. This appeal followed.

### III. Discussion

#### A. Contentions on Appeal and Standard of Review

Plaintiffs contend: the equitable setoff was an "action" within the meaning of the one-action rule, Code of Civil Procedure, section 726; [FN1] defendants elected their "one action" to be nonjudicial foreclosure and a second action for equitable setoff was barred under section 726; and the antideficiency statutes, sections 580b and 580d, barred defendants from obtaining a deficiency judgment in the form of an equitable setoff. Defendants assert: plaintiffs' debt was not extinguished by the nonjudicial foreclosure sale; section 726 did not bar the equitable setoff because the nonjudicial foreclosure was not an "action" within the meaning of that section; neither the nonjudicial sale nor the subsequent equitable setoff violated the "one action" *508 rule; and neither the language of sections 580b and 580d, barring deficiency judgments, nor the policies they were intended to serve, have any application here. The application of sections 726 and 580b to undisputed facts presents a question of law for our independent review. (Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; Hodges v. Mark (1996) 49 Cal.App.4th 651, 655 [56

Cal.Rptr.2d 700].)

FN1 All further statutory references are to the Code of Civil Procedure except where otherwise noted.

#### B. There Was No Violation of the One Action Rule of Section 726

(1) Plaintiffs contend defendants violated the one action rule of section 726 by nonjudicially foreclosing on the trust deed and then seeking an equitable setoff. Plaintiffs argue defendants chose nonjudicial foreclosure as their one action. Plaintiffs further argue defendants violated section 726 by their "second action," for equitable setoff. We conclude defendants brought only one "action" against plaintiffs within the meaning of section 726. Hence, defendants did not violate the one action rule. [FN2]

FN2 The "security first" aspect of section 726 is not at issue here. (E.g., Security Pacific National Bank v. Wozab (1990) 51 Cal.3d 991, 997 [275 Cal.Rptr. 201, 800 P.2d 557]; Walker v. Community Bank (1974) 10 Cal.3d 729, 736 [111 Cal.Rptr. 897, 518 P.2d 329].) Defendants foreclosed on the real property security before they sought an equitable setoff.

Section 726, subdivision (a) provides in pertinent part: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter." Although the statute refers only to mortgages, it applies equally to trust deeds.(Security Pacific National Bank v. Wozab, supra,51 Cal.3d at p. 997, fn. 4; Walker v. Community Bank, supra,10 Cal.3d at pp. 732-733, fn. 1; Bank of Italy etc. Assn. v. Bentley (1933) 217 Cal. 644, 653 [20 P.2d 940].)Section 726 was enacted in response to concerns that mortgagors would be harassed by repeated litigation. (Security Pacific National Bank v. Wozab, supra,51 Cal.3d at p. 1002; Salter v. Ulrich (1943) 22 Cal.2d 263, 266 [138 P.2d 7, 146 A.L.R. 1344]; Felton v. West (1894) 102 Cal. 266, 269 [36 P. 676]; Ould v. Stoddard (1880) 54 Cal. 613, 615; Passanisi v. Merit-McBride Realtors, Inc. (1987) 190 Cal.App.3d 1496, 1506 [236 Cal.Rptr. 59].) As the Supreme Court explained in

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

64 Cal.App.4th 502

64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843

**64 Cal.App.4th 502**

*Felton v. West, supra,* 102 Cal. at page 269: "Formerly the law allowed an action upon a promissory note, and also a suit in equity to foreclose the mortgage .... The mischief in such a practice lay in the multiplicity of suits, and the harassing of the debtor by two actions ...." Section 726 was intended "to protect the debtor from having to defend against a multiplicity of actions." (*Security Pacific National Bank v. Wozab, supra,* 51 Cal.3d at p. 1002; *Shin v. Superior Court* (1994) 26 Cal.App.4th 542, 547 [31 Cal.Rptr.2d 587].) The meaning of "action" as **\*509** used in section 726 is defined by section 22. (*Security Pacific National Bank v. Wozab, supra,* 51 Cal.3d at p. 998; *Shin v. Superior Court, supra,* 26 Cal.App.4th at pp. 545-546.) Section 22 provides: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

A nonjudicial foreclosure is not an "action" within the meaning of sections 22 and 726; hence, a nonjudicial foreclosure does not violate section 726. (*Walker v. Community Bank, supra,* 10 Cal.3d at p. 736; *Hatch v. Security-First Nat. Bank* (1942) 19 Cal.2d 254, 258 [120 P.2d 869] [absent a *judicial* foreclosure, section 726 has no direct application]; *Passanisi v. Merit-McBride Realtors, Inc., supra,* 190 Cal.App.3d at pp. 1506-1507; *Mortgage Guarantee Co. v. Sampsell* (1942) 51 Cal.App.2d 180, 186 [124 P.2d 353]; cf. *Security Pacific National Bank v. Wozab, supra,* 51 Cal.3d at p. 998 [extrajudicial setoff not an action]; see 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 115, p. 617, (1997 pocket supp.) § 115, p. 345; 4 Miller & Starr (2d ed. 1989) Deeds of Trust and Mortgages, § 9:105, p. 348, § 9:113, p. 374; 5 Cal. Real Estate Law & Practice (1997) Remedies in Secured Transactions, § 122.23[8], p. 122-22; 27 Cal.Jur.3d, Deeds of Trust, § 203, pp. 226-228.) Typically, no court has anything to do with a nonjudicial foreclosure. (Cf. *Security Pacific National Bank v. Wozab, supra,* 51 Cal.3d at p. 998 [no court had anything to do with bank setoff].) Thus, for example, a *nonjudicial* sale of security for a parcel of realty is not an action within the meaning of section 726 and does not preclude a subsequent lawsuit in the form of a *judicial* foreclosure of personal property securing the same debt. (*Walker v. Community Bank, supra,* 10 Cal.3d at p. 736; see *Bank of California v. Leone* (1974) 37 Cal.App.3d

