KURT OSENBAUGH (State Bar No. 106132)
DEBORAH YOON JONES (State Bar No. 178127)
SAYAKA KARITANI (State Bar No. 240122)
**WESTON, BENSHOOF, ROCHEFORT,**
  **RUBALCAVA & MacCUISH LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
kosenbaugh@wbcounsel.com
djones@wbcounsel.com
skaritani@wbcounsel.com

Attorneys for Plaintiff and Counter-Defendant
BP WEST COAST PRODUCTS LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BP WEST COAST PRODUCTS LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>STTN ENTERPRISES, INC., a California Corporation; NAZIM FAQUIRYAN, an individual; SAYED FAQUIRYAN, an individual; and MAGHUL FAQUIRYAN, an individual; and AVA GLOBAL ENTERPRISE, LLC, a California limited liability company,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTION | Case No.: C07 04808 JF<br><br>**REPLY BRIEF IN SUPPORT OF BP WEST COAST PRODUCT LLC'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO THE SECOND AMENDED COMPLAINT**<br><br>[Filed concurrently with Reply Brief re Summary Judgment as to Counterclaim; Declaration of Elizabeth Chang; Additional Declaration of Deborah Yoon Jones; Evidentiary Objections to Declarations of Sayed Faquiryan and John Michael; and Appendix of Authorities.]<br><br>Date:   August 8, 2008 (reserved)<br>Time:   9:00 a.m.<br>Crtm:   4<br><br>Honorable Jeremy Fogel<br><br>Filing Date:   September 17, 2007 |

# **TABLE OF CONTENTS**

**Page**

I. STTN FAILS TO DISPUTE MATERIAL FACTS WITH SIGNIFICANT PROBATIVE EVIDENCE IN OPPOSITION TO BPWCP'S MOTION FOR SUMMARY JUDGMENT ON THE SECOND AMENDED COMPLAINT ........................ 1

    A. STTN's Bald Assertions Lack Evidentiary Support and Should Be Disregarded .................................................................................................. 2

    B. STTN Misrepresents Deposition Testimony ............................................... 4

II. BPWCP IS ENTITLED TO SUMMARY JUDGMENT TO CONFIRM THE PROPER TERMINATION OF THE FRANCHISE UNDER THE PMPA ........................ 5

    A. BPWCP's Termination Can be Determined as Proper as a Matter of Law ................... 5

    B. STTN's Failures Were Not Due to Causes Beyond Its Reasonable Control ................. 6

III. STTN UNSUCCESSFULLY ASSERTS THAT IT EITHER DOES NOT OWE BPWCP FOR GASOLINE DELIVERIES OR HAS BEEN DISCHARGED FROM PAYMENT OBLIGATIONS ........................................................................................ 7

    A. The Doctrine of Setoff Does Not Apply to Excuse STTN's Failure to Pay for Gasoline Deliveries .................................................................................. 8

    B. The Payment Plan Agreement is Not an "Accord" ........................................ 9

    C. STTN Breached the Payment Plan Agreement ............................................. 11

IV. BPWCP'S NOTICE OF TERMINATION WAS PROPER ........................................ 12

    A. The Timing of the Notice of Termination Was Proper Under the PMPA ................ 12

    B. The Content of the Notice of Termination Was Sufficient Under the PMPA ............ 13

V. BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON ALL OTHER CAUSES OF ACTION IN THE SECOND AMENDED COMPLAINT ........................................ 13

VI. CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Abjo Motors, Inc. v. Delray Shell Serv. Center*
  (S.D. Fla. 1994) 856 F.Supp. 656 ................................................................................ 6-7

*Alliance Mortg. Co. v. Rothwell*
  (1995) 10 Cal.4th 1226 ........................................................................................... 14

*Ball v. Johanns*
  (E.D. Cal. Jan. 29, 2008) 2008 WL269069 ................................................................ 15

*Birman v. Loeb*
  (1998) 64 Cal.App.4th 502 ........................................................................................ 9

*Brown v. Am. Petrofina Marketing, Inc.*
  (M.D. Fla. 1983) 555 F.Supp. 1327 .......................................................................... 13

*California Petroleum Dist. v. Chevron U.S.A.*
  (E.D.N.Y. 1984) 589 F.Supp. 282 .............................................................................. 7

*Cantrell v. Exxon Co. U.S.A.*
  (D.C. Tenn. 1983) 574 F.Supp. 313 ............................................................................ 7

*Careau & Co. v. Security Pacific Business Credit, Inc.*
  (1990) 222 Cal.App.3d 1371 .................................................................................... 14

*Charter Marketing Co. v. Burgin*
  (D. Conn. 1989) 1989 U.S. District Lexis 18393 ........................................................ 6

*Chevron U.S.A., Inc. v. El-Khoury*
  (9th Cir. 2002) 285 F.3d 1159 ................................................................................... 5

*Conderback, Inc. v. Standard Oil Co. of Cal., Western Operations*
  (1966) 239 Cal.App.2d 664 ..................................................................................... 10

*F.D.I.C. v. Craft*
  (9th Cir. 1998) 157 F.3d 69 ....................................................................................... 9

*Ferro v. Citizens Nat'l Trust & Savings Bank of Los Angeles*
  (1955) 44 Cal.2d 401 ............................................................................................... 15

*Fotinos v. Amoco Oil Co.*
  (Feb. 25, 1985) CCH Business Franchise Guide ¶ 8326 ........................................... 13

