1  KURT OSENBAUGH (State Bar No. 106132)
   DEBORAH YOON JONES (State Bar No. 178127)
2  SAYAKA KARITANI (State Bar No. 240122)
   **WESTON, BENSHOOF, ROCHEFORT,**
3      **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street, Sixteenth Floor
4  Los Angeles, California 90071
   Telephone:  (213) 576-1000
5  Facsimile:  (213) 576-1100
   kosenbaugh@wbcounsel.com
6  djones@wbcounsel.com
   skaritani@wbcounsel.com
7
   Attorneys for Plaintiff and Counter-Defendant
8  BP WEST COAST PRODUCTS LLC

9

10              **UNITED STATES DISTRICT COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12  BP WEST COAST PRODUCTS LLC, a Delaware       Case No.: C07 04808 JF
    Limited Liability Company,
13                                               **ADDITIONAL DECLARATION OF**
                    Plaintiff,                   **DEBORAH YOON JONES IN SUPPORT**
14                                               **OF BP WEST COAST PRODUCTS LLC'S:**
         v.
15                                               **(1) REPLY BRIEF IN SUPPORT OF**
    STTN ENTERPRISES, INC., a California         **MOTION FOR SUMMARY JUDGMENT,**
16  Corporation; NAZIM FAQUIRYAN, an individual; **OR IN THE ALTERNATIVE, PARTIAL**
    SAYED FAQUIRYAN, an individual; and          **SUMMARY JUDGMENT AS TO THE**
17  MAGHUL FAQUIRYAN, an individual; and AVA     **SECOND AMENDED COMPLAINT; AND**
    GLOBAL ENTERPRISE, LLC, a California limited
18  liability company,                           **(2) REPLY BRIEF IN SUPPORT OF**
                                                 **MOTION FOR SUMMARY JUDGMENT,**
19                  Defendants.                  **OR IN THE ALTERNATIVE, PARTIAL**
                                                 **SUMMARY JUDGMENT AS TO THE**
20                                               **COUNTERCLAIM**

21                                               [Filed concurrently with Reply Briefs;
                                                 Declaration of Elizabeth Chang; Evidentiary
22                                               Objections to the Declarations of Sayed
                                                 Faquiryan and John Michael; and Appendix of
23                                               Authorities.]

24                                               Date:   August 8, 2008 (reserved)
                                                 Time:   9:00 a.m.
25                                               Crtrm: 3

26                                                      Honorable Jeremy Fogel

27                                               Filing Date:    September 17, 2007

28  AND RELATED CROSS-ACTION.

1227401.1

## DECLARATION OF DEBORAH YOON JONES

I, DEBORAH YOON JONES, declare and state as follows:

1.    I am an attorney duly licensed to practice law before all courts of the State of California and am a partner with the law firm of Weston, Benshoof, Rochefort, Rubalcava & MacCuish LLP, attorneys of record herein for plaintiffs BP West Coast Products LLC ("BPWCP"). I make this declaration in support of BPWCP's Reply Briefs in Support of Its Motions for Summary Judgment, Or In the Alternative, Partial Summary Judgment as to: (1) the Second Amended Complaint; and (2) the Counterclaim.  I have personal knowledge of the facts set forth in this declaration and if called as a witness, could and would testify competently to them.

2.    Attached as **Exhibit 8** are the true and correct copies of relevant transcript excerpts and exhibits from the deposition of Sayed Faquiryan taken on April 24, 2008, and that are cited in BPWCP's Reply Briefs.  The relevant portions have been underlined for the Court's convenience.

3.    Attached as **Exhibit 9** are the true and correct copies of relevant transcript excerpts and exhibits from the deposition of Nazim Faquiryan taken on April 23, 2008, and that are cited in BPWCP's Reply Briefs.  The relevant portions have been underlined for the Court's convenience.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on July 25, 2008, at Los Angeles, California.