444, 448 [112 Cal.Rptr. 394].)

An extrajudicial setoff, as, for example, by a bank against its depositor's funds, is also not an action within the meaning of sections 22 and 726. (*Security Pacific National Bank v. Wozab, supra,* 51 Cal.3d at p. 998; see *Shin v. Superior Court, supra,* 26 Cal.App.4th at pp. 547-548.) Normally no court is involved in a bank's setoff. (*Security Pacific National Bank v. Wozab, supra,* 51 Cal.3d at p. 998.) However, when, as here, a setoff is asserted in a judicial proceeding, it *is* an action within the meaning of section 726. (*Security Pacific National Bank v. Wozab, supra,* 51 Cal.3d at p. 999, fn. 7; *Aplanalp v. Forte* (1990) 225 Cal.App.3d 609, 615 [275 Cal.Rptr. 144].) In the present case, plaintiffs did not violate the one action rule of section 726. The nonjudicial foreclosure was not an action within the meaning of section 726. The *only* action defendants brought against plaintiffs was for an equitable setoff. Allowing defendants an equitable setoff did not violate one **\*510** of the purposes of the one action rule-to prevent a multiplicity of actions against the debtor. (*Security Pacific National Bank v. Wozab, supra,* 51 Cal.3d at pp. 1002, 1005; *Walker v. Community Bank, supra,* 10 Cal.3d at p. 736.)

*C. Although the Equitable Setoff Was Not a Deficiency Judgment Per Se, Allowing the Setoff Would Contravene the Economic Policy Considerations Underlying Section 580b*

This case presents the question whether the equitable setoff constituted a deficiency judgment within the wording of the antideficiency statutes or contravened the economic policy considerations underlying that legislation. In evaluating whether section 580b was to be applied to a particular set of financial circumstances resulting from events occurring after a foreclosure, California courts have examined in a practical manner the economic policy considerations underlying the antideficiency judgment statutes. (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 50, 52-53 [57 Cal.Rptr.2d 687, 924 P.2d 996]; *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 603 [125 Cal.Rptr. 557, 542 P.2d 981]; *Bank of America v. Graves* (1996) 51 Cal.App.4th 607, 611 [59 Cal.Rptr.2d 288]; *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1664-1665 [15 Cal.Rptr.2d 173]; *Commonwealth Mortgage Assurance Co. v. Superior Court* (1989) 211 Cal.App.3d 508, 515 [259

64 Cal.App.4th 502                                                                                              Page 6
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843
**64 Cal.App.4th 502**

Cal.Rptr. 425]; *Passanisi v. Merit-McBride Realtors Inc.*, *supra,* 190 Cal.App.3d at p. 1508.)We conclude the equitable setoff was not a deficiency judgment per se; however, to allow it would contravene the economic policy considerations underlying section 580b.

*1. The equitable setoff was not, strictly speaking, a deficiency judgment within the statutory language*

Section 580b precludes a "deficiency judgment" after foreclosure, judicial or nonjudicial, under a purchase money trust deed given to the seller.(*Ghirardo v. Antonioli*, *supra,* 14 Cal.4th at p. 49.)Section 580b provides in relevant part: "No deficiency judgment shall lie in any event after a sale of real property ... under a deed of trust or mortgage given to the vender to secure payment of the balance of the purchase price of that real property ...." In the present case, defendants foreclosed under a purchase money trust deed. Therefore, they could not recover a deficiency judgment. (§ 580b; *Ghirardo v. Antonioli*, *supra,* 14 Cal.4th at p. 49.)

(2) We first consider whether the equitable setoff constituted a "deficiency judgment" within the language of the statutes. A deficiency judgment is described in section 580a as "a money judgment ... for the balance due *511 upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property ... was given as security ...." It is similarly described in section 726, subdivision (b) as "a money judgment against the [debtor] for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the real property or estate for years therein sold as of the date of sale." The Supreme Court has held: "A deficiency judgment is a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness. (§ 726.)" (*Cornelison v. Kornbluth*, *supra,* 15 Cal.3d at p. 603.)The Supreme Court has further held: "The action thus characterized has long been described in this state as an action to obtain a deficiency judgment. Such an action is required where the creditor seeks a personal judgment for the unpaid balance due upon an obligation after unsuccessful resort to the security. [Citations.]" (*Hatch v. Security-First Nat. Bank*, *supra,* 19 Cal.2d at p. 261.)