*Gasaway v. Northwestern Mut. Life Ins. Co.*
  (9th Cir. 1994) 26 F.3d 957 ....................................................................................... 1

*Harrison v. Adams*
  (1942) 20 Cal.2d 646 ................................................................................................. 8

*Hauger v. Gates*
(1954) 42 Cal.2d 752 ................................................................................................8

*In re Smith d/b/a Sam's Service Center*
(1988) CCH BFG ¶ 9264 .........................................................................................7

*Jackson v. Kerr-McGee Refining Corp.*
(1989) 1989 U.S. Dist. LEXIS 15266 ......................................................................7

*Loomis v. Gulf Oil Corp.*
(M.D. Fla. 1983) 567 F. Supp. 591 ....................................................................5, 12

*Marathon Petroleum Co. v. Pendleton*
(6th Cir. 1989) 889 F.2d 1509 ............................................................................6, 12

*McDaniel v. City and County of San Francisco*
(1968) 259 Cal.App.2d 356 ......................................................................................8

*Mobil Oil Guam, Inc. v. Lee*
(Guam Terr. 2004) 2004 WL 1305314 ....................................................................7

*Moving Picture Mach. Operators Union Local No. 162 v. Galsgow Theaters, Inc.*
(1970) 6 Cal.App.3d 395 ........................................................................................10

*Murchison v. Murchison*
(1963) 219 Cal.App.2d 600 ......................................................................................8

*Murphy v. F.D.I.C.*
(9th Cir. 1994) 38 F.3d 1490 ....................................................................................9

*Potter v. Pacific Coast Lumber Co. of California*
(1951) 37 Cal.2d 594 ..............................................................................................11

*Rivera v. National R.R. Passenger Corp.*
(9th Cir. 2003) 331 F.3d 1074 ............................................................................. 1-2

*Roehm Distributing Co. v. Burgermeister Brewing Corp.*
(1961) 196 Cal.App.2d 678 ......................................................................................2

*Shell Oil Company v. Kozub*
(N.D. Ohio 1983) 574 F. Supp. 114 .........................................................................6

*Smoot v. Mobil Oil Corporation*
(D. Mass. 1989) 722 F. Supp. 849 .....................................................................6, 12

*Talbert-Siebert Ent., Inc. v. Shell Oil Co.*
(M.D. La. May 8, 1992) 1992 WL 119916 ..............................................................7

*Williams v. Pratt*
(1909) 10 Cal.App. 625 ............................................................................................8

*Zandi-Talaie v. BP West Coast Products LLC*
 (D.Nev. June 4, 2004) CV-N-03-0370-LRH ...................................................................7

**STATUTES**

15 U.S.C. § 2804(b)(b)(1)(A) ...........................................................................................12

**OTHER AUTHORITIES**

4 *Miller & Starr Cal. Real Estate* (3rd Ed. 2000) .............................................................14

## I. STTN FAILS TO DISPUTE MATERIAL FACTS WITH SIGNIFICANT PROBATIVE EVIDENCE IN OPPOSITION TO BPWCP'S MOTION FOR SUMMARY JUDGMENT ON THE SECOND AMENDED COMPLAINT

In its moving papers, BPWCP provides indisputable evidence that STTN: (1) had an ongoing delinquent gasoline balance from January 2007 through September 2007 and owed BPWCP over $126,000 worth of gasoline product as of the franchise termination; (2) taped off dispensers from customers for more than 7 consecutive days and therefore failed to operate the station as required under the franchise agreements; (3) failed to make all grades of gasoline available for sale as required by the Gasoline Agreement; and (4) failed to pay back $150,000 in loan amounts disbursed by BPWCP as required by the Store Loan Agreement after the franchise terminated. Thus the facts are not disputed and the applicable statutory and legal authority support BPWCP's summary judgment motion. In short, STTN's breaches are *per se* reasonable grounds for termination under both the franchise agreements and the governing PMPA. It is also undisputed that all loan amounts automatically became due and payable upon the franchise termination. STTN should not be allowed to take BPWCP's money in the form of loan funds and unpaid for gasoline deliveries, use those monies to upgrade its Station and earn 100% profit on the gasoline, and then simply rebrand its Station without repayment to BPWCP. Summary judgment on BPWCP's Second Amended Complaint is warranted.

While STTN does its best to try and muddy the waters and sow confusion for the Court through unsupported assertions and conclusory allegations, STTN ultimately fails to meet the burden necessary to defeat BPWCP's Motion. STTN had the burden to "set forth specific facts showing that there is a genuine issue for trial." *Rivera v. National R.R. Passenger Corp.* (9th Cir. 2003) 331 F.3d 1074, 1078. In order to show a genuine issue for trial, STTN should have introduced "significant probative evidence tending to support" its positions. *Id.* (citations omitted.) Indeed, mere allegations or denials or "[c]onclusory allegations unsupported by factual data cannot defeat summary judgment." *Id.*; and *Gasaway v. Northwestern Mut. Life Ins. Co.* (9th Cir. 1994) 26 F.3d 957, 690. In *Rivera*, for example, the plaintiff relied only on his own conclusory statements in his complaint and declaration to support his claim for wrongful termination. *Rivera, supra,* 331 F.3d at

1078. The *Rivera* court held that because plaintiff failed to offer any independent evidence to create a genuine issue of fact, plaintiff's own conclusory allegations were insufficient to defeat a motion for summary judgment. *Id.*; see also *Roehm Distributing Co. v. Burgermeister Brewing Corp.* (1961) 196 Cal.App.2d 678, 682 (plaintiff's bald assertion without any evidentiary facts that he was under economic duress at time contracts were signed could not be afforded any evidentiary weight on summary judgment).