DEBORAH YOON JONES

1

1227401.1

# EXHIBIT 8

1          UNITED STATES DISTRICT COURT

2      FOR THE NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5    BP WEST COAST PRODUCTS, LLC, )     **Certified Copy**

6    a Delaware Limited Liability )

7    Company; and ATLANTIC        )

8    RICHFIELD COMPANY, a Delaware)

9    Corporation,                 )

10          Plaintiffs,           )

11          vs.                   )  No.5:07-CV

     STTN ENTERPRISES, INC., a    )     04808JF

12   California Corporation;      )

     NAZIM FAQUIRYAN, an          )

13   individual; SAYED FAQUIRYAN, )

14   an individual; and MAGHUL    )

15   FAQUIRYAN, an individual;    )

16   and AVA GLOBAL ENTERPRISE,   )

17   LLC, a California limited    )

     liability company,          )

18          Defendants.           )

19   AND RELATED CROSS-ACTIONS    )

20   _____ )

21

22        DEPOSITION OF SAYED M.N. FAQUIRYAN

23   Reported by:CYNTHIA L. LUCAS, CSR No. 9973

24

25   Pages 1 - 200

                                                    1

1    into a loan agreement pertaining to a gas station?

2          A. No. No, I don't.

3          Q. Now, in this letter, this Exhibit E, does it

4    discuss the 25 percent payments that you would get --

5          A. No.

6          Q. -- periodically?

7          Did that 25 percent payment provision exist in

8    any of the written documents that BP provided to you, or

9    was it just something that Ken Wickerham told you?

10         A. No. It was in the loan agreement.

11         Q. I'll mark this as the next exhibit. And at

12    the top, it says Loan Agreement (am/pm Mini Market).

13         If you could please, sir, look at that.

14          (Plaintiffs' Exhibit F was marked for

15            identification.)

16    BY MS. JONES:

17         Q. Sir, once you've had a chance to look at

18    this, if you could turn to page 18 of that document, also

19    Bates stamped BP 01552, and confirm that that's your

20    signature on that page.

21         A. Yes.

22         Q. Do you recall when you signed this document?

23         A. No, I don't.

24         Q. On the first page, it has a date of February

25    12, 2007.

78

1          Do you recall if that was the date that you

2     signed this document?

3          A.   February what?

4          Q.   12, 2007.

5          A.   I don't recall.

6          Q.   Do you recall who presented you with this

7     document?

8          A.   I believe I signed this one at the title

9     company for First American Title Company.

10         Q.   Did you read this document before you signed

11    it?

12         A.   Not really.

13         Q.   Can you turn to page 4 of the document.  It's

14    also labeled BP 01538 at the bottom.  And I want to direct

15    you to provision 1.1.

16         Did you read that provision prior to signing this

17    document?

18         A.   What's that?  I'm sorry.  Say again.

19              (RECORD READ.)

20         THE WITNESS:  No.

21         BY MS. JONES:

22         Q.   Prior to signing this document, which is

23    Exhibit F, did you ask any questions from BP?

24         A.   No.

25         Q.   And when you signed this agreement, you

79

1          Q.   Did you read this document before you signed
2    it?

3          A.   No.   I signed this one at the title company,
4    First American Title Company.

5          Q.   With regard to Exhibit F, which is the loan
6    agreement, AM PM Mini Market, have you ever read this
7    document?

8          A.   No, I signed it because I was trying to rush
9    to get this expedited work to fund and pay the bill.

10         Q.   So even to this date, you've never read this
11   document?

12         A.   Well, I read it after -- you know, after the
13   problem.  Not before.

14         Q.   When did you read it for the first time?

15         A.   After all this problem arise.

16         Q.   Do you remember the date, approximately?

17         A.   I don't recall it.

18         Q.   Was it 2006?  2007?

19         A.   2007.

20         Q.   I'm going to mark as Exhibit H, a document
21   entitled Loan Agreement (Gasoline.)

22              (Plaintiffs' Exhibit H was marked for
23              identification.)

24         BY MS. JONES:

25         Q.   If you would please take a look at that

                                                        81

1    document, and confirm for me that it is your signature on

2    page 14.

3              A.  Yes, it is.

4              Q.  Did you read this document before you signed

5    it?

6              A.  No.

7              Q.  Have you ever read this document?

8              A.  After, yes.

9              Q.  In the 2007 time frame?

10             A.  Yes.

11             Q.  After the issues arose concerning funding?

12             A.  Yes.

13             Q.  Prior to signing this document which is

14   Exhibit H, did you ever ask any questions from BP

15   concerning the document?