We conclude the equitable setoff at issue here did not, strictly speaking, constitute a deficiency judgment within the statutory language. No personal money judgment was imposed against plaintiffs. Further, the setoff was not measured by the difference between the fair market value of the property held as security and the outstanding indebtedness. It was measured by the amount of attorney's fees and costs incurred by plaintiffs in pursuit of their tort action against defendants. (Cf. *Ghirardo v. Antonioli*, *supra,* 14 Cal.4th at p. 50 [sums omitted from payoff demand did not, strictly speaking, constitute a deficiency, i.e., difference between value of note and value of real property in a judicial foreclosure]; *Cornelison v. Kornbluth*, *supra,* 15 Cal.3d at pp. 602-603 [damages for "bad faith" waste would not amount to a deficiency judgment].) We turn to the question whether allowing the equitable setoff would violate the economic policy considerations underlying section 580b.

*2. The policy behind section 580b would be violated by allowing the equitable setoff*

(3a) The equitable setoff, although not a deficiency judgment per se, cannot be allowed if it violates the policy considerations underlying section 580b and is therefore the functional equivalent of a deficiency judgment. (*Ghirardo v. Antonioli*, *supra,* 14 Cal.4th at pp. 50, 52-53; *Cornelison v. Kornbluth*, *supra,* 15 Cal.3d at p. 603; *First Nationwide Savings v. Perry*, *supra,* 11 Cal.App.4th at pp. 1664-1665; *Commonwealth Mortgage Assurance Co. v. Superior Court*, *supra,* 211 Cal.App.3d at p. 515; *Passanisi v. Merit-McBride Realtors Inc.*, *supra,* 190 Cal.App.3d at p. 1508.)We conclude that allowing the equitable setoff under the circumstances of this case *512 would contravene the economic policy considerations underlying section 580b.

(4) In California, a creditor's right to enforce a debt secured by a trust deed on real property is restricted by statute. The Court of Appeal has held: " 'Under California law, "the creditor must rely upon his security before enforcing the debt. (Code Civ. Proc., §§ 580a, 725a, 726.)If the security is insufficient, his right to a judgment against the debtor for the deficiency may be limited or barred by sections 580a, 580b, 580d, or 726 ...." [Citation.]' [Citation.]" (*Commonwealth Mortgage Assurance Co. v. Superior*

Court, supra,211 Cal.App.3d at p. 514; see *Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 38-39 [27 Cal.Rptr. 873, 378 P.2d 97].) As noted above, section 580b, enacted in 1933, precludes a deficiency judgment after foreclosure, judicial or nonjudicial, under a purchase money deed of trust given to the seller. The Supreme Court has described the purpose of section 580b as follows: " 'Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citation.] If inadequacy of security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability.Section 580b thus serves as a stabilizing factor in land sales.' [Citations.]" (*Cornelison v. Kornbluth, supra,*15 Cal.3d at pp. 601-602; *Roseleaf Corp. v. Chierighino, supra,*59 Cal.2d at p. 42.)As similarly explained in *Bargioni v. Hill* (1963) 59 Cal.2d 121, 123 [28 Cal.Rptr. 321, 378 P.2d 593], "[Section 580b] compels a purchase money mortgagee to assume the risk that the security is inadequate. The purposes are to discourage land sales that are unsound because the land is overvalued and, in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were burdened with personal liability. [Citation.] These purposes are served by relieving the purchaser of personal liability to any person who finances the purchase and takes as security a trust deed or mortgage on the property purchased, provided the financier intended the loan to be used to pay all or part of the purchase price. [Citations.]" Stated differently, section 580b places the risk of inadequate security, whether due to overvaluation or market decline, on the lender. (*American Sav. & Loan Assn. v. Leeds* (1968) 68 Cal.2d 611, 615 [68 Cal.Rptr. 453, 440 P.2d 933]; *Roseleaf Corp. v. Chierighino, supra,*59 Cal.2d at p. 42.)Section 580b "is necessarily intended to provide a protection for the trustor ...." (*Brown v. Jensen* (1953) 41 Cal.2d 193, 197 [259 P.2d 425]; *Schumacher v. Gaines* (1971) 18 Cal.App.3d 994, 999 [96 Cal.Rptr. 223].) When a seller ***513** takes a purchase money trust deed on the property, section 580b is applicable and the seller may look only to the security. (*Brown v. Jensen, supra,*41 Cal.2d at p. 197 [holder of purchase money

second trust deed, where security lost by foreclosure of first trust deed, could not recover on note and could look only to the security].) The Supreme Court has held: "That is the clear import of the wording of section 580b. The one taking such a trust deed knows the value of his security and assumes the risk that it may become inadequate." (*Ibid.*) The Supreme Court further held: "[T]he purpose of section 580b is that '... for a purchase money mortgage or deed of trust the security alone can be looked to for recovery of the debt.' [Citation.]" (*Id.* at p. 198.)In short, the purchase money lender's only recourse is to the security. (*Id.* at pp. 197-199;*American Sav. & Loan Assn. v. Leeds, supra,*68 Cal.2d at p. 614, fn. 2; *Roseleaf Corp. v. Chierighino, supra,*59 Cal.2d at p. 42; *Mortgage Guarantee Co. v. Sampsell, supra,*51 Cal.App.2d at p. 185.)