Other than the declaration signed by Sayed Faquiryan (which does not attach a single supporting document) and a declaration by STTN's counsel which attaches deposition testimony that is blatantly misrepresented throughout the Opposition, STTN presents no other evidence to properly rebut any of the arguments set forth in BPWCP's summary judgment motion as to the Second Amended Complaint. Neither of these declarations provide the requisite "significant probative evidence" necessary to raise a triable issue of fact or directly refute BPWCP's claims.

### A. STTN's Bald Assertions Lack Evidentiary Support and Should Be Disregarded

Throughout its Opposition, STTN throws about various contentions in an effort to create triable issues of fact. The contentions, however, are backed by nothing more than conclusory statements in Sayed's declaration; no evidentiary support is provided to substantiate Sayed's claims. The most significant of these unsupported statements are as follows:

- STTN claims that it was charged for gasoline loads that were purportedly never delivered to the Station (Opp., p. 7, lns. 2-4) and thus, contends that it was not delinquent in amounts sufficient to justify the franchise termination. But the bottom line is that STTN admits it failed to pay for gasoline. Moreover, STTN fails to present any evidence other than Sayed's declaration to support this claim. BPWCP, on the other hand, presents evidence that the delinquent gasoline balance existed from January 2007 through September 2007. Moreover, in rebuttal to STTN's claims, BPWCP presents herewith an exact accounting of the gasoline deliveries which unequivocally shows that STTN owed BPWCP over $126,000 as of the date of termination [See Elizabeth Y. Chang Declaration ("Chang Decl.") filed concurrently herewith, ¶ 2 and Exh. A];

- STTN contends that it made all the requisite payments under the Payment Plan Agreement (Opp., p. 7, lns. 8-11) and was therefore not in breach of the franchise agreements

(and thus, not subject to termination). Instead of presenting documents (i.e., cancelled checks reflecting payment pursuant to the Payment Plan Agreement), STTN simply alleges that it complied with the Payment Plan Agreement. Furthermore, as discussed in more detail below, closer review of the undisputed facts and BPWCP's accounts reveal that STTN did not make the required payments and breached the Payment Plan Agreement in addition to the other franchise agreements at issue (Chang Decl., ¶ 2 and Exh. A);

- STTN insinuates that it was operating the Station during the more than 7 consecutive days that BPWCP maintains that the Station was not operating and/or did not have all grades of gasoline available for sale. (Opp., p. 14, lns. 8-9.) However, STTN carefully states that certain grades of gasoline were "available for sale" (*Id.*) but does not provide any evidence that the Station was actually operating during the days in question or that gasoline was even sold. STTN also admits that immediately prior to the franchise termination it did not have all grades of gasoline available for sale. (*Id.*) Further, STTN does not dispute that the pumps were cautioned taped off as set forth in BPWCP's moving papers. (MSJ, p. 8). Finally, STTN does dispute the testimony that BPWCP's representative attempted to pump gasoline but was unable to do so.

- STTN contends that all conditions necessary to the disbursement of the Gasoline Loan were met as of March 2007, and as such, BPWCP's failure to disburse funds allegedly caused mechanics liens to be placed on the property and the depletion of working capital necessary to pay for gasoline deliveries. (Opp., p. 4.) Sayed's declaration presents no evidence to support these claims. The only "evidence" to support STTN's contention that all conditions necessary to disburse loans were met are purported cites to deposition testimony; as discussed further below, the testimony does not support this contention. Furthermore, STTN fails to provide the purported mechanics liens (most likely because STTN would have to admit that both mechanics liens and tax liens existed on the property in March 2007 and were caused by its own failures to make necessary payments). STTN also does not present any evidence of the purported lack of working capital, and in fact, STTN admits later in the Opposition that it had the ability to pay off the gasoline delinquencies but did not want to put its money into an escrow account before BPWCP put loan funds into a separate escrow account (Opp., p. 8, ln. 1-2).

3

Given STTN's failure to present adequate evidence to support its factual contentions, BPWCP respectfully requests that the Court disregard these statements and grant BPWCP's motion for summary judgment in its entirety.

### B. STTN Misrepresents Deposition Testimony

Not only does STTN fail to provide any documentary or factual evidence to support its Opposition, STTN also fails to properly and accurately describe deposition testimony. The following summarizes the most blatant misrepresentations:

| Purported Statement | Citation | Actual Testimony |
|---|---|---|
| "All of the conditions to funding the loan were set forth in the CCL." [Opp., p. 4, ln. 14.] | McDonnell Depo., 56:18-5:8 | Indicates the CCL has a list of things that need to be satisfied but does not state that list is exhaustive. |
| By March 9, 2007, all conditions to funding had been met." [Opp., p. 4, lns. 19-20.] | Smith Depo., 11:8-12:14, 14:21-24, 19:20-20:20, 27:11-16, 31:6-21, 32:14-24, 34:10-35:11, 40:3-9, 44:14-45:7, 54:13-17, 55:24-56:7, 58:8-11 | Describes background, job duties; when first became involved with STTN, conditions necessary to fulfill her particular department, credit approval process which differs from funding. |
| "BP, however, refused to fund the loan, alleging that it had to wait for the actual policy of title insurance." | Smith Depo., 45:13-20 | Indicates she does not want to guess as to why BPWCP did not place funds into escrow even though Deed of Trust recorded on March 9. |
| "Even after the liens had cleared, BP held up loan funding while gathering documents that were not conditions to funding. | McDonnell Depo., 134:7-10. | Simply confirms that for 3 months the Deed of Trust was recorded but funds were not released. |
| "BP obtained a waiver of its policy in order to fund the store loan because BP determined that its best chance of earning return on its investment and its profits was to release the store loan funds." | Smith Depo., 99:6-100:19 | Merely confirms that an exception was made to fund only part of the loan and indicates "we were just trying to keep him going." Does not state that reason was to get best chance of earning a return. |
| "Finally, STTN tendered payment through an escrow." | McDonnell Depo., 99:23-100:4 | States that Sayed willing to pay gas balance and came up with payment plan. Does not state that STTN tendered payment through an escrow. |

STTN's misrepresentations concerning the deposition testimony of BPWCP witnesses are completely improper. The Court should admonish STTN and disregard each of these statements in their entirety.

4

1226241.2

REPLY RE MSJ/PARTIAL SJ ON SAC

Thus, from a factual and evidentiary standpoint, STTN fails to meet its burden in opposing BPWCP's summary judgment motion on the Second Amended Complaint. Furthermore, as discussed below, STTN's legal arguments are unpersuasive and BPWCP's Motion should be granted in its entirety.

## II. BPWCP IS ENTITLED TO SUMMARY JUDGMENT TO CONFIRM THE PROPER TERMINATION OF THE FRANCHISE UNDER THE PMPA

### A. BPWCP's Termination Can be Determined as Proper as a Matter of Law

STTN argues that BPWCP is precluded from obtaining summary judgment on the PMPA termination claim on grounds that, under *Chevron U.S.A., Inc. v. El-Khoury* (9th Cir. 2002) 285 F.3d 1159, 1163, the determination involves a question of fact. However, the *El-Khoury* case does not stand for the proposition that in every case, whether or not there was a "failure" that was material to the franchise relationship for termination, is a question of fact. See *id.* Rather, the *El-Khoury* court held that: "[w]hether a violation is a 'failure' that is so serious to warrant termination <u>can</u> be a question of fact for trial," and goes on to note that "[n]ot every case necessarily requires a trial to settle the question of materiality. We can imagine a case in which the materiality of a particular violation is obvious." *Id.* at 1164. In *El-Khoury*, the service station franchisee was terminated for underpayment of taxes, even though <u>there was no specific provision in the agreement requiring tax compliance</u>. *Id.* at 1161. The *El-Khoury* court held that the evidence did not support a finding as a matter of law on summary judgment that the "failure to be tax compliant" was important enough to be an event under 2802(c)(11) for which termination was proper. The payment for gasoline deliveries requirement and store operation requirements at issue here, on the other hand, are specifically enumerated in BPWCP's franchise agreement. [Gasoline Agreement, Art. 2 ("Buyer agrees to accept and pay for such Product as BPWCP delivers to the Premises.") and Art. 6 ("Buyer will pay for Product prior to its delivery in U.S. dollars."); Exh. A to Reeder Decl.]

Furthermore, as discussed at length in BPWCP's moving papers, summary judgment in favor of a franchisor based upon a franchisee's failures to pay for gasoline and operate the franchise are *per se* reasonable and well-supported by applicable legal authority. See, e.g., *Loomis v. Gulf Oil Corp.* (M.D. Fla. 1983) 567 F. Supp. 591, 598 (failure to pay $56,233.52 for gasoline is a

5

default in the franchise agreements entitling franchisor to summary judgment); *Shell Oil Company v. Kozub* (N.D. Ohio 1983) 574 F. Supp. 114, 118 (in accordance with Section 2802(c)(8), of the franchisee's failure to pay for gasoline entitles the franchisor to summary judgment.); *Marathon Petroleum Co. v. Pendleton* (6th Cir. 1989) 889 F.2d 1509, 1510 (affirming summary judgment for the franchisor based on an overdue balance of $3,347.93, and missed payments on a note for other funds owned); *Smoot v. Mobil Oil Corporation* (D. Mass. 1989) 722 F. Supp. 849, 855 ("[b]ecause the fundamental purpose of any Mobil franchise is to sell Mobil products," the court granted franchisor's motion for summary judgment based on franchisee's failure to sell gas for seven days); and *Charter Marketing Co. v. Burgin* (D. Conn. 1989) 1989 U.S. District Lexis 18393, CCH Franchise Business Guide Paragraph 9504 (franchisor's motion for summary judgment was granted based on the franchisee's failure to operate the Station for seven days or pay rent). Notably, STTN did not distinguish or even address any of these cases in its Opposition.

Accordingly, this Court can and should summarily adjudicate that BPWCP's termination of STTN's franchise was proper under the PMPA.

### B. STTN's Failures Were Not Due to Causes Beyond Its Reasonable Control

STTN also seeks to avoid summary judgment on the franchise termination claim by alleging that its failure to pay for gasoline, failure to operate the Station, and failure to make all grades of gasoline available for sale resulted from causes beyond its reasonable control. Indeed, STTN blames its failures on the lack of working capital allegedly caused by BPWCP's refusal to disburse loan proceeds. Notwithstanding the fact that STTN fails to produce any evidence - - either in opposition to the summary judgment or in response to BPWCP's discovery requests - - of the purported lack of working capital, STTN's financial instabilities are not, as a matter of law, considered a "cause beyond the franchisee's reasonable control" which would preclude BPWCP from properly terminating the franchise.