16             A.  No one was there when I signed this document.

17   We sign it in First American Title Company, and no one was

18   there to answer question.

19             Q.  Did you have Ken Wickerham's cell phone

20   number?

21             A.  Yes, I did.

22             Q.  So if you had any questions, you could have

23   called Ken.

24             A.  Yes.

25             Q.  But you didn't.

                                                           82

1    that loan?

2              A.  No.

3              Q.  Did you ever ask anyone?

4              A.  No.

5              Q.  Prior to you signing the loan agreements, did

6    you believe that the loan money would be paid to you

7    directly?

8              A.  No.

9              Q.  You understood that it would be paid to the

10   contractors or various people doing the work; correct?

11             A.  Yes, kind of.

12             Q.  Now, at some point in time before signing the

13   franchise agreements, did you ever think about not going

14   forward with the conversion and becoming a BP franchisee?

15             MR. MICHAEL:  Which are the franchise agreements?

16             MS. JONES:  The franchise agreements are the

17   Contract Dealer Gasoline Agreement and the AM PM mini

18   market agreement, which are attached as Exhibits A and C to

19   the transcript.

20             And I'm going to refer to them in this deposition

21   as the franchise agreements.  And those are the documents

22   I'm talking about.

23             A.  I'm sorry, repeat the question.

24             Q.  Prior to signing the franchise agreements,

25   did you ever reconsider or think twice about becoming a BP

                                                          93

1    franchisee and not wanting to go forward with that?

2                A.  No.

3                Q.  After signing the franchise agreements, did

4    you decide that you didn't want to go forward and become a

5    BP franchisee?

6                MR. MICHAEL:  Up until today?

7                MS. JONES:  Up until the termination.

8                THE WITNESS:  No.

9                BY MS. JONES:

10               Q.  Do you recall whether BP ever gave you that

11   option about not going forward and becoming a BP

12   franchisee?

13               A.  Yes.

14               Q.  And what's your recollection with regard to

15   that?

16               A.  Was Rima, I don't remember exactly the time,

17   and was 2007, end of 2006 or beginning of 2007, I had an

18   issue about the gas price, and nobody could answer.

19               She came in and said, we give you option to

20   either move forward, or we can give you refund the money

21   for the franchise fee.

22               Q.  Were you already -- was the station already

23   up and running as an Arco station?

24               A.  Yes.

25               Q.  Okay.  And you decided to move forward?

                                                          94

```
 1              A.  Yes.

 2              Q.  How long was the gas station portion shut

 3     down in order for you to convert it to an Arco station?

 4              A.  Can you clear your question, please.

 5              Q.  Sure.  Let me go back.

 6              Did you have to stop selling gas at any point in

 7     time in order to convert the Chevron gas station part to

 8     the Arco gas station?

 9              A.  Yes.

10              Q.  How many days were you shut down where you

11     couldn't sell gasoline in order to convert the Chevron to

12     the Arco for purposes of selling gasoline?

13              A.  I don't recall exact time, but maybe between

14     two to three days.

15              Q.  And after your franchise with BP was

16     terminated, how many days, if any, did you have to shut

17     down in order to have all the Arco signage removed for the

18     gas station purposes only?

19              Do you want me to rephrase the question?

20              A.  Yes, please.

21              Q.  After your BP franchise was terminated, and

22     BP had to come in and remove all the signage, how long were

23     the gas pumps shut down where you couldn't sell gas any

24     longer in order for BP to remove all the signage?

25              A.  Between six -- four to six hours.
```