(3b) To allow the equitable setoff under the circumstances of this case would contravene the policies underlying section 580b. As discussed above, the Legislature intended to relieve debtors under a purchase money trust deed from any personal liability on the debt. (*Roseleaf Corp. v. Chierighino, supra,*59 Cal.2d at p. 42; *Long v. Superior Court* (1985) 170 Cal.App.3d 499, 504 [216 Cal.Rptr. 337].) To that end, the debtor's only recourse is to the security. (*American Sav. & Loan Assn. v. Leeds, supra,*68 Cal.2d at p. 614, fn. 2; *Roseleaf Corp. v. Chierighino, supra,*59 Cal.2d at p. 42; *Brown v. Jensen, supra,*41 Cal.2d at p. 197; *Mortgage Guarantee Co. v. Sampsell, supra,*51 Cal.App.2d at p. 185.)The extent of the intended protection is reflected in the fact that no deficiency judgment will lie upon foreclosure of a purchase money trust deed whether it is conducted judicially or nonjudicially. (§ 580b.)To allow the judgment against defendants and in favor of plaintiffs to be set off against the deficiency remaining following the nonjudicial foreclosure sale under the purchase money trust deed would improperly: shift the risk of inadequate security from defendants, where it belongs under section 580b, to plaintiffs (*Ghirardo v. Antonioli, supra,*14 Cal.4th at p. 52; *Cornelison v. Kornbluth, supra,*15 Cal.3d at pp. 601-602; *American Sav. & Loan Assn. v. Leeds, supra,*68 Cal.2d at p. 615; *Bargioni v. Hill, supra,*59 Cal.2d at p. 123; *Roseleaf Corp. v. Chierighino, supra,*59 Cal.2d at p. 42; *Brown v. Jensen, supra,*41 Cal.2d at pp. 197-198); allow defendants to recover more than the fair market value of the property at the time of foreclosure (*Ghirardo v. Antonioli, supra,*14 Cal.4th at p. 53;

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*Roseleaf Corp. v. Chierighino, supra,*59 Cal.2d at p. 42; see 4 Miller & Starr, *supra,* Deeds of Trust and Mortgages, § 9:66, p. 195); cause plaintiffs to lose the property yet still be liable for the purchase price (*ibid.*); and allow defendants to look beyond the security for recovery of the debt. (*American Sav. & Loan Assn. v. Leeds, supra,*68 Cal.2d at p. 614, fn. 2; *Roseleaf Corp. v. Chierighino, supra,*\*514 59 Cal.2d at p. 42; *Brown v. Jensen, supra,*41 Cal.2d at p. 197; *Mortgage Guarantee Co. v. Sampsell, supra,*51 Cal.App.2d at p. 185; see generally, 4 Miller & Starr, *supra,* Deeds of Trust and Mortgages, §§ 9:65, 9:66, pp. 193-194.) Therefore, the equitable setoff was improper under section 580b. [FN3]

> FN3 Plaintiffs contend the equitable setoff also contravened section 580d. That statute precludes any deficiency judgment following a nonjudicial foreclosure. Because we conclude the setoff was improper under section 580b, we need not consider the application of section 580d.

### D. *No Basis for Recovery Independent of the DeficiencyExists in This Case*

This case is distinguishable from those in which creditors have been allowed additional recovery against a debtor following foreclosure because the actions did not conflict with the policy behind the antideficiency laws.

#### 1. *Additional security*

(5a) The courts have repeatedly held that resort to additional security following a nonjudicial foreclosure is not an attempt to secure a deficiency judgment. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 251-252 [62 Cal.Rptr.2d 243, 933 P.2d 507] [letters of credit]; *Freedland v. Greco* (1955) 45 Cal.2d 462, 465-466 [289 P.2d 463] [chattel mortgage]; *Hatch v. Security-First Nat. Bank, supra,*19 Cal.2d at pp. 260-262 [pledge of personal property owned by estate and trust deeds on real property owned by individual family members]; *MDFC Loan Corp. v. Greenbrier Plaza Partners* (1994) 21 Cal.App.4th 1045, 1053-1054 [26 Cal.Rptr.2d 596] [assignment of rents]; *Mortgage Guarantee Co. v. Sampsell, supra,*51 Cal.App.2d at pp. 182-186 [same]; see 3 Witkin, Summary of Cal. Law, *supra,* Security Transactions in Real Property, §

162, p. 661; Green & Asomow, Cal. Practice Guide: Real Property Transactions 1 (The Rutter Group 1997) ¶ 6:552.10.) The Supreme Court has held: "[The antideficiency statutes do] not limit the security for notes given for the purchase of real property only to trust deeds; other security may be given as well. [Citation.] Creditors may resort to such other security in addition to nonjudicial foreclosure of the real property security." (*Western Security Bank v. Superior Court, supra,*15 Cal.4th at p. 252; *Freedland v. Greco, supra,*45 Cal.2d at p. 466.)The additional security is an obligation owed independently. (*Western Security Bank v. Superior Court, supra,*15 Cal.4th at p. 252.)The Supreme Court has further held: "A creditor that draws on [additional security] does no more than call on all the security pledged for the debt. When it does so, it does not violate the prohibition of deficiency judgments." (*Ibid.*)

(3c) This case did not involve any additional security. The judgment for attorney's fees and costs in plaintiffs' favor was not given as additional \*515 security for the purchase money loan from defendants. Nor is this case in any way analogous, as defendants suggest, to those in which additional security was given.