In *Abjo Motors, Inc. v. Delray Shell Serv. Center* (S.D. Fla. 1994) 856 F.Supp. 656, for example, the franchisor terminated the franchisee for failure to pay sums due. The franchisee attempted to argue that non-payment was due to reasons beyond his control, but the *Abjo* court held that "a franchisee's lack of funds to pay rent due, for whatever reason, simply cannot be

characterized as a cause beyond the franchisee's reasonable control." *Id.* at 658; citing *California Petroleum Dist. v. Chevron U.S.A., Inc.* (E.D.N.Y. 1984) 589 F.Supp. 282, 288 (non-payment as an express ground for termination "destroys any contention that nonpayment should be construed as a ground beyond the franchisee's reasonable control"); see also *Talbert-Siebert Ent., Inc. v. Shell Oil Co.* (M.D. La. May 8, 1992) 1992 WL 119916 (economic stress does not excuse failure to operate the station for a period greater than seven days even if franchisee's purported lack of money was due to franchisor's breach of the oral contract to covert the station to a convenience location); *Zandi-Talaie v. BP West Coast Products LLC* (D. Nev. June 4, 2004) CV-N-03-0370-LRH (franchisee's failure to operate the premises for seven consecutive days was not due to a cause beyond the reasonable control of the franchisee); *Mobil Oil Guam, Inc. v. Lee* (Guam Terr. 2004) 2004 WL 1305314 (franchisee's failure to pay sums due franchisor were not beyond the reasonable control of franchisee despite franchisor's furnishing of incorrect information on monthly account statements; franchisee was knowledgeable of the facts and had an affirmative duty to pay amounts due to franchisor); *In re Smith d/b/a Sam's Service Center* (1988) CCH BFG ¶ 9264 (lack of funds not a reason beyond franchisee's control and termination proper when franchisee blocked pump islands and failed to operate); *Jackson v. Kerr-McGee Refining Corp.* (1989) 1989 U.S. Dist. LEXIS 15266, at *1 (franchisee's failure to set aside funds to pay accruing taxes which had inadvertently not been billed by franchisor was not a failure beyond franchisee's reasonable control); and *Cantrell v. Exxon Co. U.S.A.* (D.C. Tenn. 1983) 574 F.Supp. 313 (hard economic times did not excuse franchisee's failure to timely pay rent).

Accordingly, STTN cannot excuse its failures to pay all sums due to BPWCP and properly operate the franchise by virtue of its purported lack of working capital. BPWCP's termination under the PMPA was warranted and legally proper.

### III. STTN UNSUCCESSFULLY ASSERTS THAT IT EITHER DOES NOT OWE BPWCP FOR GASOLINE DELIVERIES OR HAS BEEN DISCHARGED FROM PAYMENT OBLIGATIONS

As discussed summarily above and more fully in its moving papers, BPWCP's termination of STTN's franchise was *per se* reasonable under the PMPA and controlling authority

1  given STTN's admitted and undeniable failure to pay the over $126,000 in sums due for gasoline
2  delivered to the Station. [See MSJ at pp. 13-14.] Although STTN concedes that it failed to pay for
3  the gasoline deliveries (Opp., p. 4, lns. 11-12, and Sayed Decl., ¶ 7), STTN relies upon inapplicable
4  legal theories and insufficient "facts" to claim that it does not owe BPWCP for the gasoline or was
5  discharged of any obligation to pay for the gasoline. However, STTN's arguments fail as a matter of
6  law.

A.  **The Doctrine of Setoff Does Not Apply to Excuse STTN's Failure to Pay for Gasoline Deliveries**

STTN contends that it had a right to "setoff" the over $126,000 it owed to BPWCP at the time of the franchise termination with the amounts of the proposed Gasoline Loan ($250,000). Not only is the doctrine of "setoff" illogical in the context of this case, STTN's cited authorities are distinguishable.

Each of the cases cited in STTN's Opposition involve parties who are already indebted to one another. STTN's lead case, a 1909 decision, involved existing debts owed by the respective parties. *Williams v. Pratt* (1909) 10 Cal.App. 625. In addition, the *Williams* decision does not stand for the proposition that "where a debtor on a promissory note secured by a deed of trust was owed more by the payee than was owing on the promissory note, there was no default under the promissory note" as asserted in the Opposition (at 11:16-19). Moreover, it is only in the concurring opinion that a discussion of "setoff" occurs, however, that discussion is irrelevant to the facts here. *Id.* at 632 (concurring opinion).