                                                              95

```
 1  | State of California,    )
    |                         )   ss.
 2  | County of Fresno        )

 3

 4        I, CYNTHIA L. LUCAS, a Certified Shorthand Reporter

 5  of the State of California, do hereby certify that the

 6  witness in the foregoing deposition, was by me duly sworn

 7  to testify to the truth, the whole truth and nothing but

 8  the truth in the within-entitled cause; that said

 9  deposition was taken at the time and place therein named;

10  that the testimony of said witness was reported by me, a

11  disinterested person, and thereafter transcribed into the

12  foregoing pages.

13        And I further certify that I am not of counsel or

14  attorney for either or any of the parties to said

15  deposition, nor in any way interested in the outcome of the

16  cause named in said caption.

17        In Witness Whereof, I have hereunto set my hand

18  at my office in Clovis, California.

19

20            Cynthia L. Lucas
              _____
21            CYNTHIA L. LUCAS, C.S.R. No. 9973

22

23

24

25
```

# EXHIBIT 9

1              UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5    BP WEST COAST PRODUCTS, LLC, )       **Certified Copy**

6    a Delaware Limited Liability )

7    Company; and ATLANTIC         )

8    RICHFIELD COMPANY, a Delaware)

9    Corporation,                  )

10            Plaintiffs,          )

11        vs.                      )  No.5:07-CV

12   STTN ENTERPRISES, INC., a     )      04808JF

13   California Corporation;       )

     NAZIM FAQUIRYAN, an           )

14   individual; SAYED FAQUIRYAN, )

     an individual; and MAGHUL     )

15   FAQUIRYAN, an individual;     )

     and AVA GLOBAL ENTERPRISE,    )

16   LLC, a California limited      )

17   liability company,            )

             Defendants.           )

18   AND RELATED CROSS-ACTIONS     )

19   _____)

20

21        DEPOSITION OF NAZIM S. FAQUIRYAN

22   Reported by:CYNTHIA L. LUCAS, CSR No. 9973

23

24   Pages 1 - 97

25

                                                        1

1            Q.  Did you review this document in preparation

2    for today's deposition?

3            A.  No.

4            Q.  Let's move on to Exhibit F, which is a loan

5    agreement for AM PM Mini Market.  And if you could review

6    this document and confirm for me on page 18, which is Bates

7    labeled BP 01552, whether that is your signature.

8            A.  Yes.

9            Q.  Do you recall when this document was signed

10   by you?

11           A.  No.

12           Q.  Did you read this document before you signed

13   it?

14           A.  No.

15           Q.  And then if you could flip to the page that's

16   Bates labeled BP 01557, is that your signature?

17           A.  Yes.

18           Q.  Do you recall when you signed this document?

19           A.  No.

20           Q.  Did you read this document before you signed

21   it?

22           A.  No.

23           Q.  Have you ever read this document?

24           A.  No.

25           Q.  Did you read this document in preparation for

                                                            14

1    today's deposition?

2              A.   No.

3              Q.   Okay.   Let's go to Exhibit G.   On the third

4    page if you could review that and confirm that that's your

5    signature.

6              A.   Yes.

7              Q.   And did you read this document before you

8    signed it?

9              A.   No.

10             Q.   Do you recall when you signed it?

11             A.   No.

12             Q.   Did you review this document in preparation

13   for today's deposition?

14             A.   No.

15             Q.   Go to Exhibit H.   If you could review that

16   document and then confirm for me on page 14 that that's

17   your signature.

18             A.   Yes.

19             Q.   And do you recall when you signed this

20   document?

21             A.   No.

22             Q.   Did you review this document before you

23   signed it?

24             A.   No.

25             Q.   Have you ever reviewed this document?

15

1          Q.  Did you ever talk to BP about these

2    documents?

3          A.  No.

4          Q.  Did you speak to your father about these

5    documents other than in conversation where your attorneys

6    were present?

7          A.  No.

8          Q.  I may have already asked you this, but just

9    to be safe, let's go Exhibit F, and 01557, is that your

10   signature?

11         A.  Yes.

12         Q.  And then let's go to Exhibit H to Bates label

13   BP 01528, is that your signature?

14         A.  Yes.

15         MR. MICHAEL:  You have gone through these

16   already.

17         MS. JONES:  I just wanted to make sure.

18         Q.  Let's turn to Exhibit M real quick.

19         Have you ever seen this document before?

20         A.  No.

21         MS. JONES:  Let me just review my notes, and I

22   think we can wrap it up.

23              (RECESS TAKEN.)

24         BY MS. JONES:

25         Q.  Prior to signing any of the agreements with

                                                         89