#### 2. *Unjust enrichment*

(5b) Section 580b also does not bar a creditor's recovery on an unjust enrichment theory. (*Ghirardo v. Antonioli, supra,*14 Cal.4th at pp. 43-44; *First Nationwide Savings v. Perry, supra,*11 Cal.App.4th at pp. 1664-1665; see 3 Witkin, Summary of Cal. Law, *supra,* Security Transactions in Real Property, § 162, p. 661.) In *Ghirardo v. Antonioli, supra,*14 Cal.4th at page 43, the purchasers of property subject to a purchase money deed of trust asked the seller to make a payoff demand for the amount due on the promissory note. The seller complied, the purchasers paid the sum stated, and the deed of trust was reconveyed to the buyers. The seller then discovered the payoff demand had understated the amount due under the note. The seller sued to recover the sums mistakenly omitted from the payoff demand. The *Ghirardo* court held the seller could not obtain a deficiency judgment against the purchasers, but section 580b did not bar the seller's recovery on an unjust enrichment theory. (14 Cal.4th at pp. 49-50.)The court held, "Neither the wording nor the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

64 Cal.App.4th 502
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843
**64 Cal.App.4th 502**

underlying purpose of ... section 580b" dictated an absolute bar to recovery "in the case of a mistake of fact in a payoff demand." (*Id.* at p. 52.)The court reasoned: "None of the[] economic policy considerations [underlying section 580b] applies to a mortgagee's recovery of sums omitted, through a mistake of fact, in a payoff demand statement." (*Id.* at p. 53.)The court explained: " '[A]llowing recovery for unjust enrichment would not contradict the policy of requiring the creditor to rely upon the property to secure the debt. This is because any unjust enrichment recovery could not exceed the property value. Thus, if the property value had decreased, and was less than the debt, a plaintiff's unjust enrichment recovery would be limited by the value of the property.' [Citation.] [¶] Nor would this result permit a creditor to obtain a deficiency judgment through trickery, e.g., by releasing its security after accepting payment on an understated payoff demand and then suing for unjust enrichment. 'A beneficiary would not gain anything in [such a] scenario.... [A]n unjust enrichment recovery is not the same as a deficiency judgment. Whether through foreclosure or an unjust enrichment cause of action, the beneficiary's recovery would be limited to the amount of the debt covered by the value of the property.... No deficiency would be allowed.' [Citation.]" (*Ibid.*, fn. omitted, quoting *First Nationwide Savings v. Perry, supra,* 11 Cal.App.4th at pp. 1664-1665.)

In *Ghirardo,* as contrasted with the present case, the deed of trust was reconveyed to the purchasers. Therefore, they retained the property, and **\*516** were required only to pay the value of that parcel. In other words, they were unjustly enriched only to the extent that the property value exceeded the payoff amount. (3d) Here, plaintiffs lost the property through foreclosure. Further, defendants' $2 million credit bid by which they recovered the parcel at the foreclosure sale equaled the fair market value of the property at that time. Therefore, defendants seek both to retain the property and to recover more than its value. Defendants also seek to divest plaintiffs of attorney's fees and costs awarded to them in an action in which plaintiffs prevailed against defendants. Plaintiffs will not be unjustly enriched by recovering that award from defendants. Unlike recovery on an unjust enrichment theory as in *Ghirardo,* to allow defendants a setoff in the amount of plaintiffs' judgment against them would result in a recovery in excess of the property value at the time of foreclosure. Such recovery is barred under section

580b. (*Ghirardo v. Antonioli, supra,* 14 Cal.4th at p. 53; *Roseleaf Corp. v. Chierighino, supra,* 59 Cal.2d at p. 42.)

### 3. *Independent tort action*

(5c) Actions against a debtor for fraud in the inducement of the loan also are not barred by the antideficiency statutes. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1237-1238 [44 Cal.Rptr.2d 352, 900 P.2d 601].) This is because an action for fraud in the inducement is not an attempt to recover on the debt or the note, and would not result in a double recovery for the creditor. The fraud action " 'stands separate and apart from any action which the antideficiency legislation seeks to preclude.' [Citations.]" (*Ibid.*)Similarly, the Supreme Court has held an action for bad faith waste brought against the debtor does not violate antideficiency laws because recovery would not be measured by the extent the proceeds of the foreclosure sale were insufficient to satisfy the indebtedness, and recovery would be entirely independent of the concerns encompassed by the antideficiency legislation. (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at p. 605.)

(3e) Defendants' claim is not based on a cause of action separate and apart from any attempt to recover on the note or the debt. Defendants are not attempting to recover based on a wrong, such as fraud, committed by plaintiffs. Rather, they are attempting to recover over and above the value of the property against the remaining unsecured debt evidenced by plaintiffs' promissory note.