STTN's other cited authority is similarly inapposite. *See, e.g., Hauger v. Gates* (1954) 42 Cal.2d 752, 753-55 (plaintiffs' existing debt to defendant on promissory note could be offset by the value of personal property that is owed by the defendants to plaintiffs); *Murchison v. Murchison* (1963) 219 Cal.App.2d 600, 602-605 (husband's obligations to pay monthly payments to ex-wife could be offset by tax contributions paid by husband for tax deficiency on joint return); *McDaniel v. City and County of San Francisco* (1968) 259 Cal.App.2d 356, 359-60, 365 (city entitled to offset money it paid out to retired employee's former wife against any back wages claimed by retired employee); *Harrison v. Adams* (1942) 20 Cal.2d 646, 647-49 (judgment debtor can have

his judgment amount offset against judgment in which he is a creditor); *Birman v. Loeb* (1998) 64 Cal.App.4th 502, 506-14 (defendants not allowed to setoff money judgment, costs and attorneys fees owed to plaintiffs in connection with fraud and failure to disclose case against deficiency remaining after foreclosure sale); *Murphy v. F.D.I.C.* (9th Cir. 1994) 38 F.3d 1490, 1504 (former bank director allowed to setoff $100,000 owed to bank on promissory note against judgment amount owed by bank to him); *F.D.I.C. v. Craft* (9th Cir. 1998) 157 F.3d 69 (setoff available where a person who is both a creditor and debtor to an insolvent bank).

None of the cases cited in STTN's Opposition concern an already indebted party who claims a right to offset the debt with additional debt that it will incur from the other party to whom it is already indebted. Here, STTN became indebted to BPWCP for gasoline deliveries beginning in January 2007 and through September 2007. [MSJ, pp. 7-8.] STTN now absurdly argues that BPWCP was essentially indebted to STTN by virtue of agreeing to loan monies for the franchise. But BPWCP had no obligation to disburse the funds contemplated by the Gasoline Loan once STTN started failing to pay for gasoline deliveries in breach of the Gasoline Agreement. Paragraph 2.2(f) of the Gasoline Loan Agreement states that "[i]n no event shall Lender be required to make any Disbursement if . . . [u]nder ***any of the Loan Documents***, a default or Event of Default (as defined in that document) has occurred and is continuing, or an event has occurred that with notice or the passage of time could become a default or Event of Default." [Emphasis added.] [Reeder Decl., Exh. K, ¶ 2.2(f).] The Gasoline Loan Agreement lists the Gasoline Agreement, as one of the "Loan Documents." [Reeder Decl., Exh. K (Exh. C thereto).] In other words, BPWCP had no obligation to disburse funds from the Gasoline Loan if there was default of the Gasoline Agreement, which occurred here by virtue of STTN's undeniable failure to pay for delivered gasoline. [Reeder Decl., Exhs. A and D at ¶¶ 6 and 17.1(h).] Consequently, the doctrine of setoff is inapplicable to this matter and summary judgment in favor of BPWCP is warranted.

**B.     The Payment Plan Agreement is Not an "Accord"**

STTN also argues that its obligation to pay BPWCP for the gasoline deliveries under the Gasoline Agreement was "suspended" by virtue of the Payment Plan Agreement on grounds that it is "clearly an accord." (Opp., p. 13, lns. 11-12.)

REPLY RE MSJ/PARTIAL SJ ON SAC

1226241 2

Though STTN has accurately described an accord as an "agreement to accept, *in extinction of an obligation, something different from or less than* that to which the person agreeing to accept is entitled" (Opp., at 13:14-16, emphasis added), STTN misconstrues the legal theory of an "accord" as it applies to the undisputed facts at issue here. By allowing STTN to repay the outstanding gasoline balance in monthly installments, BPWCP never agreed to accept, in extinction of an obligation, something different from what it is entitled; the Payment Plan does not indicate this nor does STTN present any evidence to suggest that BPWCP was willing to accept "something different from or less than" the amounts owed to BPWCP. Indeed, the Payment Plan clearly states that Nazim and Sayed are to make the monthly payments of $30,000, until "total sums of balance due are paid in full per BP credit dept" and "all outstanding balances due to BPWCP, currently, $184,075.50 have been paid." [Reeder Decl., Exh. E.] Moreover, as discussed in STTN's cited authority, *Moving Picture Mach. Operators Union Local No. 162 v. Galsgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, "[f]or the principle of accord and satisfaction to apply there must be a bona fide dispute between the parties." *Id.* at 403 (emphasis added). Here, there was no dispute that the STTN owed money to BPWCP for gasoline deliveries; STTN admitted in the Payment Plan Agreement that a balance, as of May 4, 2007, of $184,075.50 was due BPWCP for unpaid gasoline. [Sayed Depo., at 159:8-11; Exh. 1 to Jones Decl.] STTN should not be allowed turn BPWCP's generous accommodation against it.

Furthermore, STTN's cited authority is factually distinct from this matter. The *Moving Picture* decision, for example, involved an oral agreement which altered the original agreement but was eventually repudiated by one of the parties. The court held the oral agreement was no an accord given the repudiation. *Id.* at 403-04. The other case cited by STTN, *Conderback, Inc. v. Standard Oil Co. of Cal., Western Operations* (1966) 239 Cal.App.2d 664, involved the issue of whether certain invoices and checks constituted a final billing and final payment. The *Conderback* court held that there was no accord and satisfaction because the parties did not agree that the invoice claimed to be the final billing and payment of the same was actually the final billing and final payment. *Id.* Thus, STTN relies upon legal authority that is factually and legally inapposite.

10

Accordingly, the Court can and should determine that the Payment Plan Agreement did not constitute an accord as a matter of law. *See Potter v. Pacific Coast Lumber Co. of California* (1951) 37 Cal.2d 594, 597-603. STTN has no excuse for its failures to pay BPWCP for gasoline deliveries and BPWCP's termination of the franchise was proper.