### E. *The Courts Have Limited the Right of Setoff in Certain Other Circumstances in Order to Protect Debtors' Rights*

(6) We note, and the Supreme Court has observed, that "under the law of California ..., the courts in certain circumstances have limited the right of **\*517** setoff in order to protect the rights of the debtors." (*Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352, 368-369 & fn. 24 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266].) In *Beckman v. Manlove* (1861) 18 Cal. 388, 389, for example, the Supreme Court held a setoff could not be used to retain possession of property exempt from execution. The court observed, "A different doctrine would operate a practical repeal of the exemption laws." (*Ibid.*) The Supreme Court in

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

64 Cal.App.4th 502
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843
**64 Cal.App.4th 502**

Page 10

*Kruger v. Wells Fargo Bank, supra,* 11 Cal.3d at page 368, footnote 24, cited other examples as follows: "Many other California cases have limited the right of setoff in order to carry out state policies protecting the interest of the debtor. *McKean v. German-American Savings Bank* (1897) 118 Cal. 334 ..., held that the one-action rule of [section] 726 bars a mortgagee's assertion of a secured debt to setoff an unsecured debt. In *Roberts v. Spires* (1925) 195 Cal. 267 ...., when the owner of a building under construction attempted to set off against the contract price her claim for damages owing by the general contractor, the court rejected the setoff, stating that 'The unpaid balance of the contract price constitutes a fund which is set apart for the satisfaction of lien claimants.' (195 Cal. at pp. 270-271.) In *Keck v. Keck* (1933) 219 Cal. 316, ..., the court held that a husband could not set off his wife's debt to him against an award of alimony because 'alimony ... cannot be garnished or appropriated to payment of the wife's debts contracted prior to the decree granting the alimony, either where her creditor is a third party or her divorced husband.' (219 Cal. at p. 320.) *Avila v. Leonardo* (1942) 53 Cal.App.2d 602 ... held that child support payments are not subject to setoff. *Williams v. Williams* (1970) 8 Cal.App.3d 636 ...., reiterated that both alimony and child support [payments] are immune. Setoff cannot be asserted to defeat the state's claim for taxes (*Berryessa Cattle Co. v. Sunset Pacific Oil Co.* (9th Cir. 1937) 87 F.2d 972, 974), nor an injured employee's claim for workmen's compensation benefits (see, e.g., *Linder v. McBride* (1920) 7 I.A.C. 144). Four years ago, in *Crooks v. State Bar* (1970) 3 Cal.3d 346, 358 ..., we ruled that an attorney cannot setoff fees due him against trust funds owed to his client." Other cases to the same effect include: *Garg v. People* ex rel. *State Bd. of Equalization* (1997) 53 Cal.App.4th 199, 215 [61 Cal.Rptr.2d 376] (allowing State Board of Equalization to offset an attorney's fee award to the taxpayer under Revenue and Taxation Code section 7156, part of the Harris-Katz California Taxpayers' Bill of Rights, against a tax liability would frustrate the important public policies of citizen protection underlying the taxpayer protection legislation); *Bonelli v. State of California* (1977) 71 Cal.App.3d 459, 468 [139 Cal.Rptr. 486] (pension benefits owed to a widow could not be offset against sums claimed to be owed to the state on account of bribes deceased had accepted while a member of the State Board of Equalization).

We think the same considerations apply to the present case. (3f) To allow the defendant-creditors to offset a debt owed by them to the plaintiff-debtors against a deficiency remaining after nonjudicial foreclosure under a *518 purchase money trust deed would operate in a practical manner to abrogate section 580b. In other words, section 580b protects debtors whose purchase money debt is secured by a trust deed on real property from personal liability for any difference between the value of the parcel at the time of foreclosure and the indebtedness. The protection is predicated on important public policy concerns. (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at pp. 601-602; *Roseleaf Corp. v. Chierighino, supra,* 59 Cal.2d at p. 42.) We conclude the equitable right of setoff should be limited to protect debtors from liability such as that proposed here.

### F. While the Foreclosure Did Not Extinguish the Debt, No Mutual Obligations Existed Such as Would Allow an Offset

Defendants correctly assert the nonjudicial foreclosure, at which they reacquired the property for less than the full amount of the outstanding indebtedness, did not extinguish the debt. (*Cornelison v. Kornbluth, supra,* 15 Cal.3d at pp. 607-608; *Romo v. Stewart Title of California* (1995) 35 Cal.App.4th 1609, 1615, fn. 5 [42 Cal.Rptr.2d 414]; *Passanisi v. Merit-McBride Realtors Inc., supra,* 190 Cal.App.3d at p. 1504; *Mortgage Guarantee Co. v. Sampsell, supra,* 51 Cal.App.2d at p. 186.) Further, under Code of Civil Procedure section 428.10 (formerly section 438), the right to maintain a counterclaim is not affected by the fact that either party's claim is secured by a mortgage or deed of trust. (Former § 438, as amended by Stats. 1927, ch. 813, § 1, p. 1620; Cal. Law Revision Com. com., 1971 Repeals, 14A West's Ann. Code Civ. Proc. (1973 ed.) §§ 437d to 444, p. 506.) [FN4] For example, the Supreme Court has held a *debtor* can set off an existing claim against the creditor in response to a nonjudicial foreclosure proceeding. (*Hauger v. Gates* (1954) 42 Cal.2d 752, 755-756 [269 P.2d 609].) When the *debtor* asserts the right to a setoff, the antideficiency statutes are not implicated. (*Aplanalp v. Forte, supra,* 225 Cal.App.3d at p. 617.) However, the present case does not involve an effort by the debtor to set off a debt.