### C. **STTN Breached the Payment Plan Agreement**

Even if the Payment Plan Agreement is considered to be an accord, STTN admits it failed to make the requisite payments (and still has not paid BPWCP for all the gasoline delivered). Pursuant to the Payment Plan Agreement, STTN agreed to make monthly payments of $30,000 to BPWCP commencing June 20, 2007. [See MSJ at p. 8, lns. 7-11; Exh. E to Reeder Decl.; and Exh. A to Christensen Decl.] Though small payments may have been made at different intervals, Sayed admitted in deposition that he never made any of the payments pursuant to the Payment Plan agreement. [MSJ, p. 8, lns. 13-15.] Furthermore, although the delinquent gasoline balance was reduced from $184,075.50 on May 4, 2007 to $126,394.77 on September 6, 2007, there is still no indication that STTN complied with the Payment Plan Agreement; STTN cleverly tries to round up the numbers but the difference between $184,075.70 and $126,394.77 is $58,075.50 and not $60,000. STTN breached the Payment Plan Agreement based upon the undisputed facts presented in the moving papers.

Moreover, review of the account balances from January 2007 through September 2007 reveals that between May 4, 2007 and July 15, 2007, STTN's payments for gasoline included additional amounts which totaled $28,679.09 for this time period (not the $30,000 called for in the Payment Plan Agreement). [See Chang Decl., ¶ 2 and Exh. A.] Between July 16, 2007 and August 15, 2007, STTN's payments for gasoline included additional amounts which totaled only $15,019.42 for this time period (nearly half of the $30,000 called for in the Payment Plan Agreement). [*Id.*] As of August 24, 2007, the total outstanding balance for gasoline deliveries made to the Station, but not paid for by STTN, was $138,394.77. [*Id.*] Thus, as of August 24, 2007, STTN had only paid $45,680.73 towards reducing the delinquent gasoline balance, and not the "almost" $60,000 that STTN claims to have paid. [*Id.*] STTN was not in compliance with the terms of the Payment Plan Agreement and BPWCP acted properly in terminating STTN's franchise for failure to pay for

11

1  gasoline deliveries.

2  Finally, as already discussed above, to the extent that STTN is now claiming that it was charged for loads that were not delivered (see Opp., p. 7, lns. 2-4), STTN fails to present any documents or sufficiently probative evidence to support its assertion. Accordingly, STTN cannot refute the fact that it failed to pay for over $126,000 worth of gasoline deliveries, STTN does not create a triable issue of fact in this regard, and the Court should grant BPWCP's motion in its entirety.

## IV. BPWCP'S NOTICE OF TERMINATION WAS PROPER

### A. The Timing of the Notice of Termination Was Proper Under the PMPA

Under 15 U.S.C. § 2804(b)(b)(1)(A), the PMPA provides that BPWCP may notify the franchisee "on the earliest date on which furnishing of such notification is reasonably practicable" if it would not be reasonable to furnish notification 90 days prior to the termination. Where there is an "enduring problem with a fundamental aspect of its relationship" with a franchisee, courts have held that it would be "unreasonable to require that problem be tolerated for another ninety days." *Smoot v. Mobil Oil Corp.* (D.Mass. 1989) 722 F. Supp. 849, 855 (accelerated notice permissible for failure to sell gasoline); *Loomis v. Gulf Oil Corp.* (M.D. Fla. 1983) 567 F. Supp. 591, 597 (accelerated notice permissible for deficiency in payment of over $56,000); and *Marathon Petroleum Co. v. Pendleton* (6th Cir. 1989) 889 F.2d 1509, 1510 and 1512-1513 (summary judgment affirmed for franchisor based on overdue balance of $3,347 and missed payments on a note for other funds owed, accelerated notice permissible).

By September 5, 2007, STTN had failed to timely pay BPWCP for gasoline products in a timely manner, incurring an outstanding balance of over $126,000, for gasoline product deliveries that are due and payable at the time of delivery. [Reeder Decl., ¶¶ 8-9 and Exh. F; Christensen Decl., ¶ 8; Sayed Depo., at 166:3-13 and Exh. P.] Moreover, as discussed above, the gasoline delinquencies had been tolerated by BPWCP since at least January 2007. In addition, STTN had persistently failed to comply with its obligation to have ARCO-branded gasoline available for sale, despite many warnings that STTN's franchise would be terminated if he did not do so. [Reeder Decl., ¶¶ 10-11 and Exh. F; Christensen Decl., ¶¶ 10-12 and Exh. B; Sayed Depo.,

Exh. P.] Accordingly, it was not reasonable for BPWCP to provide any additional notice to STTN; immediate termination was proper.

### B. The Content of the Notice of Termination Was Sufficient Under the PMPA

Under Section 2804(c) *et seq.* of the PMPA, Notices of Termination of a gasoline station franchise: (1) shall be in writing; (2) shall be posted by certified mail or personally delivered to the franchisee; (3) shall contain a statement of intention to terminate the relationship; (4) shall contain the date on which such termination takes effect; and (5) shall contain a summary statement of the PMPA.