FN4 A court has the power, independent of

64 Cal.App.4th 502                                                                                            Page 11
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843
**64 Cal.App.4th 502**

any statute, to set off one judgment against another. (*Haskins v. Jordan* (1898) 123 Cal. 157, 160 [55 P. 786].) That power rests upon the court's general jurisdiction.(*Ibid.*) Further, a court may proceed on a motion to set off judgments. (*Coonan v. Loewenthal* (1905) 147 Cal. 218, 221 [81 P. 527].)

(7a) In order to assert a setoff, cross-demands for money must exist between the parties. (§ 431.70; *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 743-744 [38 Cal.Rptr.2d 650, 889 P.2d 970]; *Harrison v. Adams* (1942) 20 Cal.2d 646, 648-649 [128 P.2d 9].) [FN5] The right of setoff arises when two parties are mutually debtor and creditor to each other.(*Ibid.*) The **\*519** Supreme Court has held: "[The right to a setoff is] founded on the equitable principle that 'either party to a transaction involving mutual debts and credits can strike a balance, holding himself owing or entitled only to the net difference, ...' [Citation.]" (*Granberry v. Islay Investments, supra,* 9 Cal.4th at p. 744.)The Supreme Court has also held: "[I]t is well settled that a court of equity will compel a setoff when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered." (*Harrison v. Adams, supra,* 20 Cal.2d at pp. 648-649; § 431.70.) As the Supreme Court explained in *Jess v. Herrmann* (1979) 26 Cal.3d 131, 137 [161 Cal.Rptr. 87, 604 P.2d 208], in the ordinary setoff circumstances, "... a setoff procedure simply eliminates a superfluous exchange of money between the parties," and "may operate to preclude an unfair distribution of loss if one of the parties is totally insolvent or is unable to pay a portion of the judgment against him."

FN5 Section 431.70 provides: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated [for] so far as they equal each other, ..." The Supreme Court has repeatedly held that section 431.70 "does not create a substantive right to raise setoff as a defense to a claim for monetary relief, but merely describes the procedures to be followed in raising this defense." (*Granberry v. Islay Investments, supra,* 9 Cal.4th at p. 744, citing *Kruger v. Wells Fargo Bank, supra,* 11 Cal.3d at p. 362, and *Hauger v. Gates, supra,* 42 Cal.3d at p. 755.) Former section 440, now section 431.70, partially codified the common law equitable principle of setoff (*Kruger v. Wells Fargo Bank, supra,* 11 Cal.3d at p. 360) and "establishe[d] a procedure for asserting such a setoff under the code pleading system of California." (*Id.* at p. 362.)

We have not found any case in which a creditor was allowed to foreclose upon security and then offset a judgment owed by it to the debtor against the remaining indebtedness except where a deficiency judgment was lawfully entered. In *Bagdasarian v. Gragnon* (1948) 31 Cal.2d 744, 763 [192 P.2d 935], a creditor judicially foreclosed a chattel mortgage and recovered a deficiency judgment. The creditor was permitted an offset against the deficiency judgment for fraud damages awarded in favor of the debtor. In *Coonan v. Loewenthal, supra,* 147 Cal. at pages 219-220, a surety foreclosed upon several mortgages given as security against loss by reason of his suretyship and recovered a deficiency judgment. The surety was allowed to set off against the deficiency judgment a judgment in favor of his debtor for services rendered as an attorney. (*Id.* at p. 227.)The Supreme Court noted: "At the time the motion to set off was made, and when it was granted, the mortgage security having been exhausted, the amount of setoff which [the surety] was entitled to claim against the [debtor's] judgment had been determined by the deficiency judgment in his favor, and the only question before the [trial] court then was the right to set off judgment against judgment. [¶] ... [I]n the case at bar, there was no attempt to set off a judgment against the mortgage indebtedness, but to set off a deficiency judgment after the mortgage had been foreclosed and the deficiency **\*520** ascertained and docketed at the time the motion to set off was made." (*Id.* at p. 226.)

The converse of the present situation was at issue in *Passanisi v. Merit-McBride Realtors Inc., supra,* 190 Cal.App.3d at pages 1504-1512.In that case, a home equity loan was secured by a second trust deed. The creditor initiated nonjudicial foreclosure proceedings. The debtors sought unsuccessfully to enjoin the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

64 Cal.App.4th 502                                                                                    Page 12
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843
**64 Cal.App.4th 502**

foreclosure sale. The creditor was awarded its costs and attorney's fees incurred in defending the debtors' action for injunctive relief. The creditor foreclosed. The foreclosure sale resulted in a surplus of funds. In other words, the creditor's bid exceeded the debt. The court held the debtors were entitled to the surplus. (*Id.* at p. 1504.)Further, the debtors were entitled to offset the surplus from the proceeds of the foreclosure sale against the judgment for attorney's fees and costs.(*Id.* at p. 1512.)The Court of Appeal stated: "Our conclusion is that the record establishes that the proceeds from the trustee's sale were sufficient to satisfy the outstanding secured obligation and to contribute to some extent to the satisfaction of the outstanding judgment. Under the rule of offset, either party to a transaction involving mutual debts can strike a balance, holding himself owing or entitled to only the net difference. [Citations.] Plaintiffs are entitled to offset the surplus from the proceeds of the trustee's sale against the judgment for attorney's fees and costs and to regard the judgment as satisfied to the extent of the surplus." (*Ibid.*) In *Passanisi,* unlike the present case, there were mutual debts. The creditor owed the debtors the surplus from the foreclosure sale. The debtors were liable to the creditor on the judgment for attorney's fees and costs.