STTN contends that BPWCP's Notice of Termination was defective because it did not reference the One-Year Gasoline Agreement dated October 12, 2006. However, BPWCP's failure to reference the One Year Gasoline Agreement (which is nearly identical to the 20-year Gasoline Agreement) does not render the Notice of Termination defective. Indeed, courts have rejected strict compliance of the PMPA's notice requirements where, after "looking at the totality of the circumstances and all the facts known by the franchisee in connection with the notice given by the franchisor," the franchisees have been provided with requisite notice and have not been prejudiced. *See Fotinos v. Amoco Oil Co.* (February 25, 1985) CCH Business Franchise Guide P 8326 (where date referenced in notice of determination was incorrect but parties were aware of the correct date) (a copy of which is submitted herewith in the Appendix of Non-Federal Authority); and *Brown v. Am. Petrofina Marketing, Inc.* (M.D. Fla. 1983) 555 F.Supp. 1327, 1334-1335 (where plaintiffs had actual knowledge of substantially all the information required by Section 2802(c)(4) despite failure to provide written notice). Here, BPWCP's Notice of Termination contained all the requisite information to comply with the PMPA.

### V. BPWCP IS ENTITLED TO SUMMARY JUDGMENT ON ALL OTHER CAUSES OF ACTION IN THE SECOND AMENDED COMPLAINT

As discussed above, BPWCP has established - - and STTN has failed to properly show otherwise - - that the termination of the franchise relationship with STTN was proper under the PMPA given STTN's failure to pay for delinquent gasoline balances, failure to operate the Station for more than 7 consecutive days, and failure to make all grades of gasoline available for sale. It

13

logically follows that summary judgment in BPWCP's favor on the remaining related eight causes of action for breaches of the franchise agreements and guaranties, goods sold and delivered, unjust enrichment, breach of the Store Loan Agreement and related guaranties, and judicial foreclosure is proper. Furthermore, STTN fails to present any other persuasive arguments in opposition of BPWCP's Motion on these other causes of action, as follows:

- STTN contends that BPWCP allegedly breached the various franchise and loan agreements by refusing to disburse the Gasoline Loan funds even though all conditions to such disbursal were supposedly met. (Opp., p. 18.) Given the undisputed gasoline balance delinquencies and STTN's inability to present any evidence that conditions were met (citations to deposition testimony that do not stand for that proposition should be disregarded), STTN fails to establish that BPWCP breached franchise and loan agreements by refusing to disburse the Gasoline Loan funds.

- STTN argues in defense of the breach of contract claims that BPWCP breached its obligations to fund the Gasoline Loan given BPWCP's recording of the related Deed of Trust. A deed of trust simply secures some debt or obligation and entitles the lender to reach some asset of the debtor if the note is not paid. *See* 4 *Miller & Starr Cal. Real Estate* (3rd Ed. 2000) § 10:10, p. 41; and *Alliance Mortg. Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235. BPWCP's recording of the Deed of Trust did not automatically require BPWCP to disburse the funds to STTN and STTN fails to present any factual or legal authority to support its claim.

- STTN argues that BPWCP breached the implied covenant of good faith and fair dealing that is implied in each contract and relies entirely on *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393. Given STTN's proclamation that "[t]he allegations described by the *Careau & Co.* court are the same allegations contained in STTN's Counterclaim" (Opp, at 20:22-23), STTN should have no opposition to the Court to apply the ruling in *Careau*. The *Careau* court concluded that the plaintiff's allegations were not sufficient to state any cause of action for a breach of the implied covenant of good faith and found their claim to be duplicative of their two contract causes of action. *Id.* at 1392.

- STTN asserts that BPWCP is not entitled to damages under the common count for goods sold and delivered because of the general rule that a common count for goods sold and

14

delivered will not lie where express binding agreements exist and define the parties' rights. STTN does, however, recognize that an exception exists where the seller has performed its part and nothing remains to be performed but payment under the contract. (Opp., p. 23, lns. 9-12, citing *Ferro v. Citizens Nat'l Trust & Savings Bank of Los Angeles* (1955) 44 Cal.2d 401.) BPWCP has fully performed on its contract, as discussed more fully in its Motion, and therefore the exception applies. BPWCP can obtain summary judgment on this cause of action.

- STTN alleges that BPWCP is not entitled to maintain an unjust enrichment action simultaneously with a contract claim. However, according to a recent decision, *Ball v. Johanns* (E.D. Cal. Jan. 29, 2008) 2008 WL269069, at * 3, a party's claim for unjust enrichment should "not be barred despite the simultaneous claim for breach of contract."

Without more, STTN does not successfully oppose BPWCP's summary judgment motion on the Second Amended Complaint.

## VI. CONCLUSION

Based on the foregoing and the moving papers,[1] BPWCP respectfully requests that the Court not be fooled by STTN's blatant misrepresentations, bald assertions, and inapplicable legal authority presented in Opposition to the Motion, and grant summary judgment in BPWCP's favor, in its entirety. After all, BPWCP should not be forced to continue doing business with, or loan money to, a franchisee who failed to pay for gasoline delivered and operate its franchise business.

DATED: July 25, 2008

Respectfully submitted,

KURT OSENBAUGH
DEBORAH YOON JONES
SAYAKA KARITANI
**WESTON, BENSHOOF, ROCHEFORT,
RUBALCAVA & MacCUISH LLP**

_____
Deborah Yoon Jones
Attorneys for Plaintiff and Counter-Defendant
BP WEST COAST PRODUCTS LLC

---

[1] BPWCP also respectfully requests that this Court consider the concurrently filed Reply Brief in support of BPWCP's Summary Judgment as to the Counterclaim as there are overlapping, duplicative issues involved.

15

REPLY RE MSJ/PARTIAL SJ ON SAC

1226241.2