(8a) In the present case, no mutual obligations existed between the parties. Having foreclosed on a purchase money trust deed, defendants did not obtain and had no right to secure a deficiency judgment. (§ 580b; *Ghirardo v. Antonioli, supra,*14 Cal.4th at p. 49.)Following foreclosure, defendants were left with an unsecured, unenforceable claim for the balance due on the promissory note. They had no recourse beyond the security. (§ 580b; *American Sav. & Loan Assn. v. Leeds, supra,*68 Cal.2d at p. 614, fn. 2; *Roseleaf Corp. v. Chierighino, supra,*59 Cal.2d at p. 42; *Brown v. Jensen, supra,*41 Cal.2d at pp. 197-199; *Mortgage Guarantee Co. v. Sampsell, supra,*51 Cal.App.2d at p. 185.)Simply put, following the foreclosure, defendants remained indebted to plaintiffs on the judgment for attorney's fees and costs; however, plaintiffs had no legally enforceable obligation to defendants. Defendants had no right to recover against plaintiffs for any deficiency remaining after the foreclosure sale. Absent mutual obligations, there was no basis for ordering a setoff. (§ 431.70; *Granberry v. Islay Investments, supra,*9 Cal.4th at p. 744; *Harrison v. Adams, supra,*20 Cal.2d at pp. 648-649.)*521

We do not mean to suggest that a claim always must be reduced to a judgment before it will be allowed as a setoff. (7b) The law recognizes that "[t]he fact that [a] demand .... has not been reduced to judgment is no obstacle to its allowance as a setoff against a judgment." (*Harrison v. Adams, supra,*20 Cal.2d at p. 649; *Machado v. Borges* (1915) 170 Cal. 501, 502 [150 P. 351].) (8b) Rather, the point is that defendants owed plaintiffs an enforceable debt of over $300,000. At the same time, plaintiffs did not owe defendants an enforceable debt. Plaintiffs' so-called $2 million debt is simply an unenforceable deficiency. If the $2 million debt were enforceable against plaintiffs, defendants would be in possession of a deficiency judgment. The absence of a deficiency judgment against plaintiffs under the circumstances of this case simply reflects the fact that defendants, by law, cannot recover such from plaintiffs.

Defendants point out "by analogy" that section 431.70 expressly permits a debt otherwise barred by the statute of limitations to be used as a setoff. They contend: "There is nothing in the nature of the debt owed by [plaintiffs] which compels a different treatment." However, section 431.70 expressly applies only to cross-demands for money where the statute of limitations has run on a demand or the time limit on enforceability has expired. (§ 431.70; Legis. Committee com., Senate 1971 Addition, 14A West's Ann. Code Civ. Proc. (1973 ed.) § 431.70, p. 413, and Cal. Law Revision Com. com., 1982 Amendment, 14A West's Ann. Code Civ. Proc., § 431.70 (1998 pocket supp.) p. 75.) Neither issue, a statute of limitations or enforceability limits, is involved here. Therefore, section 431.70 has no bearing on this case. Further, the debts addressed in section 431.70 would be enforceable but for the fact the statute of limitations or time limit on enforceability had run. Here, the remaining indebtedness is unenforceable under section 580b regardless of any time limits.

G. *Sanctions* [FN*]

FN* See footnote, *ante,* page 502.

. . . . . . . . . . .

IV. Disposition

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

64 Cal.App.4th 502                                                                                           Page 13
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843
**64 Cal.App.4th 502**

The order granting an equitable setoff is reversed. All parties are to bear their own costs on appeal apart from sums imposed as sanctions. Sanctions are imposed, jointly and severally, against plaintiffs Ben Zion Birman, Israel Birman, and Switch Construction Co., Inc., and their attorney, Matthew H. Tambor, payable to defendants in the sum of $2,500. Sanctions are imposed *522 against plaintiffs, Ben Zion Birman, Israel Birman and Switch Construction Co., Inc., and their counsel, Matthew H. Tambor, in the amount of $750, payable to the State of California, and are to be paid within 10 days of the date on which this opinion becomes final.

Grignon, J., and Armstrong, J., concurred.
Respondents' petition for review by the Supreme Court was denied August 26, 1998. *523

Cal.App.5.Dist.
Birman v. Loeb
64 Cal.App.4th 502, 75 Cal.Rptr.2d 294, 98 Cal. Daily Op. Serv. 4265, 98 Daily Journal D.A.R. 5843

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.